# Exhibit FF

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------x

THE CITY OF NEW YORK,            :

                        :     Index No. 451009/2024

             Plaintiff,      :

                        :

      - against –        :

                        :

ENVIROMD GROUP LLC; GT IMPORTS;    :
KAYLA WHOLESALE, INC., d/b/a The Vapery;  :
KLCCWHOLESALE INC.; MV TRADING LLC   :
a/k/a MYVAPORSTORE; PIONEER      :
DISTRIBUTION, INC. a/k/a WEVAPEUSA.COM  :
a/k/a SELLER SUPREME LLC; RZ SMOKE   :
INC.; STAR ZONE INC.; URBAN SMOKE    :
DISTRIBUTORS; VAPE MORE INC. a/k/a    :
MORE LLC; VAPE PLUS DISTRIBUTION    :
CORP. a/k/a G&A DISTRIBUTION,      :

                        :

           Defendant.     :

------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS VAPE MORE INC.'S AND VAPE PLUS DISTRIBUTION CORP.'S MOTION TO DISMISS

Ryan Callinan
Krupa A. Patel
Eric N. Heyer (*pro hac vice* application
to be filed)
Joseph A. Smith (*pro hac vice* application
to be filed)
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, DC 20036
Phone: 202.331.8800
Ryan.Callinan@ThompsonHine.com
Krupa.Patel@ThompsonHine.com
Eric.Heyer@ThompsonHine.com
Joe.Smith@ThompsonHine.com

*Counsel for Defendants Vape More Inc. and
Vape Plus Distribution Corp.*

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

INTRODUCTION ..................................................................................................1

BACKGROUND ....................................................................................................1

    A.    Electronic Cigarettes Are a Less Harmful Nicotine Delivery Alternative to Combustible Cigarettes ................................................................................................1

    B.    FDA Regulation of Electronic Cigarettes ..........................................................3

    C.    New York State and New York City Regulation of Electronic Cigarettes ..........................5

    D.    The City's Complaint ........................................................................................7

LEGAL STANDARD .............................................................................................9

ARGUMENT ........................................................................................................10

    A.    The City Fails to Plead a Cognizable Claim for Violations of N.Y. Public Health § 1399-ll ....................................................................................10

    B.    The City Fails to Plead a Cognizable Claim for Violations of New York City Administrative Code § 17-715(b)(1) ..................................................................13

    C.    The City Fails to Plead a Cognizable Public Nuisance Claim ..........................................14

CONCLUSION .....................................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*532 Madison Ave. Gourment Foods v. Finlandia Ctr.*,
750 N.E.2d 1097 (N.Y. 2001) ...................................................................................15

*Blair Candy Co. v. Altoona Area Sch. Dist.*,
613 A.2d 159 (Pa. Commw. 1992) .............................................................................11

*Bragg v. Matanuska-Susitna Borough*,
192 P.3d 982 (Alaska 2008) ......................................................................................11

*Breeze Smoke, LLC v. FDA*,
18 F.4th 499 (6th Cir. 2021) .......................................................................................2

*Broadway 95th St. LLC v. Ortega*,
2009 N.Y. Misc. LEXIS 2354, 241 N.Y.L.J. 50 (N.Y. Civ. Ct. 2009) ......................12

*Campaign For Fiscal Equity, Inc. v. State of N.Y.*,
86 N.Y.2d 307 (1995) .................................................................................................9

*Deutsche Bank Natl. Trust Co. v Haller*,
100 A.D.3d 680 (2012) ..............................................................................................10

*Gunther v. Abrams*,
189 A.D.2d 607, N.Y.S.2d 308 (1st Dep't 1993) .......................................................12

*Hicksville Water Dist. v. Philips Elec. North Am. Corp.*,
No. 17-CF-4442, 2018 U.S. Dist. LEXIS 53342 (E.D.N.Y. Mar. 29, 2018) ..............15

*Holistic Candlers & Consumers Ass'n v. FDA*,
664 F.3d 940 (D.C. Cir. 2012) ...................................................................................4

*HSBC Mtge. Corp. [USA] v MacPherson*,
89 A.D.3d 1061 (2011) ...............................................................................................9

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
725 F.3d 65 (2d Cir. 2013) .........................................................................................15

*Lavanant v. NYS DHCR*,
148 A.D.2d 185, 544 N.Y.S.2d 331 (1st Dept 1989) ...............................................12

*O'Donnell, Fox & Gartner v. R-2000 Corp.*,
198 A.D.2d 154 (1st Dep't 1993) ...............................................................................9

*US Bank N.A. v Faruque*,
120 A.D.3d 575 (2014) ..............................................................................................10

*Vapor Tech. Ass'n v. FDA*,
977 F.3d 496 (6th Cir. 2020) .....................................................................................4

*Wages and White Lion Investments L.L.C. v. FDA*,
No. 21-60766, Joint Appendix (5th Cir. Jan. 14, 2022) .........................................2, 3

