# Exhibit OO

Case 1:24-cv-05161-GHW-JW    Document 1-41    Filed 07/08/24    Page 2 of 53

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

------------------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                                        Plaintiff,

                    v.

ENVIROMD GROUP LLC; GT IMPORTS; KAYLA
WHOLESALE, INC., d/b/a The Vapery; KLCC WHOLESALE
INC.; MV TRADING LLC a/k/a MYVAPORSTORE;
PIONEER DISTRIBUTION, INC. a/k/a WEVAPEUSA.COM
a/k/a SELLER SUPREME LLC; RZ SMOKE INC.; STAR
ZONE INC.; URBAN SMOKE DISTRIBUTORS; VAPE
MORE INC. a/k/a MORE LLC; VAPE PLUS DISTRIBUTION
CORP. a/k/a G&A DISTRIBUTION; DAVID ALFIH a/k/a
David Alfieh, a/k/a DJ Alfani, and MARCUS BERNARD,

                                        Defendants.

------------------------------------------------------------------------------- x

**AMENDED COMPLAINT**

Index No. 451009/2024

Plaintiff the City of New York (the "City"), by counsel, respectfully alleges, with
knowledge of its own actions and on information and belief as to the actions of others, as follows:

### Nature of the Action

1.      By this action the City seeks injunctive and other equitable relief, damages and
statutory penalties arising out of the distribution and sale of flavored electronic nicotine delivery
devices, also known as "e-cigarettes" or "ENDS."[1] The Defendants named herein violate nearly
every federal, New York State and New York City law enacted to regulate the marketing,

---

[1] The term "electronic nicotine delivery system," often abbreviated as "ENDS," refers to a variety of devices – "vapes,"
"vaporizers," "vape pens," "hookah pens," "electronic cigarettes," "e-cigars," and "e-pipes" among others, which
vaporize nicotine-containing solutions ("e-liquids") that deliver nicotine when inhaled by the user.

- 1 -

INDEX NO. 451009/2024
RECEIVED NYSCEF: 06/14/2024

Case 1:24-cv-05161-GHW-JW    Document 1-41    Filed 07/08/24    Page 3 of 53

distribution, and sale of flavored e-cigarettes.[2]

2.        E-cigarettes, also familiarly known as "vapes," are an "electronic nicotine delivery device" – a device that uses a battery to heat a nicotine-laced solution (an "e-liquid") to create a nicotine-infused aerosol or vapor inhaled by the user in place of the combustion-generated tobacco smoke of a traditional cigarette. E-liquids are mixtures of natural or most often synthetic nicotine dissolved in propylene glycol and vegetable glycerin. E-liquids can be formulated to produce a vapor tasting of tobacco, but the vast majority, and those at issue in this action, contain flavorings that impart to the aerosol exotic or evocative tastes of fruits, candy, desserts or even alcoholic beverages.

3.        The most popular electronic nicotine delivery device among young people[3] is the "disposable" device, which consists of a plastic tank typically filled with a nicotine-containing e-liquid in which a metal coil is immersed. Suction on the device by the user switches on the device battery, heating the metal coil and the e-liquid in which it is immersed to produce a nicotine-infused aerosol inhaled by the user.

4.        Nicotine is among the most addictive substances used by humans, with an ability to addict users comparable to heroin or cocaine.[4]  Nicotine is well-established as the principal driver of traditional cigarette addiction and serves the same role for e-cigarettes. The addictive ability of e-cigarettes is in fact amplified over that of traditional cigarettes by formulating the e-

---

[2] Electronic nicotine delivery devices can be manufactured to resemble conventional cigarettes, cigars, or pipes, pens or even USB flash drives, but most devices presently on the market bear little or no resemblance to traditional cigarettes that use combustible tobacco. E-cigarette devices may be re-fillable when the e-liquid is depleted (like a fountain pen), or may accept e-liquid cartridges or "pods" (like a ball-point pen) or may be non-refillable "disposables," that are discarded after the e-liquid has been consumed. The devices vary in the volume of the e-liquid they contain and are advertised and priced according to the approximate number of "puffs" the device provides.

[3] Maria Cooper et al., *Notes from the Field: E-cigarette Use Among Middle and High School Students — United States, 2022*, 71 Morbidity & Mortality Wkly. Rep. 1283, (2022) , http://dx.doi.org/10.15585/mmwr.mm7140a3

[4] *See e.g.,* U.S. DEP'T OF HEALTH & HUM. SERVS., *The Health Consequences of Nicotine Addiction: A Report of the Surgeon General*, (William R. Lynn et al. eds, 1988) , https://profiles.nlm.nih.gov/101584932X423.

- 2 -

INDEX NO. 451009/2024
RECEIVED NYSCEF: 06/14/2024

liquids with nicotine concentrations far greater than traditional cigarettes. More than 90% of the disposable flavored e-cigarettes recently sold in the United States have nicotine concentrations of 5% or higher, at least 2.5 times the maximum concentration allowed in Canada, the United Kingdom and the European Union.[5]

5. In addition to having higher nicotine concentrations, e-liquid manufacturers now encourage use by intentionally formulating their products to reduce or eliminate the natural harshness of nicotine in a manner that eases inhalation of vapor.

6. The United States Surgeon General has branded "[t]obacco use [a]s a pediatric epidemic."[6] Youth, *i.e.*, those up to approximately 25 years of age, are particularly vulnerable to nicotine addiction, which can harm the developing adolescent brain. Nine out of ten smokers begin by age 18; 80% who begin as teens will smoke into adulthood.[7] The Surgeon General accordingly has warned that the "epidemic of youth e-cigarette use" may condemn a generation to "a lifetime of nicotine addiction and associated health risks."[8]

7. By distributing devices that provide high-concentration, milder nicotine vapors tasting pleasantly of fruit, candy or desserts, flavored e-cigarette manufacturers and distributors have triggered the largest increases in youth nicotine use ever seen.[9]

8. The major manufacturers of flavored e-cigarettes and e-liquids are principally located in Shenzhen, China: Those manufacturers sell and ship their products directly or through

---

[5] Fatma Romeh M Ali et al., *Trends in US E-cigarette Sales and Prices by Nicotine Strength, Overall and by Product and Flavor Type, 2017–2022*, 25 Nicotine & Tobacco Research 1052 (May 2023), https://doi.org/10.1093/ntr/ntac284.

[6] Tobacco Control Act § 2(1), 123 Stat. at 1777.

[7] U.S. Dep't of Health & Hum. Servs., *Preventing Tobacco Use Among Youth and Adults, A Report of the Surgeon General* 1 (2012), https://www.hhs.gov/surgeongeneral/reports-and-publications/tobacco/index.html.

[8] *Surgeon General's Advisory on E-cigarette Use Among Youth*, Center for Disease Control & Prevention (Dec. 2018), https://www.cdc.gov/tobacco/basic_information/e-cigarettes/surgeon-general-advisory.

[9] *Id.*

- 3 -

INDEX NO. 451009/2024
RECEIVED NYSCEF: 06/14/2024

Case 1:24-cv-05161-GHW-JW    Document 1-41    Filed 07/08/24    Page 5 of 53

freight-forwarding agencies to "master distributors" in the United States. E-cigarette manufacturers frequently evade federal import restrictions on flavored nicotine devices through the use of false documentation that misidentifies the product or understates the amount or value of the goods, reducing taxes, duties and fees and evading import prohibitions. Comparing shipment volumes collected by the United States Customs and Border Patrol with the actual volume of flavored e-cigarettes available nationwide establishes that the Chinese manufacturers of flavored e-cigarettes have vastly underreported their United States sales, defrauding the federal government of millions of dollars in import duties.

9.      So-called "master distributors" in the United States have developed close commercial relationships, including ownership interests, with Chinese e-cigarette manufacturers. Master distributors preferentially or exclusively receive imports of e-cigarettes and flavored e-liquids from manufacturers in China and distribute the products to sub-distributors. The master distributors and sub-distributors in turn sell to retailers, both brick-and-mortar and internet-based, which in turn sell e-cigarettes and e-liquids to the consuming public from internet or brick and mortar locations. Master distributors and sub-distributors commonly trade among themselves to establish the varied inventory of the many brands and flavors of e-cigarettes sought by their customers.

10.     This vast distribution system for flavored e-cigarettes exists notwithstanding that none no flavored e-cigarette is legally marketed in the United States. The Federal Food and Drug Administration ("FDA") has not approved for sale in the United States a single flavored e-cigarette or e-liquid. Marketing any flavored e-cigarette in the United States is illegal both under federal law and also under a host of state and local laws, including those of New York State and City.

11.     Relevant to the present action,

        i)      The Prevent All Cigarettes Trafficking ("PACT") Act, 15 U.S.C. § 375 *et*

*seq.,* bars the sale or delivery of flavored e-cigarettes except in face-to-face transactions unless the transaction is with a "lawfully-operating" tobacco businesses. Evidence obtained to date shows most of the present Defendants violate this statute.

ii)     New York Pub. Hlth. L. § 1399-*ll* (1-a), makes it unlawful for any person to deliver flavored e-cigarettes to any person other than a state-licensed vapor business. The Defendants all violate this statute.

iii)     The New York City Administrative Code ("Ad. Code"), § 17-715, makes it unlawful for "any person" to sell, offer for sale, or possess for sale flavored e-cigarettes whether at retail or wholesale. The Defendants all violate this statute.

12.     In addition to the above violations, the Defendants cause, create or contribute to a public nuisance.

### Venue

13.     Venue is proper in this district pursuant to CPLR § 503 because a substantial part of the events and omissions giving rise to the claims occurred in this district.

### Parties

14.     The City is a municipal corporation organized under the laws of the State of New York.

15.     Defendant EnviroMD Group LLC ("EnviroMD") is a limited liability company formed under the laws of the State of New York with a principal place of business at or formerly at 2918 Avenue J, Brooklyn, New York 11210 and/or 1222 Avenue M, Suite 501, Brooklyn, New York 11230.

16.     Defendant GT Imports ("GT Imports") is a corporation formed under the laws of the State of New York with a principal place of business at 3 West Mall, Plainview, New York 11803.

17.     Defendant Kayla Wholesale, Inc., d/b/a The Vapery d/b/a New York Vape King ("Kayla") is a corporation formed under the laws of the State of New York with a principal place

- 5 -

of business at formerly at 132 32nd Street, Brooklyn, New York, 11232. Kayla maintains an internet website at www.newyorkvapeking.com from which it sells flavored e-cigarettes to the public.

18.    Defendant KLCC Wholesale Inc. ("KLCC") is a corporation formed under the laws of the State of New York with a principal place of business at 452 E 99th Street, Brooklyn, New York 11236. KLCC operates an internet website for the sale of flavored e-cigarettes with a web address of https://klcc-wholesale.com.

19.    Defendant MV Trading, LLC ("MV Trading") is a limited liability corporation formed under the laws of the State of New York with a principal place of business at 32-30 62nd Street, Woodside, New York 11377. MV Trading operates an internet website for the sale of flavored e-cigarettes with a web address of https://myvaporstore.com.

20.    Defendant Pioneer Distribution Inc. a/k/a Wevapeusa.com., a/k/a Seller Supreme LLC (collectively, "Pioneer") is a corporation formed under the laws of the State of New York and operated by defendants David Alfih and Marcus Bernard, with a principal place of business at or formerly 1100 Coney Island Avenue, Suite 402, Brooklyn, New York 11230. Pioneer operates an internet website at https://wevapeusa.com from which it makes sales of flavored e-cigarettes to the public

21.    Defendant RZ Smoke Inc. ("RZ Smoke") is a corporation formed under the laws of the State of New York, with a principal place of business at 412 Hillside Avenue, New Hyde Park, New York 11040. RZ Smoke operates an internet website from which offers to sell and sells e-cigarettes at https://www.rzsmoke.com/

22.    Defendant Star Zone Inc. ("Star Zone") is a corporation formed under the laws of the State of New York, with a principal place of business at 3085B New Street, Oceanside, New York 11572. Star Zone operates an internet website for the sale of flavored e-cigarettes with a web address of https://starzoneny.com.

