# Exhibit SS

Case 1:24-cv-05161-GHW-JW   Document 1-45   Filed 07/08/24   Page 2 of 31

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

———————————————————————————x

THE CITY OF NEW YORK,

                                    Plaintiff,

                    v.

ENVIROMD GROUP LLC; GT IMPORTS;
KAYLA WHOLESALE, INC., d/b/a The Vapery;
KLCC WHOLESALE INC.; MV TRADING LLC a/k/a          Index No. 451009/2024
MYVAPORSTORE; PIONEER DISTRIBUTION, INC. a/k/a
WEVAPEUSA.COM a/k/a SELLER SUPREME LLC;
RZ SMOKE INC.; STAR ZONE INC.; URBAN SMOKE
DISTRIBUTORS; VAPE MORE INC. a/k/a MORE LLC;
VAPE PLUS DISTRIBUTION CORP. a/k/a G&A
DISTRIBUTION; DAVID ALFIH a/k/a David Alfieh, a/k/a DJ
Alfani; and MARCUS BERNARD,

                                    Defendants.

———————————————————————————x


# MEMORANDUM OF LAW OF PLAINTIFF THE CITY OF NEW YORK
## IN SUPPORT OF PRELIMINARY INJUNCTION


**MURIEL GOODE-TRUFANT**
Acting Corporation Counsel of the
  City of New York
*Attorney for Plaintiff The City of New York*
100 Church Street, Room 20-99
New York, New York 10007
(212) 356-2032

## Table of Contents

Preliminary Statement ............................................................................................ 1

Facts ........................................................................................................................ 3

I.  The Harm Caused by the Proliferation of Flavored E-Cigarettes .......................... 3

II.  Facts Establishing Each Defendant's Violations of the PACT Act,
     Pub. Hlth. L. § 1399-*ll* (1-a), and NYC Ad. Code § 17-715
     and Creation of a Public Nuisance ................................................................ 4

     A.  EnviroMD ................................................................................................ 4

     B.  GT Imports .............................................................................................. 4

     C.  Kayla ...................................................................................................... 5

     D.  KLCC ...................................................................................................... 5

     E.  MV Trading LLC a/k/a *Myvaporstore.com* .............................................. 6

     F.  Pioneer .................................................................................................... 7

     G.  RZ Smoke ................................................................................................ 8

     H.  Star Zone ................................................................................................ 8

     I.  Urban Smoke ........................................................................................... 9

     J.  Vape More ............................................................................................... 9

     K.  Vape Plus ................................................................................................ 9

Argument .............................................................................................................. 10

I.  The City Is Likely to Succeed on the Merits of Its Claims ................................... 11

     A.  The City Has Proven that EnviroMD, GT Imports,
         Kayla, Pioneer, RZ Smoke, Star Zone,
         and Vape More Violated the PACT Act .................................................. 11

     B.  The City Has Conclusively Established that
         All Defendants Have Violated Ad. Code § 17-715(b)(1) ......................... 13

     C.  Kayla and Pioneer Have Violated
         Pub. Hlth. L. § 1399-*ll* (1-a) .............................................................. 14

i

D.   The City Is Likely to Succeed on Its Claim that Defendants
     Cause, Create, Contribute to and Maintain a Public Nuisance ................ 15

     1.   The City Has Demonstrated Significant Interference
          with the Public Health of Its Citizens ................................................ 16

     2.   Defendants' Conduct Is A Nuisance *Per Se* ..................................... 18

     3.   Defendants Know or Have Reason to Know that
          Their Conduct is of a Continuing Nature and
          Has a Significant Effect upon the Public Right ................................. 18

     4.   The City Has Demonstrated Causation ............................................. 19

II.   Irreparable Harm Is Presumed ............................................................... 21

III.  The Balance of Equities Tips in Favor of the City ............................... 22

Conclusion ............................................................................................... 22

Certificate of Compliance ........................................................................ 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*61 W. 62 Owners Corp. v. CGM EMP LLC*,
    77 A.D.3d 330 (1st Dep't 2010) ...........................................................11

*California v. Am. Stores Co.*,
    495 U.S. 271 (1990) .............................................................................21

*California v. Azuma Corp.*,
    2023 U.S. Dist. LEXIS 159790 (E.D. Cal. Sep. 7, 2023) .....................12

*City of N.Y. v. A-1 Jewelry & Pawn, Inc.*,
    247 F.R.D. 296 (E.D.N.Y. 2007) ...................................................18, 21

*City of N.Y. v. Artisan Vapor Franchise LLC*, No. No 19-CV-5693,
    2020 U.S. Dist. LEXIS 205315 (E.D.N.Y. Nov. 2, 2020) .................2, 17

*City of N.Y. v. Beam Bike Corp.*,
    206 A.D.3d 447 (1st Dep't 2022) .........................................................21

*City of N.Y. v. Beretta U.S.A. Corp.*,
    315 F. Supp. 2d 256 (E.D.N.Y. 2004) ...........................................19, 20

*City of N.Y. v. Bilynn Realty Corp.*,
    118 A.D.2d 511 (1st Dep't 1986) .....................................................21, 22

*City of N.Y. v. Hatu*,
    2019 U.S. Dist. LEXIS 91576 (S.D.N.Y. May 31, 2019) .....................12

*City of N.Y. v. Magellan Tech., Inc.*,
    2024 U.S. Dist. LEXIS 93339 (S.D.N.Y. May 24, 2024) ............... *passim*

*Cnty. of Westchester v. United Water New Rochelle*,
    32 A.D.3d 979 (2d Dep't 2006) ...........................................................21

*Copart Indus. v. Consol. Edison Co. of N.Y.*,
    41 N.Y.2d 564 (1977) ..........................................................................15

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal 2020) .............................................16, 17

*Laro Maint. Corp. v. Culkin*,
    255 A.D.2d 560 (2d Dep't 1998) .........................................................22

Case 1:24-cv-05161-GHW-JW    Document 1-45    Filed 07/08/24    Page 6 of 31

*In re MTBE Products Liab. Litig.*,
   725 F.3d 65 (2d Cir. 2013) ........................................................................................16

*New York Trap Rock Corp. v. Town of Clarkstown*,
   299 N.Y. 77 (1949) ....................................................................................................16

*New York v. Juul Lab'ys*,
   2022 N.Y. Misc. LEXIS 4983 (Sup. Ct., N.Y. Cnty. July 14, 2022) .........................20

*New York v. Shore Realty Corp.*,
   759 F.2d 1032 (2d Cir. 1985) ....................................................................................15

*In re Opioid Litig.*,
   2018 N.Y. Misc. LEXIS 2428 (Sup. Ct. Suffolk Cnty. 2018) ...................................16

*Penn Cent. Transp. Co. v. Singer Warehouse & Trucking Corp.*,
   86 A.D.2d 826 (1st Dep't 1982) ................................................................................20

