UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

THE CITY OF NEW YORK,              :

                        :    Case No. 1:24-cv-5161-GHW-JW

           Plaintiff,    :

                        :

v.        - against –        :

                        :

ENVIROMD GROUP LLC *et al.*,   :

                        :

          Defendants.   :

-------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS VAPE MORE INC.'S AND VAPE PLUS DISTRIBUTION CORP.'S MOTION TO DISMISS

Ryan D. Callinan
Krupa A. Patel
Eric N. Heyer (*pro hac vice* pending)
Joseph A. Smith (*pro hac vice* pending)
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, DC 20036
Phone: 202.331.8800
Ryan.Callinan@ThompsonHine.com
Krupa.Patel@ThompsonHine.com
Eric.Heyer@ThompsonHine.com
Joe.Smith@ThompsonHine.com

*Counsel for Defendants Vape More Inc. and Vape Plus Distribution Corp.*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

    A.    Electronic Cigarettes Are a Less Harmful Nicotine Delivery Alternative to Combustible Cigarettes ..................................................................................... 1

    B.    FDA Regulation of Electronic Cigarettes ................................................... 3

    C.    New York State and New York City Regulation of Electronic Cigarettes. ............ 5

    D.    The City's First Amended Complaint ........................................................... 7

LEGAL STANDARD ........................................................................................................ 10

ARGUMENT ...................................................................................................................... 10

    A.    The City Fails to Plead a Plausible Claim for Violations of the PACT Act .......... 10

        1.    The City does not have standing to assert a PACT Act claim relating to electronic cigarettes because the City has not adopted an excise tax on electronic cigarettes. ..................................................................... 11

        2.    The City has not alleged facts that would support a finding that Vape Plus and Vape More violated the PACT Act's reporting requirements. ............ 12

        3.    The City has not alleged facts that would support a finding that Vape More and Vape Plus violated the PACT Act's delivery sales requirements. ...... 15

    B.    The City Fails to Plead a Plausible Claim for Violations of N.Y. Public Health § 1399-*ll* ............................................................................................................ 23

    C.    The City Fails to Plead a Plausible Claim for Violations of New York City Administrative Code § 17-715(b)(1) ................................................................ 27

    D.    The City Fails to Plead a Plausible Public Nuisance Claim ............................... 28

CONCLUSION .................................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ...................................................................................10, 23, 28, 30

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................10, 23, 26

*Blair Candy Co. v. Altoona Area Sch. Dist.*,
613 A.2d 159 (Pa. Commw. 1992) ..........................................................................24

*Bragg v. Matanuska-Susitna Borough*,
192 P.3d 982 (Alaska 2008) ....................................................................................24

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ................................................................................................21

*Cook v. United States*,
86 F.3d 1095 (Fed. Cir. 1996) ................................................................................11

*Frederickson v. Luedtke Const. Co.*,
427 F. Supp. 1309 (W.D. Mich. 1977) ...................................................................18

*George v. Uninsured Empirs. Fund (In re George)*,
361 F.3d 1157 (9th Cir. 2004) ................................................................................11

*Gordon Surgical Grp. v. Empire Healthchoice HMO, Inc.*,
No. 21-cv-4796, 2023 U.S. Dist. LEXIS 218450 (S.D.N.Y. Dec. 7, 2023) ...........10

*Grand River Enters. Six Nations Ltd. v. Sullivan*,
No. 3:16-cv-01087-WWE, 2018 U.S. Dist. LEXIS 165114 (D. Conn. Sept. 26,
2018) .......................................................................................................................13

*Grand River Enters. Six Nations v. Boughton*,
988 F.3d 114 (2d Cir. 2021) ...................................................................................13

*Helvering v. Hammell*,
311 U.S. 504 (1941) ................................................................................................19

*Hicksville Water Dist. v. Philips Elec. North Am. Corp.*,
No. 17-CF-4442 (ADS) (ARL), 2018 U.S. Dist. LEXIS 53342 (E.D.N.Y. Mar.
29, 2018) .................................................................................................................29

*Johnson v. United States,*
    529 U.S. 694 (2000)................................................................................18

*Leocal v. Ashcroft,*
    543 U.S. 1 (2004)..................................................................................22

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.,*
    171 F.3d 818 (3d Cir. 1999)..................................................................18

*Loper Bright Enters. v. Raimondo,*
    144 S. Ct. 2244, 219 L. Ed. 832 (2024)...........................................25-26

*Merrick v. UnitedHealth Grp. Inc.,*
    175 F. Supp. 3d 110 (S.D.N.Y. 2016)...................................................10

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
    725 F.3d 65 (2d Cir. 2013)....................................................................28

*New York v. Mt. Tobacco Co.,*
    942 F.3d 536 (2d Cir. 2019)..................................................................13

*Salute v. Stratford Greens Garden Apartments,*
    135 F.3d 293 (2d Cir. 1998)..................................................................19

*United States v. Figueroa,*
    165 F.3d 111 (2d Cir. 1998)..................................................................22

*United States v. Thompson/Center Arms Co.,*
    504 U.S. 505 (1992) (plurality opinion) ...............................................22

**Statutes**

Prevent All Cigarette Trafficking Act, 15 U.S.C. §§ 375, *et. seq.*, ......................................*passim*

15 U.S.C. § 375 (2009) ....................................................................................17, 18

15 U.S.C. § 376 (2009) ................................................................................17, 18, 19

21 U.S.C. § 331 ........................................................................................................21

21 U.S.C. § 337 ........................................................................................................21

21 U.S.C. § 387b ......................................................................................................21

21 U.S.C. § 387g ........................................................................................................5

21 U.S.C. § 387j ...................................................................................................3, 21

N.J. Rev. Stat. § 54:40B-6 .......................................................................................19

N.M. Stat. Ann. § 7-12A-7 .................................................................................19

N.Y. Pub. Health Law § 1399-aa ....................................................................5, 25

N.Y. Public Health Law §1399-bb ........................................................................6

N.Y. Public Health Law § 1399-*ll* .............................................................. *passim*

N.Y. Public Health Law § 1399-mm-1 ...........................................................6, 29

N.Y. Public Health Law § 1399-cc ......................................................................19

N.Y. Public Health Law § 1399-oo ......................................................................24

N.Y. Tax Law § 1180 ...........................................................................................16

N.Y. York Tax Law § 1183 .............................................................................16, 20

**Regulations**

N.Y.C. Admin. Code § 11-1301 ...........................................................................24

N.Y.C. Admin. Code § 11-1302 ...........................................................................24

N.Y.C. Admin. Code § 11-2001 ...........................................................................24

N.Y.C. Admin. Code § 17-176 .............................................................................24

N.Y. C. Admin. Code § 17-702 ............................................................................24

N.Y.C. Admin. Code § 17-706 ...............................................................................7

N.Y.C. Admin. Code § 17-710 .............................................................................27

N.Y.C. Admin. Code § 17-715 ..................................................................... *passim*

N.Y.C. Admin. Code § 17-717 .............................................................................27

N.Y.C. Admin. Code § 20-561 .............................................................................16

24 R.C.N.Y. § 28-02 .............................................................................7, 8, 9, 27, 28

## INTRODUCTION

Defendants Vape More Inc. ("Vape More") and Vape Plus Distribution Corp., ("Vape Plus") (collectively, the "Defendants"), by and through their undersigned counsel, respectfully request that this Court grant their motion to dismiss the claims that Plaintiff The City of New York (the "City") has brought against them in the First Amended Complaint ("FAC"). The City has failed to allege sufficient facts to state a plausible claim against Defendants or to establish that it has statutory standing. For the reasons set forth in greater detail herein, this Court should grant Defendants' motion to dismiss in its entirety.

## BACKGROUND

**A.    Electronic Cigarettes Are a Less Harmful Nicotine Delivery Alternative to Combustible Cigarettes**

Electronic cigarettes are hand-held devices that enable a user to inhale an aerosol that contains nicotine.[1] Unlike traditional cigarettes, electronic cigarettes do not burn tobacco leaf or any other substance through combustion; rather, a nicotine-containing liquid (called "e-liquid") is heated by a battery-powered heating element and aerosolized to create the resulting "vapor" that users can inhale.[2]

---

[1] Electronic cigarettes are also referred to a "e-cigarettes," "electronic nicotine delivery systems" and "ENDS."

