UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Case No. 24-cv-05161-GHW-JW

------------------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                                    Plaintiff,


                v.


ENVIROMD GROUP LLC; GT IMPORTS; KAYLA
WHOLESALE, INC., d/b/a The Vapery; KLCC WHOLESALE
INC.; PIONEER DISTRIBUTION, INC. a/k/a
WEVAPEUSA.COM a/k/a SELLER SUPREME LLC; RZ
SMOKE INC.; STAR ZONE INC.; URBAN SMOKE
DISTRIBUTORS; VAPE MORE INC. a/k/a MORE LLC;
VAPE PLUS DISTRIBUTION CORP. a/k/a G&A
DISTRIBUTION; DAVID ALFIH a/k/a David Alfieh, a/k/a DJ
Alfani, and MARCUS BERNARD,

                                    Defendants.


------------------------------------------------------------------------------- x

**SECOND AMENDED
COMPLAINT**

# **Table of Contents**

**Page**

NATURE OF THE ACTION ................................................................................................ 1

JURISDICTION AND VENUE ........................................................................................... 4

PARTIES ............................................................................................................................ 5

BACKGROUND ................................................................................................................. 7

    The Family Smoking Prevention and Tobacco Control Act ............................................ 7

    Use of Flavored E-Cigarettes By Young Persons .......................................................... 9

    Flavor Bans ................................................................................................................... 14

    Enforcement Efforts ...................................................................................................... 15

ACTIONS OF THE DEFENDANTS ................................................................................. 16

    EnviroMD Group LLC .................................................................................................. 16

        N.Y.C. Ad. Code § 17-715 ....................................................................................... 16

        PACT Act .................................................................................................................. 17

        N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) .......................................................................... 18

    GT Imports .................................................................................................................... 18

        N.Y.C. Ad. Code § 17-715 ....................................................................................... 18

        PACT Act .................................................................................................................. 19

        N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) .......................................................................... 20

    Kayla Wholesale, Inc. .................................................................................................... 21

        N.Y.C. Ad. Code § 17-715 ....................................................................................... 21

        PACT Act & N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) ..................................................... 21

    KLCC Wholesale .......................................................................................................... 24

        N.Y.C. Ad. Code § 17-715 ....................................................................................... 24

    Pioneer,  David Alfih, and Marcus Bernard .................................................................. 25

        N.Y.C. Ad. Code § 17-715 ....................................................................................... 25

**Page**

PACT Act & N.Y. Pub. Hlth. L. § 1399-ll (1-a) ......................................................... 26

RZ Smoke Inc. ..................................................................................................................... 28

    N.Y.C. Ad. Code § 17-715 ............................................................................................... 28

    PACT Act ............................................................................................................................. 28

    N.Y. Pub. Hlth. L. §  1399-*ll* (1-a) .............................................................................. 29

Star Zone ............................................................................................................................... 29

    N.Y.C. Ad. Code § 17-715 ............................................................................................... 29

    PACT Act ............................................................................................................................. 30

    N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) ............................................................................... 30

Urban Smoke Distributors ................................................................................................. 31

    N.Y.C. Ad. Code § 17-715 ............................................................................................... 31

    PACT Act ............................................................................................................................. 32

    N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) ............................................................................... 33

Vape More ............................................................................................................................. 33

    N.Y.C. Ad. Code § 17-715 ............................................................................................... 33

    PACT Act ............................................................................................................................. 34

    N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) ............................................................................... 34

Vape Plus ............................................................................................................................... 35

    N.Y.C. Ad. Code § 17-715 ............................................................................................... 35

    PACT Act ............................................................................................................................. 36

    NY Pub. Hlth. L. § 1399-*ll* (1-a) ................................................................................. 37

ALLEGATIONS RELATED TO CAUSES OF ACTION ....................................................... 37

    Allegations Related to the PACT Act ............................................................................... 37

    Allegations Related to N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) ....................................... 41

    Allegations Related to N.Y.C. Administrative Code § 17-715 (b) (1) .......................... 43

**Page**

Allegations Related to Public Nuisance ........................................................... 43

FIRST CLAIM FOR RELIEF ........................................................................... 47

(Violation of the Prevent All Cigarette Trafficking Act) ................................. 47

SECOND CLAIM FOR RELIEF ....................................................................... 48

(Violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a)) .......................................... 48

THIRD CLAIM FOR RELIEF ........................................................................... 49

(Violation of N.Y.C. Administrative Code § 17-715 (b) (1)) ........................... 49

FOURTH CLAIM FOR RELIEF ....................................................................... 50

(Public Nuisance) .......................................................................................... 50

APPENDIX: EXHIBIT LIST ............................................................................. 53

Plaintiff the City of New York (the "City"), by counsel, respectfully alleges, with knowledge of its own actions and on information and belief as to the actions of others, as follows:

### Nature of the Action

1.        By this action the City seeks injunctive and other equitable relief, damages and statutory penalties arising out of the distribution and sale of flavored electronic nicotine delivery devices, also known as "e-cigarettes" or "ENDS."[1] The Defendants named herein violate nearly every federal, New York State and New York City law enacted to regulate the marketing, distribution, and sale of flavored e-cigarettes.[2]

2.        E-cigarettes, also familiarly known as "vapes," are an "electronic nicotine delivery device" – a device that uses a battery to heat a nicotine-laced solution (an "e-liquid") to create a nicotine-infused aerosol or vapor inhaled by the user in place of the combustion-generated tobacco smoke of a traditional cigarette. E-liquids are mixtures of natural or most often synthetic nicotine dissolved in propylene glycol and vegetable glycerin. E-liquids can be formulated to produce a vapor tasting of tobacco, but the vast majority, and those at issue in this action, contain flavorings that impart to the aerosol exotic or evocative tastes of fruits, candy, desserts or even alcoholic beverages.

3.        The most popular electronic nicotine delivery device among young people[3]

---

[1] The term "electronic nicotine delivery system," often abbreviated as "ENDS," refers to a variety of devices— "vapes," "vaporizers," "vape pens," "hookah pens," "electronic cigarettes," "e-cigars," and "e-pipes," among others—which vaporize nicotine-containing solutions ("e-liquids") that deliver nicotine when inhaled by the user.

[2] Electronic nicotine delivery devices can be manufactured to resemble conventional cigarettes, cigars, or pipes, pens or even USB flash drives, but most devices presently on the market bear little or no resemblance to traditional cigarettes that use combustible tobacco. E-cigarette devices may be re-fillable when the e-liquid is depleted (like a fountain pen), may accept e-liquid cartridges or "pods" (like a ball-point pen), or may be non-refillable "disposables" that are discarded after the e-liquid has been consumed. The devices vary in the volume of the e-liquid they contain and are advertised and priced according to the approximate number of "puffs" the device provides.

[3] Maria Cooper et al., *Notes from the Field: E-cigarette Use Among Middle and High School Students — United States, 2022*, 71 Morbidity & Mortality Wkly. Rep. 1283 (2022), http://dx.doi.org/10.15585/mmwr.mm7140a3.

is the "disposable" device, which consists of a plastic tank typically filled with a nicotine-containing e-liquid in which a metal coil is immersed. Suction on the device by the user switches on the device battery, heating the metal coil and the e-liquid in which it is immersed to produce a nicotine-infused aerosol inhaled by the user.

4.      Nicotine is among the most addictive substances used by humans, with an ability to addict users comparable to heroin or cocaine.[4] Nicotine is well-established as the principal driver of traditional cigarette addiction and serves the same role for e-cigarettes. The addictive ability of e-cigarettes is in fact amplified over that of traditional cigarettes by formulating the e-liquids with nicotine concentrations that exceed traditional cigarettes. More than 90% of the disposable flavored e-cigarettes recently sold in the United States have nicotine concentrations of 5% or higher, at least 2.5 times the maximum concentration allowed in Canada, the United Kingdom and the European Union.[5]

5.      In addition to having higher nicotine concentrations, e-liquid manufacturers now encourage use by intentionally formulating their products to reduce or eliminate the natural harshness of nicotine, easing inhalation of the vapor.

6.      The United States Surgeon General has branded "[t]obacco use [a]s a pediatric epidemic."[6] Youth, *i.e.*, those up to approximately 25 years of age, are particularly vulnerable to nicotine addiction, which can harm the developing adolescent brain. Nine out of ten smokers begin by age 18; 80% who begin as teens will smoke into adulthood.[7] The Surgeon

---

[4] *See e.g.,* U.S. DEP'T OF HEALTH & HUM. SERVS., *The Health Consequences of Nicotine Addiction: A Report of the Surgeon General* (William R. Lynn et al. eds, 1988), https://profiles.nlm.nih.gov/101584932X423.

[5] Fatma Romeh M Ali et al., *Trends in US E-cigarette Sales and Prices by Nicotine Strength, Overall and by Product and Flavor Type, 2017–2022*, 25 Nicotine & Tobacco Research 1052 (May 2023), https://doi.org/10.1093/ntr/ntac284.

[6] Tobacco Control Act § 2(1), 123 Stat. at 1777.

[7] U.S. Dep't of Health & Hum. Servs*., Preventing Tobacco Use Among Youth and Adults, A Report of the Surgeon General* 1 (2012), https://www.hhs.gov/surgeongeneral/reports-and-publications/tobacco/index.html.

General accordingly has warned that the "epidemic of youth e-cigarette use" may condemn a generation to "a lifetime of nicotine addiction and associated health risks."[8]

7.      By distributing devices that provide high-concentration, milder nicotine vapors tasting pleasantly of fruit, candy or desserts, flavored e-cigarette manufacturers and distributors have triggered the largest increases in youth nicotine use ever seen.[9]

8.      The major manufacturers of flavored e-cigarettes and e-liquids are principally located in Shenzhen, China: those manufacturers sell and ship their products directly or through freight-forwarding agencies to "master sellers" in the United States. E-cigarette manufacturers frequently evade federal import restrictions on flavored nicotine devices through the use of false documentation misidentifying the product or understating the amount or value of the goods, thereby reducing taxes, duties and fees and evading import prohibitions. Comparing shipment volumes collected by the United States Customs and Border Patrol with the actual volume of flavored e-cigarettes available nationwide establishes that the Chinese manufacturers of flavored e-cigarettes have vastly underreported their United States sales, defrauding the federal government of millions of dollars in import duties.

9.      So-called "master sellers" in the United States have developed close commercial relationships, including ownership interests, with Chinese e-cigarette manufacturers. Master sellers preferentially or exclusively receive imports of e-cigarettes and flavored e-liquids from manufacturers in China and re-sell the products to sub-sellers. The master sellers and sub-sellers in turn sell to both brick-and-mortar and internet-based sellers. Master sellers, sub-sellers, brick-and-mortar and internet-based sellers all sell to the consuming

---

[8] *Surgeon General's Advisory on E-cigarette Use Among Youth,* Center for Disease Control & Prevention (Dec. 2018), https://www.cdc.gov/tobacco/basic_information/e-cigarettes/surgeon-general-advisory.

[9] *Id*.

public.

10.        This distribution system for flavored e-cigarettes exists notwithstanding that no flavored e-cigarette is legally marketed in the United States. The Federal Food and Drug Administration ("FDA") has not approved for sale in the United States a single flavored e-cigarette or e-liquid. Marketing any flavored e-cigarette in the United States is illegal both under federal law and under a host of state and local laws, including those of New York State and City.

11.        Relevant to the present action:

    i)        The Prevent All Cigarettes Trafficking ("PACT") Act, 15 U.S.C. § 375 *et seq.*, bars the sale or delivery of flavored e-cigarettes except in face-to-face transactions unless the transaction is with a "lawfully-operating" tobacco businesses. Evidence obtained to date shows that Defendants EnviroMD Group LLC, GT Imports, Kayla Wholesale, Pioneer Distribution, RZ Smoke, Star Zone Inc., Urban Smoke Distributors, Vape More Inc. and More LLC, Vape Plus Distribution Corp., David Alfih, and Marcus Bernard violate this statute.

    ii)        New York Pub. Hlth. L. § 1399-*ll* (1-a) makes it unlawful for any person to deliver any e-cigarettes, flavored or otherwise, to any person other than a state-licensed vapor business. EnviroMD Group LLC, GT Imports, Kayla Wholesale, Pioneer Distribution, RZ Smoke, Star Zone Inc., Urban Smoke Distributors, Vape More Inc. and More LLC, Vape Plus Distribution Corp., David Alfih, and Marcus Bernard violate this statute.

    iii)        New York City Administrative Code ("Ad. Code") § 17-715 makes it unlawful for "any person" to sell, offer for sale, or possess for sale flavored e-cigarettes. Each Defendant violates this statute.