*WFB Telecomms., Inc. v. NYNEX Corp.*,
188 A.D.2d 257 (1st Dep't 1992) ........................................................................9, 12, 16

*Wilson v. Tully*,
   243 A.D.2d 229 (1st Dep't 1998)................................................................9

**Statutes**

21 U.S.C. § 387g.................................................................................................4

21 U.S.C. § 387j.................................................................................................3

N.Y. Public Health Law § 1399-aa ...............................................................11

N.Y. Public Health Law § 1399-bb ................................................................5

N.Y. Public Health Law § 1399-*ll*.................................................5, 6, 10, 11

N.Y. Public Health Law § 1399-mm-1 ...........................................................5

N.Y. Public Health Law § 1399-oo ..............................................................11

**Rules**

CPLR 3211.........................................................................................................1

**Regulations**

24 R.C.N.Y. § 28-02...............................................................................7, 8, 9, 14

**Other Authorities**

CDC, National Center for Health Statistics, *Early Release of Selected Estimates
   Based on Data from the 2022 National Health Interview Survey* (Apr. 23, 2023),
   https://perma.cc/D25X-2ASE ....................................................................3

CDC, *QuickStats: Percentage Distribution of Cigarette Smoking Status Among
   Current Adult E-Cigarette Users, by Age Group—National Health Interview Survey*
   (Mar. 10, 2023), https://perma.cc/TYR8-9KUV .......................................3

*Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic
   Act, as Amended by the Family Smoking Prevention and Tobacco Control Act;
   Restrictions on the Sale and Distribution of Tobacco Products and Required
   Warning Statements for Tobacco Products,*..............................................3

FDA Regulatory Procedures Manual (Jun. 2022)..........................................4

"Guidance for Vapor Product Manufacturers, Wholesalers, Distributors, and Retailers
   Regarding New Shipping Restrictions,"
   New York State Department of Public Health, *available at*
   https://health.ny.gov/prevention/tobacco_control/docs/vape_product_shipping_ban
   _guidance.pdf ......................................................................................6, 12

National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes*, National Academies Press (2018) ............................................. 2

N.Y.C. Admin. Code § 11-1301 ............................................................................................. 10

N.Y.C. Admin. Code § 11-2001 ............................................................................................. 11

N.Y.C. Admin. Code § 11-1302 ............................................................................................. 10

N.Y.C. Admin. Code § 1302.1 ............................................................................................... 10

N.Y.C. Admin. Code § 17-176 ............................................................................................... 10

N.Y.C. Admin. Code § 17-702 ............................................................................................... 10

N.Y.C. Admin. Code § 17-706 ................................................................................................. 7

N.Y.C. Admin. Code § 17-710 ............................................................................................... 13

N.Y.C. Admin. Code § 17-715 ............................................................................................ 7, 8

N.Y.C. Admin. Code § 17-717 ............................................................................................... 13

Schneller LM, Bansal-Travers M, Goniewicz ML, McIntosh S, Ossip D, O'Connor RJ. "Use of Flavored E-Cigarettes and the Type of E-Cigarette Devices Used among Adult and Youth in the US-Results from Wave 3 of the Population Assessment of Tobacco and Health Study (2015-2016)." *Int J Environ Res Public Health.* 2019 ............................................................................................................. 3

## INTRODUCTION

Defendants Vape More Inc. ("Vape More") and Vape Plus Distribution Corp., ("Vape Plus") (collectively, the "Defendants"), by and through their undersigned counsel, respectfully request that this Court grant their motion to dismiss the claims that Plaintiff The City of New York (the "City") has brought against them. Specifically, the City has failed to allege sufficient facts to state a claim against Defendants under CPLR 3211(a)(7). The City has also failed to establish that it has standing to bring these claims against Defendants pursuant to CPLR 3211(a)(3). For reasons expressed further herein, this Court should grant Defendants' motion to dismiss in its entirety.

## BACKGROUND

**A.  Electronic Cigarettes Are a Less Harmful Nicotine Delivery Alternative to Combustible Cigarettes**

Electronic cigarettes are hand-held devices that enable a user to inhale an aerosol that contains nicotine.[1] Unlike traditional cigarettes, electronic cigarettes do not burn tobacco leaf or any other substance through combustion; rather, a nicotine-containing liquid (called "e-liquid") is heated by a battery-powered heating element and aerosolized to create the resulting "vapor" that users can inhale.[2]

---

[1] Electronic cigarettes are also referred to a "e-cigarettes," "electronic nicotine delivery systems" and "ENDS."