- 6 -

23.     Defendant Urban Smoke Distributors ("Urban Smoke") is a corporation formed under the laws of the State of New York, with a business address of 34-10 58th Street, Woodside, New York 11377.

24.     Defendants Vape More Inc. and More LLC are respectively a corporation formed under the laws of the State of New York (Vape More Inc.), and a limited liability corporation formed under the laws of the State of New York (More LLC) (hereafter referred to collectively as "Vape More") that share a principal place of business at 638 Columbia St Ext., Latham, New York 12110. Vape More operates an internet website for the sale of flavored e-cigarettes with a web address of https://vapemoreinc.com.

25.     Defendant Vape Plus Distribution Corp. a/k/a G&A Distribution ("Vape Plus") is a corporation formed under the laws of the State of New York with a principal place of business at 2578 Atlantic Avenue, Brooklyn, New York 11207. Vape Plus operates an internet website for the sale of flavored e-cigarettes with a web address of https://nyvapeplus.com.

26.     Defendant David Alfih, a/k/a David Alfieh, a/k/a DJ Alfani, is a resident of Brooklyn, NY, residing at 1431 7th St., Brooklyn, NY 11230 or 1479 15th St, Brooklyn, NY 11230 or 1277 14th St Apt 213C, Brooklyn, NY 11230. David Alfih is a principal of Pioneer Distribution, Seller Supreme LLC, and/or wevapeusa.com.

27.     Defendant Marcus Bernard is a resident of the State of New York whose current address is unknown. Marcus Bernard is a principal of Pioneer Distribution, Seller Supreme LLC, and/or wevapeusa.com.

## Background

### The Family Smoking Prevention and Tobacco Control Act

28.     In the Family Smoking Prevention and Tobacco Control Act, 21 U.S.C. 387, *et seq.* ( 2016 ) (the "Tobacco Control Act"), Congress authorized the FDA t o adopt what is known as

- 7 -

the "Deeming Rule," 21 C.F.R. § 1143.1. The rule brought electronic cigarettes within the jurisdiction of the Tobacco Control Act, subject to the FDA's regulatory authority. Electronic cigarettes are regulated under the Tobacco Control Act by the FDA as "tobacco products" because they "contain[] nicotine from any source" and are "intended for human consumption."[10]

29.    The Tobacco Control Act requires tobacco products manufacturers to obtain FDA authorization before marketing any "new" tobacco product – one not on the market as of February 15, 2007 – in the United States. No flavored e-cigarette is known to have been commercially marketed in the United States as of February 15, 2007. Accordingly, all flavored e-cigarettes are "new" tobacco products that must pass through "premarket review" by the FDA to obtain the "premarket authorization" that legalizes the sale of the device in the United States.[11]

30.    The Tobacco Control Act requires premarket authorization to be denied to a new tobacco product unless the FDA finds that marketing the product is "appropriate for the protection of the public health."[12] Consistent with congressional findings that tobacco use by youth "is a pediatric disease of considerable proportions,"[13] an applicant for premarket authorization of an e-cigarette must show a net benefit to the public health by establishing that the benefit from the product's ability to reduce adult use of combustible tobacco exceeds the risk of youth initiation.

31.    Flavored e-cigarettes are deemed to present a sufficiently substantial a risk of youth initiation that the FDA requires strong proof of a marked reduction in adult combustible tobacco use to meet the net benefit standard and no flavored e-cigarette has met that standard to date. The

---

[10] 21 U.S.C. § 321(rr)(1).

[11] *See* 21 U.S.C. § 387j(a)(1)-(2).

[12] 21 U.S.C. § 387j(c)(2), (4).

[13] Tobacco Control Act § 2(1), 123 Stat. at 1777.

Case 1:24-cv-05161-GHW-JW    Document 1-41    Filed 07/08/24    Page 10 of 53

FDA has authorized only tobacco-flavored and unflavored e-cigarettes[14] and has not only not authorized the marketing of any flavored e-cigarette or e-liquid but has affirmatively denied pre-market authorization to proposed flavored e-cigarette and e-liquid brands: dozens of e-cigarette brands have been the subject of FDA Marketing Denial Orders that expressly deny pre-market authorization. All flavored e-cigarettes and e-liquids – including the many dozens of brands at issue in this case – are marketed unlawfully.

32.     A new tobacco product without premarket authorization is an "adulterated product," 21 U.S.C. § 387(b), prohibited by the Tobacco Control Act from "introduction or delivery for introduction into interstate commerce. . ." 21 U.S.C. 331(a). The marketing and sale of any e-cigarettes without premarket authorization is a *per se* violation of 21 U.S.C. § 331(a). The FDA's website states: "Tobacco products covered under an [marketing denial order] cannot be legally introduced into interstate commerce in the U.S. without risking FDA enforcement."[15]

### Use of Flavored E-Cigarettes By Young Persons

33.     The primary driver of the vaping epidemic among young people is "youth appeal and youth access to flavored tobacco products."[16] The long-standing yearly decline in youth smoking underwent a dramatic reversal in 2018, when it was found that more than one in four U.S. high school students reported use of a tobacco product in the past thirty days. The National

---

[14] *See Premarket Tobacco Product Marketing Granted Orders*, U.S. Food & Drug Admin., https://www.fda.gov/tobacco-products/premarket-tobacco-product-applications/premarket-tobacco-product-marketing-granted-orders ("To date, the FDA has authorized marketing of 45 products, including 23 tobacco-flavored e-cigarette products and devices.") (last visited Mar. 21, 2024).

[15] *See Tobacco Products Marketing Orders*, U.S. Food & Drug Admin., https://www.fda.gov/tobacco-products/market-and-distribute-tobacco-product/tobacco-products-marketing-orders#:~:text=Tobacco%20products%20covered%20under%20an,compliance%20by%20distributors%20and%20retailers (last visited Mar. 21, 2024).

[16] *Id.*; "[E-cigarettes] have rapidly become popular—especially among young people, who have overwhelmingly adopted flavored products as their tobacco products of choice." *Magellan Tech., Inc. v. United States FDA*, No. 21-2426, 2023 U.S. App. LEXIS 15016, at *3 (2d Cir. June 16, 2023).

- 9 -

Adolescent Drug Trends Report issued by the University of Michigan on December 28, 2018, reported increases in adolescent e-cigarette use from 2017 to 2018 that were the "largest ever recorded in the past 43 years for any adolescent substance use outcome in the U.S."[17] The percentage of 12th grade students reporting nicotine use nearly doubled between 2017 and 2018, with a 78% surge in the number of youth using electronic nicotine delivery devices, an increase "twice as large as the previous record for the largest-ever increase among 12th graders."[18] E-cigarette use by middle school students surged by 48%.

34.     By 2018, approximately 3.6 million middle and high school students used e-cigarettes regularly, with approximately 20% of 12th graders reporting e-cigarette use in the 30-day sample period.[19] By late 2019, 5 million students reported active use of electronic nicotine delivery devices, with 27.5% of high school students and 10.5% of middle school students having used the devices within the thirty-day sample period.[20]

35.     By 2020, two of the largest surveys of youth tobacco use conducted in 2019 found that e-cigarette use had reached the highest levels ever recorded,[21] and that consumption of e-cigarettes had doubled among middle and high school students.[22] In 2019, the total number of

---

[17] *National Adolescent Drug Trends in 2018*, Univ. of Mich. Inst. for Social Research (Dec. 17, 2018), https://monitoringthefuture.org/wp-content/uploads/2021/02/18drugpr.pdf.

[18] *News Release, Teens Using Vaping Devices in Record Numbers*, Nat'l Insts. of Health (Dec. 17, 2018), https://www nih.gov/news-events/news-releases/teens-using-vaping-devices-record-numbers.

[19] *See* Jan Hoffman, *Addicted to Vaped Nicotine, Teenagers Have No Clear Path to Quitting*, N.Y. Times (Dec. 18, 2018), https://www.nytimes.com/2018/12/18/health/vaping-nicotine-teenagers.html.

[20] *National Youth Tobacco Survey*, U.S. Food & Drug Admin. (2019), https://www.fda.gov/tobacco-products/youth-andtobacco/ youth-tobacco-use-results-national-youth-tobacco-survey; Karen A. Cullen et al., *e-Cigarette Use Among Youth in the United States, 2019*, 322 JAMA 2095 (2019), https://jamanetwork.com/journals/jama/fullarticle/2755265.

[21] *Enforcement Priorities for Electronic Nicotine Delivery Systems (ENDS) and Other Deemed Products on the Market Without Premarket Authorization*, U.S. Food & Drug Admin. (Jan. 2020), https://www.fda.gov/media/133880/download.

[22] Karen A. Cullen et al., *E-cigarette Use Among Youth in the United States, 2019*, 322 JAMA 2095 (2019), https://jamanetwork.com/journals/jama/fullarticle/2755265.

- 10 -

Case 1:24-cv-05161-GHW-JW    Document 1-41    Filed 07/08/24    Page 12 of 53

middle and high school students reporting current use of e-cigarettes surpassed five million for the first time in history.[23]

36.     Consistent with the national trend, youth e-cigarette consumption rates in New York City schools are higher than rates of combustible tobacco use. In 2021, 11% of NYC public high school students reported using an e-cigarette in the past month, while only 3% reported smoking cigarettes. In 2018, 6.7% of public middle school students surveyed reported current use of electronic vapor products; only 0.9% reported currently smoking traditional cigarettes.

37.     The substantial increase in youth smoking in the space of only one year[24] is remarkable because it occurred without an increase in the consumption of combustible tobacco products such as cigarettes or cigars. The increase in youth smoking was manifest only as an increase in e-cigarette use, which increased by 78% in one year[21] at the same time that the use of all other tobacco products continued its decades-long decline.[25]

38.     While the numbers of users remains unacceptable, by October 2022, there was some reduction in e-cigarette use by school-age youth. The FDA and CDC released federal data from the 2022 National Youth Tobacco Survey showing that about one in ten – or more than 2.5 million – U.S. middle and high school students had used e-cigarettes in the past 30-day sample period, specifically 14.1% (2.14 million) of high school students and 3.3% (380,000) of middle school students reported current e-cigarette use, a decline from earlier surveys.

39.     More than a quarter (27.6%) of the youth e-cigarette users in the 2022 Survey used

---

[23] *Id.*

[24] *Progress Erased: Youth Tobacco Use Increased During 2017-2018*, Ctrs. for Disease Control & Prevention (Feb. 11, 2019), https://www.cdc.gov/media/releases/2019/p0211-youth-tobacco-use-increased.html.

[25] Scott Gottlieb, *Statement from FDA Commissioner Scott Gottlieb, M.D., on proposed new steps to protect youth by preventing access to flavored tobacco products and banning menthol in cigarettes*, U.S. Food & Drug Admin. (Nov. 15, 2018), https://www.Fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-proposed new-steps-protect-youth-preventing-access.

- 11 -

an e-cigarette product every day, and more than 40% reported use in at least 20 of the last 30 days. Flavored e-cigarette were the most commonly used product – 55.3% reported smoking flavored devices. In 2018, 6.7% of public middle school students surveyed reported they were current users of e-cigarettes, while only 0.9% reported currently smoking cigarettes.[26]

40.    The Surgeon General has explained that nicotine in e-cigarettes affects the developing brain and produces addiction in youth more easily than in adults as a result of the enhanced learning abilities of the developing brain.[27] The effects of nicotine exposure on the brain of youth and young adults include nicotine addiction itself, as well as "priming" for use of other addictive substances, impaired impulse control, deficits in attention and cognition and mood disorders.[28] As a highly addictive, psychoactive substance that affects brain areas involved in emotional and cognitive processing nicotine poses a particularly potent threat to the adolescent brain, "derang[ing] the normal course of brain maturation and hav[ing] lasting consequences for cognitive ability, mental health, and even personality."[29]

41.    In the summer of 2019, hundreds of otherwise healthy young adults began to appear in emergency rooms nationwide with dangerous respiratory damage. As of October 1, 2019, 1,080 lung injury cases associated with cannabis and nicotine e-cigarette products had been reported to the CDC. Eighteen deaths from 15 states were confirmed. By December 2019, more than 2,500 reported cases of e-cigarette-related hospitalizations for lung injury were reported, including more

---

[26]    *2021 Youth Risk Behavior Survey*, Ctrs. For Disease Control & Prevention (2021), https://www.cdc.gov/healthyyouth/data/yrbs/results.-htm.