*People v. Trump*, No. 452564/2022,
   2022 N.Y. Misc. LEXIS 6657 (Sup. Ct., N.Y. Cnty. 2024) ......................................21

*Reid v. Kawasaki Motors Corp.*,
   189 A.D.2d 954 (3d Dep't 1993) ...............................................................................15

*Scotto v. Mei*,
   219 A.D.2d 181 (1st Dep't 1996) ...............................................................................11

*Smithtown v. Schleider*,
   156 A.D.2d 668 (2d Dep't 1989) ...............................................................................22

*State of New York v. Fermenta ASC Corp.*,
   160 Misc. 2d 187 (Sup. Ct., Suffolk Cnty. 1994) .....................................................20

*Terrell v. Terrell*,
   279 A.D.2d 301 (1st Dep't 2001) ...............................................................................11

*United States v. Gonzales*,
   520 U.S. 1 (1997) .......................................................................................................14

**Statutes and Rules**

15 U.S.C. § 375(4) ............................................................................................................11

15 U.S.C. § 375(5) ............................................................................................................12

15 U.S.C. § 375 *et seq* ........................................................................................................1

15 U.S.C. § 376 ..................................................................................................................5

iv

15 U.S.C § 376a ....................................................................................................11, 13

CPLR § 6301 .........................................................................................................11, 22

N.Y. Public Health Law § 1399-*ll* ....................................................................... *passim*

New York City Administrative Code § 17-715 .................................................... *passim*

N.Y. Tax L. art. 28-C .............................................................................................14, 15

## Other Authorities

Alex C. Liber et al., *The role of flavored electronic nicotine delivery systems in
    smoking cessation: A systematic review*, DRUG AND ALCOHOL DEPENDENCE
    REP., June 2023 .............................................................................................19

FDA, *E-Cigarettes Authorized by the FDA*,
    https://digitalmedia.hhs.gov/tobacco/hosted/E-Cigarettes-Authorized-FDA-
    June2024.pdf (June 2024) ...........................................................................19

Maria Cooper et al., *Notes from the Field: E-cigarette Use Among Middle and
    High School Students-United States*, 71 MORBIDITY & MORTALITY WKLY.
    REP. 1283 (2022),
    https://www.cdc.gov/mmwr/volumes/71/wr/pdfs/mm7140a3-H.pdf ......................3

*Restat 2d of Torts* § 821B ..............................................................................15, 16, 18

*Restat 2d of Torts* § 825 ............................................................................................19

*Restat 2d of Torts* § 826 ............................................................................................18

INDEX NO. 451009/2024
RECEIVED NYSCEF: 07/01/2024

Case 1:24-cv-05161-GHW-JW    Document 1-45    Filed 07/08/24    Page 8 of 31

Plaintiff the City of New York (the "City"), respectfully submits this memorandum of law in support of its motion for a preliminary injunction against EnviroMD Group LLC ("EnviroMD"), GT Imports, Kayla Wholesale, Inc. d/b/a The Vapery ("Kayla"), KLCC Wholesale Inc. ("KLCC"), MV Trading LLC a/k/a Myvaporstore ("MV Trading"), Pioneer Distribution, Inc. a/k/a Wevapeusa.com a/k/a Seller Supreme LLC, David Alfih, and Marcus Bernard (collectively "Pioneer"), RZ Smoke Inc. ("RZ Smoke"), Star Zone Inc. ("Star Zone"), Urban Smoke Distributors ("Urban Smoke"), Vape More Inc. a/k/a More LLC ("Vape More"), and Vape Plus Distribution Corp. a/k/a G&A Distribution ("Vape Plus") (collectively, "Defendants").

## PRELIMINARY STATEMENT

Electronic cigarettes or "e-cigarettes" are battery-powered devices that heat nicotine-containing solutions ("e-liquids") to generate a nicotine-laced vapor inhaled by the user. E-liquids consist of natural or synthetic nicotine dissolved in inert compounds that can be flavored to taste like tobacco, but are most commonly flavored to taste like fruit, candy, ice cream, or other desserts.

The proliferation of flavored e-cigarettes has had a devastating impact on public health nationwide and in New York City, causing youth nicotine use to soar and reversing the decades-long decline in youth nicotine use. Every level of government has responded to this health emergency with legislation intended to prohibit youth from obtaining flavored e-cigarettes.

The present Defendants violate nearly every piece of protective legislation and contribute to this public health crisis by distributing flavored e-cigarettes throughout the City, including through websites that advertise and/or sell flavored e-cigarettes directly to City consumers. Defendants are long-standing violators of (1) the federal Prevent All Cigarette Trafficking ("PACT") Act, 15 U.S.C. § 375 *et seq.*, which effectively prohibits e-cigarette transactions through the mails and wires; (2) New York City Administrative Code § 17-715, which makes it "unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored

1

Case 1:24-cv-05161-GHW-JW    Document 1-45    Filed 07/08/24    Page 9 of 31

electronic cigarette or flavored e-liquid," and (3) N.Y. Public Health Law § 1399-*ll* (1-a), which prohibits e-cigarette shipments to anyone except licensed vapor products dealers. Defendants' conduct also causes, contributes to, and maintains a common law public nuisance by flooding the City with flavored e-cigarettes and causing a substantial and unreasonable interference with the public health and safety of a considerable number of persons. The City's causes of action under the PACT Act, the Public Health Law, and for public nuisance have already been upheld. *City of N.Y. v. Magellan Tech., Inc.*, 2024 U.S. Dist. LEXIS 93339, at *23 (S.D.N.Y. May 24, 2024). E-cigarette sales over the internet into the City have previously been enjoined. *City of N.Y. v. Artisan Vapor Franchise LLC*, No. No 19-CV-5693, 2020 U.S. Dist. LEXIS 205315, at *6-*7 (E.D.N.Y. Nov. 2, 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 220043 (Nov. 23, 2020).

The City is likely to succeed on the merits of its claim under the PACT Act, *inter alia*, because the PACT Act prohibits delivery of any e-cigarettes, flavored or not, unless the shipper complies with all tobacco laws of the consignee jurisdiction—an impossibility for the present Defendants given the City's complete prohibition on the sale, possession and offering for sale of the flavored e-cigarettes that comprise Defendants stock-in-trade.

New York City is likely to succeed on the merits of its claim under New York City Administrative Code ("Ad. Code") § 17-715, which prohibits *anyone* from selling, possessing or offering for sale flavored electronic cigarettes or e-liquids to anyone in New York City.

New York Public Health Law (hereinafter "Pub. Hlth. L.") § 1399-*ll* (1-a) prohibits the shipment of any e-cigarettes, flavored or not, to anyone not licensed as a vapor products dealer. The City is likely to succeed on the merits of its Public Health Law claim because no Defendant ships to licensed vapor products dealers; and at least two ship directly to the unlicensed public.