[2] The photograph below from the U.S. Food and Drug Administration's website shows examples of different types of electronic cigarettes:

Because electronic cigarettes do not expose users to toxins that are created by the burning of tobacco leaf, they present substantially fewer health risks than do traditional combustible cigarettes. *See, e.g.*, National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes*, National Academies Press, Summary at 1 (2018) ("While e-cigarettes are not without health risks, they are likely far less harmful than combustible tobacco cigarettes."); *accord Breeze Smoke, LLC v. FDA*, 18 F.4th 499, 505 (6th Cir. 2021) (noting that e-cigarettes "may provide a beneficial alternative to combustible cigarettes because they deliver nicotine without also bombarding the user's lungs with the toxins found in cigarettes"). The U.S. Food and Drug Administration ("FDA") itself has concluded that electronic cigarettes "are generally likely to have fewer and lower concentrations of harmful and potentially harmful constituents (HPHCs) than combustible cigarettes, and biomarker studies demonstrate significantly lower exposure to HPHCs among current exclusive [electronic cigarette] users than current smokers." *Wages and White Lion Investments L.L.C. v. FDA*, No. 21-60766, Joint Appendix at 92 (5th Cir. Jan. 14, 2022) (FDA Technical Project Lead Review of PMTAs issued to Wages & White Lion Investments LLC (citing National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes*, National Academies Press; 2018)).



FDA, E-Cigarettes, Vapes, and other Electronic Nicotine Delivery Systems (ENDS), https://tinyurl.com/35tax6tc.

According to the Centers for Disease Control and Prevention ("CDC'), nearly six percent (6%) of U.S. adults currently use electronic cigarettes, whereas over eleven percent (11%) currently smoke combustible cigarettes.[3] Nationally, an overwhelming majority of electronic cigarette users use non-tobacco flavored electronic cigarettes.[4] And, most adult electronic cigarette users are former or current combustible cigarette smokers, including 92.8% of users over 45 years old—the age group most susceptible to near-term adverse health impacts from smoking combustible cigarettes.[5]

**B.    FDA Regulation of Electronic Cigarettes**

FDA began regulating electronic cigarettes as "tobacco products" under the Federal Food, Drug, and Cosmetic Act ("FDCA") in August 2016. *See* 81 Fed. Reg. 28,974 (May 10, 2016). As a result, manufacturers wishing to market electronic cigarettes were required to file a premarket tobacco product application ("PMTA") and obtain a marketing granted order from FDA. *See* 21 U.S.C. § 387j. However, because millions of electronic cigarettes were already on the market prior to August 2016, FDA established an "enforcement discretion" policy pursuant to which the agency has refrained from taking enforcement action against electronic cigarettes with timely-filed

---

[3] CDC, National Center for Health Statistics, *Early Release of Selected Estimates Based on Data from the 2022 National Health Interview Survey* (Apr. 23, 2023), https://perma.cc/D25X-2ASE.

[4] *See Wages and White Lion Investments L.L.C. v. FDA*, No. 21-60766, Joint Appendix at 88 (5th Cir. Jan. 14, 2022) (FDA Technical Project Lead (TPL) Review of PMTAs issued to Wages & White Lion Investments LLC (citing Schneller LM, Bansal-Travers M, Goniewicz ML, McIntosh S, Ossip D, O'Connor RJ. Use of Flavored E-Cigarettes and the Type of E-Cigarette Devices Used among Adult and Youth in the US-Results from Wave 3 of the Population Assessment of Tobacco and Health Study (2015-2016). *Int J Environ Res Public Health.* 2019; 16(16))) (FDA stating that approximately 77% of adult electronic cigarette users use non-tobacco flavored electronic cigarettes).

[5] CDC, QuickStats: Percentage Distribution of Cigarette Smoking Status Among Current Adult E-Cigarette Users, by Age Group—National Health Interview Survey (Mar. 10, 2023), https://perma.cc/TYR8-9KUV.

PMTAs so long as those PMTAs are undergoing FDA review. *See generally Vapor Tech. Ass'n v. FDA*, 977 F.3d 496 (6th Cir. 2020).[6] Indeed, FDA has never initiated an enforcement action against an electronic cigarette that is the subject of a PMTA still undergoing FDA review.[7]

Some electronic cigarettes create an aerosol that imparts a tobacco flavor similar to the smoke from a traditional tobacco cigarette. FDA has granted marketing authorization for several such tobacco-flavored electronic cigarettes.[8] Other electronic cigarettes generate an aerosol that is not tobacco-flavored—*e.g.*, fruit flavored or menthol. FDA has also granted marketing authorization for some menthol-flavored electronic cigarettes, but has not yet authorized any fruit- or other non-tobacco- or non-menthol-flavored electronic cigarettes, although PMTAs for many such products remain under FDA review.[9]

FDA has the statutory authority to adopt a regulation through notice-and-comment rulemaking that would ban flavored electronic cigarettes (*e.g.*, fruit-flavored electronic cigarettes).

---

[6] FDA often exercises "enforcement discretion"—*i.e.*, refrains from bringing an enforcement action—for products that do not have FDA marketing authorization. *See, e.g.*, FDA Compliance Policy Guide § 440.100 (describing how FDA "intend[s] to exercise [its] enforcement discretion with regard to drugs marketed in the United States that do not have required FDA approval for marketing").

[7] FDA has initiated two types of enforcement actions—civil money penalty actions and injunction actions—for the distribution of unauthorized electronic cigarettes. *See* https://www.fda.gov/tobacco-products/compliance-enforcement-training/advisory-and-enforcement-actions-against-industry-unauthorized-tobacco-products#a. FDA has also issued "Warning Letters" for the distribution of unauthorized electronic cigarettes. *Id.* But FDA's position is that Warning Letters are "advisory" only and are not "are not final agency action" that can be challenged in court. *See* FDA Regulatory Procedures Manual, Chapter 4 at 4 (Jun. 2022); *accord Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940 (D.C. Cir. 2012) (holding that an FDA Warning Letter was not subject to judicial review).

[8] *See* https://www.fda.gov/tobacco-products/premarket-tobacco-product-applications/premarket-tobacco-product-marketing-granted-orders.

[9] *See* FDA, Press Release, FDA Authorizes Marketing of Four Menthol-Flavored E-Cigarette Products After Extensive Scientific Review (June 21, 2024), https://tinyurl.com/ykj82rtf.

*See* 21 U.S.C. § 387g(c). To adopt such a regulation, FDA would have to establish that banning flavored electronic cigarettes would result in a net benefit to the public health. *See id.* at § 387g(a)(3)(A). FDA has not proposed, let alone adopted, such a regulation.[10] It seems unlikely that FDA will propose a regulation banning flavored electronic cigarettes because FDA-funded researchers have found that any public health benefit resulting from such a ban may be offset by public health costs from increased combustible cigarette sales.[11]

### C.    New York State and New York City Regulation of Electronic Cigarettes

Despite the significant harm reduction potential of electronic cigarettes—including flavored electronic cigarettes—acknowledged by FDA, both the State and the City of New York have banned the retail sale of flavored electronic cigarettes to consumers. The City of New York has filed this suit against Defendants and others, accusing them of violating City and state statutes and of engaging in a public nuisance by distributing flavored electronic cigarettes to businesses in New York City.

New York State law permits the sale and shipment of electronic cigarettes, including flavored electronic cigarettes, to "vapor product dealers" who are registered with the State. *See* N.Y. Public Health Law § 1399-*ll*(1), (1-a).[12] New York State law permits the sale of non-flavored (*i.e.*, tobacco-flavored) electronic cigarettes to retail customers who are at least 21 years old and

---

[10] The City alleges that FDA has "banned flavored e-cigarette 'pods.'" (FAC at ¶ 46; *see also* FAC at ¶ 47 (alleging there is a "federal flavor ban")). But the only method by which FDA could lawfully "ban" flavored e-cigarettes (or any product for that matter) would through adoption of a regulation.