12.        In addition to the above violations, the Defendants cause, create, or contribute to a public nuisance.

### Jurisdiction and Venue

13.        The Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28

U.S.C. § 1367(a).

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this district.

## Parties

15.     The City is a municipal corporation organized under the laws of the State of New York.

16.     Defendant EnviroMD Group LLC ("EnviroMD") is a limited liability company formed under the laws of the State of New York with a principal place of business at or formerly at 2918 Avenue J, Brooklyn, New York 11210 and/or 1222 Avenue M, Suite 501, Brooklyn, New York 11230.

17.     Defendant GT Imports ("GT Imports") is a corporation formed under the laws of the State of New York with a principal place of business at 3 West Mall, Plainview, New York 11803.

18.     Defendant Kayla Wholesale, Inc., d/b/a The Vapery d/b/a New York Vape King ("Kayla") is a corporation formed under the laws of the State of New York with a principal place of business formerly at 132 32nd Street, Brooklyn, New York, 11232. Kayla operates an internet website at www.newyorkvapeking.com from which it sells flavored e-cigarettes to the public.

19.     Defendant KLCC Wholesale Inc. ("KLCC") is a corporation formed under the laws of the State of New York with a principal place of business at 452 E. 99th Street, Brooklyn, New York 11236. KLCC operates an internet website with a web address of https://klcc-wholesale.com from which it offers the sale of flavored e-cigarettes.

20.     Defendant Pioneer Distribution Inc. a/k/a Wevapeusa.com., a/k/a Seller Supreme LLC (collectively, "Pioneer") is a corporation formed under the laws of the State of

New York and operated by Defendants David Alfih and Marcus Bernard, with a principal place of business at or formerly 1100 Coney Island Avenue, Suite 402, Brooklyn, New York 11230. Pioneer operates an internet website at https://wevapeusa.com from which it makes sales of flavored e-cigarettes to the public.

21.    Defendant RZ Smoke Inc. ("RZ Smoke") is a corporation formed under the laws of the State of New York, with a principal place of business at 412 Hillside Avenue, New Hyde Park, New York 11040. RZ Smoke operates an internet website at https://www.rzsmoke.com/ from which offers flavored e-cigarettes for sale.

22.    Defendant Star Zone Inc. ("Star Zone") is a corporation formed under the laws of the State of New York, with a principal place of business at 3085B New Street, Oceanside, New York 11572. Star Zone operates an internet website for the sale of flavored e-cigarettes with a web address of https://starzoneny.com from which offers flavored e-cigarettes for sale.

23.    Defendant Urban Smoke Distributors ("Urban Smoke") is a corporation formed under the laws of the State of New York, with a business address of 34-10 58th Street, Woodside, New York 11377.

24.    Defendants Vape More Inc. and More LLC (hereafter referred to collectively as "Vape More") are respectively a corporation formed under the laws of the State of New York (Vape More Inc.) and a limited liability corporation formed under the laws of the State of New York (More LLC) that share a principal place of business at 638 Columbia St Ext., Latham, New York 12110. Vape More operates an internet website at https://vapemoreinc.com from which offers flavored e-cigarettes for sale.

25.    Defendant Vape Plus Distribution Corp. a/k/a G&A Distribution ("Vape

Plus") is a corporation formed under the laws of the State of New York with a principal place of business at 2578 Atlantic Avenue, Brooklyn, New York 11207. Vape Plus operates an internet website at https://nyvapeplus.com from which offers flavored e-cigarettes for sale.

26.      Defendant David Alfih, a/k/a David Alfieh, a/k/a DJ Alfani, is a resident of Brooklyn, NY, residing at 1431 7th St., Brooklyn, NY 11230, 1479 15th St, Brooklyn, NY 11230, or 1277 14th St Apt 213C, Brooklyn, NY 11230. David Alfih is a principal of Pioneer Distribution, Seller Supreme LLC, and/or wevapeusa.com.

27.      Defendant Marcus Bernard is a resident of the State of New York whose current address is unknown. Marcus Bernard is a principal of Pioneer Distribution, Seller Supreme LLC, and/or wevapeusa.com.

## Background

### The Family Smoking Prevention and Tobacco Control Act

28.      In the Family Smoking Prevention and Tobacco Control Act, 21 U.S.C. § 387, *et seq.* (2016) (the "Tobacco Control Act"), Congress authorized the FDA to adopt what is known as the "Deeming Rule," 21 C.F.R. § 1143.1. The rule brought electronic cigarettes within the jurisdiction of the Tobacco Control Act, subject to the FDA's regulatory authority. Electronic cigarettes are regulated under the Tobacco Control Act by the FDA as "tobacco products" because they "contain[] nicotine from any source" and are "intended for human consumption."[10]

29.      The Tobacco Control Act requires tobacco products manufacturers to obtain FDA authorization before marketing any "new" tobacco product – one not on the market as of February 15, 2007 – in the United States. No flavored e-cigarette is known to have been

---

[10] 21 U.S.C. § 321(rr)(1).

commercially marketed in the United States as of February 15, 2007. Accordingly, all flavored e-cigarettes are "new" tobacco products that must pass through "premarket review" by the FDA to obtain the "premarket authorization" that legalizes the sale of the device in the United States.[11]

30.     The Tobacco Control Act requires that premarket authorization be denied to a new tobacco product unless the FDA finds that marketing the product is "appropriate for the protection of the public health."[12] Consistent with congressional findings that tobacco use by youth "is a pediatric disease of considerable proportions,"[13] an applicant for premarket authorization of an e-cigarette must show a net benefit to the public health by establishing that the benefit from the product's ability to reduce adult use of combustible tobacco exceeds the risk of youth initiation.

31.     Flavored e-cigarettes are deemed to present a sufficiently substantial risk of youth initiation that the FDA requires strong proof of a marked reduction in adult combustible tobacco use to meet the net benefit standard. No flavored e-cigarette has met that standard to date. The FDA has authorized only tobacco-flavored, menthol, and unflavored e-cigarettes.[14] Not only have no flavored e-cigarettes or e-liquids received market authorization, but FDA has affirmatively denied pre-market authorization to dozens of proposed flavored e-cigarette and e-liquid brands that have been the subject of FDA Marketing Denial Orders expressly denying pre-market authorization. All flavored e-cigarettes and e-liquids—including the many dozens of brands at issue in this case—are marketed unlawfully.

---

[11] *See* 21 U.S.C. § 387j(a)(1)-(2).

[12] 21 U.S.C. § 387j(c)(2), (4).

[13] Tobacco Control Act § 2(1), 123 Stat. at 1777.

[14] *See* U.S. Food & Drug Admin., E-Cigarettes Authorized by the FDA, https://digitalmedia.hhs.gov/tobacco/hosted/E-Cigarettes-Authorized-FDA-JULY2024.pdf (July 2024) (FDA list of approved e-cigarettes).

32.    A new tobacco product without premarket authorization is an "adulterated product," 21 U.S.C. § 387(b), prohibited by the Tobacco Control Act from "introduction or delivery for introduction into interstate commerce. . ." 21 U.S.C. 331(a). The marketing and sale of any e-cigarettes without premarket authorization is a *per se* violation of 21 U.S.C. § 331(a). The FDA's website states: "Tobacco products covered under an [marketing denial order] cannot be legally introduced into interstate commerce in the U.S. without risking FDA enforcement."

### Use of Flavored E-Cigarettes By Young Persons

33.    The primary driver of the vaping epidemic among young people is "youth appeal and youth access to flavored tobacco products."[15] The long-standing yearly decline in youth smoking underwent a dramatic reversal in 2018, when it was found that more than one in four U.S. high school students reported use of a tobacco product in the past thirty days. The National Adolescent Drug Trends Report issued by the University of Michigan on December 28, 2018, reported increases in adolescent e-cigarette use from 2017 to 2018 that were the "largest ever recorded in the past 43 years for any adolescent substance use outcome in the U.S."[16] The percentage of 12th grade students reporting nicotine use nearly doubled between 2017 and 2018, with a 78% surge in the number of youth using electronic nicotine delivery devices, an increase "twice as large as the previous record for the largest-ever increase among 12th graders."[17] E-cigarette use by middle school students surged by 48%.

34.    By 2018, approximately 3.6 million middle and high school students used e-

---

[15] *Id.*; *Magellan Tech., Inc. v. United States FDA*, No. 21- 2426, 2023 U.S. App. LEXIS 15016, at *3 (2d Cir. June 16, 2023) ("[E-cigarettes] have rapidly become popular—especially among young people, who have overwhelmingly adopted flavored products as their tobacco products of choice.").

[16] *National Adolescent Drug Trends in 2018*, Univ. of Mich. Inst. for Social Research (Dec. 17, 2018), https://monitoringthefuture.org/wp-content/uploads/2021/02/18drugpr.pdf.

[17] *News Release, Teens Using Vaping Devices in Record Numbers*, Nat'l Insts. of Health (Dec. 17, 2018), https://www.nih.gov/news-events/news-releases/teens-using-vaping-devices-record-numbers.

cigarettes regularly, with approximately 20% of 12th graders reporting e-cigarette use in the 30-day sample period.[18] By late 2019, 5 million students reported active use of electronic nicotine delivery devices, with 27.5% of high school students and 10.5% of middle school students having used the devices within the thirty-day sample period.[19]

35.      By 2020, two of the largest surveys of youth tobacco use conducted in 2019 found that e-cigarette use had reached the highest levels ever recorded,[20] and that consumption of e-cigarettes had doubled among middle and high school students.[21] In 2019, the total number of middle and high school students reporting current use of e-cigarettes surpassed five million for the first time in history.[22]

36.      Consistent with the national trend, youth e-cigarette consumption rates in New York City schools are higher than rates of combustible tobacco use. In 2021, 11% of NYC public high school students reported using an e-cigarette in the past month, while only 3% reported smoking cigarettes. In 2018, 6.7% of public middle school students surveyed reported current use of electronic vapor products; only 0.9% reported currently smoking traditional cigarettes.

37.      The substantial increase in youth smoking in the space of only one year[23] is

---

[18] *See* Jan Hoffman, *Addicted to Vaped Nicotine, Teenagers Have No Clear Path to Quitting*, N.Y. Times (Dec. 18, 2018), https://www.nytimes.com/2018/12/18/health/vaping-nicotine-teenagers.html.

[19] *National Youth Tobacco Survey*, U.S. Food & Drug Admin. (2019), https://www.fda.gov/tobacco-products/youth-andtobacco/ youth-tobacco-use-results-national-youth-tobacco-survey; Karen A. Cullen et al., *e-Cigarette Use Among Youth in the United States, 2019*, 322 JAMA 2095 (2019), https://jamanetwork.com/journals/jama/fullarticle/2755265.

[20] *Enforcement Priorities for Electronic Nicotine Delivery Systems (ENDS) and Other Deemed Products on the Market Without Premarket Authorization* at 8, U.S. Food & Drug Admin. (Apr. 2020), https://www.fda.gov/media/133880/download.

[21] Karen A. Cullen et al., *E-cigarette Use Among Youth in the United States, 2019*, 322 JAMA 2095 (2019), https://jamanetwork.com/journals/jama/fullarticle/2755265.

[22] *Id*.