[2] The photograph below from the U.S. Food and Drug Administration's website shows examples of different types of electronic cigarettes:

Because electronic cigarettes do not expose users to toxins that are created by the burning of tobacco leaf, they present fewer health risks than do traditional cigarettes. *See, e.g.*, National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes*, National Academies Press, Summary at 1 (2018) ("While e-cigarettes are not without health risks, they are likely far less harmful than combustible tobacco cigarettes."); *accord Breeze Smoke, LLC v. FDA*, 18 F.4th 499, 505 (6th Cir. 2021) (noting that e-cigarettes "may provide a beneficial alternative to combustible cigarettes because they deliver nicotine without also bombarding the user's lungs with the toxins found in cigarettes"). The U.S. Food and Drug Administration ("FDA") itself has concluded that electronic cigarettes "are generally likely to have fewer and lower concentrations of harmful and potentially harmful constituents (HPHCs) than combustible cigarettes, and biomarker studies demonstrate significantly lower exposure to HPHCs among current exclusive [electronic cigarette] users than current smokers." *Wages and White Lion Investments L.L.C. v. FDA*, No. 21-60766, Joint Appendix at 92 (5th Cir. Jan. 14, 2022) (FDA Technical Project Lead Review of PMTAs issued to Wages & White Lion Investments LLC (citing National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes*, National Academies Press; 2018)).



- 2 -

According to the Centers for Disease Control and Prevention ("CDC'), nearly six percent of U.S. adults currently use electronic cigarettes, whereas over eleven percent currently smoke combustible cigarettes.[3] Nationally, an overwhelming majority of electronic cigarette users use non-tobacco flavored electronic cigarettes.[4] And, most adult electronic cigarette users are former or current combustible cigarette smokers, including 92.8% of users over 45 years old—the age group most susceptible to near-term adverse health impacts from smoking combustible cigarettes.[5]

B.     **FDA Regulation of Electronic Cigarettes**

FDA began regulating electronic cigarettes as "tobacco products" under the federal Food, Drug, and Cosmetic Act ("FDCA") in August 2016. *See* 81 Fed. Reg. 28,974 (May 10, 2016).  As a result, those wishing to market electronic cigarettes were required to file a premarket tobacco application ("PMTA") and obtain a marketing granted order from FDA. *See* 21 U.S.C. § 387j. However, because millions of electronic cigarettes were already on the market prior to August 2016, FDA's followed an "enforcement discretion" policy, refraining from taking enforcement action against electronic cigarettes with timely-filed PMTAs so long as those PMTAs are

---

[3] CDC, National Center for Health Statistics, *Early Release of Selected Estimates Based on Data from the 2022 National Health Interview Survey* (Apr. 23, 2023), https://perma.cc/D25X-2ASE.

[4] *See Wages and White Lion Investments L.L.C. v. FDA*, No. 21-60766, Joint Appendix at 88 (5th Cir. Jan. 14, 2022) (FDA Technical Project Lead (TPL) Review of PMTAs issued to Wages & White Lion Investments LLC (citing Schneller LM, Bansal-Travers M, Goniewicz ML, McIntosh S, Ossip D, O'Connor RJ. Use of Flavored E-Cigarettes and the Type of E-Cigarette Devices Used among Adult and Youth in the US-Results from Wave 3 of the Population Assessment of Tobacco and Health Study (2015-2016). *Int J Environ Res Public Health.* 2019; 16(16))) (FDA stating that approximately 77% of adult electronic cigarette users use non-tobacco flavored electronic cigarettes).

[5] CDC, *QuickStats: Percentage Distribution of Cigarette Smoking Status Among Current Adult E-Cigarette Users, by Age Group—National Health Interview Survey* (Mar. 10, 2023), https://perma.cc/TYR8-9KUV.

- 3 -

undergoing FDA review. *See generally, Vapor Tech. Ass'n v. FDA*, 977 F.3d 496 (6th Cir. 2020).[6] Indeed, FDA has never initiated an enforcement action against an electronic cigarette that is the subject of a PMTA still undergoing FDA review.[7]

As noted above, some electronic cigarettes create an aerosol that tastes like the smoke from a traditional tobacco cigarette. FDA has granted marketing authorization for a few such tobacco-flavored electronic cigarettes.[8] Other electronic cigarettes generate an aerosol that is not tobacco-flavored—*e.g.*, fruit flavored or menthol. FDA has not yet authorized any such "flavored" electronic cigarettes, although PMTAs for many such products remain under FDA review.

FDA has the statutory authority to adopt a regulation through notice-and-comment rulemaking that would ban flavored electronic cigarettes (*e.g.*, fruit-flavored electronic cigarettes). *See* 21 U.S.C. § 387g(c). To adopt such a regulation, FDA would have to establish that banning flavored electronic cigarettes would result in a net benefit to the public health. *See id.* at § 387g(a)(3)(A). FDA has not proposed, let alone adopted, such a regulation.[9] It seems unlikely that

---

[6] FDA often exercises "enforcement discretion"—*i.e.*, refrains from bringing an enforcement action—for products that do not have FDA marketing authorization. *See, e.g.*, FDA Compliance Policy Guide § 440.100 (describing how FDA "intend[s] to exercise [its] enforcement discretion with regard to drugs marketed in the United States that do not have required FDA approval for marketing").