[27] U.S. Surgeon General and Ctrs. For Disease Control & Prevention, Office on Smoking and Health, *Know the Risks: E-Cigarettes and Young People* (2019), https://ecigarettes.Surgeongeneral.gov/.

[28]    Menglu Yuan et al., *Nicotine and the Adolescent Brain*, 593 J. Physiology 3397 (2015), www.ncbi.nlm.nih.gov/pmc/articles/PMC4560573/.

[29] Natalia A. Goriounova & Huibert D. Mansvelder, *Short- and Long-Term Consequences of Nicotine Exposure During Adolescence for Prefrontal Cortex Neuronal Network Function*, 2 Cold Spring Harbor Persp. Med. 12 (2012), https://www ncbi.nlm.nih.gov/pmc/articles/PMC3543069/.

than fifty confirmed deaths.[30] New York City alone experienced 50 cases of e-cigarette lung injury and four confirmed deaths. Cases continue nationwide and in New York City.

42.     E-cigarettes present hazards even to presumed non-vapers. According to the CDC, between April 1, 2022 and March 31, 2023, 7,043 e-cigarette exposure cases were reported to the National Poison Data System, which compiles cases that have been reported to U.S. poison centers. The data showed a 32% increase in reported poisoning from e-liquid ingestion during this period, with nearly 90% of the cases in children less than five years old. The most reported brand involved was Elf Bar, a disposable e-cigarette available in a variety of flavors and sold by all or most of the present Defendants.[31]

43.     The explosive increase in the use of electronic nicotine delivery devices among youth is believed attributable to the devices' high nicotine content, youth-friendly candy, fruit and dessert flavors, and amenability for surreptitious use, *i.e.*, the ability to use the devices "discreetly." Nearly 85% of current e-cigarette users used flavored e-cigarettes, with fruit flavors being the most popular, followed by candy, desserts, or other sweets. Flavored e-liquids multiply the risk of nicotine addiction by simplifying the process of ingesting nicotine in forms expressly formulated to be more palatable to novice smokers both through taste and by the chemical reduction of the harshness of nicotine.[32]

---

[30] Karen A. Cullen et al., *E-cigarette Use Among Youth in the United States, 2019*, 322 JAMA 2095 (2019), https://jamanetwork.com/journals/jama/fullarticle/2755265.

[31] Nicole A. Tashakkori et al., *Notes from the Field: E-Cigarette–Associated Cases Reported to Poison Centers — United States, April 1, 2022–March 31, 2023*. 72 Morbidity & Mortality Wkly. Rep. 694 (2023), http://dx.doi.org/10.15585/mmwr.mm7225a5.

[29] *See* Bridget K. Ambrose et al., *Flavored Tobacco Product Use Among US Youth Aged 12-17 Years, 2013-2014*, 314 JAMA1871 (2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6467270/.

[32] *See* U.S. Dep't of Health & Human Servs., How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease: A Report of the Surgeon General Ch. 4 (Ctrs. for Disease Control & Prevention ed. 2010), https://www.ncbi.nlm.nih.gov/books/NBK53018/#ch4.s92.

- 13 -

Case 1:24-cv-05161-GHW-JW    Document 1-41    Filed 07/08/24    Page 15 of 53

44.    E-cigarettes are adopted at a higher rate by youth when the devices contain flavored e-liquids. Adolescents whose first tobacco product was flavored are more likely to continue using tobacco products than those whose first product was not flavored. Flavored e-liquids were used by 81% of first-time users aged twelve to seventeen who had ever used electronic nicotine delivery devices; 85.3% of current youth users had used a flavored e-liquid in the past month; 81.5% of current youth users said they used electronic nicotine delivery devices "because they come in flavors I like."[33, 34] Adolescents whose first tobacco product was flavored are more likely to continue using tobacco products than those whose first product was not flavored; thus, young adults who use electronic cigarettes are more than four times as likely to begin using regular cigarettes when compared with peers who have not used flavored e-cigarettes.[35]

45.    Marketing e-cigarettes to youth is propelled not only by flavoring nicotine solutions, but also by packaging the devices with images of popular cartoon characters to enhance the appeal to youth. Some devices look so much like childrens' toys as to require the cautionary package warning that in fact the device is "Not a Toy."

**Flavor Bans**

46.    The effects of e-cigarettes on youth compelled the FDA effectively to ban flavored cigarettes (other than menthol) in 2009 pursuant to its authority under the Tobacco Control Act. "Flavored cigarettes attract and allure kids into addiction," Health and Human Services Assistant Secretary Howard Koh, MD, MPH, said at a news conference announcing the ban.[36] In January

---

[33] *See* Bridget K. Ambrose et al., *Flavored Tobacco Product Use Among US Youth Aged 12-17 Years, 2013-2014*, 314 JAMA 1871 (2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6467270/.

[34] Karma McKelvey et al., *Adolescents and Young Adults Use in Perceptions of Pod-based Electronic Cigarettes*. 1 JAMA Network Open e183535 (2018), https://doi:10.1001/jamanetworkopen.2018.3535.

[35] *See* Brian A. Primack, et al., *Initiation of Traditional Cigarette Smoking after Electronic Cigarette Use Among Tobacco-Naïve US Young Adults*, 131 Am. J. Med.. 443.e1 (2018), https://pubmed.ncbi.nlm.nih.gov/29242110/.
[36] Daniel J. DeNoon, *FDA Bans Flavored Cigarettes: Ban Includes Cigarettes With Clove, Candy, and Fruit Flavors*,

- 14 -

Case 1:24-cv-05161-GHW-JW    Document 1-41    Filed 07/08/24    Page 16 of 53

2020, in response to "epidemic levels of youth use of e-cigarettes" the FDA banned flavored e-cigarette "pods"[37] (other than "tobacco" and "menthol" flavors), announcing a policy to prioritize enforcement against unauthorized flavored vape products, because the products are "so appealing to children."[38]

47.     The federal flavor ban was followed by a New York State ban on retail sales of devices using flavored nicotine e-liquids.[39] Comparable legislation in California, Massachusetts, New Jersey, Rhode Island, Maine, Oregon, South Dakota, Utah, and Vermont has banned sales of any e-cigarettes, flavored or not, over the internet.[40] A total of 378 jurisdictions – including Chicago, Illinois, Los Angeles, San Diego, Sacramento, Oakland, and San Jose, California, Boulder, Colorado, and Newark, New Jersey – have imposed some form of restriction on flavored e-cigarette sales.

48.     New York City has enacted a complete ban on wholesale and retail sales of flavored vapes, whether over the internet or from brick-and-mortar locations.

**Enforcement Efforts**

49.     FDA warning letters are an enforcement mechanism indicating that the FDA considers the particular product or type of product named in letter to be an FDA-regulated tobacco product, or that there is a compliance issue with a company's conduct or product, or that the product appears to be an unauthorized new tobacco product. As of January 31, 2023, the FDA has issued

---

WebMD (Sept. 22, 2009), https://www.webmd.com/smoking-cessation/news/20090922/fda-bansflavored- cigarettes#2.

[37] "Pods" are cartridges pre-filled with an e-liquid that can be inserted to refill a non-disposable e-cigarette much like with refilling a ball-point pen.

[38] *FDA Finalizes Enforcement Policy on Unauthorized Flavored Cartridge-Based Ecigarettes that Appeal to Children, Including Mint*, U.S. Food & Drug Admin. (Jan. 22, 2020), https://www.fda.gov/news-events/pressannouncements/fda-finalizes-enforcement-policy-unauthorized-flavored-cartridge-based-e-cigarettes- appealchildren.

[39] *See* PHL §1399-mm-(1).

[40] Fatma Romeh M. Ali et al., *E-cigarette Unit Sales by Product and Flavor Type, and Top-Selling Brands, United States, 2020–2022*, 72 Morbidity & Mortality Wkly. Rep. 672 (2023), DOI:http://dx.doi.org/10.15585/mmwr.mm7225a1.

over 75 warning letters to manufacturers and 585 warning letters to retailers for selling electronic nicotine delivery systems illegally, warning that persons manufacturing and distributing unauthorized vapor products risk injunctive and/or equitable relief, civil penalties, and damages.

50.     On or about May 13, 2023, the FDA issued an import or "Red List" alert authorizing U.S. Customs and Border Protection ("CBP") to seize without inspection particular brands of e-cigarettes lacking the required marketing authorization, and which are thus "adulterated" and illegal under the Federal Food, Drug and Cosmetic Act. The FDA's Red List targeted e-cigarettes from more than 20 Chinese, Korean and U.S. companies and authorized CBP to "detain, without physical examination, the tobacco products identified on the Red List of this Import Alert," including cigarettes … or any of … component parts [of a cigarette] that contain, as a constituent or additive, an artificial or natural flavor (other than tobacco or menthol)."[41]

51.     On May 31, 2023, the FDA issued warning letters to an additional 30 retailers and a distributor for illegally selling various brands of e-cigarettes, including the very popular Puff Bar, Esco Bar, and Hyde brand e-cigarettes,[42] which are among the most commonly reported brands used by youth e-cigarette users in the 2022 survey. These brands have been or are currently available for sale by all of the Defendants.

**Actions of the Defendants**

**EnviroMD Group LLC**

52.     EnviroMD Group LLC ("EnviroMD") is a New York limited liability company with a principal place of business formerly at 2918 Avenue J, Brooklyn, New York 11210 and/or 1222 Avenue M, Suite 501, Brooklyn, New York 11230.

---

[41] *Import Alert 98-01*, U.S. Food & Drug Admin. (Mar. 13, 2023), https://www.accessdata.fda.gov/cms_ia/importalert_501.html.

[42] *FDA Conducts Retailer Inspection Blitz, Cracks Down on Illegal Sales of Popular Disposable E-cigarettes*, U.S. Food & Drug Admin. (May 31, 2023), www.fda.gov/news-events/press-announcements/fda-conducts-retailer-inspection-blitz-cracks-down-illegal-sales-popular-disposable-e-cigarettes..

53.     Between approximately September 2022 and August 2023, EnviroMD sold thousands of flavored e-cigarettes to Brooklyn convenience store Star Vape Corp., 283 67th Street, Brooklyn, New York ("Star Vape"), including Myle Meta Bar brand e-cigarettes in flavors such as Iced Apple, Strawberry Colada, Mellow Mint and Lemon Ice, and Fume brand e-cigarettes in flavors such as grape, mango, melon ice, and cotton candy.

54.     Each separate brand and flavor combination was invoiced as a "Box of 10," or less frequently as a "Box of 5," each in a different "Quantity" ranging from 0 to 100, with 40 to 60 being the most common quantity. A "Rate" was listed next to the "Quantity." Multiplying the "Rate" by the "Quantity" yielded a final column labeled "Amount," expressed in dollars. A typical EnviroMD invoice billing Star Vape for the sum of those amounts varied from $10,000 to $40,000.

55.     A typical EnviroMD invoice to Star Vape Corp is shown in Exhibit 1.



Exhibit 1 – EnviroMD Sales to Star Vape

56.     The PACT Act requires EnviroMD to identify itself to the Attorney General of the United States, the New York State Department of Taxation and Finance, and the New York City Department of Finance as engaged in commerce with e-cigarettes and to file with each of those authorities, and the New York State Attorney General and New York City Corporation Counsel,

- 17 -

monthly reports detailing its e-cigarette shipments, including *inter alia* to whom the shipments were made and the brands and quantities delivered. 15 U.S.C § 376. Environ MD has failed to file such reports with New York City.

57.     On information and belief, EnviroMD received the orders from Star Vape for the flavored cigarettes described paragraph 53 and documented in Exhibit 1 above via the internet, telephone or mail order and EnviroMD and Star Vape were accordingly not in one another's physical presence when the orders of those e-cigarettes were placed or delivered and/or the e-cigarettes were delivered to EnviroMD by a method of remote delivery. EnviroMD's transactions with Star Vape were delivery sales as that term is defined under the PACT Act.