The substantial and undisputed evidence—drawn almost entirely from Defendants' own documents—entitles the City to a preliminary injunction to put an immediate halt to Defendants' unlawful conduct.

## FACTS

The facts pertinent to this motion, summarized below, are set forth in the Affirmation and exhibits of Assistant Corporation Counsel Elizabeth Slater, dated July 1, 2024 ("*Slater Aff.*"); the Affirmation of Michelle Morse, M.D., Chief Medical Officer and Deputy Commissioner for the Center for Health Equity and Community Wellness at the NYC Department of Health and Mental Hygiene, dated May 21, 2024 ("*Morse Aff.*"); and the Affirmation of Vincent Lesnak, Chief Executive Officer of investigatory firm Cross Border Solutions, LLC, dated May 20, 2024 ("*Lesnak Aff.*"). The facts establish the irreparable harm to the City from Defendants' distribution and sale of flavored e-cigarettes caused by each Defendant's (i) remote sales and delivery of e-cigarettes to consumers in violation of federal law; (ii) sale, possession, offering for sale, or possession with intent to sell flavored e-cigarettes in violation of City law; and (iii) delivery of e-cigarette to persons whose receipt is prohibited by State law.

### I.   The Harm Caused by the Proliferation of Flavored E-Cigarettes

The flavored e-cigarettes targeted in this action are so enormously attractive to youth that their introduction has triggered skyrocketing youth nicotine use, reversing a decades-long steady decline in youth smoking. *See* Maria Cooper et al., *Notes from the Field: E-cigarette Use Among Middle and High School Students-United States,* 71 MORBIDITY & MORTALITY WKLY. REP. 1283 (2022), https://www.cdc.gov/mmwr/volumes/71/wr/pdfs/mm7140a3-H.pdf; *Morse Aff.* ¶¶ 5–7. Flavored e-cigarettes are especially concerning because they lack the normal harshness of nicotine yet often contain even higher concentrations of nicotine than traditional cigarettes. *Morse Aff.* ¶ 6. By marketing devices delivering flavorful, milder vapors infused with higher nicotine

concentrations, the e-cigarette industry has created a "pediatric epidemic of youth e-cigarette use," potentially condemning the 90% of teen smokers who will continue to smoke into adulthood "to a lifetime of nicotine addiction and associated health risks." *Am. Compl.* ¶ 6. By late 2019, more than 5 million students reported active use of electronic nicotine delivery devices. *Id.* ¶¶ 34–35. In 2021, 11% of NYC public high school students reported using an e-cigarette in the past month; only 3% reported smoking cigarettes. *Id.* ¶ 36.

## II.    Facts Establishing Each Defendant's Violations of the PACT Act, Pub. Hlth. L. § 1399-*ll* (1-a), and NYC Ad. Code § 17-715 and Creation of a Public Nuisance

### A.    EnviroMD

The City possesses invoices showing sales of thousands of flavored e-cigarettes by Brooklyn-based EnviroMD to Star Vape, a Brooklyn-based e-cigarette distributor. Between September 2022 and August 2023, EnviroMD sold to Star Vape "Fume" brand e-cigarettes in "Pina Colada," "Mango," "Banana Ice" and "Gummy Bear" flavors, and "Myle" brand e-cigarettes in "Georgia Peach," "Iced Mint," and "Lush Ice" flavors. *Slater Aff.* Ex. A.

### B.    GT Imports

GT Imports, located in Plainview, New York produced documents to the City showing sales between September 2022 and August 2023 of approximately $1 million of e-cigarettes to distributors located in Brooklyn, Queens, and the Bronx, including Topoo Industries (Brooklyn), Sahara Wholesale (Queens), EZ Wholesale (Bronx), R and B Wholesale (Brooklyn), and "Jimmy's" (Brooklyn). *Slater Aff.* Ex. C. The e-cigarettes GT Imports sold into the City contained 5% nicotine and included "Jungle Juice," "Watermelon Ice" and "Kiwi Shake" flavors—all illegal flavors. *Id.*

Additional invoices obtained by the City demonstrate sales by GT Imports between March 2023 and August 2023 of thousands of flavored "Air Bar" and "Orion Bar" e-cigarettes in

4

Case 1:24-cv-05161-GHW-JW    Document 1-45    Filed 07/08/24    Page 12 of 31

"Strawberry Waffle Biscuit," "Cherry Cola," "Blueberry Pie" and "Pink Lemonade" flavors to Brooklyn-based Star Vape. *Id.* Ex. D.

### C. Kayla

Star Vape produced invoices to the City showing sales to Star Vape by then Brooklyn-based Kayla of large amounts of flavored e-cigarettes, including the "Stig" brand in "Mango," "Lush Ice," and "Apple Crisp" flavors, between August 2020 and November 2020. *Id.* ¶ 8 & Ex. E. The quantities of flavored e-cigarettes are significant—for example, the first line item on the August 17, 2020 invoice is for 100 10-packs of "Stig Lush Ice" at $105 each, totaling $10,500. *Id.* Ex. E.

Kayla also operates (or operated until recently) a website, *newyorkvapeking.com* or *NYVK.com,* selling e-cigarettes directly to the public under the name "The Vapery." *Lesnak Aff.* ¶¶ 3–9 & Exs. A, B. Orders for flavored e-cigarettes placed by a City investigator on Kayla's website on two different occasions requested delivery to a Brooklyn address. *Id.* ¶¶ 3, 7. Both orders were delivered by the U.S. Postal Service without requiring an adult signature upon delivery and without being labeled as containing e-cigarettes. *Id.* ¶¶ 5, 8.

### D. KLCC

Reports filed with the State of New York reporting e-cigarette sales by out-of-state sellers, required by the PACT Act[1] ("PACT Act Reports"), show purchases by KLCC from New Jersey-based distributor Smoking Sales LLC ("Smoking Sales"). *Slater Aff.* ¶ 10 & Ex. F. In April 2023, Brooklyn-based KLCC purchased 1,302 "units" of flavored e-cigarettes including the "Stiiizy" brand in mango ("MNGO"), watermelon, and fruit punch ("FRUPUN") flavors at a total cost of

---

[1] The PACT Act requires that all persons making delivery sales into a state or locality file reports documenting those sales with designated state or local offices. 15 U.S.C. § 376.

Case 1:24-cv-05161-GHW-JW    Document 1-45    Filed 07/08/24    Page 13 of 31

$33,339. *Id.* Ex. F at 2–3. In June 2023, KLCC also purchased 276 "units" of "Breeze" brand e-cigarettes in "BLURAZ", "BMINT", and "MNTL" flavors at a cost of $24,012. *Id.* Ex. F at 49. KLCC operates a website at *https://klcc-wholesale.com*, offering for sale "Over 1 Million Products" including "vapes," and "disposables," available through door-to-door delivery. *Id.* Ex. W.