[11] *See* A. Friedman, et al., *E-cigarette Flavor Restrictions Effects on Tobacco Product Sales* (Sept. 26, 2023), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4586701.

[12] "Vapor products" include electronic cigarettes. N.Y. Public Health Law § 1399-aa(17). A "vapor products dealer" is a "person licensed by the commissioner of taxation and finance to sell vapor products in this state." N.Y. Public Health Law § 1399-aa(18).

prohibits the sale of flavored electronic cigarettes to retail customers of any age. *See* N.Y. Public Health Law §§ 1399-bb(4), 1399-mm-1(2).  While Section 1399-*ll*(1-a) of the New York Public Health Law provides that it "shall be unlawful for any person engaged in the business of selling vapor products to ship or cause to be shipped any vapor products intended or reasonably expected to be used with or for the consumption of nicotine to any person in this state" who is not, *inter alia*, the holder of a "certificate of registration as a vapor products dealer under article twenty eight-C of the tax law," in 2020, the New York State Department of Public Health published on its website a "Guidance for Vapor Product Manufacturers, Wholesalers, Distributors, and Retailers Regarding New Shipping Restrictions" that states, in relevant part, as follows:

> The following shipments of vapor products intended or reasonably expected to be used with or for the consumption of nicotine will continue to be **permitted:**
>
> - All shipments between manufacturers, wholesalers, and distributors within New York. Such entities are not required to register as vapor products dealers to send or receive shipments of vapor products, unless otherwise required to register pursuant to Tax Law Article 28-C.

*See* Exhibit A to Affirmation of Ryan Callinan in Support of Motion to Dismiss (available at https://health.ny.gov/prevention/tobacco_control/docs/vape_product_shipping_ban_guidance.pdf (last visited May 31, 2024)).

The Department of Public Health's Guidance states that the intent behind Section 1399-*ll*(1-a) "is to prevent consumers, and particularly individuals under the age of 21, from circumventing restrictions on vapor product sales by purchasing products online and via telephone." *Id*. The Guidance states that the shipments that are prohibited by Section 1399-*ll*(1-a) are "[a]ll shipments to consumers at an address located within New York" and "[a]ll shipments to individuals or entities intended to provide such vapor products to a consumer within New York, at

retail or otherwise, unless such individual or entity is registered as a vapor products dealer pursuant to Tax Law Article 28-C." *Id*.

For its part, New York City law permits the sale of non-flavored (*i.e.*, tobacco-flavored) electronic cigarettes to retail customers who are at least 21 years old and prohibits the sale of flavored electronic cigarettes. *See* N.Y.C. Admin. Code §§ 17-706(a-1), 17-715(1). However, New York City law expressly permits flavored electronic cigarettes to "be sold or offered for sale by wholesalers where the sale or offer for sale is made to an entity located outside the City." 24 R.C.N.Y. § 28-02(b).

### D.    The City's First Amended Complaint

Defendants Vape More Inc., a/k/a More LLC ("Vape More") and Vape Plus Distribution Corp. a/k/a G&A Distribution ("Vape Plus") (collectively "Defendants"), are businesses engaged in the nationwide business-to-business sale and distribution of electronic cigarettes. *See* FAC, Exhibit OO, ¶¶ 24-25. Vape More is located in Latham, New York, north of Albany, while Vape Plus is located in Brooklyn, New York. *Id*.

The City's FAC alleges that on or about July 30, 2023, Vape More sold various flavored disposable electronic cigarettes to distributor Urban Smoke located in Woodside, New York. *Id*., ¶ 149. The FAC also alleges that "[o]n information and belief, some or all of the buyers of the flavored e-cigarettes to which Vape More made deliveries were not licensed Dealers" and "Vape More ships or causes to be shipped vapor products to persons that are not Licensed Dealers in violation of Pub. Hlth. L. § 1399-ll(1-a)." *Id*., ¶¶ 154-55.

The City's FAC alleges that Vape Plus has purchased various flavored electronic cigarette products from Smokin' Sales and YLSN, distributors based in New Jersey and Arizona, respectively, and that the quantity of those purchases is inconsistent for personal use, so the flavored electronic cigarette products must be offered for sale on Vape Plus's website to "retailers,

other distributors, and/or individuals" in the City. *Id.*, ¶¶ 159-61. The FAC also alleges that, on information and belief, Vape Plus received orders via the internet or by telephone or by mail order from purchasers throughout the City and some or all of those purchasers were not in one another's physical presence when the orders were placed or delivered. *Id.*, ¶ 163. The City further alleges that the purchasers were not lawfully operating a tobacco business. *Id.*, ¶ 164. Finally, the City alleges that "[o]n information and belief, Vape Plus ships or causes to be shipped vapor products to persons in New York City that are not Licensed Dealers in violation of Pub. Hlth. L. § 1399-ll(1-a)." *Id.*, ¶ 166. The FAC does not allege a single direct-to-individual consumer retail sale or shipment of electronic cigarettes by either Vape More or Vape Plus.

The City asserts four claims for relief based on Defendants' alleged sales and shipments of flavored electronic cigarettes to businesses in the City. First, the City alleges that Vape More and Vape Plus violated the Prevent All Cigarette Trafficking Act, or "PACT Act," 15 U.S.C. § 375, *et seq.*, by failing to comply with (1) the PACT Act's reporting requirements under 15 U.S.C. § 376, and (2) the PACT Act's "delivery sales" requirements under 15 U.S.C. § 376a. Second, the City alleges that Defendants' alleged sales of flavored electronic cigarettes violated section 1399-*ll*(1-a) of New York State's Public Health Law. Third, the City alleges violations of New York City Administrative Code § 17-715(b)(1), which prohibits certain sales of flavored electronic cigarette products in the City. Finally, the City alleges that Defendants' sales of flavored electronic cigarettes to wholesalers and distributors in the City constitute a "public nuisance." Tellingly, despite the plain language of the City's own regulation promulgated at 24 R.C.N.Y. 28-02, which states that "[f]lavored electronic cigarettes and flavored e-liquids may . . . be sold or offered for sale by wholesalers where the sale or offer of sales is made to an entity located outside the City of New York," the City alleges in its FAC that "New York City has enacted a complete ban on

*wholesale and retail* sales of flavored vapes, whether over the internet or from brick-and-mortar locations." FAC, ¶ 48.

The City's FAC fails to state any plausible claim against Defendants. As explained herein, the City lacks standing to assert a violation of the PACT Act, fails to allege facts that would support a finding that Defendants violated the PACT Act's reporting requirements, and fails to allege that Defendants violated the PACT Act's requirements relating to "delivery sales." The City also lacks standing to allege a violation of Section 1399-*ll* of the New York Public Health Law. And, even if the City has standing, it fails to plead a plausible claim under Section 1399-*ll* because the New York Department of Health, the state agency charged with administering the statute, has published guidance for businesses like Defendants that interprets Section 1399-*ll* as being inapplicable to the very distributor-to-distributor shipments of electronic cigarettes upon which the City bases its claims against Defendants. Additionally, the City fails to allege any instance of either Defendant actually *shipping* any vapor products to persons in New York City that are not holders of the dealer's registration certification required by Section 1399-*ll*, and so fails to state sufficient facts to support the City's claim.

The City's First Amended Complaint also fails to state a plausible claim against Defendants for violations of New York City Administrative Code §17-715(b)(1). Not only does Vape More not engage in sales in the City because it is not based in the City, but rather in Latham, New York, but 24 R.C.N.Y. 28-02(b) specifically suggests that distribution sales of flavored vapor products to distributors in the City do not *per se* violate Section 17-715(b)(1) because distributors located in the City are entitled to possess flavored vapor products for sales to entities located outside the City. Moreover, besides the one sale the City accuses Vape More of making to a single distributor

in the City, the FAC is devoid of any other allegations of specific sales of flavored vapor products in the City by either Defendant.