[23] *Progress Erased: Youth Tobacco Use Increased During 2017-2018*, Ctrs. for Disease Control & Prevention

remarkable because it occurred without an increase in the consumption of combustible tobacco products such as cigarettes or cigars. The increase in youth smoking was manifest only as an increase in e-cigarette use, which increased by 78% in one year, at the same time that the use of all other tobacco products continued its decades-long decline.[24]

38.      While the numbers of users remains unacceptable, by October 2022, there was some reduction in e-cigarette use by school-age youth. The FDA and CDC released federal data from the 2022 National Youth Tobacco Survey showing that about one in ten – or more than 2.5 million – U.S. middle and high school students had used e-cigarettes in the past 30-day sample period, specifically 14.1% (2.14 million) of high school students and 3.3% (380,000) of middle school students reported current e-cigarette use, a decline from earlier surveys.

39.      More than a quarter (27.6%) of the youth e-cigarette users in the 2022 Survey used an e-cigarette product every day, and more than 40% reported use in at least 20 of the last 30 days. Flavored e-cigarette were the most commonly used product – 55.3% reported smoking flavored devices. In 2018, 6.7% of public middle school students surveyed reported they were current users of e-cigarettes, while only 0.9% reported currently smoking cigarettes.

40.      The Surgeon General has explained that nicotine in e-cigarettes affects the developing brain and produces addiction in youth more easily than in adults as a result of the enhanced learning abilities of the developing brain.[25] The effects of nicotine exposure on the brain of youth and young adults include nicotine addiction itself, as well as "priming" for use of

---

(Feb.11, 2019), https://www.cdc.gov/media/releases/2019/p0211-youth-tobacco-use-increased.html.

[24] Scott Gottlieb, *Statement from FDA Commissioner Scott Gottlieb, M.D., on proposed new steps to protect youth by preventing access to flavored tobacco products and banning menthol in cigarettes*, U.S. Food & Drug Admin. (Nov. 15, 2018), https://www.Fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-proposed-new-steps-protect-youth-preventing-access.

[25] U.S. Surgeon General and Ctrs. for Disease Control & Prevention, Office on Smoking and Health, *Know the Risks: E-Cigarettes and Young People* (2019), https://ecigarettes.Surgeongeneral.gov/.

other addictive substances, impaired impulse control, deficits in attention and cognition and mood disorders.[26] As a highly addictive, psychoactive substance that affects brain areas involved in emotional and cognitive processing nicotine poses a particularly potent threat to the adolescent brain, "derang[ing] the normal course of brain maturation and hav[ing] lasting consequences for cognitive ability, mental health, and even personality."[27]

41.        In the summer of 2019, hundreds of otherwise healthy young adults began to appear in emergency rooms nationwide with dangerous respiratory damage. As of October 1, 2019, 1,080 lung injury cases associated with cannabis and nicotine e-cigarette products had been reported to the CDC. Eighteen deaths from 15 states were confirmed. By December 2019, more than 2,500 reported cases of e-cigarette-related hospitalizations for lung injury were reported, including more than fifty confirmed deaths.[28] New York City alone experienced 50 cases of e-cigarette lung injury and four confirmed deaths. Cases continue nationwide and in New York City.

42.        E-cigarettes present hazards even to presumed non-vapers. According to the CDC, between April 1, 2022 and March 31, 2023, 7,043 e-cigarette exposure cases were reported to the National Poison Data System, which compiles cases that have been reported to U.S. poison centers. The data showed a 32% increase in reported poisoning from e-liquid ingestion during this period, with nearly 90% of the cases in children less than five years old. The most reported brand involved was Elf Bar, a disposable e-cigarette available in a variety of

---

[26] Menglu Yuan et al., *Nicotine and the Adolescent Brain*, 593 J. Physiology 3397 (2015), www.ncbi.nlm.nih.gov/pmc/articles/PMC4560573/.

[27] Natalia A. Goriounova & Huibert D. Mansvelder, *Short- and Long-Term Consequences of Nicotine Exposure During Adolescence for Prefrontal Cortex Neuronal Network Function*, 2 Cold Spring Harbor Persp. Med. 12 (2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3543069/.

[28] Karen A. Cullen et al., *E-cigarette Use Among Youth in the United States, 2019*, 322 JAMA 2095 (2019), https://jamanetwork.com/journals/jama/fullarticle/2755265.

flavors and sold by all or most of the present Defendants.

43.    The explosive increase in the use of electronic nicotine delivery devices among youth is believed attributable to the devices' high nicotine content, youth-friendly candy, fruit and dessert flavors, and amenability for surreptitious use, *i.e.*, the ability to use the devices "discreetly." Nearly 85% of current e-cigarette users used flavored e-cigarettes, with fruit flavors being the most popular, followed by candy, desserts, or other sweets. Flavored e-liquids multiply the risk of nicotine addiction by simplifying the process of ingesting nicotine in forms expressly formulated to be more palatable to novice smokers both through taste and by the chemical reduction of the harshness of nicotine.[29]

44.    E-cigarettes are adopted at a higher rate by youth when the devices contain flavored e-liquids. Adolescents whose first tobacco product was flavored are more likely to continue using tobacco products than those whose first product was not flavored. Flavored e-liquids were used by 81% of first-time users aged twelve to seventeen who had ever used electronic nicotine delivery devices; 85.3% of current youth users had used a flavored e-liquid in the past month; 81.5% of current youth users said they used electronic nicotine delivery devices "because they come in flavors I like."[30] Adolescents whose first tobacco product was flavored are more likely to continue using tobacco products than those whose first product was not flavored; thus, young adults who use electronic cigarettes are more than four times as likely to begin using regular cigarettes when compared with peers who have not used flavored e-

---

[29] *See* U.S. Dep't of Health & Human Servs., How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease: A Report of the Surgeon General Ch. 4 (Ctrs. for Disease Control & Prevention ed. 2010), https://www.ncbi.nlm.nih.gov/books/NBK53018/#ch4.s92.

[30] *See* Bridget K. Ambrose et al., *Flavored Tobacco Product Use Among US Youth Aged 12-17 Years, 2013-2014*, 314 JAMA 1871 (2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6467270/; Karma McKelvey et al., *Adolescents and Young Adults Use in Perceptions of Pod-based Electronic Cigarettes*. 1 JAMA Network Open e183535 (2018), https://doi:10.1001/jamanetworkopen.2018.3535.

cigarettes.[31]

45.      Marketing e-cigarettes to youth is propelled not only by flavoring nicotine solutions, but also by packaging the devices with images of popular cartoon characters to enhance youth appeal. Some devices look so much like children's toys as to require the cautionary package warning that in fact the device is "Not a Toy."

**Flavor Bans**

46.      The effects of e-cigarettes on youth compelled the FDA effectively to ban flavored cigarettes (other than menthol) in 2009 pursuant to its authority under the Tobacco Control Act. "Flavored cigarettes attract and allure kids into addiction," Health and Human Services Assistant Secretary Howard Koh, MD, MPH, said at a news conference announcing the ban.[32] In January 2020, in response to "epidemic levels of youth use of e-cigarettes" the FDA banned flavored e-cigarette "pods" (other than "tobacco" and "menthol" flavors), announcing a policy to prioritize enforcement against unauthorized flavored vape products, because the products are "so appealing to children."[33]

47.      The federal flavor ban was followed by a New York State ban on retail sales of devices using flavored nicotine e-liquids. [34] Comparable legislation in California, Massachusetts, New Jersey, Rhode Island, Maine, Oregon, South Dakota, Utah, and Vermont

---

[31] *See* Brian A. Primack, et al., *Initiation of Traditional Cigarette Smoking after Electronic Cigarette Use Among Tobacco-Naïve US Young Adults*, 131 Am. J. Med.. 443.e1 (2018), https://pubmed.ncbi.nlm.nih.gov/29242110/.

[32] Daniel J. DeNoon, *FDA Bans Flavored Cigarettes: Ban Includes Cigarettes With Clove, Candy, and Fruit Flavors*, WebMD (Sept. 22, 2009), https://www.webmd.com/smoking-cessation/news/20090922/fda-bansflavored-cigarettes#2.

[33] *FDA Finalizes Enforcement Policy on Unauthorized Flavored Cartridge-Based Ecigarettes that Appeal to Children, Including Mint*, U.S. Food & Drug Admin. (Jan. 22, 2020), https://www.fda.gov/news-events/press-announcements/fda-finalizes-enforcement-policy-unauthorized-flavored-cartridge-based-e-cigarettes-appeal-children.

[34] *See* N.Y. Pub. Hlth. L. § 1399-mm-(1).

has banned sales of any e-cigarettes, flavored or not, over the internet. [35] At least 378 jurisdictions – including Chicago, Illinois, Los Angeles, San Diego, Sacramento, Oakland, and San Jose, California, Boulder, Colorado, and Newark, New Jersey – have imposed some form of restriction on flavored e-cigarette sales.

48.      New York City has enacted a complete ban on wholesale and retail sales of flavored vapes, whether over the internet or from brick-and-mortar locations.

**Enforcement Efforts**

49.      FDA warning letters are an enforcement mechanism indicating that the FDA considers the particular product or type of product named in the letter to be an FDA-regulated tobacco product, or that there is a compliance issue with a company's conduct or product, or that the product appears to be an unauthorized new tobacco product. As of January 31, 2023, the FDA has issued over 75 warning letters to manufacturers and 585 warning letters to retailers for illegally selling electronic nicotine delivery systems, warning that persons manufacturing and distributing unauthorized vapor products risk injunctive and/or equitable relief, civil penalties, and damages.

50.      On or about May 13, 2023, the FDA issued an import or "Red List" alert authorizing U.S. Customs and Border Protection ("CBP") to seize without inspection particular brands of e-cigarettes lacking the required marketing authorization, and which are thus "adulterated" and illegal under the Federal Food, Drug and Cosmetic Act. The FDA's Red List targeted e-cigarettes from more than 20 Chinese, Korean and U.S. companies and authorized CBP to "detain, without physical examination, the tobacco products identified on the Red List

---

[35] Fatma Romeh M. Ali et al., *E-cigarette Unit Sales by Product and Flavor Type, and Top-Selling Brands, United States, 2020–2022*, 72 Morbidity & Mortality Wkly. Rep. 672 (2023), DOI:http://dx.doi.org/10.15585/mmwr.mm7225a1.

of this Import Alert," including cigarettes … or any of … component parts [of a cigarette] that contain, as a constituent or additive, an artificial or natural flavor (other than tobacco or menthol)."[36]

51.     On May 31, 2023, the FDA issued warning letters to an additional 30 retailers and a distributor for illegally selling various brands of e-cigarettes, including the very popular Puff Bar, Esco Bar, and Hyde brand e-cigarettes,[37] which are among the most commonly reported brands used by youth e-cigarette users in the 2022 survey. These brands have been or are currently available for sale by all of the Defendants.

**Actions of the Defendants**

**<u>EnviroMD Group LLC</u>**

52.     EnviroMD Group LLC ("EnviroMD") is a New York limited liability company with a principal place of business formerly at 2918 Avenue J, Brooklyn, New York 11210 and/or 1222 Avenue M, Suite 501, Brooklyn, New York 11230.

**N.Y.C. Ad. Code § 17-715**

53.     EnviroMD purchases flavored e-cigarettes which have been possessed and offered for sale at EnviroMD's City facility and sold to City businesses or persons in violation of N.Y.C. Ad. Code § 17-715.

54.     Between approximately September 2022 and August 2023, EnviroMD sold thousands of flavored e-cigarettes to Brooklyn-based convenience store Star Vape Corp., located at 283 67th Street, Brooklyn, New York ("Star Vape"), including Myle Meta Bar brand e-

---

[36] *Import Alert 98-01*, U.S. Food & Drug Admin. (Mar. 13, 2023), https://www.accessdata.fda.gov/cms_ia/importalert_501.html.