[7] FDA has initiated two types of enforcement actions—civil money penalty actions and injunction actions—for the distribution of unauthorized electronic cigarettes. *See* https://www.fda.gov/tobacco-products/compliance-enforcement-training/advisory-and-enforcement-actions-against-industry-unauthorized-tobacco-products#a. FDA has also issued "Warning Letters" for the distribution of unauthorized electronic cigarettes. *Id.* But FDA's position is that Warning Letters are "advisory" only and are not "are not final agency action" that can be challenged in court. *See* FDA Regulatory Procedures Manual, Chapter 4 at 4 (Jun. 2022); *accord Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940 (D.C. Cir. 2012) (holding that an FDA Warning Letter was not subject to judicial review).

[8] *See* https://www.fda.gov/tobacco-products/premarket-tobacco-product-applications/premarket-tobacco-product-marketing-granted-orders.

[9] The City alleges that FDA has "banned flavored e-cigarette 'pods.'' (FAC at 16, ¶ 53; *see also* FAC at 16, ¶ 54 (alleging there is a "federal flavor ban")). But the only method by which FDA

- 4 -

FDA will propose a regulation banning flavored electronic cigarettes because, as noted above, FDA-funded researchers have found that any public health benefit resulting from such a ban may be offset by public health costs from increased combustible cigarette sales. *See supra n.7.*

**C.      New York State and New York City Regulation of Electronic Cigarettes.**

Despite the significant harm reduction potential of electronic cigarettes acknowledged by FDA—including flavored electronic cigarettes—both the State and the City of New York have banned the retail sale of flavored electronic cigarettes to consumers. Even though FDA-funded researchers at Yale University's School of Public Health recently concluded that "any public health benefits of reducing [e-cigarette] use via flavor restrictions may be offset by public health costs from increased cigarette sales,"[10] the City of New York has filed this suit against Defendants and others, accusing them of violating City and state statutes and of engaging in a public nuisance by distributing flavored electronic cigarettes to businesses in New York City.

New York State law permits the sale of electronic cigarettes, including flavored electronic cigarettes, to "vapor product dealers" who are licensed by the State. *See* N.Y. Public Health Law § 1399-*ll*(1), (1-a).[11] New York State law permits the sale of non-flavored (*i.e.*, tobacco-flavored) electronic cigarettes to retail customers who are at least 21 years old and prohibits the sale of flavored electronic cigarettes to retail customers of any age. *See* N.Y. Public Health Law §§ 1399-bb(4), 1399-mm-1(2).  While Section 1399-*ll*(1-a) of the New York Public Health Law provides

---

could lawfully "ban" flavored e-cigarettes (or any product for that matter) would through adoption of a regulation.

[10] A. Friedman, et al., *E-cigarette Flavor Restrictions Effects on Tobacco Product Sales* (Sept. 26, 2023), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4586701.[10]

[11] "Vapor products" include electronic cigarettes. N.Y. Public Health Law § 1399-aa(17). A "vapor products dealer" is a "person licensed by the commissioner of taxation and finance to sell vapor products in this state." N.Y. Public Health Law § 1399-aa(18).

that it "shall be unlawful for any person engaged in the business of selling vapor products to ship

or cause to be shipped any vapor products intended or reasonably expected to be used with or for

the consumption of nicotine to any person in this state" who is not, *inter alia*, the holder of a

"certificate of registration as a vapor products dealer under article twenty eight-C of the tax law,"

in 2020, the New York State Department of Public Health published on its website a "Guidance

for Vapor Product Manufacturers, Wholesalers, Distributors, and Retailers Regarding New

Shipping Restrictions" that states, in relevant part, as follows:

> The following shipments of vapor products intended or reasonably expected
> to be used with or for the consumption of nicotine will continue to be **permitted:**

> -   All shipments between manufacturers, wholesalers, and distributors
>     within New York. Such entities are not required to register as vapor
>     products dealers to send or receive shipments of vapor products, unless
>     otherwise required to register pursuant to Tax Law Article 28-C.

*See* Exhibit A to Affirmation of Ryan Callinan in Support of Motion to Dismiss (available at

https://health.ny.gov/prevention/tobacco_control/docs/vape_product_shipping_ban_guidance.pdf

(last visited May 31, 2024)). The Department of Health's Guidance states that the intent behind

Section 1399-*ll*(1-a) "is to prevent consumers, and particularly individuals under the age of 21,

from circumventing restrictions on vapor product sales by purchasing products online and via

telephone." *Id*. The Guidance states that the shipments that are prohibited by Section 1399-*ll*(1-a)

are "[a]ll shipments to consumers at an address located within New York" and "[a]ll shipments to

individuals or entities intended to provide such vapor products to a consumer within New York, at

retail or otherwise, unless such individual or entity is registered as a vapor products dealer pursuant

to Tax Law Article 28-C." *Id*.