58.     At the time of the above deliveries, Star Vape sold, offered for sale, and/or possessed flavored e-cigarettes in New York City. Accordingly, Star Vape was not a lawfully operating tobacco business and was a "consumer" receiving "delivery sales" as those terms are defined under the PACT Act.

59.     As relevant here, New York Public Health Law limits deliveries of e-cigarettes to licensed or registered agents, defined as persons whose names appear on a list of licensed or registered agents of vapor product dealers published by the New York State Department of Taxation and Finance, or persons licensed or registered as an agent or dealer under article twenty eight-C of the tax law, hereafter referred to "Licensed Dealers." *See* Pub. Hlth. L. § 1399-*ll* (1-a). On information and belief, EnviroMD ships or causes to be shipped vapor products to persons that are not Licensed Dealers.

**GT Imports**

60.     According to its website, https://gtimportswholesale.com, GT Imports is "an authorized wholesale vape distributor of thousands of e-liquids and vaping devices based in New York" with a principal at place of business at 23 West Mall, Plainview, New York 11803.

- 18 -

61.     Document provided to the City by GT Imports show that between September 8, 2022 and August 21, 2023, GT Imports delivered unspecified brands of flavored e-cigarettes containing 5% nicotine solutions with a total apparent value of $1,063,657 to various buyers located in the City of New York.

62.     GT Imports delivered 5% nicotine solutions of "Jungle Juice," "Pineapple Shake," "Kiwi Shake," "Iced Watermelon" and "Mixed Berries" to Topoo Industries, 2847 W 21st Street, Brooklyn, New York. Topoo Industries maintains a large one-story warehouse at that location and appears to sell a variety of e-cigarettes, including flavored vapes and e-cigarette-related products from that warehouse and over the internet from its website at https://topoodistro.com. Topoo's website notes "Wholesale Only" and "Minimum order $1000" and describes Topoo as a wholesale distributor for smoke shops, grocery stores, jewelry shops, gas stations, supermarkets, and other stores providing "a wide range of wholesale products for retailers."[43]

63.     GT Imports also delivered what appears to be the same flavored 5% nicotine solutions of unspecified brands or brand of flavored e-cigarettes to "Jimmy," 1370 Ralph Avenue, Brooklyn, to R and B Wholesale, 1002 Atlantic Avenue, Brooklyn, New York, to Sahara Wholesale, 182-20 Liberty Avenue, Jamaica, Queens, and to EZ Wholesale, 2787 Third Avenue, Bronx, New York.

64.     Topoo Industries, "Jimmy," R and B Wholesale, Sahara Wholesale and EZ Wholesale are all on information and belief sub-distributors located in New York City that engage in further distribution of flavored vapes to other retail or wholesale e-cigarette sellers in New York City. R and B Wholesale expressly advertises itself as a smoke and vape distributor.

65.     The PACT Act requires GT Imports to identify itself to the Attorney General of the

---

[43] https://topoodistro.com/about-us/ (last visited Mar. 9, 2024).

- 19 -

United States, the New York State Department of Taxation and Finance, and the New York City Department of Finance as engaged in commerce with e-cigarettes and to file with each of those authorities, and the New York State Attorney General and New York City Corporation Counsel, monthly reports detailing its e-cigarette shipments, including *inter alia* to whom the shipments were made and the brands and quantities delivered. 15 U.S.C § 376. GT Imports has failed to file such reports with New York City.

66.     On information and belief, GT Imports received orders from and made sales to Topoo Industries, "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale for the above-described flavored e-cigarettes via the internet, by telephone. or mail order. On information and belief, GT Imports and, respectively, Topoo Industries, "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale were not in one another's physical presence when the above orders of e-cigarettes were placed or delivered and/or the e-cigarettes were delivered to those purchasers by remote delivery. GT Imports to "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale were delivery sales as that term is defined under the PACT Act.

67.     At the time of the above deliveries, Topoo Industries, "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale sold, offered for sale, and/or possessed flavored e-cigarettes" in New York City in violation, *inter alia*, of New York City Administrative Code ("Ad. Code") § 17-715. Accordingly "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale were not lawfully operating tobacco businesses and were "consumers" receiving "delivery sales" as those terms are defined under the PACT Act.

68.     On information and belief, Topoo Industries, "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale are not Licensed Dealers. On information and belief, GT Imports ships or causes to be shipped vapor products to persons that are not Licensed Dealers.

- 20 -

Case 1:24-cv-05161-GHW-JW    Document 1-41    Filed 07/08/24    Page 22 of 53

**Kayla Wholesale, Inc.**

69.     Kayla has or had a physical address of 132 32nd Street, Brooklyn, New York, 11232. Kayla also maintains website at www.newyorkvapeking.com from which it sells flavored e-cigarettes, including Bliss Bar, Myle and Fume brands, under the trade name "The Vapery, New York." According to the Vapery website, the company has been selling vaping products for 12 years, with the goal of creating "a thriving vaping community where enthusiasts of all levels can find the latest products," from the company's "diverse range of vaping solutions."[44] Kayla purchases flavored e-cigarettes which have been delivered to, possessed at and sold from Kayla's warehouse.

70.     Between August 2020 and November 2020, Kayla supplied Star Vape with large quantities of flavored e-cigarettes branded as "STIG mango," and "STIG Lush Ice," with the latter identified as being shipped as "10 packs." STIG is a disposable e-cigarette available in flavors such as Iced Purple Bomb, Crisp Apple and Summer Strawberry.

71.     A typical invoice from Kayla to Star Vape Corp is shown in Exhibit 2 below.



**Exhibit 2 – Kayla Sales to Star Vape**

---

[44] https://www.newyorkvapeking.com/pages/about-us (last visited Mar. 21, 2024).

Case 1:24-cv-05161-GHW-JW    Document 1-41    Filed 07/08/24    Page 23 of 53

72.     Through its website, Kayla also sells retail quantities of flavored e-cigarettes to consumers in New York City and elsewhere. From June 2019 until June 2024, as documented by an internet tracking service, thousands of prospective e-cigarette purchasers accessed the www.newyorkvapeking.com website where flavored e-cigarettes were offered for sale and possessed with intent to sell or offer for sale in the City.[45]  The www.newyorkvapeking.com website appears to have been shut-down at or around the time this action was filed.

73.     On March 11, 2024, a City agent placed an order for a Watermelon Candy flavored Puff Bar XXL 1600 at the www.newyorkvapeking.com website to be shipped to an address in Brooklyn, New York, for a total purchase price of $17.63:  $10.99 for the device, $6.64 for shipping, and $1.42 in taxes.

74.     Shortly after placing the order, the agent received an email from "NYVK Wholesale" "confirming the purchase of a watermelon candy Puff XXL 1600 e-cigarette."

75.     On or about March 15, 2024, the watermelon candy Puff XXL 1600 e-cigarette order was delivered by the United States Postal Service ("USPS") to a residential address in Brooklyn, New York. The package contained two Puff XXL devices, although only one had been ordered. The return address on the package was NYVK Wholesale, 132 32nd Street, Brooklyn, New York, 11232.

76.     The package was not affixed with a statement that it contained vapor products in violation of NY Pub. Hlth. L. 1399-*ll* (3).

77.     The package was left in the mailbox – no adult signature was required, in violation of the PACT Act.

78.     On or about March 15, 2023, a City agent placed an order for a Crisp Apple STIG disposable e-cigarette in a 3-pack to be shipped to an address in Brooklyn, New York, for a total

---

[45] These were "organic" clicks, a term used to indicate users accessing a website directly, by contrast to access to a website that is a result of redirection from another internet site.  Tracking organic clicks alone underestimates the number of persons accessing a website.

purchase price of $26.63: $19.99 for the device and $6.64 for shipping. Tax was not charged.

79.     On or about March 23, 2024, the Crisp Apple Stig e-cigarette ordered was delivered by USPS to a residential address in Brooklyn, New York. The return address on the package was NYVK Wholesale, 132 32nd Street, Brooklyn, New York 11232.

80.     The package was not affixed with a statement that it contained vapor products in violation of NY Pub. Hlth. L. 1399-*ll* (3).

81.     The package was left in the mailbox – no adult signature was required, in violation of the PACT Act.

82.     The PACT Act requires Kayla to identify itself to the Attorney General of the United States, the New York State Department of Taxation and Finance, and the New York City Department of Finance as engaged in commerce with e-cigarettes and to file with each of those authorities, and the New York State Attorney General and New York City Corporation Counsel, monthly reports detailing its e-cigarette shipments, including *inter alia* to whom the shipments were made and the brands and quantities delivered. 15 U.S.C § 376. Kayla has failed to file such reports with New York City.

83.     On information and belief, Kayla received orders from and made sales both to Star Vape for the above-described flavored e-cigarettes and to the City agent via the internet, telephone or through the mail.

84.     At the time of the above deliveries, Star Vape "sold, offered for sale, and/or possessed" flavored e-cigarettes in New York City in violation of Ad. Code § 17-715. Accordingly, Star Vape was not a lawfully operating tobacco business and was hence a "consumer" receiving "delivery sales" as those terms are defined by the PACT Act. The City agent was not a tobacco business at all and was hence a consumer receiving delivery sales as defined under the PACT Act.

85.     The City agent was not a Licensed Dealer and hence shipments to him were

- 23 -

prohibited by NY Pub. Hlth. L. 1399-*ll* (1-a).

86.      On information and belief, Kayla a/k/a the Vapery a/k/a newyorkvapeking.com ships or causes to be shipped vapor products to numerous persons that place orders on its internet site and are not Licensed Dealers.

<b>KLCC Wholesale</b>

87.      KLCC Wholesale has a principal place of business at 452 E. 99th Street, Brooklyn, New York 11236.  KLCC has purchased hundreds of flavored disposable e-cigarettes from out-of-state distributors, including such brands as Breeze Bars, Hyde, Smok, Voopoo and Stiizy presumptively for sale to wholesalers and retailers in the City.

88.      The quantity of e-cigarettes purchased by KLCC is inconsistent with possessing those e-cigarettes for personal use by KLCC.  On information and belief, KLCC sells those e-cigarettes to retailers, other distributors and/or individuals in the City.

89.      Ad. Code § 17-715 makes it unlawful to offer e-cigarettes for sale in the City and bars possession of e-cigarettes in the City with intent to sell or offer to sell. KLCC operates an internet website with a web address of https://klcc-wholesale.com that offers to sell of flavored e-cigarettes.  Accordingly, KLCC offers to sell and possesses with intent to sell or with intent to offer to sell flavored e-cigarettes in New York City in violation of Ad. Code § 17-715.

90.      The PACT Act requires KLCC to identify itself to the Attorney General of the United States, the New York State Department of Taxation and Finance, and the New York City Department of Finance as engaged in commerce with e-cigarettes and to file with each of those authorities, and the New York State Attorney General and New York City Corporation Counsel, monthly reports detailing its e-cigarette shipments, including *inter alia* to whom the shipments were made and the brands and quantities delivered.  15 U.S.C § 376.  KLCC has failed to file such reports with New York City.

- 24 -

### MV Trading LLC a/k/a Myvaporstore

91.     MV Trading LLC a/k/a Myvaporstore ("MV Trading") is a limited liability corporation formed under the laws of the State of New York with a principal place of business at 32-30 62nd Street, Woodside, New York. MV Trading operates a website at https://www.myvaporstore.com, advertising itself as the electronic cigarette super store.

92.     MV Trading has made multiple purchases of flavored e-cigarettes from YLSN, an Arizona company. Specifically, MV Trading purchased approximately 7200 Elf Bar, Lost Mary and Voopoo Drag Bar e-cigarettes on or about February 2023, approximately 10,400 Elf Bar and Novobar e-cigarettes on or about December 2022, approximately 8000 units of Elf Bar, Geek Bar, and Lost Mary e-cigarettes on or about October 2022, 2600 units of Elf Bar BC 5000 e-cigarettes on or about November 2022, and approximately 1,950 Geek Bar, Biff Bar and Lykan Belo e-cigarettes on or about August 2022, all in various flavors.