### E.  MV Trading LLC a/k/a *Myvaporstore.com*

MV Trading LLC ("MV Trading") in Woodside, New York describes itself as an e-cigarette "super store" offering flavored e-cigarettes. *Id.* ¶ 11 & Ex. G. A report produced to the City by Arizona-based distributor YLSN a/k/a Happy Distro ("YLSN") shows that MV Trading made multiple purchases of flavored e-cigarettes from YLSN. *Id.* ¶ 12 & Ex. H.

### MV Trading Purchases from YLSN

| Date | Brand | Quantity |
|---|---|---|
| February 2023 | "Elf Bar," "Lost Mary," "Voopoo Drag Bar" | 7,200 "PCS" |
| December 2022 | "Elf Bar," "Novobar" | 10,400 "PCS" |
| November 2022 | "Elf Bar BC 5000" | 2,600 "PCS" |
| October 2022 | "Elf Bar," "Geek Bar," "Lost Mary" | 8,000 "PCS" |
| August 2022 | "Geek Bar," "Biff Bar," "Lykan Belo" | 1,950 "PCS" |

*Id.* Ex. H.

A PACT Act Report filed with the State of New York in April 2021 by Charlie's Chalk Dust, LLC, a manufacturer or distributor of flavored e-liquids located in Costa Mesa, California, shows MV Trading's purchases of over $13,000 worth of flavored e-cigarettes from Charlie's Chalk Dust, LLC. *Id.* ¶ 13 & Ex. I.

6

MV Trading operates the website https://www.myvaporstore.com, and thus offers for sale and possesses with intent to sell, through its website or otherwise, the enormous quantities of flavored e-cigarettes purchased from out-of-state suppliers.

### F. Pioneer

Brooklyn-based Pioneer operates the website *www.wevapeusa.com*, where it advertises and offers to sell and deliver dozens of brands of flavored e-cigarettes in multiple flavors. *Id.* ¶ 14 & Ex. J. PACT Act Reports filed with the State of New York establish that Pioneer obtains flavored e-cigarettes from various out-of-state distributors including YLSN, Smoking Sales, and Baylabs Inc. *Id.* ¶¶ 15-17 & Exs. K-M.

**Sales of E-cigarettes to Pioneer**

| Ex. | Date | Brand | Quantity | Vendor |
|-----|------|-------|----------|--------|
| **K** | June 2023 | "EB Design BC5000" | 2,400 "PCS" | YLSN |
| **L at 39** | May 2023 | "Mega Vape" | 450 units, total cost $22,200 | Smoking Sales |
| **M** | November 2022 | "Hyppe" brand | 250 retail packages, total cost $1,875 | Baylabs, Inc. |

The quantity of e-cigarettes purchased by Pioneer is inconsistent with personal use; Pioneer must have intended to sell these e-cigarettes to retailers, other distributors, and/or individuals through its website. In fact, Pioneer sells flavored e-cigarettes directly to the public. On March 11, 2024, a City investigator placed an order through Pioneer's website, *www.wevapeusa.com*, for an "Air Bar Mini, 2000 puff" e-cigarette in the flavor "Pacific Cooler." *Lesnak Aff.* ¶ 11. The City investigator listed a residential address in Brooklyn, New York as the delivery address. *Id.* ¶¶ 11–12. A few days later, a package containing the Air Bar product was delivered to this address. *Id.* ¶ 12. The package did not contain labeling indicating that it contained vapor products. The package

7

was delivered by the United Parcel Service ("UPS"), with a return address of "Marcus Bernard, 3472011345, Seller Supreme LLC, 1090 Coney Island Ave., Brooklyn, NY, 11230." *Id.* ¶ 13 & Ex. C.

On March 24, 2024, a City investigator ordered one "Suorin" brand "Cube Disposable 1500 puffs" e-cigarette in the flavor "Kiwi Lemon Shake" for delivery to the same Brooklyn address. *Id.* ¶ 15. On March 27, 2024, a package was received at that address. *Id.* ¶ 16. The package contained five "Hyde Rebel Pro" e-cigarettes in Strawberry, Kiwi, and Guava flavors, and a flavored Airbar e-cigarette labelled "wevapeusa free sample." *Id.* The package was delivered by UPS, with a return address of "Marcus Bernard, 3472011345, Seller Supreme LLC, 1090 Coney Island Ave., Brooklyn, NY, 11230," without a requirement of an adult signature or labels to indicate that it contained vapor products. *Id.* ¶ 17 & Ex. D.

### G. RZ Smoke

RZ Smoke, in New Hyde Park, New York, operates the website www.*rzsmoke.com*, advertising itself as an "Authorized Vape Wholesale Distributor." *Slater Aff.* ¶ 18 & Ex. N. Invoices from Brooklyn-based Star Vape show that between December 2020 until August 2023, RZ Smoke sold large quantities of flavored e-cigarettes to Star Vape, including the "Air Bar" brand in flavors "Peach," "Mango," and "Strawberry." *Id.* ¶ 19 & Ex. O. RZ Smoke's invoices to Star Vape ranged from $15,000 to $60,000. *Id.* Ex. O.

### H. Star Zone

Star Zone is an e-cigarette wholesaler in Oceanside, New York that maintains the website *https://starzoneny.com*, where it advertises dozens of e-cigarette brands in dozens of flavors. *Id.* ¶ 20 & Ex. P. Star Zone produced two spreadsheets evidencing deliveries to City retailers of approximately 14,000 flavored e-cigarettes worth $640,000 between December 2022 and February

2024. *Id.* ¶¶ 21–22 & Exs. Q, R. Star Zone thus and sold and offered to sell thousands of flavored e-cigarettes to multiple retail stores in the City.

### I.  Urban Smoke

Urban Smoke is a wholesaler of e-cigarettes in Woodside, New York with a Facebook page and website at *https://www.urbansmokedistributors.com* advertising "disposable vapes" "for sale" in multiple flavors with "free delivery." *Id.* ¶ 23 & Ex. X. Urban Smoke purchased flavored e-cigarettes from Arizona-based YLSN, including 9,100 packages of brands "EB Design" and "Lost Mary" in June 2023, *id.* Ex. K, and 16,000 packages of brands "EBDesign," "Funky Republic," Lost Mary" and "Geek Bar" between May and July 2023, *id.* ¶ 24 & Ex. H. Urban Smoke has also purchased flavored e-cigarettes from Defendant Vape More, including the brands "E&B," "Elf Bar," and "Lost Mary." *Id.* ¶ 25 & Ex. S. The quantity of e-cigarettes purchased by Urban Smoke is inconsistent with personal use and establishes intent to engage in subsequent sales and offers to sell to retailers, other distributors, and/or individuals. Urban Smoke also offers to sell and possesses with intent to sell or offer for sale flavored e-cigarettes from its website.