Finally, the City's First Amended Complaint fails to state a cognizable claim for public nuisance because the City does not plead sufficient facts as to Vape More or Vape Plus to support the public nuisance claim.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Courts should grant a Rule 12(b)(6) motion if the complaint fails to allege "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint has "facial plausibility" only "when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Whether a plaintiff has "statutory standing" to sue—or a cause of action under the applicable statute—is properly considered under Rule 12(b)(6), and not Rule 12(b)(1). *See Merrick v. UnitedHealth Grp. Inc.*, 175 F. Supp. 3d 110, 116 n.9 (S.D.N.Y. 2016); *Gordon Surgical Grp. v. Empire Healthchoice HMO, Inc.*, No. 21-cv-4796, 2023 U.S. Dist. LEXIS 218450, *29 (S.D.N.Y. Dec. 7, 2023).

## ARGUMENT

A.    **The City Fails to Plead a Plausible Claim for Violations of the PACT Act**

In its First Claim for Relief, the City alleges that Vape More and Vape Plus violated the PACT Act by failing to comply with (1) the PACT Act's reporting requirements under 15 U.S.C. §

376, and (2) the PACT Act's "delivery sales" requirements under 15 U.S.C. § 376a. The City fails

to plead a plausible PACT Act claim because (i) the City lacks standing to assert the claim; (ii) the

City fails to allege facts that would support finding a violation of the PACT Act's reporting

requirements; and (iii) the City fails to allege facts that would support a violation of the PACT

Act's "delivery sales" requirements.

> **1.    The City does not have standing to assert a PACT Act claim relating to electronic cigarettes because the City has not adopted an excise tax on electronic cigarettes.**

One of the PACT Act's "purposes" is to "increase collections of Federal, State, and local

excise taxes on cigarettes [including electronic cigarettes] and smokeless tobacco." Pub. L. 111-

154, § 1(c)(5).[13] An "excise tax" is a tax "on the sale of a specified commodity measured by value

or quantity, such as alcohol, tobacco, or motor fuel." *George v. Uninsured Empirs. Fund (In re

George)*, 361 F.3d 1157, 1163 (9th Cir. 2004).[14]

The PACT Act authorizes local governments that levy an excise tax on cigarettes to bring

district court actions for alleged PACT Act violations relating to those cigarettes. *See* 15 U.S.C. §

378(c)(1)(A).[15] Although the City levies an excise tax on traditional cigarettes and some other

traditional tobacco products, the City does not levy an excise tax on electronic cigarettes.

Therefore, the City does not have standing under 15 U.S.C. § 378(c)(1)(A) to assert a PACT Act

---

[13] The PACT Act's definition of "cigarette" includes "an e-cigarette." *See* 15 U.S.C. § 375(2), (7)(B)(i).

[14] *Accord Cook v. United States*, 86 F.3d 1095, 1098 (Fed. Cir. 1996) ("Federal excise tax is a tax on the sale of a commodity.").

[15] 15 U.S.C. § 378(c)(1)(A) states that a local government "that levies a tax subject to section 376a(a)(3) of this title" may bring a district court action for violations of the PACT Act. Title 15 U.S.C. § 376a(a)(3) refers only to "excise taxes."

claim with respect to Vape Plus and Vape More's sales of electronic cigarettes. This reason alone suffices for the Court to dismiss the City's PACT Act claim with prejudice.

### 2. The City has not alleged facts that would support a finding that Vape Plus and Vape More violated the PACT Act's reporting requirements.

The PACT Act imposes certain reporting requirements on persons shipping cigarettes (including electronic cigarettes[16]) "in interstate commerce, whereby such cigarettes are shipped into a State [or] locality" that taxes those cigarettes. *See* 15 U.S.C. § 376(a). The PACT Act defines "interstate commerce" as "commerce between a State and any place outside the State, commerce between a State and any Indian Country within the State, or commerce between points in the same State but through any place outside the State or through Indian country." 15 U.S.C. § 375(10)(A). Title 15 U.S.C. § 376(a)(2) makes clear that the monthly reporting requirement is triggered only for states into which particular shipments in "interstate commerce" are made: "[N]ot later than the 10th day of each calendar month, file with the tobacco tax administrative *of the State into which such shipment is made* a memorandum or a copy of the invoice covering each and every shipment . . . made during the previous calendar month *into such state*. . . ." 15 U.S.C. § 376(a)(2) (emphasis added). For its part, 15 U.S.C. § 376(a)(3) extends this reporting requirement that is triggered only by shipments "in interstate commerce" that are "into such state" to certain local authorities:

> [W]ith respect to each memorandum or invoice filed with a State under paragraph (2), also file copies of the memorandum or invoice with the tobacco tax administrators and chief law enforcement officers of the local governments . . . within the borders of the State that apply their own local . . . taxes on cigarettes . . . .

15 U.S.C. § 376(a)(3).

---

[16] The definition of "cigarette" in the PACT Act encompasses electronic cigarettes, which are also known as "electronic nicotine delivery systems." *See* 15 U.S.C. § 375(2)(a)(ii)(II) and (7).

Here, the City alleges that Vape More shipped electronic cigarettes to a customer, Urban Smoke, in New York City without complying with the PACT Act's reporting requirements. FAC, ¶¶ 149, 152-53. But Vape More is located in Latham, New York, meaning that the alleged shipment was intrastate in nature. *Id.*, ¶¶ 148. The City has not alleged any facts that would support a finding that Vape More shipped electronic cigarettes from a location *outside* the State of New York to a location in the State of New York, or that any shipments of electronic cigarettes by Vape More originating in the State of New York travelled through any place outside of the State of New York or through "Indian Country" before reaching their ultimate destination in New York City. *See Grand River Enters. Six Nations v. Boughton*, 988 F.3d 114, 123 (2d Cir. 2021) (noting that "PACT Act filings exclude intrastate sales"); *New York v. Mt. Tobacco Co.*, 942 F.3d 536, 547 (2d Cir. 2019) (observing that the PACT Act's definition of "interstate commerce" "except[s]" commerce that is purely intrastate"); *Grand River Enters. Six Nations Ltd. v. Sullivan*, No. 3:16-cv-01087-WWE, 2018 U.S. Dist. LEXIS 165114 (D. Conn. Sept. 26, 2018) (observing that the PACT Act requires "reporting of tobacco products shipped or sold nationwide in 'Interstate Commerce,' which does not include products shipped intrastate . . . after importation into the United States.").[17] Because the City has not alleged that the alleged shipment from Vape More to

---

[17] Consistent with the Second Circuit's interpretation, guidance on the PACT Act provided by many state governments has also long confirmed that no registration or reporting is required for sales or shipments that are entirely intrastate in nature. *See, e.g.*, *See, e.g.*, California Dep't of Tax and Fee Admin., PACT Act & Consumer, https://tinyurl.com/3et3wnpy ("Generally, businesses located in California do not have a PACT Act registration and reporting requirement with us, unless you are doing business with Native American reservations within the exterior limits of California, or you are using a drop shipper located outside this state.") (last visited June 21, 2024); Tennessee Dep't of Revenue, Tobacco Tax Notice, Notice #21-01, Delivery Sales of Electronic Nicotine Delivery Systems, March 2021, https://perma.cc/NZD6-8HSM ("Anyone located in Tennessee and shipping ENDS within state lines is not required to file PACT Act reports regarding these shipments with the Department."); *see also* Arizona Dep't of Revenue, PACT Act Statement, https://perma.cc/6J2W-NDUT ("Federal law requires filing of this form by any person who intends to sell, transport, or ship cigarettes or smoking tobacco into Arizona (or who advertises or offers

Urban Smoke was a shipment "in interstate commerce," 15 U.S.C. § 376(a), the City has not alleged facts that would support a finding that Vape More had any obligation to submit a PACT Act shipment report to the New York State tobacco tax administrator under 15 U.S.C. § 376(a)(2), and, thus, any obligation to submit a PACT Act shipment report to the City of New York under 15 U.S.C. § 376(a)(3).