[37] *FDA Conducts Retailer Inspection Blitz, Cracks Down on Illegal Sales of Popular Disposable E-cigarettes*, U.S. Food & Drug Admin. (May 31, 2023), www.fda.gov/news-events/press-announcements/fda-conducts-retailer-inspection-blitz-cracks-down-illegal-sales-popular-disposable-e-cigarettes..

cigarettes in flavors such as Iced Apple, Strawberry Colada, Mellow Mint and Lemon Ice, and Fume brand e-cigarettes in flavors such as grape, mango, melon ice, and cotton candy. Annexed hereto as Exhibit A are true and correct copies of invoices, dated February 13, 2023, April 4, 2023, June 15, 2023, June 22, 2023  and June 27, 2023, obtained by the City on January 4, 2024, showing EnviroMD's sales to Star Vape.

**PACT Act**

55.     On information and belief, EnviroMD received the orders from Star Vape for the flavored cigarettes shown in Exhibit A via the internet, telephone or mail order. EnviroMD and Star Vape were accordingly not in one another's physical presence when the orders for those e-cigarettes were placed. On information and belief, EnviroMD and Star Vape were not in one another's physical presence when the orders were delivered, and/or the e-cigarettes were delivered by EnviroMD to Star Vape by a method of remote delivery. EnviroMD's transactions with Star Vape were "delivery sales" as that term is defined under the PACT Act.

56.     At the time of the above deliveries, Star Vape sold, offered for sale, and/or possessed flavored e-cigarettes in New York City. Accordingly, Star Vape was not a "lawfully operating" tobacco business and was a "consumer" receiving "delivery sales" as those terms are defined under the PACT Act.

57.     Each separate brand and flavor combination was invoiced by EnviroMD to Star Vape as a "Box of 10," or less frequently as a "Box of 5," each in a different "Quantity" ranging from 0 to 100, with 40 to 60 being the most common quantity. A "Rate" was listed next to the "Quantity." Multiplying the "Rate" by the "Quantity" yielded a final column labeled "Amount," expressed in dollars. A typical EnviroMD invoice billing Star Vape for the sum of those amounts varied from $10,000 to $40,000. On information and belief, each invoiced delivery of e-cigarettes made by EnviroMD to Star Vape weighed in excess of ten (10) pounds,

in violation of the PACT Act.

<strong>N.Y. Pub. Hlth. L. § 1399-<em>ll</em> (1-a)</strong>

58.     As relevant here, New York Public Health Law limits deliveries of e-cigarettes to licensed or registered agents, defined as persons whose names appear on a list of licensed or registered agents of vapor product dealers published by the New York State Department of Taxation and Finance, or persons licensed or registered as an agent or dealer under article twenty eight-C of the tax law, hereafter referred to "Licensed Vape Dealers." *See* Pub. Hlth. L. § 1399-*ll* (1-a).

59.     On information and belief, in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a), EnviroMD ships or causes to be shipped vapor products to persons whose names do not appear on a list of licensed or registered agents of vapor product dealers published by the New York State Department of Taxation and Finance, or are not persons licensed or registered as an agent or dealer under article twenty eight-C of the tax law, including but not limited to Star Vape.

<strong><u>GT Imports</u></strong>

60.     GT Import & Wholesale, Inc. ("GT Imports"), located at 23 West Mall, Plainview, New York 11803, operates a website at https://gtimportswholesale.com that advertises and offers flavored e-cigarettes for sale. Annexed hereto as Exhibit B is a true and correct copy of a screenshot of that website taken on June 5, 2024.

<strong>N.Y.C. Ad. Code § 17-715</strong>

61.     GT Imports purchases flavored e-cigarettes which have been possessed at GT Import's facility and offered for sale and sold to City businesses or persons in violation of N.Y.C. Ad. Code § 17-715.

62.     Documents provided to the City by GT Imports show that between September 8, 2022 and August 21, 2023, GT Imports delivered unspecified brands of flavored

18

e-cigarettes containing 5% nicotine solutions with a total apparent value of $1,063,657 to various buyers located in the City of New York.

63.        Annexed hereto as Exhibit C is a true and correct copy of a report produced to the City by GT Imports on February 9, 2023, documenting GT Imports' sales of flavored e-cigarettes between September 8, 2022 and August 3, 2023 to various buyers located in New York City. Annexed hereto as Exhibit D are true and correct copies of invoices obtained by the City showing GT Imports' sales to Brooklyn-based Star Vape between March 2023 and August 2023.

## PACT Act

64.        GT Imports delivered 5% nicotine solutions of "Jungle Juice," "Pineapple Shake," "Kiwi Shake," "Iced Watermelon" and "Mixed Berries" to Topoo Industries at 2847 W 21st Street, Brooklyn, New York. Topoo Industries operates a large one-story warehouse at that location and appears to sell a variety of e-cigarettes, including flavored vapes and e-cigarette-related products from that warehouse and over the internet from its website at https://topoodistro.com.

65.        According to its own documentation, GT Imports also delivered what appears to be the same flavored 5% nicotine solutions of unspecified brands or brand of flavored e-cigarettes to "Jimmy," 1370 Ralph Avenue, Brooklyn, to R and B Wholesale, 1002 Atlantic Avenue, Brooklyn, New York, to Sahara Wholesale, 182-20 Liberty Avenue, Jamaica, Queens, and to EZ Wholesale, 2787 Third Avenue, Bronx, New York.

66.        Topoo Industries, "Jimmy," R and B Wholesale, Sahara Wholesale and EZ Wholesale are all on information and belief e-cigarette sellers located in New York City that engage in further sales of flavored vapes to the Public.

67.        On information and belief, GT Imports received orders from and made sales

19

to Topoo Industries, "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale for the above-described flavored e-cigarettes via the internet, by telephone, or mail order. On information and belief, GT Imports and, respectively, Topoo Industries, "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale were not in one another's physical presence when the above orders of e-cigarettes were placed or delivered and/or the e-cigarettes were delivered to those purchasers by remote delivery. Therefore, GT Imports to "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale were delivery sales as that term is defined under the PACT Act.

68.     On information and belief, each delivery of e-cigarettes made by GT Imports to "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale weighed in excess of ten (10) pounds, in violation of the PACT Act.

69.     At the time of the above deliveries, Topoo Industries, "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale sold, offered for sale, and/or possessed flavored e-cigarettes" in New York City in violation, *inter alia*, of N.Y.C. Ad. Code § 17-715. Accordingly "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale were not "lawfully operating" tobacco businesses and were "consumers" receiving "delivery sales" from GT Imports as those terms are defined under the PACT Act.

### N.Y. Pub. Hlth. L. § 1399-*ll* (1-a)

70.     On information and belief, Topoo Industries, "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale are not persons whose names appear on a list of licensed or registered agents of vapor product dealers published by the New York State Department of Taxation and Finance, nor are they persons licensed or registered as an agent or dealer under article twenty eight-C of the tax law and are thus not licensed e-cigarette dealers. Accordingly, on information and belief, GT Imports ships or causes to be shipped vapor products to persons

that are not licensed dealers in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a).

## Kayla Wholesale, Inc.

71.     Kayla has or had a physical address of 132 32nd Street, Brooklyn, New York, 11232. Kayla also operates a website at www.newyorkvapeking.com from which it sells, under the trade name "The Vapery, New York," flavored e-cigarettes, including Bliss Bar, Myle and Fume brands. According to the Vapery website, the company has been selling vaping products for 12 years, with the goal of creating "a thriving vaping community where enthusiasts of all levels can find the latest products," from the company's "diverse range of vaping solutions." https://www.newyorkvapeking.com/pages/about-us (last visited Mar. 21, 2024).

### N.Y.C. Ad. Code § 17-715

72.     Kayla purchases flavored e-cigarettes which have been possessed at Kayla's City facility and offered to and sold to City businesses or persons, in violation of N.Y.C. Ad. Code § 17-715.

73.     Between August 2020 and November 2020, Kayla supplied Star Vape with large quantities of flavored e-cigarettes branded as "STIG mango," and "STIG Lush Ice," with the latter identified as being shipped as "10 packs." STIG is a disposable e-cigarette available in flavors such as Iced Purple Bomb, Crisp Apple and Summer Strawberry. Annexed hereto as Exhibit E are true and correct copies of invoices obtained by the City on January 4, 2024, dated August 17, 2020, August 27, 2020, September 10, 2020, October 7, 2020, October 8, 2020, October 15, 2020 and November 2, 2020, showing Kayla's sales of flavored e-cigarettes to Star Vape.

### PACT Act & N.Y. Pub. Hlth. L. § 1399-*ll* (1-a)

74.     Through its website, Kayla also sells quantities of flavored e-cigarettes to consumers in New York City and elsewhere. From June 2019 until June 2024, as documented

by an internet tracking service, thousands of prospective e-cigarette purchasers accessed the www.newyorkvapeking.com website, where flavored e-cigarettes were offered for sale and possessed with intent to sell or offer for sale in the City.[38] The www.newyorkvapeking.com website appears to have been shut-down at or around the time this action was filed.

75.     On March 11, 2024, a City agent placed an order for a Watermelon Candy flavored Puff Bar XXL 1600 at the www.newyorkvapeking.com website to be shipped to an address in Brooklyn, New York, for a total purchase price of $17.63: $10.99 for the device, $6.64 for shipping, and $1.42 in taxes. Shortly after placing the order, the agent received an email from "NYVK Wholesale" "confirming the purchase of a watermelon candy Puff XXL 1600 e-cigarette."

76.     On or about March 15, 2024, the watermelon candy Puff XXL 1600 e-cigarette order was delivered by the United States Postal Service ("USPS") to a residential address in Brooklyn, New York. The package contained two Puff XXL devices, although only one had been ordered. The return address on the package was NYVK Wholesale, 132 32nd Street, Brooklyn, New York 11232. The package was not affixed with a statement that it contained vapor products in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (3). The package was left in the mailbox – no adult signature was required, in violation of the PACT Act.

77.     On or about March 15, 2023, a City agent placed an order for a Crisp Apple STIG disposable e-cigarette in a 3-pack to be shipped to an address in Brooklyn, New York, for a total purchase price of $26.63: $19.99 for the device and $6.64 for shipping. Tax was not charged.

---

[38] These were "organic" clicks, a term used to indicate users accessing a website directly, by contrast to access to a website that is a result of redirection from another internet site. Tracking organic clicks alone underestimates the number of persons accessing a website.

78.     On or about March 23, 2024, the Crisp Apple Stig e-cigarette ordered was delivered by USPS to a residential address in Brooklyn, New York. The return address on the package was NYVK Wholesale, 132 32nd Street, Brooklyn, New York 11232. The package was not affixed with a statement that it contained vapor products in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (3). The package was left in the mailbox – no adult signature was required, in violation of the PACT Act.

79.     Exhibit    F    documents    the    above-described    sales    from www.newyorkvapeking.com to the City agent.

80.     On information and belief, Kayla received orders from and made sales both to Star Vape for the above-described flavored e-cigarettes and to the City agent via the internet, telephone or through the mail.

81.     At the time of the above deliveries, Star Vape sold, offered for sale, and/or possessed flavored e-cigarettes in New York City in violation of Ad. Code § 17-715. Accordingly, Star Vape was not a "lawfully operating" tobacco business and was hence a "consumer" receiving "delivery sales" as those terms are defined by the PACT Act. The City agent was not a tobacco business at all and was therefore a consumer receiving delivery sales as defined under the PACT Act.

82.     The City agent was not a licensed vape dealer and hence shipments to him were prohibited by N.Y. Pub. Hlth. L. § 1399-*ll* (1-a).

83.     On information and belief, Kayla ships or causes to be shipped vapor products to persons who place orders on its internet site whose names do not appear on a list of licensed or registered agents of vapor product dealers published by the New York State Department of Taxation and Finance, nor who are persons licensed or registered as an agent or

dealer under article twenty eight-C of the tax law and are thus not licensed e-cigarette dealers. Accordingly, on information and belief, GT Imports ships or causes to be shipped vapor products to persons that are not licensed dealers in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a).

84.    On information and belief, each delivery of e-cigarettes made by Kayla to Star Vape weighed in excess of ten (10) pounds, in violation of the PACT Act.