For its part, New York City law permits the sale of non-flavored (*i.e.*, tobacco-flavored)

electronic cigarettes to retail customers who are at least 21 years old and prohibits the sale of

- 6 -

flavored electronic cigarettes. *See* N.Y.C. Admin. Code §§ 17-706(a-1), 17-715(1). However, New York City law expressly permits flavored electronic cigarettes to "be sold or offered for sale by wholesalers where the sale or offer for sale is made to an entity located outside the City." 24 R.C.N.Y. § 28-02(b).

**D.      The City's Complaint**

Defendants Vape More Inc., a/k/a More LLC ("Vape More") and Vape Plus Distribution Corp. a/k/a G&A Distribution ("Vape Plus") (collectively "Defendants"), are businesses engaged in the nationwide business-to-business sale and distribution of electronic cigarettes. *See* Complaint ("Complaint"), NYSCEF No. 3, ¶¶ 21-22. Vape More is located in Latham, New York, north of Albany, while Vape Plus is located in Brooklyn, New York. *Id*., ¶¶ 107, 111.

The City's Complaint alleges that on or about July 30, 2023, Vape More sold various flavored disposable electronic cigarettes to a distributor located in the City. *Id*., ¶¶ 107, 108. The Complaint also alleges that "[o]n information and belief, Vape More ships or causes to be shipped vapor products to persons that are not holders of a Vape Certificate. *Id*., ¶ 110.

The City's Complaint alleges that Vape Plus has purchased various flavored electronic cigarette products from a New Jersey-based distributor and that all of these electronic cigarettes were "necessarily possessed, offered for sale, and possessed to offer for sale in the City and on information and belief many if not all of them were sold in the City." *Id*., ¶¶ 114-120. The Complaint also alleges that, "[o]n information and belief, Vape Plus ships or causes to be shipped vapor products to persons in New York City that are not holders of a Vape Certificate." *Id*., ¶ 121. The Complaint does not allege a single direct-to-consumer retail sale or shipment of electronic cigarettes by either Vape More or Vape Plus.

The City asserts three claims for relief based on Defendants' alleged sales and shipments of flavored electronic cigarettes to businesses in the City. First, the City alleges that Defendants'

alleged sales of flavored electronic cigarettes violated section 1399-*ll*(1-a) of New York State's

Public Health Law. Second, the City alleges violations of New York City Administrative Code §

17-715(b)(1), which prohibits the sale of flavored electronic cigarettes and flavored e-liquids in

the City. Finally, the City alleges that Defendants' sales of flavored electronic cigarettes to

wholesalers and distributors in the City constitute a "public nuisance." Tellingly, despite the plain

language of the City's own regulation promulgated at 24 R.C.N.Y. 28-02, which states that

"[f]lavored electronic cigarettes and flavored e-liquids may . . . be sold or offered for sale by

wholesalers where the sale or offer of sales is made to an entity located outside the City of New

York," the City alleges in its Complaint that "New York City has enacted a complete ban on

*wholesale and retail* sales of flavored vapes, whether over the internet or from brick-and-mortar

locations." Complaint, ¶ 46.

The City's Complaint fails to state any cognizable claim against Defendants. As explained

herein, the City lacks standing to allege a violation of Section 1399-*ll* of the New York Public

Health Law. And, even if the City has standing, it fails to plead a cognizable claim under Section

1399-*ll* because the New York Department of Health, the state agency charged with administering

the statute, has published guidance for businesses like Defendants that interprets Section 1399-*ll*

as being inapplicable to the very distributor-to-distributor shipments of electronic cigarettes upon

which the City bases its claims against Defendants. Additionally, the City fails to allege any

instance of either Defendant actually *shipping* any vapor products to persons in New York City

that are not holders of the dealer's registration certification required by Section 1399-*ll*, and so

fails to state sufficient facts to support the City's claim.

The City's Complaint also fails to state a cognizable claim against Defendants for

violations of New York City Administrative Code §17-715(b)(1). Not only does Vape More not

engage in sales in the City because it is not based in the City, but rather in Latham, New York, but

24 R.C.N.Y. 28-02(b) specifically suggests that distribution sales of flavored vapor products to

distributors in the City do not *per se* violate Section 17-715(b)(1) because distributors located in

the City are entitled to possess flavored vapor products for sales to entities located outside the City.

Moreover, besides the one sale the City accuses Vape More of making to a single distributor in the

City, the Complaint is devoid of any other allegations of specific sales of flavored vapor products

in the City by either Defendant.

Finally, the City's Complaint fails to state a cognizable claim for public nuisance because

the City does not plead sufficient facts as to Vape More or Vape Plus to support the public nuisance

claim.