93.     In April 2021, MV Trading purchased approximately 15,000 flavored e-cigarettes from Charlie's Chalk Dust, LLC, located in Costa Mesa, California, a manufacturer or distributor of flavored e-liquids such as Mint Meringue, Big Berry, and Mustache Milk flavored e-liquids.

94.     All of the above-listed e-cigarettes were necessarily possessed, offered for sale and possessed with intent to offer for sale in the City and on information and belief many if not all of the e-cigarettes were sold by MV Trading to others in the City.

95.     Ad. Code § 17-715 makes it unlawful to offer e-cigarettes for sale and bars possession of e-cigarettes with intent to sell or offer to sell. MV Trading operates an internet website that offers to sell of flavored e-cigarettes with a web address of https://www.myvaporstore.com Accordingly, MV Trading offers to sell cigarettes in New York City in violation of Ad. Code § 17-715 and possesses e-cigarettes with an intent to sell them or offer to sell them also in violation of Ad. Code § § 17-715 .

- 25 -

96.     The PACT Act requires MV Trading to identify itself to the Attorney General of the United States, the New York State Department of Taxation and Finance, and the New York City Department of Finance as engaged in commerce with e-cigarettes and to file with each of those authorities, and the New York State Attorney General and New York City Corporation Counsel, monthly reports detailing its e-cigarette shipments, including *inter alia* to whom the shipments were made and the brands and quantities delivered.  15 U.S.C § 376.  MV Trading has failed to file such reports with New York City.

97.     On information and belief, MV Trading received orders from and made sales to others in the City for the above-described flavored e-cigarettes via the internet, telephone or mail order. On information and belief, MV Trading and the purchasers of the above-described flavored e-cigarettes were not in one another's physical presence when the above orders of e-cigarettes were placed or delivered and/or the e-cigarettes were delivered to the purchasers by a method of remote delivery and the deliveries were delivery sales as that term is defined by the PACT Act.

98.     At the time of the above deliveries by MV Trading, the purchasers of e-cigarettes from MV Trading "sold, offered for sale, and/or possessed flavored e-cigarettes" in New York City and were thus not lawfully operating tobacco businesses and were accordingly "consumers" receiving "delivery sales" from MV Trading as those terms are defined under the PACT Act.

99.     On information and belief, the purchasers of e-cigarettes from MV Trading were not Licensed Dealers.

100.    On information and belief, MV Trading ships or causes to be shipped vapor products to persons that are not Licensed Dealers in violation of NY Pub. Hlth. L. 1399-*ll* (1-a).

**Pioneer Distribution a/k/a Wevapeusa.com a/k/a Seller Supreme LLC, Alfih and Bernard**

101.    Pioneer Distribution Inc. ("Pioneer") is a New York corporation with a principal place of business at or formerly at 1100 Coney Island Avenue, Suite 402, and/or 1090 Coney Island

- 26 -

Case 1:24-cv-05161-GHW-JW    Document 1-41    Filed 07/08/24    Page 28 of 53

Avenue, Brooklyn, New York 11230. Pioneer operates a website at www.wevapeusa.com advertising dozens of brands of disposable flavored e-cigarettes, each offered in dozens of flavors.[46]

102.    Pioneer, wevapeusa.com, and Seller Supreme LLC on information and belief are owned and operated in whole or in part by David Alfih and Marcus Bernard.

103.    In June 2023, Pioneer purchased 2,400 units of EB Design 5000 (formerly Elf Bar) flavored e-cigarettes from Arizona-based YLSN. All of these e-cigarettes were necessarily possessed, offered for sale and possessed to offer for sale in the City and on information and belief actually sold in the City.

104.    Through its website, www.wevapeusa.com, Pioneer sells retail quantities of flavored e-cigarettes to consumers in New York City and elsewhere. From June 2023 and continuing to the present, as documented by an internet tracking service, thousands of prospective e-cigarette purchasers accessed the www.wevapeusa.com website where flavored e-cigarettes were offered for sale and possessed with intent to sell or offer for sale in the City.[47]  The www.wevapeusa.com website continues to operate despite the knowledge of  Pioneer, David Alfih and Marcus Bernard gained through this action that sales from the website are illegal.

105.    On or about March 11, 2024, an investigator accessed the website address

---

[46] For example, the Elf Bar BC 5000 rechargeable disposable vape device (5000 puffs) is available in flavors such as Beach Day, Berry Mix, Black Ice, Black Winter, Blueberry Pom Ice, Blue Razz Ice, Blue Razz Lemon, Blueberry Energize, Blueberry Tobacco, Brown Tobacco, Cherry Lemon Mint, Clear, Coffee Tobacco, Cranberry Grape, Cranberry Punch, Crazi Berry, Cuba Cigar, Energy, Frozen Creamsicle, Fuji Ice, Grape Energy, Gumi, Honeydew Pineapple Orange, Kiwi Passionfruit Guava, Lemon Mint, Malibu, Mandarin Lime, Mango Peach, Mango Peach Apricot, Miami Mint, Mint Tobacco, Mixed Fruity, Nut Tobacco, Orange Pear Nector, Passionfruit Orange Guava, Peach Berry, Peach Ice, Peach Mango Watermelon, Pineapple Coconut Ice, Pineapple Orange Mint, Pineapple Strawnana, Rainbow Candy, Rainbow Clouds, Red Mojito, Sakura Grape, Snoow Grape, Snoow Ice, Sour Apple, Sour Candy, Strawberry Banana, Strawberry Cream, Strawberry Ice, Strawberry Kiwi, Strawberry Mango, Strawberry Passion Fruit Duo Ice, Strawberry Pear Orange Ice, Strawberry Pina Colada, Strawberry Rasberry Cherry ice, Strawberry Tobacco, Strawberry Watermelon, Strawlemon Ice, Strazz, Summertime, Sunset, Sweet Menthol, Triple Berry Ice, Tropical Rainbow Blast, Watermelon Brzz Ice, Watermelon Bubblegum, Watermelon Cantaloupe Honeydew, Watermelon Ice, Watermelon Jolly Candy Ice, and Watermelon Nana Ice.

[47] These were "organic" clicks, a term used to indicate users accessing a website directly, by contrast to access to a website that is a result of redirection from another internet site.  Tracking organic clicks alone underestimates the number of persons accessing a website.

- 27 -

www.wevapeusa.com and purchased a Pacific Cooler flavor Air Bar Mini, 2000 puff e-cigarette for delivery to a Brooklyn, New York address. The total purchase price was $26.11, paid by credit card: $7.99 for the device, $15.99 for shipping and $2.13 in tax.

106.    On March 19, 2024, a package was delivered to the Brooklyn address specified in the order.  The package contained the Air Bar product ordered. The package was not labelled to indicate that it contained vapor products and no adult signature was required. The number on the delivery label, 3472011345 which appeared to be a telephone number and was in fact a telephone number traced back to David Alfih.

107.    The package was delivered by United Parcel Service, with a return address of Marcus Bernard, 3472011345, Seller Supreme LLC, 1090 Coney Island Ave., Brooklyn, NY, 11230.

108.    On or about March 24, 2024, an investigator accessed the website address www.wevapeusa.com and purchased one Kiwi Lemon Shake "Suorin" brand Cube Disposable 1500 puffs for delivery to a Brooklyn, New York address. The total purchase price was $19.59, paid by credit card: $2.00 for the device, $15.99 for shipping and $1.60 in tax.

109.    On March 27, 2024, a package was received at the Brooklyn address specified in the order.  Instead of the product ordered, the package contained five Strawberry Kiwi Guava flavored Hyde Rebel Pro e-cigarettes, as well as an Airbar e-cigarette labeled "wevapeusa free sample."

110.    The package was not labelled to indicate that it contained vapor products and no adult signature was required.

111.    The package was delivered by United Parcel Service, with a return address of Marcus Bernard, 3472011345, Seller Supreme LLC, 1090 Coney Island Ave., Brooklyn, NY, 11230.  The number on the delivery label, 3472011345 which appeared to be a telephone number was in fact a telephone number traced back to David Alfih.

112.    Om June 13, 2024, the City agent placed a third order at the wevapeusa.com for a

- 28 -

flavored e-cigarette.  The order was accepted and a confirming email provided, although the product has not yet been delivered.

113.    The PACT Act requires Pioneer to identify itself to the Attorney General of the United States, the New York State Department of Taxation and Finance, and the New York City Department of Finance as engaged in commerce with e-cigarettes and to file with each of those authorities, and the New York State Attorney General and New York City Corporation Counsel, monthly reports detailing its e-cigarette shipments, including *inter alia* to whom the shipments were made and the brands and quantities delivered.  15 U.S.C § 376.  Pioneer has failed to file such reports with New York City.

114.    Pioneer received orders from and made sales to purchasers in the City and the City agent for the above-described flavored e-cigarettes via the internet, by telephone or mail order.

115.    At the time of the above deliveries, the purchasers from Pioneer "sold, offered for sale, and/or possessed flavored e-cigarettes" in New York City. The purchasers were thus not lawfully operating tobacco businesses and accordingly were "consumers" that received e-cigarettes in "delivery sales" as those terms are defined under the PACT Act. The City agent was not a tobacco business and was hence also a consumer as the term is defined under the PACT Act.

116.    Certain purchasers of e-cigarettes from Pioneer were not Licensed Dealers or in any other category of persons able to receive shipments pursuant to NY Pub. Hlth. L. 1399-*ll* (1-a).

117.    The City agent is not a Licensed Dealer and hence shipments of e-cigarettes to him were prohibited by NY Pub. Hlth. L. 1399-*ll* (1-a).

118.    Pioneer ships or causes to be shipped vapor products to persons that are not Licensed Dealers in violation of NY Pub. Hlth. L. 1399-*ll* (1-a).

### RZ Smoke Inc.

119.    RZ Smoke Inc. ("RZ Smoke") advertises itself as an "Authorized Vape Wholesale

- 29 -

Distributor," located at 412 Hillside Avenue, New Hyde Park, New York 11040 and operates an internet website at https://www.rzsmoke.com from which it offers to sell and sells e-cigarettes.

120.    Between approximately December 2020 until August 2023, RZ Smoke sold flavored e-cigarettes to Brooklyn-based Star Vape, including brands such as Air Bar Nex 6500 Puffs – Peach Mango Watermelon, Air Bar Lux 5% Nicotine – Raspberry Grapefruit, and Hyde Edge Recharge 3300 Puffs 10pk – Cola.

121.    The RZ Smoke invoices to Star Vape list the quantity (usually in the hundreds of items), the price (usually several thousand dollars for each brand and flavor) and the total price of the purchase (ranging from $15,000 to $60,000) per invoice.

122.    A typical invoice from RZ Smoke to Star Vape is shown in Exhibit 3 below.

Gmail - Fwd: Your latest RZ Smoke - Vape & Smoke Wholesale Distributor invoice

Pay with cash, check, credit or debit card upon delivery.

**[Order #194133] (December 14, 2020)**

| Product | Quantity | Price |
|---|---|---|
| Air Bar Diamond 5% Nicotine - Cherry Cola | 600 | $2,280.00 |
| Air Bar Diamond 5% Nicotine - Mango | 180 | $684.00 |
| Air Bar Diamond 5% Nicotine - Peach | 400 | $1,520.00 |
| Air Bar Diamond 5% Nicotine - Strawberry Kiwi | 200 | $760.00 |

| | |
|---|---|
| **Subtotal:** | $49,304.50 |
| **Shipping:** | Free Local Delivery |
| **Payment method:** | Payment on delivery |
| **Total:** | $49,304.50 |

- 30 -

**Exhibit 3 – RZ Smoke Sales to Star Vape**

123.    RZ Smoke operates an internet website that offers to sell of flavored e-cigarettes with a web address of https://www.rzsmoke.com. Accordingly, RZ Smoke offers to sell and did sell e-cigarettes in New York City in violation of Ad. Code § § 17-715 .