### J.  Vape More

Vape More is a wholesale and retail tobacco outlet in Latham, New York that maintains a website at *https://www.vapemoreinc.com* that sells dozens of brands of disposable flavored e-cigarettes. *Id.* ¶ 26 & Ex. T. On or about July 30, 2023, Vape More sold to Queens-based Urban Smoke brands of disposable flavored e-cigarettes including "Apple Peach," "Strawberry Ice," and "Watermelon Ice." *Id.* Ex. S.

### K.  Vape Plus

Vape Plus, in Brooklyn, operates the website *https://nyvapeplus.com*, where it offers for sale numerous brands of disposable flavored e-cigarettes, including "Elf Bar," "E. B. 5000," "Lost

Mary," and "Fume." The website promises "same day delivery," indicating that deliveries are made locally within New York City. *Id.* ¶ 28 & Ex. U.

PACT Act reports show that Vape Plus made numerous purchases of e-cigarettes from New Jersey-based Smokin Sales, including a purchase of hundreds of units of "Salt Bae" e-juice (a flavored nicotine e-liquid) as well as "Smok" and "Uwell" brand e-cigarettes around April 2023, *id.* ¶ 29 & Ex. F at 19-20, and a purchase of 460 units of "Lava," "Mega Vape," and "Dragbar" brands of flavored e-cigarettes around June 2023, *id.* Ex. F at 63.

A document produced to the City by Arizona-based YLSN shows that in September 2022, Vape Plus purchased approximately 8,000 packages of flavored e-cigarettes, including the brands "Elf Bar" and "Lykcan Belo." *Id.* Ex. H. In October 2022, Vape Plus purchased 15,000 packages of flavored e-cigarettes from YLSN, including brands "Elf Bar," "Lost Mary," "Biffbar" and "Geek Bar." *Id.*

Finally, a document produced by Florida-based distributor Safa Goods shows that, from June 2022 to January 2024, Vape Plus purchased hundreds of flavored e-cigarettes from Safa Goods, including brands "EB Design," "Funky Republic," and "Lost Mary." *Id.* ¶ 31 & Ex. V.

The quantity of e-cigarettes purchased by Vape Plus is inconsistent with personal use; hence Vape Plus must have intended to purchase the e-cigarettes for subsequent sale to retailers, other distributors, and/or individuals through its website. From its website, Vape Plus sells, offers to sell, and possesses with intent to sell or offer for sale flavored e-cigarettes within the City.

## ARGUMENT

The City should be granted a preliminary injunction prohibiting Defendants from: (i) violating the PACT Act by making remote sales and deliveries of e-cigarettes to consumers; (ii) violating Ad. Code § 17-715 by selling, offering and possessing flavored e-cigarettes in New

Case 1:24-cv-05161-GHW-JW          Document 1-45          Filed 07/08/24          Page 18 of 31

York City; (iii) violating Pub. Hlth. L. § 1399-*ll* (1-a) by shipping any e-cigarettes to unauthorized persons in New York City; and (iv) causing a public nuisance by distributing flavored e-cigarettes.

A movant for a preliminary injunction must "put forth evidence demonstrating '(1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable harm; and (3) a balancing of the equities tipping in its favor.'" *61 W. 62 Owners Corp. v. CGM EMP LLC*, 77 A.D.3d 330, 334 (1st Dep't 2010) (quoting *Doe v. Axelrod*, 73 N.Y.2d 748, 750 (1988)); *see also* CPLR § 6301; *Terrell v. Terrell*, 279 A.D.2d 301, 303 (1st Dep't 2001). The elements may be proven by "affidavit and other competent proof, with evidentiary detail." *Scotto v. Mei*, 219 A.D.2d 181, 182 (1st Dep't 1996). The City has met its evidentiary burden as to all three prongs, warranting entry of a preliminary injunction.

### I. The City Is Likely to Succeed on the Merits of Its Claims

The City's evidence in support of this motion consists principally of Defendants' own documents establishing sales of flavored e-cigarettes in violation of the PACT Act, Ad. Code § 17-715, and Pub. Hlth. L. § 1399-*ll* (1-a), and that cause a public nuisance.

### A. The City Has Proven that EnviroMD, GT Imports, Kayla, Pioneer, RZ Smoke, Star Zone, and Vape More Violated the PACT Act

The City has previously established that sales of e-cigarettes, flavored or otherwise, will violate the PACT Act. *City of N.Y. v. Magellan Tech., Inc.*, 2024 U.S. Dist. LEXIS 93339, at *23 (S.D.N.Y. May 24, 2024) (denying motions to dismiss PACT Act claims against e-cigarette sellers). The PACT Act regulates "delivery sales" of e-cigarettes to "consumers", namely purchases or deliveries of e-cigarettes where buyer and seller are not in one another's presence. 15 U.S.C § 376a. A "consumer" is any person buying e-cigarettes that is not "lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco." 15 U.S.C. § 375(4).

Case 1:24-cv-05161-GHW-JW    Document 1-45    Filed 07/08/24    Page 19 of 31

Every sale by a Defendant to a New York City entity is a PACT Act "delivery sale" because the orders are not face-to-face, but are placed by telephone, mail or e-mail. *See* 15 U.S.C. § 375(5); *Slater Aff*. Exs. B, G, H, I, J, K, L, N, O, P, T, U, V, W. No City purchaser of a flavored e-cigarette from a Defendant can possibly be a "lawfully operating" tobacco business because, *inter alia*, those buyers all necessarily violate Ad. Code § 17-715 merely by possessing or offering for sale on their websites flavored e-cigarettes in the City. Because a City purchaser of a flavored e-cigarette cannot be a "lawfully operating" tobacco business, the purchasers are all "consumers" under the PACT Act. *See Magellan Tech.,* 2024 U.S. Dist. LEXIS 93339, at *23 ("The Court finds that the term 'lawfully operating' means compliance with laws under the plain meaning of the statute."); *City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576, at *47-48 (S.D.N.Y. May 31, 2019) ("the PACT Act exempts only those who are operating lawfully," and "cogs in an illegal cigarette distribution scheme" were not); *California v. Azuma Corp.*, 2023 U.S. Dist. LEXIS 159790, at *31 (E.D. Cal. Sep. 7, 2023) ("Because [distributor's] customers do not have licenses and do not remit applicable taxes to California, they are not lawfully operating and are therefore, consumers as defined by the PACT Act.").