As to Vape Plus, the City alleges that Vape Plus purchased e-cigarettes from various distributors located outside of New York State. But the City has not alleged any facts that would support a finding that Vape Plus "shipped" electronic cigarettes from a location outside the State of New York into the State of New York, let alone New York City. The First Amended Complaint thus conflates the wholly distinct concepts of purchasing and shipping. To "purchase" is "to obtain by paying money or its equivalent," while to "ship" is "to cause to be transported." Mirriam-Webster Online Dictionary, www.mirriam-webster.com/dictionary (last visited July 26, 2024). This distinction is, of course, important, because the operative verbs that trigger the reporting requirement under 15 U.S.C. § 376(a)(3) are "sells, transfers, or ships for profit . . . in interstate

---

to do so) ***from outside the state***, from Indian country, or from within Arizona if passing through points outside the state or in Indian country" (emphasis added).); Illinois Attorney General, 24Q1 Tobacco Product Distributor Quarterly Mailing Packet, March 19, 2024, available at https://perma.cc/3ZP4-GJTC ("Under the [PACT ACT], individuals and businesses **outside of the state of Illinois** that sell cigarettes, RYO, and smokeless tobacco products within Illinois must file reports with __IDOR__" (emphasis in original).); Kentucky Dep't of Revenue, New [PACT] Act Reporting Requirements for Electronic Nicotine Delivery Systems (ENDS), March 22, 2021, https://perma.cc/D95C-MC9V ("If you sell, transfer, or ship for-profit [ENDS] into Kentucky ***from outside the state***, you are required to register and file monthly reports with the Department of Revenue" (emphasis added).); Ohio Dep't of Taxation, Update to the Prevent All Cigarette Trafficking (PACT) Act, 15 U.S.C. §§ 375, *et. seq.*, https://perma.cc/22W2-39YC ("The changes to the [PACT ACT] apply to all manufacturers, sellers, wholesalers, and distributors (***located outside the boundaries of Ohio***) who sell, transfer, ship, advertise, or offer for sale [ENDS]" (emphasis added).); Michigan Dep't of Treasury, PACT Act Notice, April 1, 2021, https://perma.cc/UR86-E5TC ("All tobacco product manufacturers and ***out-of-state*** distributors and unclassified acquirers that sell, transfer, or ship cigarettes or smokeless tobacco for profit into the State of Michigan must register . . . and file monthly PACT Act reports" (emphasis added).).

- 14 -

commerce." The City has not alleged facts that would support a finding that Vape Plus violated the PACT Act's reporting requirements because the First Amended Complaint fails to allege that Vape Plus "sells, transfers, or ships for profit" ENDS products from a location outside of New York State into New York City or through "Indian Country" or a place outside of New York State. The City thus fails to state a plausible claim that either Vape More or Vape Plus has violated the PACT Act's reporting requirements found in 15 U.S.C. § 376(a)(2)-(3).

### 3. The City has not alleged facts that would support a finding that Vape More and Vape Plus violated the PACT Act's delivery sales requirements.

The PACT Act also places various requirements on persons making "delivery sales" of cigarettes (including electronic cigarettes). *See* 15 U.S.C. § 376a(a). A "delivery sale" is a non-face-to-face sale of cigarettes to a "consumer." 15 U.S.C. § 375(5). But the City has not alleged facts showing that Vape More or Vape Plus made sales to "consumers." And, in any event, the City has not identified any specific sales by Vape More or Vape Plus that failed to meet the PACT Act's "delivery sales" requirements.

### a. The City has not alleged facts showing Vape More and Vape Plus sold electronic cigarettes to "consumers."

The PACT Act applies certain requirements to non-face-to-face sales of tobacco products to "consumers." *See* 15 U.S.C. § 375(4), (5); 15 U.S.C. § 376a. Of course, the term "consumer" traditionally refers to the end-user of a product, not the seller of a product. *See, e.g.*, Black's Law Dictionary 316 (6th ed. 1990) (defining "consumer" as those "who purchase, use, maintain, and dispose of products" and stating that "[c]onsumers are to be distinguished from manufacturers (who produce goods), and wholesalers or retailers (who sell goods)").

Under the PACT Act, the term "consumer" means "any person that purchases cigarettes," but "does not include any person *lawfully operating* as a manufacturer, distributor, wholesaler, or retailer of cigarettes." 15 U.S.C. § 375(4) (emphasis added). The PACT Act does not define the

term "lawfully operating." It is Defendants' position that the Court should interpret the term "lawfully operating" as meaning operating with any necessary state or local registration or license. *See* N.Y. Tax Law § 1183(a) ("Every person who intends to sell vapor products [*i.e.*, e-cigarettes] in this state shall receive from the commissioner a registration prior to engaging in such business."); N.Y.C. Admin. Code § 20-561(a) ("License required of electronic cigarette retail dealers."). Under that interpretation, the Court should dismiss the City's PACT Act claim because the City has not alleged facts demonstrating that Defendants sold electronic cigarettes to a retailer that lacked the required New York vapor product dealer registration certificate for selling electronic cigarettes.[18]

---

[18] Neither New York State nor New York City has any license, permit, or registration requirement for distributors or wholesalers of electronic cigarettes. New York Tax Law § 1180(b) defines a "vapor products dealer" as "a person licensed by the commissioner to sell vapor products in this state." New York Tax Law § 1183 makes clear that a vapor product dealer's registration is required only for those businesses that sell vapor products to individual consumers at retail. *See* N.Y. Tax Law § 1183(c) ("Every vapor product dealer shall publicly display a vapor products dealer certificate of registration in each place of business in this state where vapor products are sold ***at retail***. A vapor products dealer who has no regular place of business shall publicly display such valid certificate on each of its carts, stands, trucks, or other merchandizing devices through which it sells vapor products" (emphasis added).). The New York State Department of Taxation and Finance has also emphasized that the vapor product dealer's registration requirement only applies to those engaged in retail sales to individual consumers. *See*, *e.g.*, N.Y. N.Y. State Dep't. of Taxation and Finance, Vapor Products, https://www.tax.ny.gov/bus/vpt/ (last updated Sept. 26, 2023) ("Any business currently selling vapor products at retail must be registered with the Tax Department as a vapor product dealer. Businesses that intend to sell vapor products must register before they begin selling these products."); N.Y. State Dep't. of Taxation and Finance, Webinar: Information for Vapor Products Dealers, https://www.tax.ny.gov/help/outreach/vapor-how-to-register.htm ("Any businesses currently selling vapor products *at retail* must be registered with the Tax Department as a vapor products dealer before December 1, 2019" (emphasis added).). The New York State Department of Public Health has likewise emphasized that a vapor products dealer registration certificate is not required of distributors and wholesalers that do not sell ENDS products at retail to individual consumers. *See* N.Y. State Dep't of Public Health, Guidance for Product Manufacturers, Wholesalers, Distributors, and Retailers Regarding New Shipping Restrictions, available at https://health.ny.gov/prevention/tobacco_control/docs/vape_product_shipping_ban_guidance.pdf (noting that wholesalers and distributors "are not required to register as vapor product dealers to send or receive shipments of vapor products").

The City's position appears to be that the Court should interpret the term "lawfully operating" as excluding a distributor/wholesaler or retailer if that business fails to comply with *any* federal, state, or local law applicable to electronic cigarettes. For at least four reasons, the Court should adopt Defendants' interpretation of the term "lawfully operating" and reject the City's overly broad interpretation of that term.

*First*, the PACT Act's legislative history indicates that Congress did not intend for the statute's "delivery sales" provision to cover sales to duly licensed distributors and retailers. The PACT Act revised the Jenkins Act, which excluded sales to "licensed" distributors and retailers and defined "licensed" as "authorized" by the state if the state had a statutory or regulatory authorization requirement. *See* 15 U.S.C. §§ 375(3), 376(a) (2009).[19]

---

[19] 15 U.S.C. § 376, prior to the 2010 amendments establishing the PACT Act, read as follows
  § 376. Reports to State tobacco tax administrator.