## KLCC Wholesale

85.    KLCC Wholesale has a principal place of business at 452 E. 99th Street, Brooklyn, New York 11236. KLCC has purchased hundreds of flavored disposable e-cigarettes from out-of-state distributors, including such brands as Breeze Bars, Hyde, Smok, Voopoo and Stiizy presumptively for sale to consumers and businesses in the City.

### N.Y.C. Ad. Code § 17-715

86.    The quantity of e-cigarettes purchased by KLCC is inconsistent with possessing those e-cigarettes for personal use by KLCC. On information and belief, KLCC sells those e-cigarettes to consumers and businesses in the City.

87.    KLCC operates an internet website with a web address of https://klcc-wholesale.com that offers to sell flavored e-cigarettes. Annexed hereto as Exhibit G is a true and correct copy of a screenshot of that website taken on June 25, 2024.

88.    N.Y.C. Ad. Code § 17-715 makes it unlawful to offer e-cigarettes for sale in the City and bars possession of e-cigarettes in the City with intent to sell or offer to sell.

89.    By operating its internet website at https://klcc-wholesale.com from which it offers to sell flavored e-cigarettes to New York City businesses, KLCC possesses with intent to sell and offer to sell flavored e-cigarettes in New York City in violation of N.Y.C. Ad. Code § 17-715.

**Pioneer, David Alfih, and Marcus Bernard**

90.      Pioneer Distribution Inc. ("Pioneer") is a New York corporation with a principal place of business at or formerly at 1100 Coney Island Avenue, Suite 402, and/or 1090 Coney Island Avenue, Brooklyn, New York 11230. Pioneer operates a website at www.wevapeusa.com advertising dozens of brands of disposable flavored e-cigarettes, each offered in dozens of flavors.[39] Annexed hereto as Exhibit H is a true and correct copy of a screenshot of that website taken on August 15, 2024.

91.      Pioneer, wevapeusa.com, and Seller Supreme LLC, on information and belief, are owned and operated in whole or in part by David Alfih and Marcus Bernard.

**N.Y.C. Ad. Code § 17-715**

92.      In June 2023, Pioneer purchased 2,400 units of EB Design 5000 (formerly Elf Bar) flavored e-cigarettes from Arizona-based YLSN. These e-cigarettes were necessarily possessed, offered for sale and possessed to offer for sale in the City and on information and belief actually sold in the City in violation of Ad. Code § 17-715.

93.      Through its website, www.wevapeusa.com, Pioneer sells flavored e-cigarettes to consumers in New York City and elsewhere. From June 2023 and continuing to the present, as documented by an internet tracking service, thousands of prospective e-cigarette

---

[39] For example, the Elf Bar BC 5000 rechargeable disposable vape device (5000 puffs) is available in flavors such as Beach Day, Berry Mix, Black Ice, Black Winter, Blueberry Pom Ice, Blue Razz Ice, Blue Razz Lemon, Blueberry Energize, Blueberry Tobacco, Brown Tobacco, Cherry Lemon Mint, Clear, Coffee Tobacco, Cranberry Grape, Cranberry Punch, Crazi Berry, Cuba Cigar, Energy, Frozen Creamsicle, Fuji Ice, Grape Energy, Gumi, Honeydew Pineapple Orange, Kiwi Passionfruit Guava, Lemon Mint, Malibu, Mandarin Lime, Mango Peach, Mango Peach Apricot, Miami Mint, Mint Tobacco, Mixed Fruity, Nut Tobacco, Orange Pear Nectar, Passionfruit Orange Guava, Peach Berry, Peach Ice, Peach Mango Watermelon, Pineapple Coconut Ice, Pineapple Orange Mint, Pineapple Strawnana, Rainbow Candy, Rainbow Clouds, Red Mojito, Sakura Grape, Snoow Grape, Snoow Ice, Sour Apple, Sour Candy, Strawberry Banana, Strawberry Cream, Strawberry Ice, Strawberry Kiwi, Strawberry Mango, Strawberry Passion Fruit Duo Ice, Strawberry Pear Orange Ice, Strawberry Pina Colada, Strawberry Rasberry Cherry ice, Strawberry Tobacco, Strawberry Watermelon, Strawlemon Ice, Strazz, Summertime, Sunset, Sweet Menthol, Triple Berry Ice, Tropical Rainbow Blast, Watermelon Brzz Ice, Watermelon Bubblegum, Watermelon Cantaloupe Honeydew, Watermelon Ice, Watermelon Jolly Candy Ice, and Watermelon Nana Ice.

purchasers accessed the www.wevapeusa.com website where flavored e-cigarettes were offered for sale and possessed with intent to sell or offer for sale in the City.[40]

**PACT Act & N.Y. Pub. Hlth. L. § 1399-ll (1-a)**

94.    On or about March 11, 2024, an investigator accessed the website address www.wevapeusa.com and purchased a Pacific Cooler flavor Air Bar Mini, 2000 puff e-cigarette for delivery to a Brooklyn, New York address. The total purchase price was $26.11, paid by credit card: $7.99 for the device, $15.99 for shipping and $2.13 in tax.

95.    On March 19, 2024, a package was delivered to the Brooklyn address specified in the order. The package contained the Air Bar product ordered. The package was not labelled to indicate that it contained vapor products and no adult signature was required. The number on the delivery label, 3472011345, appeared to be a telephone number and was in fact a telephone number traced back to David Alfih. The package was delivered by United Parcel Service, with a return address of Marcus Bernard, 3472011345, Seller Supreme LLC, 1090 Coney Island Ave., Brooklyn, New York, 11230.

96.    On or about March 24, 2024, an investigator accessed the website address www.wevapeusa.com and purchased one Kiwi Lemon Shake "Suorin" brand Cube Disposable 1500 puffs for delivery to a Brooklyn, New York address. The total purchase price was $19.59, paid by credit card: $2.00 for the device, $15.99 for shipping and $1.60 in tax.

97.    On March 27, 2024, a package was received at the Brooklyn address specified in the order. Instead of the product ordered, the package contained five Strawberry Kiwi Guava flavored Hyde Rebel Pro e-cigarettes, as well as an Airbar e-cigarette labeled

---

[40] These were "organic" clicks, a term used to indicate users accessing a website directly, by contrast to access to a website that is a result of redirection from another internet site. Tracking organic clicks alone underestimates the number of persons accessing a website.

26

"wevapeusa free sample." The package was not labelled to indicate that it contained vapor products and no adult signature was required. The package was delivered by United Parcel Service, with a return address of Marcus Bernard, 3472011345, Seller Supreme LLC, 1090 Coney Island Ave., Brooklyn, NY, 11230. The number on the delivery label, 3472011345 which appeared to be a telephone number was in fact a telephone number traced back to David Alfih. Exhibit I documents the above-described sales from www.wevapeusa.com to the City agent.

98.      Pioneer received orders from and made sales to purchasers in the City and the City agent for the above-described flavored e-cigarettes via the internet, by telephone or mail order.

99.      At the time of the above orders and deliveries, the purchasers of e-cigarettes from Pioneer themselves sold, offered for sale, and/or possessed flavored e-cigarettes in New York City. The purchasers were thus not "lawfully operating" tobacco businesses and accordingly were "consumers" that received e-cigarettes in "delivery sales" as those terms are defined under the PACT Act. The City agent who purchased from Pioneer was not a tobacco business and was hence also a consumer as the term is defined under the PACT Act.

100.      Certain purchasers of e-cigarettes from Pioneer are not persons whose names appear on a list of licensed or registered agents of vapor product dealers published by the New York State Department of Taxation and Finance, nor are the persons licensed or registered as an agent or dealer under article twenty eight-C of the tax law and are thus not licensed e-cigarette dealers.

101.      The City agent is not a licensed dealer and hence shipments of e-cigarettes to him were prohibited by N.Y. Pub. Hlth. L. § 1399-*ll* (1-a).

102.      Accordingly, Pioneer ships or causes to be shipped vapor products to persons

that are not licensed dealers or in any other category of persons able to receive shipments pursuant to N.Y. Pub. Hlth. L. § 1399-*ll* (1-a).

## RZ Smoke Inc.

103.     RZ Smoke Inc. ("RZ Smoke") is located at 412 Hillside Avenue, New Hyde Park, New York 11040 and operates an internet website at https://www.rzsmoke.com from which it advertises and offers to sell  e-cigarettes. Annexed hereto as Exhibit J  is a true and correct copy of a screenshot of that website taken on April 17, 2024.

### N.Y.C. Ad. Code § 17-715

104.     Between approximately December 2020 until August 2023, RZ Smoke sold flavored e-cigarettes to Brooklyn-based Star Vape, including brands such as Air Bar Nex 6500 Puffs – Peach Mango Watermelon, Air Bar Lux 5% Nicotine – Raspberry Grapefruit, and Hyde Edge Recharge 3300 Puffs 10pk – Cola.

105.     Annexed hereto as Exhibit K are true and correct copies of invoices produced to the City on January 4, 2024, showing sales of flavored e-cigarettes by RZ Smoke to Star Vape on December 14, 2020, March 16, 2023, May 8, 2023, and August 5, 2023. The RZ Smoke invoices to Star Vape list the quantity (usually in the hundreds of items), the price (usually several thousand dollars for each brand and flavor) and the total price of the purchase (ranging from $15,000 to $60,000) per invoice.

106.     In addition, by operating its internet website, RZ Smoke offers to sell e-cigarettes in New York City in violation of N.Y.C. Ad. Code§ § 17-715.

### PACT Act

107.     On information and belief, RZ Smoke received orders from and made sales to Star Vape for the above-described flavored e-cigarettes via the internet, telephone or mail order. On information and belief, RZ Smoke and Star Vape were not in one another's physical

presence when the above orders were placed or the deliveries were made and/or the flavored e-cigarettes purchased from RZ Smoke were delivered to Star Vape by remote delivery.

108.    At the time of the above deliveries, Star Vape sold, offered for sale, and/or possessed flavored e-cigarettes in New York City and was thus not a "lawfully operating" tobacco business. Star Vape was accordingly was a "consumer" and received those flavored e-cigarettes in delivery sales made by RZ Smoke as that term is defined under the PACT Act.

109.    On information and belief, each delivery of e-cigarettes made by RZ Smoke to Star Vape weighed in excess of ten (10) pounds, in violation of the PACT Act.

### N.Y. Pub. Hlth. L. § 1399-*ll* (1-a)

110.    On information and belief, Star Vape was not a person whose names appear on a list of licensed or registered agents of vapor product dealers published by the New York State Department of Taxation and Finance, nor a person licensed or registered as an agent or dealer under article twenty eight-C of the tax law and or in any other category of persons able to receive shipments pursuant to N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) are thus not a licensed e-cigarette dealer. Accordingly, RZ Smoke ships or causes to be shipped vapor products to persons that are not licensed dealers in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a).

### Star Zone

111.    Star Zone sells flavored e-cigarettes to the general public from its principal place of business at New Street, Suite B, Oceanside, New York 11572.

### N.Y.C. Ad. Code § 17-715

112.    On the basis of documents Star Zone provided to the City, between December 2022 and February 2024, Star Zone delivered, to businesses throughout the City, approximately 14,000 flavored e-cigarettes of various brands for which it was paid $650,000. Annexed hereto as Exhibit L is a true and correct copy of a spreadsheet produced to the City by Star Zone on

March 1, 2024, showing sales of flavored e-cigarettes to City retailers by Star Zone between approximately December 2022 and February 2024.

113.    All of the above-listed flavored e-cigarettes were necessarily offered for sale and sold by Star Zone in the City in violation of N.Y.C. Ad. Code § 17-715.

114.    Star Zone operates an internet website with a web address of https://starzoneny.com that offers to sell flavored e-cigarettes. Accordingly, Star Zone offers to sell cigarettes in New York City in violation of N.Y.C. Ad. Code § 17-715.

### PACT Act

115.    On information and belief, Star Zone received orders from and made sales to internet cigarette sellers in the City of some or all of the approximately 14,000 flavored e-cigarettes described above via the internet, telephone or mail order. On information and belief, Star Zone and the purchasers of some or all of the approximately 14,000 flavored e-cigarettes described above were not in one another's physical presence when the above purchases or the deliveries were made and/or the flavored e-cigarettes were delivered to the purchasers by remote delivery.