## **LEGAL STANDARD**

A motion to dismiss pursuant to CPLR 3211(a)(7) must be granted where the pleadings fail

to state a valid cause of action. *Campaign For Fiscal Equity, Inc. v. State of N.Y.*, 86 N.Y.2d 307,

318 (1995). Unsupported assertions and conclusions of law will not suffice to state a cause of

action. *See WFB Telecomms., Inc. v. NYNEX Corp.*, 188 A.D.2d 257, 259 (1st Dep't 1992). On a

motion to dismiss, factual allegations are deemed true, but legal conclusions are entitled to no

deference whatsoever. *See O'Donnell, Fox & Gartner v. R-2000 Corp.*, 198 A.D.2d 154 (1st Dep't

1993). Conclusory allegations lacking sufficiently pleaded facts to support those conclusions

should be disregarded. *Wilson v. Tully*, 243 A.D.2d 229, 234 (1st Dep't 1998).

On a defendant's motion pursuant to CPLR 3211(a)(3) to dismiss the Complaint based upon

the plaintiff's lack of standing, the burden is on the moving defendant to establish, *prima facie*, the

plaintiff's lack of standing as a matter of law. *See HSBC Mtge. Corp. [USA] v MacPherson*, 89

A.D.3d 1061, 1062 (2011). To defeat the motion, a plaintiff must submit evidence which raises a

question of fact as to its standing. *See US Bank N.A. v Faruque*, 120 A.D.3d 575, 578 (2014);

*Deutsche Bank Natl. Trust Co. v Haller*, 100 A.D.3d 680, 683 (2012).

## ARGUMENT

**A.  The City Fails to Plead a Cognizable Claim for Violations of N.Y. Public Health § 1399-*ll***

The City's first claim for relief, alleging violations of New York Public Health Law § 1399-

*ll*(1-a) should be dismissed for at least three independent reasons.

*First*, the City lacks standing to assert a cause of action under Section 1399-*ll*. The statute

provides as follows:

> [T]he corporation counsel of any political subdivision that imposes a tax on cigarettes or vapor products intended or reasonably expected to be used with or for the consumption of nicotine may bring an action to recover the civil penalties provided by subdivision five of this section and for such other relief as may be deemed necessary with respect to any cigarettes or vapor products intended or reasonably expected to be used with or for the consumption of nicotine shipped, caused to be shipped or transported in violation of this section to any person located within such political subdivision.

N.Y. Pub. Health L. § 1399-*ll*(6). The City, however, does not allege that it imposes a tax on vapor

products and, in fact, does not impose any such vapor product-specific tax. Accordingly, the City

lacks standing to assert a claim for violations of Section 1399-*ll*.

Public Health Law § 1399-*ll* grants the attorney general and corporate counsel of a

"political subdivision that imposes a tax on cigarettes or vapor products" standing to seek civil

penalties for violations of the statute. N.Y. Pub. Health Law § 1399-*ll*(6). New York City only

taxes cigarettes and does not impose an excise tax on vapor products. *See* N.Y.C. Admin. Code 11-

1302.[12] Public Health Law § 1399-*ll* distinguishes between cigarettes and vapor products, defining

---

[12] *See* N.Y.C. Admin. Code §§ 11-1302(a) (excise tax on "cigarettes"), 1302.1(a) (excise tax on "tobacco products"— "cigars," "little cigars," "smokeless tobacco," "snus," "shisha," and "loose tobacco"). Electronic cigarettes do not fall under New York City's definition of "cigarettes" or "tobacco products." *See* N.Y.C. Admin. Code §§ 11-1301(1) & (19), 17-176(a)(6), 17-702(r). New

- 10 -

them separately and including statutory provisions specific to each type of product. *See generally*

N.Y. Pub. Health Law §§ 1399-*ll*.

Under the Public Health Law, a "cigarette" is defined as

"any product that contains nicotine, is intended to be burned or heated under ordinary conditions of use, and consists of or contains: (a) any roll of tobacco wrapped in any substance not containing tobacco, or (b) tobacco, in any form, that is functional in the product, which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a **cigarette**; or (c) any roll of tobacco wrapped in any substance containing tobacco which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a **cigarette** described in paragraph (a) of this definition."

N.Y. Public Health Law § 1399-oo.

In contrast, "electronic cigarette" or "e-cigarette" are defined separately as "an electronic device that delivers vapor which is inhaled by an individual user," N.Y. Pub. Health Law § 1399-aa(13), and "vapor products" are defined as "any noncombustible liquid or gel, regardless of the presence of nicotine therein, that is manufactured into a finished product for use in an electronic cigarette, including any device that contains such noncombustible liquid or gel." N.Y. Pub. Health Law § 1399-aa(17). Because "electronic cigarettes" and "vapor products" are distinct from "cigarettes," and the City only imposes an excise tax on "cigarettes" and not "vapor products," the City lacks standing to enforce the vapor product-specific provisions of Public Health Law § 1399-*ll*.