124.    The PACT Act requires RZ Smoke to identify itself to the Attorney General of the United States, the New York State Department of Taxation and Finance, and the New York City Department of Finance as engaged in commerce with e-cigarettes and to file with each of those authorities, and the New York State Attorney General and New York City Corporation Counsel, monthly reports detailing its e-cigarette shipments, including *inter alia* to whom the shipments were made and the brands and quantities delivered.  15 U.S.C § 376.  RZ Smoke has failed to file such reports with New York City.

125.    On information and belief, RZ Smoke received orders from and made sales to Star Vape for the above-described flavored e-cigarettes via the internet, telephone or mail order. On information and belief, RZ Smoke and Star Vape were not in one another's physical presence when the above orders were placed or the deliveries were made and/or the flavored e-cigarettes purchased from RZ Smoke were delivered to Star Vape by remote delivery.

126.    At the time of the above deliveries, Star Vape "sold, offered for sale, and/or possessed flavored e-cigarettes" in New York City and was thus not a lawfully operating tobacco business. Star Vape was accordingly was a "consumer" and received those flavored e-cigarettes in delivery sales as the term is defined under the PACT Act.

127.    On information and belief, Star Vape was not a Licensed Dealer or in any other category of persons able to receive shipments pursuant to NY Pub. Hlth. L. 1399-*ll* (1-a).

128.    RZ Smoke ships or causes to be shipped vapor products to persons that are not Licensed Dealers in violation of Pub. Hlth. L. § 1399-*ll* (1-a).

- 31 -

**Starzone**

129.    Starzone is a wholesaler of flavored e-cigarettes with a principal place of business at New Street, Suite B, Oceanside, New York 11572. Starzone maintains a website located at https://starzoneny.com that advertises dozens of brands of flavored e-cigarettes, available in dozens of flavors, all of which are apparently available for "nationwide delivery."

130.    On the basis of documents Starzone provided to the City, between December 2022 and February 2024, Starzone delivered to retailers throughout the City approximately 14,000 flavored e-cigarettes of various brands for which it was paid $650,000.

131.    All of the above-listed flavored e-cigarettes were necessarily offered for sale and sold by Starzone in the City.

132.    Starzone operates an internet website that offers to sell of flavored e-cigarettes with a web address of https://starzone.com. Accordingly, Starzone offers to sell cigarettes in New York City in violation of Ad. Code § § 17-715.

133.    The PACT Act requires Starzone to identify itself to the Attorney General of the United States, the New York State Department of Taxation and Finance, and the New York City Department of Finance as engaged in commerce with e-cigarettes and to file with each of those authorities, and the New York State Attorney General and New York City Corporation Counsel, monthly reports detailing its e-cigarette shipments, including *inter alia* to whom the shipments were made and the brands and quantities delivered.  15 U.S.C § 376.  Starzone has failed to file such reports with New York City.

134.    On information and belief, Star Zone received orders from and made sales to the retailers in the City of some or all of the approximately 14,000 flavored e-cigarettes described above via the internet, telephone or mail order. On information and belief, Star Zone and the purchasers of some or all of the approximately 14,000 flavored e-cigarettes described above were not in one

- 32 -

another's physical presence when the above purchases or the deliveries were made and/or the flavored e-cigarettes were delivered to the purchasers by remote delivery.

135.    At the time of the above deliveries, the Star Zone buyers of the above-described approximately 14,000 flavored e-cigarettes "sold, offered for sale, and/or possessed flavored e-cigarettes" in New York City and thus were not lawfully operating tobacco businesses and accordingly were "consumers" receiving "delivery sales" as those terms are defined under the PACT Act.

136.    On information and belief, some or all of the buyers of the approximately 14,000 flavored e-cigarettes described above were not Licensed Dealers.

137.    On information and belief, Star Zone ships or causes to be shipped vapor products to persons that are not Licensed Dealers in violation of Pub. Hlth. L. § 1399-*ll* (1-a).

### Urban Smoke Distributors

138.    Urban Smoke has a principal place of business is located at 3410 58th Street, Woodside, New York 11377.

139.    Urban Smoke has purchased flavored e-cigarettes from Defendant Vape More / Vape Inc. as detailed below, including flavored Elf Bar, Lost Mary, and E&B Brands. The flavored e-cigarettes purchased by Urban Smoke were necessarily possessed in the City by Urban Smoke.

140.    Urban Smoke has also purchased flavored e-cigarettes from Arizona-based YLSN, including approximately 10,000 units of EB Design (formerly Elf Bar), Lost Mary, BC 5000 (formerly Elf Bar) and Geek Bar disposable flavored e-cigarettes in October 2023, approximately 3,000 units of EB Design, Lost Mary and Funky Republic flavored e-cigarettes in July 2023, approximately 9,000 units of the same brands in June 2023, and approximately 4,000 units of the same brands in May 2023.

141.    The quantity of e-cigarettes purchased by Urban Smoke is inconsistent with

- 33 -

possessing those e-cigarettes for personal use by Urban Smoke. On information and belief, Urban Smoke sells those e-cigarettes to retailers, other distributors and/or individuals in the City.

142.    Urban Smoke maintains a website at https://www.urbansmokedistributors.com that advertises flavored disposable vapes for sale. Urban Smoke thus violates Ad. Code § 17-715 in offering flavored e-cigarettes for sale in the City and in possessing flavored e-cigarettes with an intent to sell or offer them for sale in the City.

143.    The PACT Act requires Urban Smoke to identify itself to the Attorney General of the United States, the New York State Department of Taxation and Finance, and the New York City Department of Finance as engaged in commerce with e-cigarettes and to file with each of those authorities, and the New York State Attorney General and New York City Corporation Counsel, monthly reports detailing its e-cigarette shipments, including *inter alia* to whom the shipments were made and the brands and quantities delivered. 15 U.S.C § 376. Urban Smoke has failed to file such reports with New York City.

144.    On information and belief, Urban Smoke received orders via the internet or by telephone or by mail order from retailers throughout the City for some or all of the flavored e-cigarettes described above. On information and belief, Urban Smoke and the purchasers of some or all of the flavored e-cigarettes from Urban Smoke described above were not in one another's physical presence when the orders were placed or the deliveries were made and/or the flavored e-cigarettes were delivered by a method of remote delivery.

145.    At the time of the above deliveries, the buyers from Urban Smoke of the flavored e-cigarettes described above "sold, offered for sale, and/or possessed flavored e-cigarettes" in New York City and thus were not lawfully operating tobacco businesses. Accordingly the purchasers were "consumers" receiving "delivery sales" as those terms are defined under the PACT Act.

146.    On information and belief, some or all of the buyers from Urban Smoke of the

- 34 -

flavored e-cigarettes described above to which Urban Smoke made deliveries were not Licensed Dealers.

147.    On information and belief, Urban Smoke ships or causes to be shipped vapor products to persons that are not Licensed Dealers in violation of Pub. Hlth. L. § 1399-*ll* (1-a).

### Vape More Inc., a/k/a More Inc., a/k/a More LLC

148.    Vape More Inc., a/k/a More Inc., a/k/a More LLC ("Vape More") is a wholesale tobacco outlet that maintains a warehouse and office space at 631 Columbia Street, Ext., Latham, New York 12110. Remote orders may be placed at Vape More through the email wholesale.nicless@gmail.com.

149.    On or about July 30, 2023, Vape More Wholesale, by Invoice Number 2077, sold to Urban Smoke at its Woodside, New York address various brands of flavored e-cigarettes, including Elf Bar, Lost Mary, and E&B, in 5,000 and 6,000 "puff" sizes.  The brands listed were all available in a variety of flavors including but not limited to Strawberry Banana, Strawberry Kiwi, Hawaii Punch, Juicy Peach, Blue Razz, Lemon Ice and Lemon Mint.

150.    In or around February 2024, under the City's PACT Act authority, the City requested a list from Vape More of Vape More's shipments of flavored e-cigarettes into the City.  Vape More refused to provide such a list.

151.    The PACT Act requires Vape More to identify itself to the Attorney General of the United States, the New York State Department of Taxation and Finance, and the New York City Department of Finance as engaged in commerce with e-cigarettes and to file with each of those authorities, and the New York State Attorney General and New York City Corporation Counsel, monthly reports detailing its e-cigarette shipments, including *inter alia* to whom the shipments were made and the brands and quantities delivered.  15 U.S.C § 376.  Vape More has failed to file such reports with New York City.

- 35 -

152.    On information and belief, Vape More received orders from retailers throughout the City via the internet, by telephone or by mail order for flavored e-cigarettes, including the flavored e-cigarettes that Vape More sold to Urban Smoke, described above. On information and belief, Urban Smoke and the City purchasers of some or all of the flavored e-cigarettes sold by Vape More were not in one another's physical presence when the above purchases were placed or the deliveries were made and/or the flavored e-cigarettes were delivered to the purchasers by a method of remote delivery.

153.    At the time of the above deliveries, the buyers from Vape More of flavored e-cigarettes, including Urban Smoke, "sold, offered for sale, and/or possessed flavored e-cigarettes" in New York City and thus were not lawfully operating tobacco businesses.  Accordingly the purchasers were "consumers" receiving "delivery sales" as those terms are defined under the PACT Act.

154.    On information and belief, some or all of the buyers of the flavored e-cigarettes to which Vape More made deliveries were not Licensed Dealers.

155.    On information and belief, Vape More ships or causes to be shipped vapor products to persons that are not Licensed Dealers in violation of Pub. Hlth. L. § 1399-*ll* (1-a).

**Vape Plus Distribution Corp. a/k/a G&A Distribution**

156.    Vape Plus Distribution Corp. a/k/a G&A Distribution ("Vape Plus") maintains a place of business at 2578 Atlantic Avenue, Brooklyn, New York 11207. Vape Plus operates a website at https://nyvapeplus.com that offers to sell and does sell flavored e-cigarettes.

157.    According to its website, Vape Plus was "founded in Brooklyn at the very beginning of the vaping boom," and "has earned its reputation as being one the largest and fastest growing Vape and Smoke shop distributors in the U.S."[48]

---

[48] Vape Plus Wholesale, https://nyvapeplus.com (last visited Apr. 1, 2024)..

- 36 -

158.    The Vape Plus website advertises numerous brands of disposable flavored e-cigarettes, including Elf Bar, E. B. 5000 (formerly Elf Bar), Lost Mary, Fume, all in dozens of flavors.  The website promises "same day delivery."

159.    In or around October 2023, Vape Plus purchased hundreds of units of flavored Breeze e-cigarettes from Smokin' Sales, a New Jersey company.  In or around November 2023, Vape Plus purchased hundreds of units of flavored e-cigarettes from Smokin' Sales, including Breeze brand flavored e-cigarettes.  In or around August 2023, Vape Plus purchased approximately 200 units of Salt Bae e-juice, a flavored e-liquid containing nicotine from Smokin' Sales.  In or around June 2023, Vape Plus purchased approximately 450 units of flavored e-cigarettes from Smokin' Sales, including Lava brand, Mega Vape and Dragbar brand e-cigarettes.  In or around April 2023, Vape Plus purchased approximately hundreds of units of Salt Bae e-juice, a flavored nicotine e-liquid, "Smok" brand, a brand of e-cigarette, and "Uwell," a brand of e-cigarette from Smokin' Sales.  In October 2022, Vape Plus purchased approximately 14,000 flavored e-cigarettes from YLSN, including Elf Bar, Lost Mary, Biffbar and Geek Bar brands.   In September 2022, Vape Plus purchased approximately 8,000 flavored e-cigarettes from Arizona-based YLSN, including Elf Bar and Lykcan Belo flavored e-cigarettes.

160.    The quantity of flavored e-cigarettes purchased by Vape Plus is inconsistent with possessing those e-cigarettes for personal use by Vape Plus and as shown below Vape Plus in fact offers these cigarettes for sale on its website.

161.    Vape Plus maintains a website at https://nyvapeplus.com that advertises "disposable vapes" for sale. Urban Smoke thus violates Ad. Code § 17-715 by offering flavored e-cigarettes for sale in the City and in possessing flavored e-cigarettes with an intent to sell or offer them for sale to retailers, other distributors and/or individuals in the City.