The PACT Act requires a delivery seller to comply with all tobacco laws in the jurisdiction into which the product was delivered. No Defendant that sold to a City entity is in compliance because those Defendants made delivery sales to consumers but did not comply with the flavor prohibition in Ad. Code § 17-715. The sales invoices attached to the Slater Affirmation establish that EnviroMD, GT Imports, Kayla, and RZ Smoke sold flavored e-cigarettes to Star Vape in the City. *Slater Aff.* Exs. A, D, E, O. Invoices, customer lists, and transaction records attached to the Slater Affirmation establish that GT Imports, Star Zone, and Vape More sold flavored e-cigarettes to other consumers in the City. *Slater Aff.* Exs. C, Q, R, S. In addition, Kayla and Pioneer sold to

12

a City agent via the internet. *Lesnak Aff.* All of these sales are PACT Act violations for which penalties, injunctive relief and damages are available.[2]

### B. The City Has Conclusively Established that All Defendants Have Violated Ad. Code § 17-715(b)(1)

The New York City Administrative Code prohibits the sale, offering for sale, possession with intent to sell, or possession with intent to offer for sale flavored e-liquids and e-cigarettes:

> *Sale of flavored tobacco products, flavored electronic cigarettes and flavored e-liquid prohibited:*
>
> * * *
>
> (b) 1. It shall be unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid.
>
> 2. There shall be a presumption that an electronic cigarette retail dealer, as defined in section 20-560, in possession of six or more flavored electronic cigarettes, or more than 12 fluid ounces (354.882 mL) of flavored e-liquid, possesses such flavored electronic cigarettes or flavored e-liquid with intent to sell or offer for sale.

Ad. Code § 17-715(b). The evidence and exhibits set forth in the Slater Affirmation (summarized *supra* at 4–9) establish indisputably that certain Defendants did sell flavored e-cigarettes in New York City: EnviroMD, GT Imports, Kayla, RZ Smoke, Star Zone, and Vape More. *Slater Aff.* Exs. A, C, D, E, O, Q, R, S. Kayla and Pioneer sold flavored e-cigarettes over the Internet to a City agent. *Lesnak Aff.*[3] The remaining Defendants—KLCC, MV Trading, Urban Smoke, and Vape

---

[2] Defendants' sales also violated additional PACT Act requirements. A delivery seller must label any package containing e-cigarettes as such and must require an adult signature upon delivery. 15 USC §§ 376a(b)(1), (4). None of the e-cigarette delivery sales by Kayla and Pioneer met either requirement. *Lesnak Aff.* ¶¶ 5, 8, 12, 13, 16.

[3] Defendants have argued that Ad. Code § 17-715 (b)(1) was not intended to regulate sales by a distributor to another in-City distributor, only City retailers. But the plain language of the statute makes no distinction between *retail* sales and *wholesale* sales, stating only "[i]t shall be unlawful for **any** person to sell … **any** flavored electronic cigarette or flavored e-liquid." Ad. Code § 17-715(b)(1) (emphasis added). The use of

13

Plus, all New York City based entities—maintain websites that violate the Ad. Code by offering flavored e-cigarettes for sale and by possessing e-cigarettes with the intent to sell or offer to sell them. *Slater Aff.* Exs. G, W, U, X.

### C. Kayla and Pioneer Have Violated Pub. Hlth. L. § 1399-*ll* (1-a)

The evidence conclusively establishes that Kayla and Pioneer have violated N.Y. Pub. Hlth. L. § 1399-*ll (1-a)* and (3).[4] N.Y. Pub. Hlth. L. § 1399-*ll (1-a)* states that:

> **1-a.** It shall be unlawful for any person engaged in the business of selling vapor products to ship or cause to be shipped any vapor products intended or reasonably expected to be used with or for the consumption of nicotine to any person in this state who is not: (a) a person that receives a certificate of registration as a vapor products dealer under [N.Y. Tax L. art. 28-C]….

The statute further specifies that "a person is a licensed or registered agent or dealer described in paragraph (a) of this subdivision" if his or her name appears on a list of licensed or registered agents or vapor product dealers published by the department of taxation and finance, or if such person is licensed or registered as an agent or dealer" under N.Y. Tax L. art. 28-C. *Id.*

Kayla and Pioneer violated Pub. Hlth. L. § 1399-*ll (1-a)* by selling flavored e-cigarettes to a City agent who was not licensed or registered as an e-cigarette agent or dealer. Those purchases by a City agent show that Kayla and Pioneer sell indiscriminately to the public over the internet. *Lesnak Aff.* ¶¶ 3–17. Both companies fulfilled internet orders by mailing flavored e-cigarettes to the name and residential addresses in the City provided with each order. The person placing the

---

the term "any" bespeaks an intent for the broadest application, with no "carve-out" for "distributors." *See, e.g., United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning…. Congress did not add any language limiting the breadth of that word, and so we must read [the relevant statute] as referring to all 'terms of imprisonment,' including those imposed by state courts").

[4] The City has standing to assert a Pub. Hlth. L. § 1399-*ll* claim because it imposes an excise tax on cigarettes. *Magellan Tech.*, 2024 U.S. Dist. LEXIS 93339, at *31 ("Under a plain reading of the statute, the City has standing to enforce the Public Health Law if the City taxes cigarettes or vapor products. Therefore, the City, which taxes cigarettes, has standing.").

order is not named on "a list of licensed or registered agents or vapor product dealers published by New York State, licensed or registered as an agent or dealer" under N.Y. Tax L. art. 28-C. *Lesnak Aff.* ¶¶ 10, 18. Kayla and Pioneer thus each shipped or caused to be shipped vapor products to persons not within the limited category of permissible recipients under Pub. Hlth. L. § 1399-*ll (1-a)*, but instead shipped to an ordinary residential addresses. That conduct should be enjoined.

Pub. Hlth. L. § 1399-*ll*(3) also requires that any shipment of vapor products "must be" either "in the cigarette manufacturer's original container or wrapping" or "plainly and visibly marked with the words 'vapor products.'" None of the packages received by the City agent from either Kayla or Pioneer were plainly and visibly marked with the words "vapor products." *Lesnak Aff.* ¶¶ 5, 8, 12, 16. Those violations should be enjoined as well.

### D. The City Is Likely to Succeed on Its Claim that Defendants Cause, Create, Contribute to and Maintain a Public Nuisance

A public nuisance "is an offense against the State" consisting of "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all, in a manner such as to…endanger or injure the property, health, safety or comfort of a considerable number of persons." *Copart Indus. v. Consol. Edison Co. of N.Y.*, 41 N.Y.2d 564, 568 (1977); *Reid v. Kawasaki Motors Corp.*, 189 A.D.2d 954, 957 (3d Dep't 1993) ("The *sine qua non* of an action for public nuisance…is the interference by a defendant with a public right.").

A public nuisance claim requires neither inherently tortious conduct nor the violation of a duty to another. *See New York v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir. 1985) (holding defendant "liable for maintenance of a *public* nuisance irrespective of negligence or fault"). Rather, it requires only "an unreasonable interference with a right common to the general public." *Restat 2d of Torts* § 821B. "Circumstances that may sustain a holding that an interference with a public right is unreasonable include…(a) [w]hether the conduct involves a significant interference with

the public health, the public safety, the public peace, the public comfort or the public convenience, or (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right." *Id*. All three circumstances are present here.