  (a) Contents. Any person who sells or transfers for profit cigarettes in interstate commerce, whereby such cigarettes are shipped into a State taxing the sale or use of cigarettes to other than a distributor licensed by or located in such State, or who advertises or offers cigarettes for such sale or transfer and shipment, shall—

    (1) first file with the tobacco tax administrator of the State into which such shipment is made or in which such advertisement or offer is disseminated a statement setting forth his name and trade name (if any), and the address of his principal place of business and of any other place of business; and

    (2) not later than the 10th day of the calendar month, file with the tobacco tax administrator of the State into which such shipment is made, a memorandum or a copy of the invoice covering each and every shipment of cigarettes made during the previous calendar month into such State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, and the quantity thereof.

  (b) Presumptive evidence. The fact that any person ships or delivers for shipment any cigarettes shall, if such shipment is into a State in which such person has filed a statement with the tobacco tax administrator under subsection (a)(1) of this section, be presumptive evidence (1) that such cigarettes were sold, or transferred for profit, by

When Congress passed the PACT Act, it gave no indication that the term "lawfully operating" was meant to be different than the term "licensed" in the Jenkins Act. In light of this history, the Court should interpret the term "lawfully operating" as meaning operating with any necessary registrations and licenses. *See Johnson v. United States*, 529 U.S. 694, 710 (2000) (stating that "when a new legal regime develops out of an identifiable predecessor, it is reasonable to look to the precursor in fathoming the new law"); *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 823-24 (3d Cir. 1999) ("A prior statute's definition of the term will control if it is natural and reasonable to think that the members of legislature, in drafting the new statute, were influenced by the prior statute."); *Frederickson v. Luedtke Const. Co.*, 427 F. Supp. 1309, 1311 (W.D. Mich. 1977) ("Given the ambiguity in the statute it is appropriate to refer to earlier versions of the statute for aid in construction.").

Additionally, prior to the 2010 amendments that established the original version of the PACT Act, the Jenkins Act did not cover "smokeless tobacco." *See* 15 U.S.C. § 376 (2009). The PACT Act included "smokeless tobacco" for the first time in 2010. Prior to the 2010 amendments, the Jenkins Act excluded from its State registration and reporting requirements any "person" that

---

such person, and (2) that such sale or transfer was to other than a distributor licensed by or located in such State.

15 U.S.C. § 376 (2009). Prior to the 2010 amendments, 15 U.S.C. § 375(3) defined the term "distributor licensed by or located in such State" to mean:

(A) in the case of any State which by State statute or regulation authorizes the distribution of cigarettes at wholesale or retail, any person so authorized, or
(B) in the case of any other State, any person located in such State who distributes cigarettes at wholesale or retail;
but such term in no case includes a person who acquires cigarettes for purposes other than resale.

15 U.S.C. § 375(3) (2009).

was a "distributor licensed by or located in such State." 15 U.S.C. § 376(a) (2009). When the 2010 amendments enacting the PACT Act inserted for the first time the definitions of "consumer" and "lawfully operating," at least four states did not require a "license" to engage in sales of smokeless tobacco products. New Mexico and West Virginia instead required a business registration certificate. *See*, *e.g.*, N.M. Stat. Ann. § 7-12A-7. The District of Columbia issued a business tax registration with a "tobacco tax account," and New Jersey issued a "certificate of authority" under N.J. Rev. Stat. § 54:40B-6. It thus stands to reason that Congress removed the term "distributor licensed by or located in such State" and replaced it with the concept of "lawfully operating" to ensure that persons selling smokeless tobacco products on a business-to-business basis to distributors in those states that were properly registered but did not have a "license" because their state did not require one would not be subjected to the highly restrictive delivery sale requirements found in newly enacted 15 U.S.C. § 376a.

*Second*, the City's position—that the term "lawfully operating" excludes a duly registered/licensed distributor or retailer if that business fails to comply with *any* federal, state, or local law applicable to electronic cigarettes—would lead to absurd results. *See Salute v. Stratford Greens Garden Apartments*, 135 F.3d 293, 297 (2d Cir. 1998) (stating that a court "may adopt a restricted rather than literal or usual meaning of a statute 'where acceptance of that literal meaning would lead to absurd results'") (quoting *Helvering v. Hammell*, 311 U.S. 504, 510-11 (1941)).

For example, the City's proposed interpretation of "lawfully operating" would mean that an electronic cigarette distributor's sale to a duly registered electronic cigarette retailer would be a sale to a "consumer" if that retailer accidentally failed to lock a container in which it stores electronic cigarettes one evening. *See* N.Y. Public Health Law § 1399-cc(7) (requiring electronic cigarettes to be stored behind the sales counter or in a locked container). Such a result would be

absurd because a manufacturer cannot be expected to know that one of its retailer customers has accidentally failed to lock an electronic cigarette container. As another example, the City's proposed interpretation of "lawfully operating" would mean that an electronic cigarette distributor's sale to a registered electronic cigarette dealer would be a sale to a "consumer" if that dealer forgets to properly display its certificate of registration. *See* N.Y. Tax Law § 1183(c) (requiring electronic cigarette dealer to publicly display it certificate of registration). Such a result would be absurd because a manufacturer cannot be expected to visit each of its retailer customers to ensure that their certificates of registration are properly displayed, much less be able to confirm whether, even if they are properly displayed at one point in time, they are not properly displayed at a later point in time. The fact that the City's proposed interpretation of "lawfully operating" would lead to such absurd results warrants the Court's rejection of that proposed interpretation.

Similarly, although a distributor that sells electronic cigarettes to a registered retailer can put systems in place to guard against the retailer violating state or local age restrictions on sales of tobacco products, it would be impossible for the distributor to ensure that the retailer never accidentally sells a tobacco product to an underage purchaser. Yet the City's position, which the Court adopted, would mean that a distributor who sells tobacco products to a properly registered retailer who accidentally sells tobacco products to an underage user could be on the hook for civil and criminal penalties because the retailer would be deemed a "consumer." *See* 15 U.S.C. § 377. Particularly because Congress made "knowing" violations of the PACT Act a felony crime punishable by a prison term of up to three years, 15 U.S.C. § 377(a)(1), and assigned substantial civil penalties to violations of the Act that fail to satisfy that scienter requirement, 15 U.S.C. § 377(b), there is no reason to think that Congress intended to define "consumer" in a way that would render it impossible for companies that sell tobacco products to appropriately registered or licensed

wholesalers and retailers to know definitively whether, in so doing, they are satisfying the PACT Act's requirements.[20]

*Third*, common sense further supports Defendants' reading of "lawfully operating." The PACT Act's requirements applicable to "delivery sales" under 15 U.S.C. § 376a are clearly aimed at *retail* sales to individuals. Thus, "delivery sales" are limited to packages that do not weigh more than 10 pounds, which precludes large, palletized freight shipments of the type normally transferred between distributors and wholesalers. 15 U.S.C. § 376a(b)(3). Similarly, persons engaged in delivery sales must obtain the *full name*, *birth date*, and *residential* address of the purchaser and verify the age and identity of the purchaser through a third-party commercially available database to ensure the purchaser is legally able to purchase ENDS products. 15 U.S.C. § 376a(b)(4)(A)(iii)(I). It is nonsensical to suggest that a business engaged in the sale of cigarettes, smokeless tobacco, or ENDS products would provide its "full name," "birth date," or "residential address," much less be put through a third-party age and identity verification process. The plain text of the PACT Act thus further supports a reading that "lawfully operating" means holding all required registrations, licenses, or permits, not requiring compliance with *all* applicable federal, state, and local laws.