116.    At the time of the above deliveries, the buyers of the above-described approximately 14,000 flavored e-cigarettes from Star Zone that were sold, offered for sale, and/or possessed flavored e-cigarettes in New York City were not "lawfully operating" tobacco businesses and accordingly were "consumers" receiving "delivery sales" as those terms are defined under the PACT Act.

117.    On information and belief, each delivery of e-cigarettes made by Star Zone to its various customers weighed in excess of ten (10) pounds, in violation of the PACT Act.

### N.Y. Pub. Hlth. L. § 1399-*ll* (1-a)

118.    On information and belief, some or all of the buyers of the approximately

14,000 flavored e-cigarettes described above were not persons whose names appear on a list of licensed or registered agents of vapor product dealers published by the New York State Department of Taxation and Finance, nor were they persons licensed or registered as an agent or dealer under article twenty eight-C of the tax law and or in any other category of persons able to receive shipments pursuant to N.Y. Pub. Hlth. L. § 1399-*ll* (1-a). Those persons are thus not licensed e-cigarette dealers. Accordingly, on information and belief, Star Zone ships or causes to be shipped vapor products to persons that are not licensed dealers in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a).

**Urban Smoke**

**N.Y.C. Ad. Code § 17-715**

119.     Urban Smoke Distributors LLC ("Urban Smoke") has a principal place of business is located at 3410 58th Street, Woodside, New York 11377. Urban Smoke operates the website https://www.urbansmokedistributors.com that advertises for sale "disposable vapes" in a multitude of flavors, as well as a Facebook page at https://www.facebook.com/people/Urban-Smoke- Distributors/100088517975898/, describing Urban Smoke as "your one stop place to get all smoke shop needs" and advertising "free delivery." Annexed hereto as Exhibit M  is a true and correct copy of a screenshot of Urban Smoke's Facebook page taken on June 25, 2024.

120.     Urban Smoke has purchased flavored e-cigarettes from Defendant Vape More as detailed below, including flavored Elf Bar, Lost Mary, and E&B Brands. The flavored e-cigarettes purchased by Urban Smoke from Vape More were necessarily possessed in the City by Urban Smoke.

121.     Annexed hereto as Exhibit N is a true and correct copy of an invoice obtained by the City dated July 30, 2023, showing purchases of flavored e-cigarettes by Urban Smoke from Defendant Vape More.

31

122.    Urban Smoke has also purchased flavored e-cigarettes from Arizona-based YLSN, including approximately 10,000 units of EB Design (formerly Elf Bar), Lost Mary, BC 5000 (formerly Elf Bar) and Geek Bar disposable flavored e-cigarettes in October 2023, approximately 3,000 units of EB Design, Lost Mary and Funky Republic flavored e-cigarettes in July 2023, approximately 9,000 units of the same brands in June 2023, and approximately 4,000 units of the same brands in May 2023.

123.    The quantity of e-cigarettes purchased by Urban Smoke is inconsistent with possessing those e-cigarettes for personal use by Urban Smoke. On information and belief, Urban Smoke sells those e-cigarettes to the general public in the City.

124.    By operating its website at https://www.urbansmokedistributors.com that advertises flavored disposable vapes for sale, Urban Smoke violates N.Y.C. Ad. Code § 17-715 in offering flavored e-cigarettes for sale in the City and in possessing flavored e-cigarettes with an intent to sell or offer them for sale in the City.

## PACT Act

125.    On information and belief, Urban Smoke received orders via the internet or by telephone or by mail order from persons throughout the City for some or all of the flavored e-cigarettes in its possession. On information and belief, Urban Smoke and the purchasers of some or all of the flavored e-cigarettes from Urban Smoke described above were not in one another's physical presence when the orders were placed or the deliveries were made and/or the flavored e-cigarettes were delivered by Urban Smoke to the buyers by a method of remote delivery.

126.    At the time of the above deliveries, the buyers from Urban Smoke of the flavored e-cigarettes sold, offered for sale, and/or possessed flavored e-cigarettes in New York City and thus were not "lawfully operating" tobacco businesses. Accordingly the purchasers

were "consumers" receiving "delivery sales" as those terms are defined under the PACT Act.

### N.Y. Pub. Hlth. L. § 1399-*ll* (1-a)

127.     On information and belief, the buyers of flavored e-cigarettes described above were not persons whose names appear on a list of licensed or registered agents of vapor product dealers published by the New York State Department of Taxation and Finance, nor were they persons licensed or registered as an agent or dealer under article twenty eight-C of the tax law and or in any other category of persons able to receive shipments pursuant to N.Y. Pub. Hlth. L. 1399-*ll* (1-a). Those persons are thus not licensed e-cigarette dealers. Accordingly, on information and belief, Urban Smoke ships or causes to be shipped vapor products to persons that are not licensed dealers in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a).

128.     On information and belief, Urban Smoke ships or causes to be shipped vapor products to persons that are not Licensed Dealers in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a).

### Vape More

129.     Vape More Inc., a/k/a More Inc., a/k/a More LLC ("Vape More") is a wholesale tobacco outlet that operates a warehouse and office space at 631 Columbia Street, Ext., Latham, New York 12110. Remote orders may be placed at Vape More through the email wholesale.nicless@gmail.com.

### N.Y.C. Ad. Code § 17-715

130.     Vape More operates a website at https://www.vapemoreinc.com that advertises and offers flavored e-cigarettes for sale. Annexed hereto as Exhibit O is a true and correct copy of a screenshot of that website taken on April 17, 2024.

131.     On or about July 30, 2023, Vape More Wholesale, by Invoice Number 2077, sold to Urban Smoke at its Woodside, New York address various brands of flavored e-cigarettes,

including Elf Bar, Lost Mary, and E&B, in 5,000 and 6,000 "puff" sizes. The brands listed were all available in a variety of flavors including but not limited to Strawberry Banana, Strawberry Kiwi, Hawaii Punch, Juicy Peach, Blue Razz, Lemon Ice and Lemon Mint. Exhibit N is an invoice obtained by the City showing sales of flavored e-cigarettes by Vape More to Urban Smoke.

132.     By operating its internet website at https://www.vapemoreinc.com from which it sells flavored e-cigarettes to New York City businesses such as Urban Smoke, Vape More offers to sell and sells e-cigarettes in New York City in violation of N.Y.C. Ad. Code § 17-715.

## PACT Act

133.     On information and belief, Vape More received orders from businesses throughout the City via the internet, by telephone or by mail order for flavored e-cigarettes, including the flavored e-cigarettes that Vape More sold to Urban Smoke, described above. On information and belief, Urban Smoke and the City purchasers of some or all of the flavored e-cigarettes sold by Vape More were not in one another's physical presence when the above purchases were placed or the deliveries were made and/or the flavored e-cigarettes were delivered to the purchasers by a method of remote delivery.

134.     At the time of the above deliveries, the buyers from Vape More of flavored e-cigarettes, including Urban Smoke, sold, offered for sale, and/or possessed flavored e-cigarettes in New York City and thus were not "lawfully operating" tobacco businesses. Accordingly the purchasers were "consumers" receiving "delivery sales" as those terms are defined under the PACT Act.

## N.Y. Pub. Hlth. L. § 1399-*ll* (1-a)

135.     On information and belief, Urban Smoke is not a person whose name appear

on a list of licensed or registered agents of vapor product dealers published by the New York State Department of Taxation and Finance, nor is it a person licensed or registered as an agent or dealer under article twenty eight-C of the tax law and or in any other category of persons able to receive shipments pursuant to N.Y. Pub. Hlth. L. § 1399-*ll* (1-a). Urban Smoke is thus not a licensed e-cigarette dealer. Accordingly, on information and belief, Vape More ships or causes to be shipped vapor products to persons that are not licensed dealers in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a).

### Vape Plus

### N.Y.C. Ad. Code § 17-715

136.    Vape Plus Distribution Corp. a/k/a G&A Distribution ("Vape Plus") maintains a place of business at 2578 Atlantic Avenue, Brooklyn, New York 11207. Vape Plus operates a website at https://nyvapeplus.com that offers to sell and does sell flavored e-cigarettes. Exhibit P is a true and correct copy of a screenshot of that website taken on August 15, 2024.

137.    The Vape Plus website advertises numerous brands of disposable flavored e-cigarettes, including Elf Bar, E. B. 5000 (formerly Elf Bar), Lost Mary, Fume, all in dozens of flavors. The website promises "same day delivery."

138.    In or around October 2023, Vape Plus purchased hundreds of units of flavored Breeze e-cigarettes from Smokin' Sales, a New Jersey company. In or around November 2023, Vape Plus purchased hundreds of units of flavored e-cigarettes from Smokin' Sales, including Breeze brand flavored e-cigarettes. In or around August 2023, Vape Plus purchased approximately 200 units of Salt Bae e-juice, a flavored e-liquid containing nicotine from Smokin' Sales. In or around June 2023, Vape Plus purchased approximately 450 units of flavored e-cigarettes from Smokin' Sales, including Lava brand, Mega Vape and Dragbar brand

35

e-cigarettes. In or around April 2023, Vape Plus purchased approximately hundreds of units of Salt Bae e-juice, a flavored nicotine e-liquid, "Smok" brand, a brand of e-cigarette, and "Uwell," a brand of e-cigarette from Smokin' Sales. In October 2022, Vape Plus purchased approximately 14,000 flavored e-cigarettes from YLSN, including Elf Bar, Lost Mary, Biffbar and Geek Bar brands. In September 2022, Vape Plus purchased approximately 8,000 flavored e-cigarettes from Arizona-based YLSN, including Elf Bar and Lykcan Belo flavored e-cigarettes.

139.    The quantity of flavored e-cigarettes purchased by Vape Plus is inconsistent with possessing those e-cigarettes for personal use by Vape Plus, and, as shown below, Vape Plus in fact offers these cigarettes for sale on its website.

140.    By operating its website at https://nyvapeplus.com that advertises "disposable vapes" for sale, Vape Plus thus violates N.Y.C. Ad. Code § 17-715 by offering flavored e-cigarettes for sale in the City and in possessing flavored e-cigarettes with an intent to sell or offer them for sale to consumers in the City.

**PACT Act**

141.    On information and belief, Vape Plus received orders via the internet or by telephone or by mail order from purchasers throughout the City for some or all of the flavored e-cigarettes described above. On information and belief, Vape Plus and the purchasers of some or all of the flavored e-cigarettes described above were not in one another's physical presence when the above orders were placed or the deliveries were made and/or the flavored e-cigarettes were delivered by Vape Plus to the purchasers by a method of remote delivery.

142.    Over just the past few months, Vape Plus has received multiple thousands of dollars in payments from a number of stores located within New York City, including stores like Smoke World & Vape LLC, Vape N Cloud Corp., and Vape and Smoke Corp. Combined with the fact that Vape Plus actively offers flavored vapes for sale on its website, this suggests a

significant likelihood that Vape Plus has been selling flavored vapes to stores in New York City, and that those stores have gone on to sell those flavored vapes at retail within City limits. Indeed, a City investigator was just recently able to purchase a flavored e-cigarette at Vape and Smoke Corp., which has also previously been flagged as selling flavored vapes illegally.

143.      At the time of the above order and deliveries, the City buyers of flavored e-cigarettes from Vape Plus sold, offered for sale, and/or possessed flavored e-cigarettes in New York City and thus were not "lawfully operating" tobacco businesses. The purchasers were accordingly "consumers" in receipt of delivery sales by Vape Plus as those terms are defined under the PACT Act.

**NY Pub. Hlth. L. § 1399-*ll* (1-a)**

144.      On information and belief, some or all of the New York City buyers of the flavored e-cigarettes sold by Vape Plus to which Vape Plus made deliveries were not persons whose names appear on a list of licensed or registered agents of vapor product dealers published by the New York State Department of Taxation and Finance, nor were they persons licensed or registered as an agent or dealer under article twenty eight-C of the tax law and or in any other category of persons able to receive shipments pursuant to N.Y. Pub. Hlth. L. § 1399-*ll* (1-a). Those persons are thus not licensed e-cigarette dealers. Accordingly, on information and belief, Vape Plus ships or causes to be shipped vapor products to persons that are not licensed dealers in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a).