---

York City has a sales and use tax for the retail sale of tangible personal property. *See* N.Y.C. Admin. Code § 11-2001(a). But such generally applicable sales and use taxes are not "excise taxes." *Cf. Bragg v. Matanuska-Susitna Borough*, 192 P.3d 982, 988-89 (Alaska 2008) (holding that a local tax on cigarettes was an excise tax, not a sales tax); *Blair Candy Co. v. Altoona Area Sch. Dist.*, 613 A.2d 159 (Pa. Commw. 1992) (same).

*Second*, even if the Court were to conclude that the City has standing, the state's Department of Public Health, the agency charged with enforcing the Public Health Law, has stated that Section 1399-*ll* does not prohibit the type of distributor-to-distributor shipments of electronic cigarettes upon which the City bases its claim against Vape More. Rather, pursuant to the Department's own Guidance, "[a]ll shipments between . . . wholesalers[] and distributors within New York" will "continue to be permitted" because "[s]uch entities are not required to register as vapor product dealers to send or receive shipments of vapor products."

"It is well-settled that courts should give deference to the administrative agency's interpretation of the statutes it administers and of its own rules and regulations if reasonable." *Broadway 95th St. LLC v. Ortega*, 2009 N.Y. Misc. LEXIS 2354, *13, 241 N.Y.L.J. 50 (N.Y. Civ. Ct. 2009) (citing *Gunther v. Abrams*, 189 A.D.2d 607, 592 N.Y.S.2d 308 (1st Dep't 1993); *Lavanant v. NYS DHCR*, 148 A.D.2d 185, 544 N.Y.S.2d 331 (1st Dept 1989)). Application of that principle here requires that the Court defer to the Department of Public Health's interpretation of Section 1399-*ll* and dismiss the City's claim.

*Third*, nowhere in the Complaint does the City allege any particular instance of either Defendant actually *shipping* any vapor products to persons in New York City that are not holders of a dealer's registration certificate. The Complaint makes a wholly conclusory allegation that Defendants' alleged sales necessarily violate the provisions of Section 1399-*ll*(1-a), but this unsupported legal conclusion cannot alter the fact that the City has failed to allege a *specific shipment* to an unregistered business. "[A]llegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence are not entitled to such consideration." *See WFB Telecomms., Inc.*, 188 A.D.2d at 259 (internal quotations and citations omitted). To adequately plead a valid cause of action the City needs to

- 12 -

allege more than just unsupported factual allegations that are presented in a conclusory manner. *Id*.

Indeed, even as to Vape More, the City does not allege that Urban Smoke Distributors, the distributor in the City to which the City alleges Vape More sold vapor products, is unregistered. And, of course, it is possible that even if such sales occurred, the Defendants' customers visited the Defendants' locations and picked up products there such that no shipment took place. The City's failure to plead even the minimum facts necessary to state a cognizable cause of action against these Defendants is fatal to its claim for alleged violations of Section 1399-*ll*(1-a).

**B.     The City Fails to Plead a Cognizable Claim for Violations of New York City Administrative Code § 17-715(b)(1)**

The City's second claim for relief similarly fails to state a cognizable claim under N.Y.C. Admin. Code § 17-715(b)(1) for at least two independent reasons.

*First*, there is no statutory basis for a civil claim in this Court by corporate counsel under Section 17-715. Enforcement for violations of Section 17-715 is addressed by N.Y.C. Admin. Code § 17-717, which provides for enforcement of Subchapter 2 of Chapter 7 of the City's Administrative Code by City departments through "administrative trials and hearings." In contrast, Subchapter 1, which does *not* include Section 17-715, but rather other aspects of tobacco product sales and deliveries, specifically contains a provision authorizing the City to seek judicial relief. *See* N.Y.C. Admin. Code §17-710(d) ("Whenever any person has engaged in any acts or practices which constitute a violation of any provision of this subchapter . . . the city may make application to a court of competent jurisdiction for any order enjoining such acts or practices and for an order granting a temporary or permanent injunction, restraining order or other order enjoining such acts or practices."). The lack of a similar enforcement provision in Subchapter 2, where Section 17-

- 13 -

715 is found, demonstrates that the City's administrative hearing process, rather than this civil action, is the proper forum for the City to seek relief for violations of Section 17-715.

*Second*, the City's claim under Section 17-715 fails because the City's own regulation, 24 R.C.N.Y. 28-02(b), specifically suggests that sales of flavored vapor products to distributors in the City—like the sale the City accuses Vape More of making[13]—do not violate Section 17-715(b)(1) because such distributors are entitled to possess flavored vapor products for sales to entities located outside the City. Nor do the City's wholly conclusory allegations that Vape Plus "necessarily possessed, offered for sale and possessed to offer for sale in the City" plead sufficient facts to suggest that 24 R.C.N.Y. 28-02(b) cannot insulate Vape Plus's sales from an alleged violation of Section 17-715(b)(1). Again, the City fails to allege any of specific circumstances surrounding potential sales of flavored e-cigarettes and flavored e-liquids in New York City, such as specific language, invoices, locations, or locations of sales. As such, the City's second claim clearly lacks the particularity required to allege a violation of NYC Ad. Code 17-715.