162.    The PACT Act requires Vape Plus to identify itself to the Attorney General of the

- 37 -

United States, the New York State Department of Taxation and Finance, and the New York City Department of Finance as engaged in commerce with e-cigarettes and to file with each of those authorities, and the New York State Attorney General and New York City Corporation Counsel, monthly reports detailing its e-cigarette shipments, including *inter alia* to whom the shipments were made and the brands and quantities delivered. 15 U.S.C § 376. Vape Plus has failed to file such reports with New York City.

163.    On information and belief, Vape Plus received orders via the internet or by telephone or by mail order from purchasers throughout the City for some or all of the flavored e-cigarettes described above. On information and belief, Vape Plus and the purchasers of some or all of the flavored e-cigarettes described above were not in one another's physical presence when the above orders were placed or the deliveries were made and/or the flavored e-cigarettes were delivered by a method of remote delivery.

164.    At the time of the above order and deliveries, the City buyers of flavored e-cigarettes from Vape Plus "sold, offered for sale, and/or possessed flavored e-cigarettes" in New York City and thus were not lawfully operating tobacco businesses. The purchasers were accordingly "consumers" in receipt of delivery sales as those terms are defined under the PACT Act.

165.    On information and belief, some or all of the New York City buyers of the flavored e-cigarettes sold by Vape Plus to which Vape Plus made deliveries were not Licensed Dealers.

166.    On information and belief, Vape Plus ships or causes to be shipped vapor products to persons in New York City that are not Licensed Dealers in violation of Pub. Hlth. L. § 1399-*ll* (1-a).

### Allegations Related to Violations of the Prevent All Cigarettes ("PACT") Act

167.    The PACT Act defines an "electronic nicotine delivery system," 15 U.S.C. § 375(2)(A)(ii)(ll), as "any electronic device that, through an aerosolized solution, delivers nicotine,

- 38 -

flavor, or any other substance to the user inhaling from the device. Electronic nicotine delivery systems include e-cigarettes, vape pens, advanced refillable personal vaporizers, and any component, liquid, part, or accessory of any such device, regardless of whether the component, liquid, part, or accessory is sold separately from the device." 15 U.S.C. § 375(7)(A)-(C).[49]

168.    The PACT Act defines an electronic nicotine delivery system as a "cigarette" for purposes of the Act.  See 15 U.S.C. § 375(2).

169.    The PACT Act defines a "person" as an individual, corporation, company, association, firm, partnership, society, state government, local government, Indian tribal government, governmental organization of such a government, or joint stock company.

170.    The PACT Act defines a "consumer" as any person that purchases cigarettes, other than a person lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco. 15 U.S.C. § 375(4)(A)(B) (emphasis added).

171.    A "delivery sale" under the PACT Act is i) any sale of an e-cigarette to a consumer if the seller is not in the physical presence of the consumer when the order is placed, or ii) the seller is not in the physical presence of the consumer when the consumer obtains possession of the e-cigarette; or iii) the e-cigarette is delivered to the consumer by any method of remote delivery, such as common carrier.  15 U.S.C. § 375(5).

172.    The PACT Act defines a "delivery seller" as a person who makes a delivery sale. 15 U.S.C. § 375(6).

173.    The PACT Act requires any person shipping, selling, transferring, shipping for profit, advertising, offering for sale, or transferring e-cigarettes in interstate commerce into a locality taxing the sale or use of cigarettes to file a statement with the Attorney General of the United

---

[49] Electronic nicotine delivery devices do not include a product approved by the Food and Drug Administration for sale as a tobacco cessation product; or for any other therapeutic purpose. 15 U.S.C. § 375(7)(A)-(C). None of the e-cigarettes sold by defendants qualify as such.

- 39 -

States and the tobacco tax administrators of New York City and State setting forth the person's name, trade name, address of all places of business, telephone numbers, e-mail address, website addresses, and identifying an agent for service of process. 15 U.S.C. § 376.

174.    The PACT Act requires that by the 10th day of each calendar month any person shipping, selling, transferring, shipping for profit, advertising, offering for sale, or transferring e-cigarettes in interstate commerce into a locality taxing the sale or use of cigarettes must file with the New York State Department of Taxation & Finance, the New York City Department of Finance, and the New York City Corporation Counsel a memorandum or copy of an invoice describing each e-cigarette shipment made into New York City during the previous calendar month, including the name and address of the person to whom the shipment was made, the brand, quantity thereof and the name, address, and phone number of the person delivering the shipment, organized by city or town and zip code. 15 U.S.C. § 376.

175.    The memoranda or invoices provided by delivery sellers pursuant to 15 U.S.C. § 376(a) (2) and (3) is expressly intended for use by tobacco tax administrators or chief law enforcement officers receiving the information for enforcement of the PACT Act and for the collection of any taxes owed on related sales of e-cigarettes. 15 U.S.C. § 376 (c).

176.    The PACT Act requires any person selling, transferring, shipping for profit, advertising or offering for sale, transfer, or shipment e-cigarettes in interstate commerce to comply with all state and local laws applicable to the sale of e-cigarettes, including laws imposing excise taxes, licensing and tax-stamping requirements, restrictions on sales to minors and other payment obligations or legal requirements relating to the sale, distribution, or delivery of e-cigarettes.

177.    The PACT Act requires any person that sells, transfers, ships for profit, advertises or offers for sale, transfer, or shipment e-cigarettes in interstate commerce into a locality taxing the sale or use of cigarettes to comply with the tax collection and package-labeling requirements, as if

- 40 -

the delivery sale occurred entirely within that locality.

178.    Accordingly, the PACT Act requires any delivery seller making a delivery sale of e-cigarettes to a New York City consumer in New York City to, inter alia:

a.    Comply with all laws governing the sale of e-cigarettes in New York City and/or State. 15 U.S.C. § 376a(a)(3);

b.    File with the designated officials of New York City all reports required by the PACT Act.

c.    Make certain that all applicable taxes have been paid to New York City. 15 U.S.C. §§ 376a(a)(4), (d);

d.    Assure that the weight of e-cigarettes sold, delivered, or caused to be delivered in a single sale or delivery into New York City does not exceed ten pounds. 15 U.S.C. §§ 376a (a), (b)(3);

e.    Place notices identifying the package contents of packages involved in e-cigarette delivery sales as e-cigarettes. 15 U.S.C. §§ 376a (a), (b)(1), (2); and

f.    Deliver e-cigarettes by a method that requires the person to whom the delivery is made to provide age verification to the delivery service.  15 U.S.C. §§ 376a (a), 376a (b)(4).

179.    E-cigarette sales made by EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More, and Vape Plus are all sales to consumers within the meaning of the PACT Act, 15 U.S.C. § 375(4) because no person purchasing e-cigarettes from any defendant was a "lawfully operating" manufacturer, distributor, wholesaler, or retailer of cigarettes …." by reason of each purchasers' multiple violations of the law, including but not limited to violations of:

a.    The Tobacco Control Act (prohibiting sales of flavored e-cigarettes not have not been approved by the FDA.

b.    NY Pub. Hlth. L. §1399-*ll* (1-a) (prohibiting remote to deliveries of e-cigarettes except to Licensed Dealers)

c.    NY Pub. Hlth. L. §1399-mm-(1) (prohibiting retail sales of flavored e-cigarettes)

d.    NYC Ad. Code § 17-715(b) (prohibiting sale or possession of flavored e-cigarettes)

- 41 -

180.    The e-cigarette sales by EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer,  David Alfih, Marcus Bernard, RZ Smoke, Star Zone; Urban Smoke, Vape More and Vape Plus were delivery sales within the meaning of the PACT Act because EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone; Urban Smoke, Vape More and Vape Plus were not in the physical presence of the buyer when the orders were placed or delivered, or the deliveries were made by a means of remote delivery. See 15 U.S.C. § 375(5).

181.    EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More and Vape Plus each violate the PACT Act because in none of their delivery sales of e-cigarettes to consumers did EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More and Vape Plus identify the package contents on the outside of the packages as cigarettes.

182.    EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone; Urban Smoke, Vape More and Vape Plus each violate the PACT Act. Their delivery sales of e-cigarettes to consumers were of flavored vape products sold in violation of NY Pub. Hlth. L. § 1399-*ll* (1-a) and Ad. Code § 17-715 (b) and thus did not comply with all laws governing the sale of e-cigarettes in New York City and/or State, as required by 15 U.S.C. § 376a(a)(3).

183.    EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More and Vape Plus each violate the PACT Act because in none of their delivery sales of e-cigarettes to consumers did EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More and Vape Plus utilize a method of delivery requiring

- 42 -

an adult signature upon delivery.

184.    All e-cigarette sales by each of EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone; Urban Smoke, Vape More and Vape Plus violate the PACT Act because each of those defendants has ailed to register as a delivery seller with the Attorney General of the United States, or with the tobacco tax administrators of New York State or New York City.

185.    All e-cigarette sales by each of EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone; Urban Smoke, Vape More and Vape Plus violate the PACT Act because with respect to their delivery sales of e-cigarettes to consumers EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone; Urban Smoke, Vape More and Vape Plus did not report on the tenth day of each month their delivery sales in a memorandum to New York State, the New York City Department of Finance, and the Corporation Counsel of the City of New York.

186.    All e-cigarette sales by each of EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone; Urban Smoke, Vape More and Vape Plus violate the PACT Act because no defendant made certain that all applicable taxes had been paid to each jurisdiction into which the delivery sale is made.

187.    All e-cigarette sales by each of EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone; Urban Smoke, Vape More and Vape Plus violate the PACT Act because no defendant made certain that the weight of e-cigarettes sold, delivered, or caused to be delivered in a single sale or delivery did not exceed ten pounds. 15 U.S.C. §§ 376a (a), (b)(3).

188.    All e-cigarette sales by each of EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone; Urban Smoke, Vape

- 43 -

More and Vape Plus violate the PACT Act because no defendant made certain that their delivery sales were in compliance with all New York City and New York State laws applicable to e-cigarette sales and in fact none of those sales were compliant.

**<u>Allegations Related to Violations of NY Pub. Hlth. L. § 1399-*ll* (1-a)</u>**

189.    *Every* person who intends to sell vapor products in New York must receive from the Commissioner of Taxation a certificate of registration prior to engaging in business.  NY Tax L. Article 28-C, § 1183. The certificate of registration issued by the Tax Commissioner is termed a "vapor products dealer certificate."

190.    It is unlawful under NY Pub. Hlth. L. § 1399-*ll* (1-a) for *any* person engaged in the business of selling vapor products to ship or cause to be shipped to *any* person in this state *any* vapor products intended or reasonably expected to be used with or for the consumption of nicotine, except to a person a person that receives a certificate of registration as a vapor products dealer under article twenty eight-C of the tax law.

191.    A vapor products dealer is a person whose name appears on a list of licensed or registered agents of vapor product dealers published by the New York State Department of Taxation and Finance, or is a person licensed or registered as an agent or dealer under article twenty eight-C of the tax law.

192.    It is also unlawful under NY Pub. Hlth. L. § 1399-*ll* (3) for a person engaged in the business of selling vapor products to ship or cause to be shipped to any person in this state any vapor products intended or reasonably expected to be used with or for the consumption of nicotine except in the vapor products manufacturer's original container or wrapping, or in a container or wrapping plainly and visibly marked with the words "vapor products."

193.    On information and belief, each Defendant ships or causes to be shipped vapor products intended or reasonably expected to be used with or for the consumption of nicotine to

- 44 -

persons in New York City that are not a person that receives a certificate of registration as a vapor products dealer under article twenty eight-C of the tax law or not a person whose name appears on a list of licensed or registered agents or vapor product dealers published by the department of taxation and finance or not otherwise permitted to receive deliveries of vapor products under NY Pub. Hlth. L. 1399-*ll* (1-a).

194.    On information and belief, EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More, and Vape Plus, each shipped or caused to be shipped vapor products intended or reasonably expected to be used with or for the consumption of nicotine, other than in the vapor products manufacturer's original container or wrapping, or in containers or wrappers that are not plainly and visibly marked with the words "vapor products."