### 1.    The City Has Demonstrated Significant Interference with the Public Health of Its Citizens

"To prevail on a public nuisance claim under New York law, a plaintiff must show that the defendant's conduct amounts to a substantial interference with the exercise of a common right of the public, thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons." *In re MTBE Products Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013) (citation omitted). Defendants' illegal distribution of flavored e-cigarettes has unquestionably injured the health of a considerable number of persons, in particular the City's youth. *See generally Morse Aff.* The distribution and sale of e-cigarettes and e-liquids is a public nuisance because it "involves a significant interference with the public health," which is "a right common to the general public." *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 647 (N.D. Cal 2020) (quoting Restatement (Second) of Torts§ 821B) (applying New York law); *In re Opioid Litig.*, 2018 N.Y. Misc. LEXIS 2428, at *81 (Sup. Ct. Suffolk Cnty. 2018) (rejecting defendants' claim that public health is not a right common to the general public). A municipal corporation may "bring an action to restrain a public nuisance which allegedly has injured the health of its citizens." *New York Trap Rock Corp. v. Town of Clarkstown*, 299 N.Y. 77, 83–84 (1949) ("a public nuisance which injures the health of the citizens of a municipality imperils the very existence of that municipality as a governmental unit," and so "where the public health is involved, the right of [a

16

Case 1:24-cv-05161-GHW-JW    Document 1-45    Filed 07/08/24    Page 24 of 31

municipality] to bring…an action to restrain a public nuisance may be tantamount to its right of survival").

The City has shown that the proliferation of e-cigarettes injures the public health because the products incontrovertibly promote youth nicotine addiction. *Morse Aff.* ¶¶ 5, 8, 9 (describing the health impacts of e-cigarette use). Courts have already held that "youth e-cigarette use and wholesale addiction of kids to nicotine" constitutes "a public health crisis," sustaining public nuisance claims by municipalities, *Juul Labs*, 497 F. Supp. 3d at 648, and the City has already obtained an injunction against internet e-cigarette sellers to youth. *City of N.Y. v. Artisan Vapor Franchise LLC*, No. No 19-CV-5693, 2020 U.S. Dist. LEXIS 205315, at *6-*7 (E.D.N.Y. Nov. 2, 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 220043 (Nov. 23, 2020) (recognizing "underage e-cigarette use" as endangering "the health of New York City youth" and granting injunctive relief against sellers of e-cigarettes). The presence of statutes prohibiting flavored e-cigarette sales further demonstrates the existence of a public health injury. *Id.* at *5 ("[T]he fact that the City passed Administrative Code § 17-706 prohibiting the sale of e-cigarettes to people under the age of twenty-one further supports the allegation that a public nuisance exists.").

Most recently, the *Magellan* Court upheld the City's public nuisance claim, holding that the complaint "alleges repeatedly that smoking [e-cigarettes] is creating a public health crisis, especially among young people. Public health crises are routinely upheld as a 'substantial interference with a public right' and 'injurious to the health of a considerable number of people.'" *Magellan Tech.*, 2024 U.S. Dist. LEXIS 93339, at *35 (quoting *In re Opioid Litig.*, 2018 N.Y. Misc. LEXIS 2428, at *22).

Case 1:24-cv-05161-GHW-JW   Document 1-45   Filed 07/08/24   Page 25 of 31

Accordingly, the City is likely to succeed on the merits of its public nuisance claim that

Defendants injure the public health of its residents by flooding the City with flavored e-cigarettes.

### 2. Defendants' Conduct Is A Nuisance *Per Se*

Defendants' conduct also violates a statutory prohibition, qualifying as a "nuisance *per se*."

To establish a nuisance *per se*, a plaintiff need show only a violation of law; no proof of intent or

negligence is necessary because unreasonableness is presumed:

> The City's reliance on two New York State statutes…serves as evidence of a
> nuisance *per se*. *See… Branch v. W. Petro., Inc.*, 657 P.2d 267 (Utah
> 1982) ("When the conditions giving rise to a nuisance are also a violation of
> statutory prohibition, those conditions constitute a nuisance per se, and the issue
> of the reasonableness of the defendant's conduct and the weighing of the relative
> interests of the plaintiff and defendant is precluded because the Legislature has,
> in effect, already struck the balance in favor of the innocent party.").

*City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 355 (E.D.N.Y. 2007). Defendants' sales

and deliveries in or into New York City violate the PACT Act,  Ad. Code § 17-715, and Pub. Hlth.

L. §1399-*ll* (1-a), establishing a nuisance *per se*.

### 3. Defendants Know or Have Reason to Know that Their Conduct is of a Continuing Nature and Has a Significant Effect upon the Public Right

Defendants' interference with public health is also unreasonable because "the gravity of

the harm outweighs the utility of the actor's conduct," their "conduct is of a continuing nature,"

"has produced a permanent or long-lasting effect," and is known or should be known to have a

significant effect upon a public right. *Restat 2d of Torts* §§ 821B, 826.[5] Defendants have sold

flavored e-cigarettes for several years, a long-standing interference with public health. The passage

by every level of government of laws forbidding sales of flavored e-cigarettes confirms the gravity

of the public harm, *see supra* at 1–2, as do the public health injuries documented in the Amended

---

[5] While Section 826 applies most directly to private nuisance claims, the "rule stated in this Section" also
"may, and commonly does, apply to conduct that results in a public nuisance." *Id.* § 826 cmt. A.

Complaint and the Morse Affirmation. *Am. Compl.* ¶¶ 39-43; *Morse Aff.* ¶¶ 5, 8, 9. There is no

net utility to Defendants' conduct, a money-making venture benefitting them alone.[6] Indeed, to

date, the FDA not identified a single flavored e-cigarette that benefits the public more than it harms

it.[7] *See supra at 2*. Defendants' conduct is unreasonable.

For purposes of a public nuisance claim, it is enough that a defendant knew or should have

known that its conduct caused or contributed to the nuisance, such as when a previously unaware

defendant persists in conduct after learning of an invasion of a public right. *Restat 2d of Torts*

§ 825 cmt. D. The filing of the Complaint in this action informed Defendants that they have created

a public nuisance; no Defendant has offered to cease its conduct, and by virtue of their attempts to

dismiss the complaint, seek to continue in conduct they are on notice of as a nuisance. Defendants

know or have reason to know that their ongoing conduct injures a public right.

### 4.    The City Has Demonstrated Causation

The causation requirement for public nuisance liability requires proof that a defendant,

alone or with others, created, contributed to, or maintained the alleged interference with the public

right. *City of N.Y. v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 281 (E.D.N.Y. 2004). The evidence

of Defendants' sales of flavored e-cigarettes and their possession and offering of flavored e-

---

[6] Claims that flavored e-cigarettes help adult smokers quit smoking have never been proven. "The evidence about the role of different flavored [e-cigarette] use and smoking cessation outcomes is inconclusive." Alex C. Liber et al., *The role of flavored electronic nicotine delivery systems in smoking cessation: A systematic review*, Drug and Alcohol Dependence Rep., June 2023, at 1.