---

[20] Further, to the extent the City seeks to convert 15 U.S.C. § 376a(a) into a vehicle for the City to indirectly enforce the Federal Food, Drug and Cosmetic Act's ("FDCA") premarket authorization requirements for "tobacco products," *see* 21 U.S.C. § 387j, not only does that provision not even reference "federal laws," as opposed to "State, local, [and] tribal" laws, but Congress has precluded such indirect enforcement of the FDCA by the City. *See* 21 U.S.C. § 337(a) (providing that all "proceedings for the enforcement, or to restrain violations, of the [FDCA] shall be by and in the name of the United States"). It is the FDCA that prohibits the sale of unauthorized ENDS products, *see* 21 U.S.C. §§ 331(a), 387b(6)(A). So, it *cannot* be the case that Congress intended for state or local governments to bring PACT Act claims that are based on alleged violations of the FDCA, as that would intrude on the federal government's exclusive role in enforcing the FDCA. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) (stating that the "FDCA leaves no doubt that it is the Federal Government rather than [other] litigants who are authorized to file suit for not compliance with [its provisions]").

- 21 -

*Fourth*, because the PACT Act provides for criminal penalties, *see* 15 U.S.C. § 377, the Court should apply the "rule of lenity" and adopt the interpretation of the term "lawfully operating" that favors Defendants. The rule of lenity provides that any "ambiguities concerning legislative intent in criminal statutes should be resolved in favor of the [defendant]." *United States v. Figueroa*, 165 F.3d 111, 119 (2d Cir. 1998). The rule of lenity applies not only in criminal cases, but also in civil suits when such suits are brought under a statute that has criminal penalties. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we interpret [a criminal] statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."); *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517-518 (1992) (plurality opinion) (applying rule of lenity to a tax statute, in a civil setting, because the statute had criminal applications). Because the First Amended Complaint does not allege that Defendants sold electronic cigarette products to any business customers that required a vapor product dealer registration under New York law, yet lacked that registration, the First Amended Complaint fails to state a plausible claim that Defendants engaged in any "delivery sales" under the PACT Act.

> **b.    The City has not identified any sales by Vape More and has provided no evidence of the alleged sales by Vape Plus that violated the PACT Act's requirements for "delivery sales."**

Finally, even if the City alleged facts that would demonstrate that Vape More or Vape Plus made "delivery sales" (which it has not), the Court should dismiss the City's PACT Act claim because the City has not identified a single sale by Vape More or Vape Plus that violated one of the PACT Act's requirements for "delivery sales." Although the City alleges, in conclusory fashion, that "[o]n information and belief, Vape More [and Vape Plus] received orders from retailers throughout the City via the internet, by telephone or by mail order for flavored e-cigarettes," *see* FAC, ¶¶ 152, 163, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Because the City

has failed to allege Vape More's or Vape Plus's non-compliance with any of the specific requirements of 15 U.S.C. § 376a in any particular transaction, the First Amended Complaint fails to state a plausible claim for violations of the PACT Act based on "delivery sales" in the City.

**B.    The City Fails to Plead a Plausible Claim for Violations of N.Y. Public Health § 1399-
*ll***

The City's second claim for relief, alleging violations of New York Public Health Law § 1399-*ll*(1-a), should be dismissed for at least three independent reasons. When a party's allegations, "however true, could not raise a claim of entitlement to relief," then "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotations omitted). When the First Amended Complaint is purged of its legal conclusions and other generalizations, as is required by *Iqbal*, it is evident that the City has offered no factual allegations that would allow a reasonable fact finder to conclude that Vape More and Vape Plus have violated Section 1399-*ll*(1-a). The First Amended Complaint is comprised of merely repetitive presumptions, generalizations, and conclusions about all the defendants equally, rather than facts about each individual defendant, rendering the allegations legally and facially deficient.

*First*, the City lacks standing to assert a cause of action under Section 1399-*ll*. The statute provides as follows:

> [T]he corporation counsel of any political subdivision that imposes a tax on cigarettes or vapor products intended or reasonably expected to be used with or for the consumption  of nicotine may bring an action to recover the civil penalties provided by subdivision five of this section and for such other relief as may be deemed necessary with respect to any cigarettes or vapor products intended or reasonably expected to be used with or for the consumption of nicotine shipped, caused to be shipped or transported in violation of this section to any person located within such political subdivision.

N.Y. Pub. Health L. § 1399-*ll*(6). The City, however, does not allege that it imposes a tax on vapor products and, in fact, does not impose any such vapor product-specific tax. Accordingly, the City lacks standing to assert a claim for violations of Section 1399-*ll*.

Public Health Law § 1399-*ll* grants the attorney general and corporate counsel of a "political subdivision that imposes a tax on cigarettes or vapor products" standing to seek civil penalties for violations of the statute. N.Y. Pub. Health Law § 1399-*ll*(6). New York City only taxes cigarettes and does not impose any excise tax on vapor products. *See* N.Y.C. Admin. Code 11-1302.[21] Public Health Law § 1399-*ll* distinguishes between cigarettes and vapor products, defining them separately and including statutory provisions specific to each type of product. *See generally* N.Y. Pub. Health Law §§ 1399-*ll*.

Under the Public Health Law, a "cigarette" is defined as

> "any product that contains nicotine, is intended to be burned or heated under ordinary conditions of use, and consists of or contains: (a) any roll of tobacco wrapped in any substance not containing tobacco, or (b) tobacco, in any form, that is functional in the product, which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a **cigarette**; or (c) any roll of tobacco wrapped in any substance containing tobacco which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a **cigarette** described in paragraph (a) of this definition."

N.Y. Public Health Law § 1399-oo.

---

[21] *See* N.Y.C. Admin. Code §§ 11-1302(a) (excise tax on "cigarettes"), 1302.1(a) (excise tax on "tobacco products"— "cigars," "little cigars," "smokeless tobacco," "snus," "shisha," and "loose tobacco"). Electronic cigarettes do not fall under New York City's definition of "cigarettes" or "tobacco products." *See* N.Y.C. Admin. Code §§ 11-1301(1) & (19), 17-176(a)(6), 17-702(r). New York City has a sales and use tax for the retail sale of tangible personal property. *See* N.Y.C. Admin. Code § 11-2001(a). But such generally applicable sales and use taxes are not "excise taxes." *Cf. Bragg v. Matanuska-Susitna Borough*, 192 P.3d 982, 988-89 (Alaska 2008) (holding that a local tax on cigarettes was an excise tax, not a sales tax); *Blair Candy Co. v. Altoona Area Sch. Dist.*, 613 A.2d 159 (Pa. Commw. 1992) (same).

In contrast, "electronic cigarette" or "e-cigarette" are defined separately as "an electronic device that delivers vapor which is inhaled by an individual user," N.Y. Pub. Health Law § 1399-aa(13), and "vapor products" are defined as "any noncombustible liquid or gel, regardless of the presence of nicotine therein, that is manufactured into a finished product for use in an electronic cigarette, including any device that contains such noncombustible liquid or gel." N.Y. Pub. Health Law § 1399-aa(17). Because "electronic cigarettes" and "vapor products" are distinct from "cigarettes," and the City only imposes an excise tax on "cigarettes" and not "vapor products," the City lacks standing to enforce the vapor product-specific provisions of Public Health Law § 1399-*ll*.

*Second*, even if the Court were to conclude that the City has standing, the State's Department of Public Health, the agency charged with enforcing the Public Health Law, has stated that Section 1399-*ll* does not prohibit the type of distributor-to-distributor shipments of electronic cigarettes upon which the City bases its claim against Vape More. Rather, pursuant to the Department's own Guidance, "[a]ll shipments between . . . wholesalers[] and distributors within New York" will "continue to be permitted" because "[s]uch entities are not required to register as vapor product dealers to send or receive shipments of vapor products." *See* Exhibit A to Affirmation of Ryan Callinan in Support of Motion to Dismiss (available at https://health.ny.gov/prevention/tobacco_control/docs/vape_product_shipping_ban_guidance.pdf (last visited May 31, 2024)). Although district courts are no longer required to grant unchecked deference to an agency's interpretation of an ambiguous statute that agency is charged with enforcing, "such interpretations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance'" and "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may

be especially useful in determining the statute's meaning." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 219 L. Ed. 832, 855 (2024) (quoting *Skidmore v. Swift & Co.*, 323 U.S.134, 140 (1944)). The New York Department of Public Health's guidance, issued contemporaneously with the enactment of Section 1399-*ll*(1-a) in 2020, and never modified or rescinded since, satisfies these criteria. The Court should defer to the Department of Public Health's interpretation of Section 1399-*ll*(1-a) and dismiss the City's claim.