**Allegations Related to Causes of Action**

**Allegations Related to the PACT Act**

145.      The PACT Act defines an "electronic nicotine delivery system," 15 U.S.C. § 375(2)(A)(ii)(ll), as "any electronic device that, through an aerosolized solution, delivers nicotine, flavor, or any other substance to the user inhaling from the device. Electronic nicotine

delivery systems include e-cigarettes, vape pens, advanced refillable personal vaporizers, and any component, liquid, part, or accessory of any such device, regardless of whether the component, liquid, part, or accessory is sold separately from the device." 15 U.S.C. § 375(7)(A)-(C).

146.    The PACT Act defines an electronic nicotine delivery system as a "cigarette" for purposes of the Act. *See* 15 U.S.C. § 375(2).

147.    The PACT Act defines a "person" as an individual, corporation, company, association, firm, partnership, society, government, local government, Indian tribal government, governmental organization of such a government, or joint stock company.

148.    The PACT Act defines a "consumer" as any person that purchases cigarettes, other than a person *lawfully* operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco. 15 U.S.C. § 375(4)(A)(B) (emphasis added).

149.    A "delivery sale" under the PACT Act is "any sale of cigarettes . . . to a consumer" where (i) the seller is not in the physical presence of the consumer when the order is placed, (ii) the seller is not in the physical presence of the consumer when the consumer obtains possession of the e-cigarette; or (iii) the e-cigarette is delivered to the consumer "by common carrier, private delivery service, or other method of remote delivery." 15 U.S.C. § 375(5).

150.    The PACT Act defines a "delivery seller" as a person who makes a delivery sale. 15 U.S.C. § 375(6).

151.    The PACT Act requires any person selling, transferring, shipping for profit, advertising or offering for sale, transfer, or shipment e-cigarettes to comply with all state and local laws applicable to the sale of e-cigarettes, including laws imposing excise taxes, licensing and tax-stamping requirements, restrictions on sales to minors and other payment obligations or

legal requirements relating to the sale, distribution, or delivery of e-cigarettes.

152.    The PACT Act requires any person that sells, transfers, ships for profit, advertises or offers for sale, transfer, or shipment e-cigarettes into a locality taxing the sale or use of cigarettes to comply with the tax collection and package-labeling requirements, as if the delivery sale occurred entirely within that locality.

153.    Accordingly, the PACT Act requires any delivery seller making a delivery sale of e-cigarettes to a New York City consumer in New York City to, *inter alia*:

    i)    Comply with all laws governing the sale of e-cigarettes in New York City and/or State. 15 U.S.C. § 376a(a)(3);

    ii)    Make certain that all applicable taxes have been paid to New York City. 15 U.S.C. §§ 376a(a)(4), (d);

    iii)    Assure that the weight of e-cigarettes sold, delivered, or caused to be delivered in a single sale or delivery into New York City does not exceed ten pounds. 15 U.S.C. §§ 376a (a), (b)(3);

    iv)    Place notices identifying the package contents of packages involved in e-cigarette delivery sales as e-cigarettes. 15 U.S.C. §§ 376a (a), (b)(1), (2); and

    v)    Deliver e-cigarettes by a method that requires the person to whom the delivery is made to provide age verification to the delivery service. 15 U.S.C. §§ 376a (a), 376a (b)(4).

154.    E-cigarette sales made by EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More, and Vape Plus are all sales to consumers within the meaning of the PACT Act, 15 U.S.C. § 375(4) because no person

purchasing e-cigarettes from any defendant was a "lawfully operating manufacturer, distributor, wholesaler, or retailer of cigarettes" by reason of each purchasers' multiple violations of the law, including but not limited to violations of:

      i)    The Tobacco Control Act (prohibiting sales of flavored e-cigarettes not approved by the FDA)

      ii)    N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) (prohibiting remote deliveries of e-cigarettes except to licensed dealers)

      iii)    N.Y.C. Ad. Code § 17-715(b) (prohibiting sale or possession of flavored e-cigarettes)

155.    The e-cigarette sales by EnviroMD, GT Imports, Kayla, , Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More and Vape Plus were delivery sales within the meaning of the PACT Act because EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More and Vape Plus were not in the physical presence of the buyer when the orders were placed or delivered, or the deliveries were made by a means of remote delivery. *See* 15 U.S.C. § 375(5).

156.    EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, and Marcus Bernard each violate the PACT Act because in none of their delivery sales of e-cigarettes to consumers did EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, and Marcus Bernard identify the package contents on the outside of the packages as cigarettes.

157.    EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More and Vape Plus each violate the PACT Act. Their delivery sales of e-cigarettes to consumers were of flavored vape products sold in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) and N.Y.C. Ad. Code § 17-715 (b) and thus did not comply

with all laws governing the sale of e-cigarettes in New York City and/or State, as required by 15 U.S.C. § 376a(a)(3).

158.    Kayla, Pioneer, David Alfih, and Marcus Bernard each violate the PACT Act because in none of their delivery sales of e-cigarettes to consumers did Kayla, Pioneer, David Alfih, and/or Marcus Bernard utilize a method of delivery requiring an adult signature upon delivery.

159.    All e-cigarette sales by each of EnviroMD, GT Imports, Kayla, RZ Smoke, and Star Zone violate the PACT Act because no Defendant made certain that the weight of e-cigarettes sold, delivered, or caused to be delivered in a single sale or delivery did not exceed ten pounds. 15 U.S.C. §§ 376a (a), (b)(3).

160.    All e-cigarette sales by each of EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More and Vape Plus violate the PACT Act because no Defendant made certain that their delivery sales were in compliance with all New York City and New York State laws applicable to e-cigarette sales and in fact none of those sales were compliant.

**Allegations Related to N.Y. Pub. Hlth. L. § 1399-*ll* (1-a)**

161.    *Every* person who intends to sell vapor products in New York must receive from the Commissioner of Taxation a certificate of registration prior to engaging in business. N.Y. Tax L. Article 28-C, § 1183. The certificate of registration issued by the Tax Commissioner is termed a "vapor products dealer certificate."

162.    It is unlawful under N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) for *any* person engaged in the business of selling vapor products to ship or cause to be shipped to *any* person in this state *any* vapor products intended or reasonably expected to be used with or for the consumption of nicotine, except to a person that receives a certificate of registration as a vapor products dealer

41

under article twenty eight-C of the tax law.

163.    A vapor products dealer is a person whose name appears on a list of licensed or registered agents of vapor product dealers published by the New York State Department of Taxation and Finance, or is a person licensed or registered as an agent or dealer under article twenty eight-C of the tax law.

164.    It is unlawful under N.Y. Pub. Hlth. L. § 1399-*ll* (3) for a person engaged in the business of selling vapor products to ship or cause to be shipped to any person in this state any vapor products intended or reasonably expected to be used with or for the consumption of nicotine except in the vapor products manufacturer's original container or wrapping, or in a container or wrapping plainly and visibly marked with the words "vapor products."

165.    On information and belief, each of EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More and Vape Plus ship or cause to be shipped vapor products intended or reasonably expected to be used with or for the consumption of nicotine to persons in New York City that are not persons that have received a certificate of registration as a vapor products dealer under article twenty eight-C of the tax law or not a person whose name appears on a list of licensed or registered agents or vapor product dealers published by the department of taxation and finance or not otherwise permitted to receive deliveries of vapor products under N.Y. Pub. Hlth. L. § 1399-*ll* (1-a).

166.    On information and belief, Kayla, Pioneer, David Alfih, and Marcus Bernard each shipped or caused to be shipped vapor products intended or reasonably expected to be used with or for the consumption of nicotine, other than in the vapor products manufacturer's original container or wrapping, or in containers or wrappers that are not plainly and visibly marked with the words "vapor products."

167.     By shipping or causing to be shipped vapor products to persons in New York City other than those designated as the permissible recipients of vapor products set forth in N.Y. Pub. Hlth. L. § 1399-*ll* (1-a ), and/or shipped vapor products that were not in either the vapor products manufacturer's original container or wrapping, or in containers or wrappers not plainly and visibly marked with the words "vapor products," Defendants EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More and Vape Plus violated N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) and/or N.Y. Pub. Hlth. L. § 1399-*ll* (3).

## Allegations Related to N.Y.C. Administrative Code § 17-715 (b) (1)

168.     New York City Administrative Code § 17-715 (b) (1) provides that "It shall be unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid."

169.     As set forth in the facts above, EnviroMD, GT Imports, Kayla, KLCC Wholesale, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone, Urban Smoke, Vape More, and Vape Plus each sells, offers for sale, possesses with intent to sell or possesses with intent to offer for sale flavored e-cigarettes in the City.

## Allegations Related to Public Nuisance

170.     The Defendants' sale and distribution of e-cigarettes violates a host of federal, New York State and New York City laws representing the public policy of New York State and City.

171.     New York public policy against marketing e-cigarette products to minors is expressed in statutes and regulations, including but not limited to:

i)      N.Y. Pub. Hlth. L. § 1399-bb (4), which prohibits any "person engaged in the business of selling or otherwise distributing electronic cigarettes" from providing free samples to anyone under 21 years of age;

ii)    N.Y. Pub. Hlth. L. § 1399-cc(2)-(3), which prohibits the sale of electronic cigarettes to persons less than 21 years of age;

iii)   N.Y. Pub. Hlth. L. § 1399-dd, which places restrictions on the sale of electronic cigarettes from vending machines to prevent access by underage individuals; and

iv)    N.Y. Pub. Hlth. L. § 1399-dd-1, which places restrictions on electronic cigarette advertising in the proximity of schools.

172.    New York public policy against marketing electronic nicotine delivery devices to minors is further expressed in the New York State and City flavor bans. So powerful are flavored e-cigarettes in causing nicotine addiction in young persons that the legislatures of both New York City and New York State have chosen to prohibit the sale of those products entirely, rather than simply impose age restrictions on purchase. Regardless of a buyer's age, pursuant to N.Y. Pub. Hlth. L. § 1399-mm-(1), no vapor products dealer shall sell or offer for sale at retail in New York any flavored vapor product to be used in the consumption of nicotine. Pursuant to New York City Administrative Code § 17-715 (b) (1), it is unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid.

173.    Sales by Defendants of illegal flavored e-cigarettes creates a growing hazardous waste problem caused by the improper disposal in public places of devices containing chemicals that can be toxic or fatal if ingested in concentrated forms.[41]

---

[41] "JUUL isn't disposable and should be treated as a consumer electronic device. Dispose of contents/container to a hazardous or special waste collection point." JUUL, *How do I dispose of a JUUL device?*, https://support.juul.co.uk/s/article/How-do-I-dispose-of-a-JUUL-device-UK (last visited Apr. 1, 2024); *see also* American Acad. of Pediatrics, *Liquid Nicotine Used in E-Cigarettes Can Kill Children*, Mar. 31, 2021, https://www.healthychildren.org/English/safety-prevention/at-home/Pages/Liquid-Nicotine-Used-in-E-Cigarettes-Can-Kill-Children.aspx.

174.      E-cigarettes and other illegal vape devices contain toxic chemicals that cannot be safely disposed of in the normal waste stream but must be disposed of as hazardous waste. The lithium-ion batteries powering the devices cannot be safely disposed of in the normal trash stream.[42] This requires the City to dispose of the illegal flavored e-cigarettes that are seized by law enforcement through the far more expensive methods required to safely dispose of hazardous waste.

175.      The Defendants' sale and distribution of e-cigarettes has injured the property, health, safety or comfort of a considerable number of New York City residents by creating a public health crisis and safety hazard in the City through the promotion, distribution, marketing and sale of products that cause persistent youth and rising young adult addiction to nicotine, and potentially or actually contaminating City parks and public places with hazardous wastes. The sale of flavored vapor products by the Defendants endangers the health and safety of a large number of persons in New York City and thereby constitutes a public nuisance.