## C. The City Fails to Plead a Cognizable Public Nuisance Claim

The City's third claim for relief fails to state a cognizable claim for public nuisance because the City has not alleged facts sufficient to conclude that Vape More and Vape Plus created or contributed to the alleged public nuisance. To succeed on a public nuisance claim, the City must show that Vape More and Vape Plus's conduct "'amounts to a substantial interference with the exercise of a common right of the public,' thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons.'" *In re Methyl Tertiary Butyl Ether*

---

[13] Additionally, as noted above, Vape More is located north of Albany, not in New York City. Without more detailed factual allegations, it is thus unclear how it could have sold, offered for sale, or possessed with intent to sell or offer for sale flavored electronic cigarettes or e-liquid *in* New York City.

("MTBE") Prods. Liab. Litig., 725 F.3d 65, 121 (2d Cir. 2013) (quoting *532 Madison Ave.*
*Gourment Foods v. Finlandia Ctr.*, 750 N.E.2d 1097, 1104 (N.Y. 2001)). The City must allege
that the conduct or omissions of Vape More and Vape Plus created, contributed to, or maintained
a public nuisance. *See Hicksville Water Dist. v. Philips Elec. North Am. Corp.*, No. 17-CF-4442
(ADS) (ARL), 2018 U.S. Dist. LEXIS 53342, at *19 (E.D.N.Y. Mar. 29, 2018).[14]

The City's claim that a public nuisance exists, and that Defendants created or contributed
to it, is rooted in the assertion that Vape More and Vape Plus violated New York Public Health
Law § 1399-mm-1 by engaging in the *retail* sale of flavored vapor products to individual
consumers. *See* Complaint, ¶ 130. But the City does not, and cannot truthfully, allege *any* factual
allegations relating to Vape More and Vape Plus's supposed *retail* sales of flavored electronic
cigarettes or flavored e-liquids to individuals, and even less so to young adults. *See id.*, ¶¶ 129-
135. Significantly, the City acknowledges that Defendants are not retailers and instead are
wholesalers and distributors, which inherently means they are not engaged in any retail sales.
NYSEC, ¶¶ 107, 111-112. There is no reference to any alleged violation of any other statute, nor
is there even any reference to Defendants creating or contributing to a public nuisance by engaging
in retail sales.

Instead, the City merely and insufficiently relies on general and conclusory allegations that
Vape More and Vape Plus sell and distribute e-cigarettes in violation of federal, state, and city
laws. *See id.*, ¶ 131. But even those allegations are contradicted by the City's repeated allegations
that Defendants are "distributors" or "wholesalers" that make sales to sub-distributors and retailers.
*See, e.g.*, *id.*, ¶¶ 107-108; 111-112. Despite having no factual basis or specific allegations to

---

[14] A third element exists for private plaintiffs asserting a claim for public nuisance and requires
that they show they suffered a particular harm or special injury. *Id.*

support its conclusory claims that Defendants engaged in retail sales of flavored vapor products in

violation of Public Health Law § 1399-mm-1, the City asserts its public nuisance claim based on

those purported violations. Because the City pleas only unsupported assertions and conclusions of

law, its Complaint fails to plead a cognizable cause of action for public nuisance. *See WFB*

*Telecomms.*, 188 A.D.2d at 259.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the City's Complaint as against

Defendants Vape More and Vape Plus.

Dated: May 31, 2024                    Respectfully Submitted,

                                       THOMPSON HINE LLP

                                       By:_____/s/ Ryan Callinan_____
                                          Ryan Callinan
                                          Krupa A. Patel
                                          Eric N. Heyer (*pro hac vice* application
                                          to be filed)
                                          Joseph A. Smith (*pro hac vice* application
                                          to be filed)
                                          THOMPSON HINE LLP
                                          1919 M Street, N.W., Suite 700
                                          Washington, DC 20036
                                          Phone: 202.331.8800
                                          Ryan.Callinan@ThompsonHine.com
                                          Krupa.Patel@ThompsonHine.com
                                          Eric.Heyer@ThompsonHine.com
                                          Joe.Smith@ThompsonHine.com

- 16 -

## <u>WORD COUNT CERTIFICATION</u>

I herby certify pursuant to Pat 202.8-b of the Uniform Civil Rules for the Supreme Court & the County Court the foregoing Memorandum of Law contains 4,864 words, exclusive of the caption and signature block, as determined by the Microsoft Word program used to prepare the document.


/s/ Ryan Callinan
Ryan Callinan

- 17 -

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2024, I caused to be served on counsel of record, electronically via the Court's electronic filing system, a true and correct copy of the foregoing Memorandum in conjunction with its Notice of Motion.

s/ Ryan Callinan
Ryan Callinan

- 18 -