195.    By shipping or causing to be shipped vapor products to persons in New York City other than those designated as the permissible recipients of vapor products set forth in NY Pub. Hlth. L. § 1399-*ll* (1-a ), and/or shipped vapor products that were not in either the vapor products manufacturer's original container or wrapping, or in containers or wrappers not plainly and visibly marked with the words "vapor products," Defendants violated NY Pub. Hlth. L. § 1399-*ll* (1-a) and/or NY Pub. Hlth. L. § 1399-*ll* (3).

**Allegations Related to Violation of New York City Administrative Code § 17-715 (b) (1)**

196.    New York City Administrative Code § 17-715 (b) (1) provides that "It shall be unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid.

197.    As set forth in te facts above, EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More, and Vape Plus each sells, offers for sale, possesses with intent to sell or possesses with intent to

- 45 -

offer for sale flavored e-cigarettes in the City.

### Allegations Related to Public Nuisance

198.    New York public policy against marketing e-cigarette products to minors is expressed in statutes and regulations, including but not limited to:

a.  NY Pub. Hlth. L. § 1399-bb (4), which prohibits any "person engaged in the business of selling or otherwise distributing electronic cigarettes" from providing free samples to anyone under 21 years of age;

b.  NY Pub. Hlth. L. § 1399-cc(2)-(3), which prohibits the sale of electronic cigarettes to persons less than 21 years of age;

c.  NY Pub. Hlth. L. § 1399-dd, which places restrictions on the sale of electronic cigarettes from vending machines to prevent access by underage individuals; and

d.  NY Pub. Hlth. L. § 1399-dd-1, which places restrictions on electronic cigarette advertising in the proximity of schools.

199.    New York public policy against marketing electronic nicotine delivery devices to minors is further expressed in the New York State and City flavor bans, which are principally intended to prevent nicotine addiction in young persons. Pursuant to NY Pub. Hlth. L. §1399-mm-(1), no vapor products dealer shall sell or offer for sale at retail in New York any flavored vapor product to be used in the consumption of nicotine. Pursuant to New York City Administrative Code § 17-715 (b) (1), it is unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid.

200.    Defendants' products create a growing hazardous waste problem from improper disposal in public places of devices containing chemicals that can be toxic or fatal if ingested in concentrated forms.[50]

---

[50] "JUUL isn't disposable and should be treated as a consumer electronic device. Dispose of contents/container to a hazardous or special waste collection point." JUUL, *How do I dispose of a JUUL device?*, https://support.juul.co.uk/s/article/How-do-I-dispose-of-a-JUUL-device-UK (last visited Apr. 1, 2024); *see also* American Acad. of Pediatrics, *Liquid Nicotine Used in E-Cigarettes Can Kill Children*, Mar. 31, 2021,

- 46 -

201. E-cigarettes and other illegal vape devices contain toxic chemicals that cannot be safely disposed of in the normal waste stream but must be disposed of as hazardous waste. The lithium-ion batteries powering the devices cannot be safely disposed of in the normal trash stream.[51] This requires the City to dispose of illegal flavored e-cigarettes seized by law enforcement through the far more expensive methods required to safely dispose of hazardous waste.

202. The Defendants' sale and distribution of e-cigarettes violates a host of federal, New York State and New York City laws representing the public policy of New York State and City.

203. The Defendants' sale and distribution of e-cigarettes has injured the property, health, safety or comfort of a considerable number of New York City residents by creating a public health and safety hazard in the City through the promotion, distribution, marketing and sale of products that cause persistent youth and rising young adult addiction to nicotine, and potentially or actually contaminating City parks and public places with hazardous wastes. The sale of flavored vapor products by the Defendants endangers the health and safety of a large number of persons in New York City and thereby constitutes a public nuisance.

204. Defendants' conduct in marketing, distributing, and selling e-cigarettes has been a substantial factor in bringing about the above-described public nuisance. Defendants sell flavored e-cigarettes to a significant number of other sub-distributors and retailers in the City, with the result that flavored e-cigarettes are found ubiquitously throughout stores in the City and sold in enormous quantities to the public. As shown above some Defendants make their product freely available to the public by selling flavored e-cigarettes over the internet. But for Defendants' actions, e-cigarette

---

https://www.healthychildren.org/English/safety-prevention/at-home/Pages/Liquid-Nicotine-Used-in-E-Cigarettes-Can-Kill-Children.aspx . .

[51] *See, e.g.*, JUUL, *What kind of battery is in the device?*, https://support.juul.ca/s/article/What-kind-of-battery-is-in-the-device-Canada (last visited Apr. 1, 2024) ("JUUL uses a lithium-ion polymer battery. All portable electronics containing lithium-ion batteries present rare, but potentially serious safety hazards.").

- 47 -

use by youth in the City would not be as widespread as today and the City would not be presented with the hazardous waste disposal burdens imposed by Defendants' products.

## **FIRST CLAIM FOR RELIEF**

### **(Violation of The Prevent All Cigarette Trafficking Act)**

205.    The City realleges paragraphs 1-202 above as if fully set forth herein.

206.    At all times relevant to this amended complaint, without complying with the requirements of delivery sellers to register with the federal government, New York State, and New York City, each of EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, Vape Plus, made delivery sales of e-cigarettes to consumers located in New York City.

207.    At all times relevant to this complaint, without complying with the requirements for delivery sales, including but limited to complying with all City laws applicable to tobacco, each of EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More and Vape Plus made delivery sales of e-cigarettes to consumers located in New York City.

208.    As a direct result of the foregoing violations of the PACT Act by EnviroMD, GT Imports, Kayla, KlCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, and Vape Plus Smith the City has suffered and continues to suffer damages, including but not limited to the public health consequences of youth addiction and the required disposal of illegal vape products pursuant to the rules governing hazardous waste.

209.    Pursuant to the PACT Act, 15 U.S.C. § 375 et seq., the City, as a local government imposing a tax on cigarettes, is empowered to bring an action to prevent and restrain violations of the PACT Act, and to obtain any other appropriate forms of relief, including civil penalties, equitable remedies, including but not limited to disgorgement of profits, and damages.

- 48 -

210.    With exceptions not relevant here, whoever violates the PACT Act shall be subject to a civil penalty in an amount not to exceed— (A) in the case of a delivery seller, the greater of—(i) $5,000 in the case of the first violation, or $10,000 for any other violation; or (ii) for any violation, 2 percent of the gross sales of cigarettes or smokeless tobacco of the delivery seller during the 1-year period ending on the date of the violation. 15 U.S.C. § 377

211.    The foregoing violations of the PACT Act by EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More and Vape Plus, for which the City has no remedy at law, are ongoing and will continue into the future unless enjoined.

## SECOND CLAIM FOR RELIEF
### (Violation of N.Y. NY Pub. Hlth. L. § 1399-*ll* (1-a)

212.    The City incorporates herein paragraphs 1-209 as if fully set forth in this paragraph.

213.    On information and belief, in violation of NY Pub. Hlth. L. § 1399-*ll* (1-a) each of EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More,  Vape Plus,  David Alfih and Marcus Bernard shipped or caused to be shipped vapor products intended or reasonably expected to be used with or for the consumption of nicotine, to persons other than those designated by NY Pub. Hlth. L. § 1399-*ll* (1-a ) as lawful recipients of such products.

214.    On information and belief, in violation of NY Pub. Hlth. L. § 1399-*ll* (3) each of EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, and Vape Plus shipped or caused to be shipped vapor products intended or reasonably expected to be used with or for the consumption of nicotine other than in the vapor products manufacturer's original container or wrapping, in containers or wrappers that are not plainly and visibly marked with the words "vapor products."

- 49 -

215.    NY Pub. Hlth. L. § 1399-*ll* (5) (c) provides for a penalty of one hundred dollars for each vapor product intended or reasonably expected to be used with or for the consumption of nicotine shipped, caused to be shipped or transported in violation of NY Pub. Hlth. L. § 1399-*ll* (1-a) or NY Pub. Hlth. L. § 1399-*ll* (3).

216.    Pursuant to NY Pub. Hlth. L. § 1399-*ll* (6), the City's Corporation Counsel is entitled to recover, on behalf of the City, the civil penalties provided by NY Pub. Hlth. L. § 1399-*ll* (5) and to obtain such other relief as may be deemed necessary with respect to any cigarettes or vapor products shipped or caused to be shipped in violation of NY Pub. Hlth. L. § 1399-*ll* (1-a )to any person located within New York City.

<u>**THIRD CLAIM FOR RELIEF**</u>
**(Violation of NYC Administrative Code § 17-715 (b) (1))**

217.    The City incorporates herein paragraphs 1-214 as if fully set forth in this paragraph.

218.    In violation of Ad. Code § 17-715 (b) (1), each Defendant in New York City sells, offers for sale, or possesses with intent to sell or offer for sale, flavored electronic cigarettes and/or flavored e- liquids.

219.    Pursuant to General City Law § 20 (22) and NYC Charter § 394, the Corporation Counsel has standing to enforce Ad. Code § 17-715 (b) (1) on behalf of the City and to impose and collect the penalties provide for under the Administrative Code.

<u>**FOURTH CLAIM FOR RELIEF**</u>
**(Public Nuisance)**

220.    The City incorporates herein paragraphs 1-217 as if fully set forth herein in this paragraph.

221.    The Defendants' sales of flavored vapor products in New York City injures the health, safety, and welfare of large numbers of City residents and constitutes a public nuisance for

- 50 -

which the City has no adequate remedy at law.

222.    Defendants' conduct is ongoing, likely to produce permanent and long-lasting injury, and likely to continue indefinitely. The conduct is substantial, unreasonable, widespread, and outweighs any potential benefit of Defendants' wrongful conduct.

**WHEREFORE**, New York City respectfully prays that the Court grant judgment against each Defendant and issue an order:

  a.  On the First Claim For Relief, permanently enjoining EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, and Vape Plus from shipping or causing to be shipped any e-cigarettes without complying with the PACT Act and ordering those Defendants to pay the City the penalties provided for by 15 U.S.C. § 377 in an amount to be determined at trial..

  b.  On the Second Claim For Relief (i) permanently enjoining EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, and Vape Plus from shipping or causing to be shipped vapor products intended or reasonably expected to be used with or for the consumption of nicotine to persons unauthorized by Pub. Hlth. L. § 1399-*ll* (1-a) to receive such products; (ii) permanently enjoining those Defendants from shipping or causing to be shipped vapor products intended or reasonably expected to be used with or for the consumption of nicotine in packages that are not labeled to identify the contents as vapor products; and (iii) ordering those Defendants to pay the City the penalties provided for by Pub. Hlth. L. § 1399-*ll* (5) in an amount to be determined at trial.

  c.  On the Third Claim for Relief; (i) permanently enjoining EnviroMD, GT Imports, Kayla, KLCC Wholesale, MV Trading, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, and Vape Plus from violating New York City Administrative Code § 17-715 by selling, offering for sale, or possessing with intent to sell or offer for sale flavored electronic cigarettes or flavored e-liquids; (ii) ordering each Defendant to pay the City the penalties provided for by New York City Administrative Code § 17-717, in an amount to be determined at trial;

- 51 -

Case 1:24-cv-05161-GHW-JW     Document 1-41     Filed 07/08/24     Page 53 of 53

d.  On the Fourth Claim for Relief, declaring that the Defendants have caused, maintained and contributed to a public nuisance and issuing an order requiring Defendants to undertake measures to abate the nuisance, including but not limited to establishing a fund to abate the nuisance, in any amount to be determined at trial; and

e.  Awarding such other and further relief as the Court may deem appropriate.

Dated: New York, New York
      June 14, 2024

**MURIEL GOODE-TRUFANT**
Acting Corporation
  Counsel of the City of
  New York
Attorney for Plaintiff the City of New York
100 Church Street, Room 20-99
New York, New York 10007
(212) 356-2032


By: _____
    Eric Proshansky
    Elizabeth Slater
    Alexandra Jung
    Aatif Iqbal
    Ass't Corporation Counsels

- 52 -