[7] An applicant for premarket authorization of an e-cigarette must show a net benefit to the public health by establishing that the benefit from the product's ability to reduce adult use of combustible tobacco exceeds the risk of youth initiation. To date no flavored e-cigarette has met that standard except for certain menthol products manufactured by NJOY LLC, which are not at issue in this Action. *See* FDA, *E-Cigarettes Authorized by the FDA*, https://digitalmedia.hhs.gov/tobacco/hosted/E-Cigarettes-Authorized-FDA-June2024.pdf (June 2024) (FDA list of approved e-cigarettes).

19

Case 1:24-cv-05161-GHW-JW    Document 1-45    Filed 07/08/24    Page 27 of 31

cigarettes, *see supra* at 4–9, demonstrates that their contribution to and maintenance of a public nuisance in New York City.

Whether or not Defendants are "distributors" that do not sell *directly* to the public (although Pioneer and Kayla do) is immaterial. Nuisance liability does not require conduct that is the immediate or last cause of injury, only conduct that is "the dominant and relevant fact absent which the public nuisance would not have resulted where and under the circumstances it did." *Beretta U.S.A. Corp.*, 315 F. Supp. 2d at 282. Retail sales of flavored e-cigarettes may technically be the immediate or last cause of injury, but the sales could not have occurred absent the Defendants' steady supply of flavored e-cigarettes to retailers. Defendants set in motion and are a force in "the sequence of events resulting in injury to the public." *Id.* Indeed, the *Magellan* Court held that the City's allegations that Defendants' supply of flavored e-cigarettes to wholesalers and distributors sufficiently alleged causation of a public health crisis. *Magellan Tech., Inc.*, 2024 U.S. Dist. LEXIS 93339, at *35-*36. Moreover, causation "need not be so proximate as in individual negligence case[s] where the welfare and safety of an entire community is at stake." *New York v. Juul Lab'ys*, 2022 N.Y. Misc. LEXIS 4983, at *31-*32 (Sup. Ct., N.Y. Cnty. July 14, 2022)).

Defendants are a cause of the public nuisance and liability encompasses all contributors. "[E]veryone who creates a nuisance or participates in the creation or maintenance…of a nuisance are liable jointly and severally for the wrong and injury done thereby." *State of New York v. Fermenta ASC Corp.*, 160 Misc. 2d 187, 195 (Sup. Ct., Suffolk Cnty. 1994) (citations omitted); *Penn Cent. Transp. Co. v. Singer Warehouse & Trucking Corp.*, 86 A.D.2d 826, 828 (1st Dep't 1982) (everyone who creates or participates in the creation or maintenance of a nuisance faces liability). The presence of multiple actors does not bar injunctive relief:

> Where it is difficult or impossible to separate the injury caused by one
> contributing actor from that caused by another and where each

20

> contributing actor's responsibility individually does not constitute a
> substantial interference with a public right, defendants may still be
> found liable for conduct creating in the aggregate a public nuisance if
> the suit is one for injunctive relief.

*A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. at 347.

Defendants cannot argue that their own illegal conduct is insubstantial because others participate, as if the number of actors causing a nuisance makes each individual offender an insubstantial factor. Here, the public nuisance exists precisely because the large number of actors, including Defendants, operate as an integrated supply chain making flavored e-cigarettes ubiquitous in the City.

## II.   Irreparable Harm Is Presumed

Irreparable harm is presumed when a government moves for injunctive relief to remedy statutory injunctions. *City of N.Y. v. Beam Bike Corp*., 206 A.D.3d 447, 447-48 (1st Dep't 2022) ("A municipality seeking a preliminary injunction to enforce compliance with its ordinances or regulations in order to protect the public interest…need only demonstrate a likelihood of success on the merits and that the equities weigh in its favor; it is not required to show proof of irreparable harm."); *see also Cnty. of Westchester v. United Water New Rochelle,* 32 A.D.3d 979, 980 (2d Dep't 2006); *City of N.Y. v. Bilynn Realty Corp*., 118 A.D.2d 511, 512-13 (1st Dep't 1986); *People v. Trump*, No. 452564/2022, 2022 N.Y. Misc. LEXIS 6657, at *9 (Sup. Ct., N.Y. Cnty. 2024); *see also California v. Am. Stores Co.*, 495 U.S. 271, 295 (1990) ("In a Government case the proof of the violation of law may itself establish sufficient public injury to warrant relief."). Having demonstrated Defendants' violations of the PACT Act, Ad. Code § 17-715, and Pub. Hlth. L. § 1399-*ll,* irreparable harm is presumed, without proof of any additional facts.

21

### III.   The Balance of Equities Tips in Favor of the City

The balance of the equities tips in the City's favor. Absent a preliminary injunction, the City would suffer "greater injury…than the imposition of the injunction would cause to [the nonmoving party]." *Laro Maint. Corp. v. Culkin*, 255 A.D.2d 560, 561 (2d Dep't 1998). "In balancing the equities, the protection of the public is of paramount consideration." *Smithtown v. Schleider*, 156 A.D.2d 668, 668-69 (2d Dep't 1989).

Here, it is critical that the City be able to enforce regulations such as Ad. Code § 17-715 and Pub. Hlth. L. § 1399-*ll*, thereby protecting public health and preventing nicotine addiction among youth. In contrast, Defendants' pecuniary losses cannot outweigh the need to protect the public. *See Bilynn Realty Corp.*, 118 A.D.2d at 514 (noting that "a balancing of equities" cannot favor defendants "who failed to act diligently to legitimize" their business once they were notified that their business activities were illegal).

### <u>CONCLUSION</u>

The City respectfully requests that the Court issue a preliminary injunction pursuant to CPLR § 6301 enjoining all Defendants (i) from violating the PACT Act, Ad. Code §17-715, and Pub. Hlth. L. 1399-*ll* (1-a) by selling flavored e-cigarettes to entities located within the City and (ii) for such other relief as to the Court seems just and proper.

22

Dated:      New York, New York
              July 1, 2024

                              MURIEL GOODE-TRUFANT
                              Acting Corporation Counsel of the
                               City of New York
                              *Attorney for Plaintiff The City of New York*
                              100 Church Street, Rm. 20-099
                              New York, New York 10007
                              (212) 356-2032

                    By:      */s/ Aatif Iqbal*
                              Eric Proshansky
                              Aatif Iqbal
                              Alexandra Jung
                              Elizabeth Slater

                              Assistant Corporation Counsels

23

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing memorandum of law complies with the word count limitations set forth in Rule 202.8-b of the Uniform Civil Rules for the Supreme Court and the County Court. This memorandum of law contains 6,980 words, excluding parts of the document exempted by Rule 202.8-b(b).

_/s/ Aatif Iqbal_
Aatif Iqbal

24