*Third*, nowhere in the First Amended Complaint does the City allege any particular instance of either Defendant actually *shipping* any vapor products to persons in New York City that are not holders of a dealer's registration certificate. The First Amended Complaint makes a wholly conclusory allegation that Defendants' alleged sales necessarily violate the provisions of Section 1399-*ll*(1-a), but this unsupported legal conclusion cannot alter the fact that the City has failed to allege a *specific shipment* to an unregistered business. The City relies on a "formulaic recitation of the elements of the cause of action" and merely applies it to all the defendants without any specific allegations as to each individual defendant. *City of New York v. Singh*, 2021 U.S. Dist. LEXIS 173415, *5 (S.D.N.Y. Sept. 13, 2021) (citing *Twombly*, 550 U.S. at 555); *Fellows v. CitiMortgage, Inc.*, 710 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) (internal citation and quotations omitted). To adequately plead a plausible claim, the City needs to allege more than the conclusory and factually unsupported allegations found in the First Amended Complaint.

Indeed, even as to Vape More, the City does not allege that Urban Smoke Distributors, the distributor in the City to which the City alleges Vape More sold vapor products, is unregistered. And, of course, it is possible that even if such sales occurred, the Defendants' customers visited the Defendants' locations and picked up products there such that no shipment—and thus no potential violation of Section 1399-*ll*(1-a)—took place. The City's failure to plead even the

minimum facts necessary to state a plausible claim against these Defendants is fatal to its claim for alleged violations of Section 1399-*ll*(1-a).

## C.  The City Fails to Plead a Plausible Claim for Violations of New York City Administrative Code § 17-715(b)(1)

The City's third claim for relief similarly fails to state a plausible claim under N.Y.C. Admin. Code § 17-715(b)(1) for at least two independent reasons.

*First*, there is no statutory basis for a civil claim in this Court (or in New York Supreme Court, from which this case was removed) by corporate counsel under Section 17-715. Enforcement for violations of Section 17-715 is addressed by N.Y.C. Admin. Code § 17-717, which provides for enforcement of Subchapter 2 of Chapter 7 of the City's Administrative Code by City departments through "administrative trials and hearings." In contrast, Subchapter 1, which does *not* include Section 17-715, but rather other aspects of tobacco product sales and deliveries, specifically contains a provision authorizing the City to seek judicial relief. *See* N.Y.C. Admin. Code §17-710(d) ("Whenever any person has engaged in any acts or practices which constitute a violation of any provision of this subchapter . . . the city may make application to a court of competent jurisdiction for any order enjoining such acts or practices and for an order granting a temporary or permanent injunction, restraining order or other order enjoining such acts or practices."). The lack of a similar enforcement provision in Subchapter 2, where Section 17-715 is found, demonstrates that the City's administrative hearing process, rather than this civil action, is the proper forum for the City to seek relief for alleged violations of Section 17-715.

*Second*, the City's claim under Section 17-715 fails because the City's own regulation, 24 R.C.N.Y. 28-02(b), specifically suggests that sales of flavored vapor products to distributors in the

City—like the sale the City accuses Vape More of making[22]—do not violate Section 17-715(b)(1) because such distributors are entitled to possess flavored vapor products for sales to entities located outside the City. Nor do the City's wholly conclusory allegations that Vape Plus "necessarily possessed, offered for sale and possessed to offer for sale in the City" plead sufficient facts to suggest that 24 R.C.N.Y. 28-02(b) cannot insulate Vape Plus's sales from an alleged violation of Section 17-715(b)(1). Again, the City fails to allege any specific circumstances surrounding potential sales of flavored e-cigarettes and flavored e-liquids *in* New York City, such as specific invoices, identities of purchasers, terms of sale, locations of sale, or dates of sale.  As such, the City's third cause of action fails to plead "factual content that allows the [C]ourt to draw the reasonable inference that [Vape More and Vape Plus are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## D.    The City Fails to Plead a Plausible Public Nuisance Claim

The City's fourth claim for relief fails to state a cognizable claim for public nuisance because the City has not alleged facts sufficient to conclude that Vape More and Vape Plus created or contributed to the alleged public nuisance. To succeed on a public nuisance claim, the City must show that Vape More and Vape Plus's conduct "'amounts to a substantial interference with the exercise of a common right of the public,' thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013) (quoting *532 Madison Ave. Gourment Foods v. Finlandia Ctr.*, 750 N.E.2d 1097, 1104 (N.Y. 2001)). The City must allege that the conduct or omissions of Vape More and Vape Plus created, contributed to, or maintained

---

[22] Additionally, as noted above, Vape More is located north of Albany, not in New York City. Without more detailed factual allegations, it is thus unclear how Vape More could have sold, offered for sale, or possessed with intent to sell or offer for sale flavored electronic cigarettes or e-liquid *in* New York City.

a public nuisance. *See Hicksville Water Dist. v. Philips Elec. North Am. Corp.*, No. 17-CF-4442 (ADS) (ARL), 2018 U.S. Dist. LEXIS 53342, at *19 (E.D.N.Y. Mar. 29, 2018).[23]

The City's claim that a public nuisance exists, and that Defendants created or contributed to it, is rooted in the assertion that Vape More and Vape Plus violated New York Public Health Law § 1399-mm-1 by engaging in the *retail* sale of flavored vapor products to individual consumers. *See* FAC, ¶¶ 47, 179, 199. But the City does not, and cannot truthfully, allege *any* factual allegations relating to Vape More and Vape Plus's supposed *retail* sales of flavored electronic cigarettes or flavored e-liquids to individuals, and even less so to underage individuals. *See id*. Significantly, the City acknowledges that Defendants are not retailers and instead are wholesalers and distributors, which inherently means they are not engaged in any retail sales. FAC, ¶¶ 148, 156-57. There is no reference to any alleged violation of any other statute, nor is there even any reference to Defendants creating or contributing to a public nuisance by engaging in retail sales.

Instead, the City merely and insufficiently relies on general and conclusory allegations that Vape More and Vape Plus sell and distribute e-cigarettes in violation of federal, state, and city laws. *See* FAC, ¶ 202. But even those allegations are contradicted by the City's repeated allegations that Defendants are "distributors" or "wholesalers" that make sales to sub-distributors and retailers. *See, e.g.*, *id*., ¶¶ 148, 156-57. Despite having no factual basis or specific allegations to support its conclusory claims that Defendants engaged in retail sales of flavored vapor products in violation of Public Health Law § 1399-mm-1, the City asserts its public nuisance claim based on those purported violations. Because the City pleads only conclusory, unsupported assertions

---

[23] A third element exists for private plaintiffs asserting a claim for public nuisance and requires that they show they suffered a particular harm or special injury. *Id.*

and conclusions of law, its First Amended Complaint fails to plead a cognizable cause of action for public nuisance. *See Iqbal*, 550 U.S. at 570.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the City's First Amended Complaint as against Defendants Vape More and Vape Plus.

Dated: July 26, 2024      Respectfully Submitted,

             THOMPSON HINE LLP

            By:_____/s/ Ryan Callinan_____
             Ryan Callinan
             Krupa A. Patel
             Eric N. Heyer (*pro hac vice* pending)
             Joseph A. Smith (*pro hac vice* pending)
             THOMPSON HINE LLP
             1919 M Street, N.W., Suite 700
             Washington, DC 20036
             Phone: 202.331.8800
             Ryan.Callinan@ThompsonHine.com
             Krupa.Patel@ThompsonHine.com
             Eric.Heyer@ThompsonHine.com
             Joe.Smith@ThompsonHine.com

             *Counsel for Defendants Vape More, Inc. and Vape Plus Distribution Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 26, 2024, I caused to be served on counsel of record, electronically via the ECF, a true and correct copy of the foregoing Memorandum in conjunction with its Notice of Motion.

s/ Ryan Callinan       
Ryan Callinan