176.      The extent of the nuisance associated with flavored e-cigarettes is shown in Exhibit R, showing the results of attempts by City agents to purchase flavored e-cigarettes at retail locations throughout the City. As shown on Exhibit R, as of October 2023, a flavored e-cigarette was sold to City agents attempting purchases in 197 out of the 301 stores sampled, or 65% of the City stores. For one popular brand – Elf Bar – successful purchases were made at 120 of the 197 stores that sold flavored e-cigarettes to the agent.

177.      Attached hereto as Exhibit S is a spreadsheet showing the results of a similar survey undertaken by parent volunteers of the organization Parents Against Vaping E-cigarettes

---

[42] *See, e.g.*, JUUL, *What kind of battery is in the device?*, https://support.juul.ca/s/article/What-kind-of-battery-is-in-the-device-Canada (last visited Apr. 1, 2024) ("JUUL uses a lithium-ion polymer battery. All portable electronics containing lithium-ion batteries present rare, but potentially serious safety hazards.").

("PAV*e*").   Observations undertaken from February to June 2023, by PAV*e* volunteers established the widespread availability of flavored vapes in various neighborhoods in Manhattan and the Bronx, with approximately 60% of 318 stores visited in Manhattan and the Bronx displaying flavored e-cigarettes for sale.

178.    Approximately 93% of the stores selling flavored e-cigarettes had no license to sell any e-cigarettes at all, flavored or otherwise, as determined by reference to publicly available databases. Those stores were thus selling an illegal product -- flavored e-cigarettes – and also operating entirely illegally in that they had no license to deal in any e-cigarettes, flavored or not.  Many of the stores are located in proximity to schools.

179.    The New York City Department of Consumer and Worker Protection ("DCWP") enforces New York City Administrative Code provisions concerning tobacco and e-cigarette sales.   In 2022, DCWP conducted approximately 12,400 distinct inspections of businesses selling tobacco or electronic cigarettes. During these inspections, DCWP issued approximately 7,400 summonses for tobacco and electronic cigarette violations. Of these summonses, approximately 4,800 included a violation for selling tobacco or electronic cigarettes without the required license.

180.    Defendants' conduct in marketing, distributing, and selling e-cigarettes has been a substantial factor in bringing about the above-described public nuisance.

181.    Whether Defendants sell flavored e-cigarettes directly to consumers or instead to other businesses is irrelevant to their role in creation of a public nuisance because the ultimate destination of the flavored e-cigarettes sold by Defendants to intermediaries is to the consuming public, and in particular the youth market. By selling flavored e-cigarettes to other businesses in the City, the result is that flavored e-cigarettes are found ubiquitously throughout

stores in the City and sold in enormous quantities to the public. As shown above, certain Defendants also make their product freely available to the public by selling flavored e-cigarettes over the internet. By shipping flavored e-cigarettes to businesses and consumers in the City, Defendants introduced these products into the City marketplace, and have therefore created, contributed to, and maintained a public nuisance. But for Defendants' actions, e-cigarette use by youth in the City would not be as widespread as today and the City would not be presented with the hazardous waste disposal burdens imposed by Defendants' products.

## FIRST CLAIM FOR RELIEF

### (Violation of the Prevent All Cigarette Trafficking Act)

182.      The City realleges paragraphs 1-181 above as if fully set forth herein.

183.      At all times relevant to this Second Amended Complaint, each of EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, and Vape Plus, made delivery sales of e-cigarettes as that term is defined by 15 U.S.C. § 375(5) to consumers located in New York City.

184.      At all times relevant to this complaint, without complying with the requirements for PACT Act delivery sales, including but limited to complying with all City laws applicable to tobacco, including but not limited to the prohibition against sales of flavored e-cigarettes, each of EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More and Vape Plus made delivery sales of flavored e-cigarettes to consumers located in New York City.

185.      As a direct result of the foregoing violations of the PACT Act by EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, and Vape Plus, the City has suffered and continues to suffer damages, including but not limited to the public health consequences of youth addiction and the required

disposal of illegal vape products pursuant to the rules governing hazardous waste.

186.    Pursuant to the PACT Act, 15 U.S.C. § 375 *et seq.*, the City, as a local government imposing a tax on cigarettes, including but not limited to a sales tax on cigarettes, is empowered to bring an action to prevent and restrain violations of the PACT Act, and to obtain any other appropriate forms of relief, including civil penalties, equitable remedies, including but not limited to disgorgement of profits, and damages.

187.    With exceptions not relevant here, whoever violates the PACT Act shall be subject to a civil penalty in an amount not to exceed— (A) in the case of a delivery seller, the greater of— (i) $5,000 in the case of the first violation, or $10,000 for any other violation; or (ii) for any violation, 2 percent of the gross sales of cigarettes or smokeless tobacco of the delivery seller during the 1-year period ending on the date of the violation. 15 U.S.C. § 377.

188.    The foregoing violations of the PACT Act by EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More and Vape Plus, for which the City has no remedy at law, are ongoing and will continue into the future unless enjoined.

## SECOND CLAIM FOR RELIEF

### (Violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a))

189.    The City incorporates herein paragraphs 1-181 as if fully set forth in this paragraph.

190.    On information and belief, in violation of NY Pub. Hlth. L. § 1399-*ll* (1-a) each of EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, Vape Plus, David Alfih and Marcus Bernard shipped or caused to be shipped vapor products intended or reasonably expected to be used with or for the consumption of nicotine, to persons other than those designated by NY Pub. Hlth. L. § 1399-*ll*

(1-a) as lawful recipients of such products.

191.    On information and belief, in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (3) each of Kayla, Pioneer, David Alfih, and Marcus shipped or caused to be shipped vapor products intended or reasonably expected to be used with or for the consumption of nicotine other than in the vapor products manufacturer's original container or wrapping, and in containers or wrappers that are not plainly and visibly marked with the words "vapor products."

192.    N.Y. Pub. Hlth. L. § 1399-*ll* (5) (c) provides for a penalty of one hundred dollars for each vapor product intended or reasonably expected to be used with or for the consumption of nicotine shipped, caused to be shipped or transported in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) or N.Y. Pub. Hlth. L. § 1399-*ll* (3).

193.    Pursuant to N.Y. Pub. Hlth. L. § 1399-*ll* (6), the City's Corporation Counsel is entitled to recover, on behalf of the City, the civil penalties provided by N.Y. Pub. Hlth. L. § 1399-*ll* (5) and to obtain such other relief as may be deemed necessary with respect to any cigarettes or vapor products shipped or caused to be shipped in violation of N.Y. Pub. Hlth. L. § 1399-*ll* (1-a) to any person located within New York City.

### THIRD CLAIM FOR RELIEF

### (Violation of N.Y.C. Administrative Code § 17-715 (b) (1))

194.    The City incorporates herein paragraphs 1-181 as if fully set forth in this paragraph.

195.    In violation of N.Y.C. Ad. Code § 17-715(b)(1), each of EnviroMD, GT Imports, Kayla, KLCC Wholesale, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, and Vape Plus sell, offer for sale, or possess with intent to sell or offer for sale, flavored electronic cigarettes and/or flavored e- liquids.

196.    Pursuant to General City Law § 20 (22) and NYC Charter § 394, the

Corporation Counsel has standing to enforce Ad. Code § 17-715 (b) (1) on behalf of the City and to impose and collect the penalties provide for under the Administrative Code.

### <u>FOURTH CLAIM FOR RELIEF</u>

**(Public Nuisance)**

197.    The City incorporates herein paragraphs 1-181 as if fully set forth herein in this paragraph.

198.    In the aggregate, the thousands of sales of flavored vapor products in and into New York City by and among each of Defendants EnviroMD, GT Imports, Kayla, KLCC Wholesale, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, and Vape Plus and others unknown that supply Defendants or are supplied by Defendants gives rise to the ubiquitous presence of flavored e-cigarettes easily available to the public, injuring the health, safety, and welfare of large numbers of City residents and constituting a public nuisance for which the City has no adequate remedy at law.

199.    Defendants' conduct is ongoing, likely to produce permanent and long-lasting injury, and likely to continue indefinitely. The conduct is substantial, unreasonable, widespread, and outweighs any potential benefit of Defendants' wrongful conduct.

**WHEREFORE**, New York City respectfully prays that the Court grant judgment against each Defendant and issue an order:

> a.  On the First Claim For Relief, permanently enjoining EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, and Vape Plus from shipping or causing to be shipped any e-cigarettes without complying with the PACT Act and ordering those Defendants to pay the City the penalties provided for by 15 U.S.C. § 377 for their prior violations in an amount to be determined at trial.

> b.  On the Second Claim For Relief (i) permanently enjoining EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus

Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, and Vape Plus from shipping or causing to be shipped vapor products intended or reasonably expected to be used with or for the consumption of nicotine to persons unauthorized by Pub. Hlth. L. § 1399- *ll* (1-a) to receive such products; (ii) permanently enjoining those Defendants from shipping or causing to be shipped vapor products intended or reasonably expected to be used with or for the consumption of nicotine in packages that are not labeled to identify the contents as vapor products; and (iii) ordering those Defendants to pay the City the penalties provided for by Pub. Hlth. L. § 1399-*ll* (5) for their prior violations in an amount to be determined at trial.

c.  On the Third Claim for Relief; (i) permanently enjoining EnviroMD, GT Imports, Kayla, KLCC Wholesale, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, and Vape Plus from violating New York City Administrative Code § 17-715 by selling, offering for sale, or possessing with intent to sell or offer for sale flavored electronic cigarettes or flavored e-liquids; (ii) ordering each Defendant to pay the City the penalties provided for by New York City Administrative Code § 17-717 for their prior violations in an amount to be determined at trial;

d.  On the Fourth Claim for Relief, declaring that the Defendants have caused, maintained and contributed to a public nuisance and issuing an order requiring Defendants to undertake measures to abate the nuisance, including but not limited to establishing a fund to abate the nuisance, in an amount to be determined at trial; and

e.  Awarding such other and further relief as the Court may deem appropriate.

Dated: New York, New York
      August 21, 2024

**MURIEL GOODE-TRUFANT**
Acting Corporation Counsel of
  the City of New York
Attorney for Plaintiff the City of New York
100 Church Street, Room 20-99
New York, New York 10007
(212) 356-2032

By: _____
      Eric Proshansky
      Elizabeth Slater
      Alexandra Jung
      Aatif Iqbal
      Ass't Corporation Counsels

**Appendix: Exhibit List**

| Exhibit | Relevant Defendant(s) | Exhibit Description |
|---------|----------------------|---------------------|
| Ex. A | EnviroMD | EnviroMD Sales to Star Vape |
| Ex. B | GT Imports | GT Imports Website |
| Ex. C | GT Imports | GT Imports - New York City Sales (spreadsheet) |
| Ex. D | GT Imports | GT Imports Sales to Star Vape |
| Ex. E | Kayla | Kayla Sales to Star Vape |
| Ex. F | Kayla | Documents reflecting sales from www.newyorkvapeking.com to City agent |
| Ex. G | KLCC | KLCC Website |
| Ex. H | Pioneer | Pioneer Website |
| Ex. I | Pioneer | Documents reflecting sales from www.wevapeusa.com to City agent |
| Ex. J | RZ Smoke | RZ Smoke Website |
| Ex. K | RZ Smoke | RZ Smoke Sales Invoices to Star Vape |
| Ex. L | Star Zone | Star Zone Sales - 2022.12 - 2024.02 |
| Ex. M | Urban Smoke | Urban Smoke Facebook Page |
| Ex. N | Vape More Urban Smoke | Vape More Sales to Urban Smoke - 2023.07.30 |
| Ex. O | Vape More | Vape More Website |
| Ex. P | Vape Plus | Vape Plus Website |
| Ex. Q | Star Zone | Star Zone Website |
| Ex. R | All | Cross-border Store Survey |
| Ex. S | All | PAV*e* Store Survey |