UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x

THE CITY OF NEW YORK,

                    Plaintiff,

          v.

ENVIROMD GROUP LLC; GT IMPORTS;
KAYLA WHOLESALE, INC., d/b/a The Vapery;
KLCC WHOLESALE INC.; PIONEER DISTRIBUTION, INC.
a/k/a WEVAPEUSA.COM a/k/a SELLER SUPREME LLC;
RZ SMOKE INC.; STAR ZONE INC.;
URBAN SMOKE DISTRIBUTORS;
VAPE MORE INC. a/k/a MORE LLC; VAPE PLUS
DISTRIBUTION CORP. a/k/a G&A DISTRIBUTION;
DAVID ALFIH a/k/a David Alfieh, a/k/a DJ Alfani; and
MARCUS BERNARD,

                    Defendants.

1:24:-cv-5161-GHW-JW

————————————————————————x

## MEMORANDUM OF LAW OF PLAINTIFF THE CITY OF NEW YORK IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**MURIEL GOODE-TRUFANT**
Acting Corporation Counsel of the
  City of New York
*Attorney for Plaintiff The City of New York*
100 Church Street, Room 20-99
New York, New York 10007
(212) 356-2032

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................ iv

Preliminary Statement ........................................................................................................... 1

Allegations of the Second Amended Complaint .................................................................... 3

I.    Legislative Efforts by Every Level of Government to Mitigate
      the Harm Caused by the Proliferation of Flavored E-Cigarettes ................................ 3

II.   Facts Establishing Defendants' Violations of the PACT Act,
      N.Y. P.H.L. § 1399-*ll* (1-a), and N.Y.C. Ad. Code § 17-715
      and Creation of a Public Nuisance ............................................................................. 6

      A.   Summary Chart ................................................................................................. 6

      B.   EnviroMD ......................................................................................................... 7

      C.   GT Imports ....................................................................................................... 8

      D.   Kayla ............................................................................................................... 8

      E.   KLCC ............................................................................................................... 9

      F.   The Pioneer Defendants ................................................................................... 9

      G.   RZ Smoke ....................................................................................................... 10

      H.   Urban Smoke .................................................................................................. 10

      I.   Vape More ...................................................................................................... 11

      J.   Vape Plus ....................................................................................................... 11

Argument ............................................................................................................................ 12

I.    The City Has Adequately Pleaded that EnviroMD, GT Imports,
      Kayla, Pioneer, RZ Smoke, Star Zone, Vape Plus, and Vape More
      Violated the PACT Act .............................................................................................. 13

      A.   The City has Standing to Enforce the PACT Act ............................................ 13

      B.   Defendants' Sales Constitute "Delivery Sales"
           under the PACT Act ........................................................................................ 15

      C.   The City Has Adequately Pleaded PACT Act Violations .............................. 20

**Page**

        1.   Vape More/Plus Defendants ........................................................ 20

        2.   EnviroMD Defendants ................................................................. 21

        3.   Kayla ............................................................................................ 21

   D.  Kayla's Additional PACT Act Arguments are Meritless ............................ 22

        1.   Kayla's Arguments Regarding the FDA are Irrelevant as to Whether Kalya Violated the PACT Act ............................................. 22

        2.   Kayla's Alleged Violations Do Not Pre-Date the Effective Date of Relevant Laws ...................................................................... 23

II.   The City Has Adequately Pleaded that All Defendants Have Violated N.Y.C. Ad. Code § 17-715(b)(1) .............................................................................. 24

   A.  N.Y.C. Ad. Code § 17-715(b)(1) Applies to "All Persons," Including Distributors ......................................................................... 24

   B.  Former 24 R.C.N.Y. § 28-02 Does Not Undermine the Scope of N.Y.C. Ad. Code § 17-715(b)(1) .............................................................. 25

   C.  The City's Corporation Counsel Can Enforce N.Y.C. Ad. Code § 17-715(b)(1) in Court ........................................................................ 29

   D.  The Complaint Articulates How the Defendants Are in Violation of N.Y.C. Ad. Code § 17-715 ................................................................. 31

III.  The City Has Adequately Pleaded that Defendants Have Violated N.Y. P.H.L. § 1399-*ll* (1-a) ....................................................................................... 33

   A.  The City Has Standing to Enforce N.Y. P.H.L. § 1399-*ll*(1-a) .................... 33

   B.  N.Y. P.H.L. § 1399-*ll* (1-a) Makes No Distinction Between Wholesalers or Retailers .................................................... 37

   C.  The New York Department of Health Guidance Offered by Defendants Cannot Alter the Unambiguous Language of N.Y. P.H.L. § 1399-*ll* (1-a) ................................................................ 39

   D.  Kayla and Pioneer Sell to the Public in Facial Violation of N.Y. P.H.L. § 1399-*ll*(1-a) ................................ 41

   E.  Defendants Sell and Offer to Sell to the Public in Violation of N.Y. P.H.L. § 1399-*ll* ........................................................ 42

**Page**

IV.  The City States a Claim for Public Nuisance ............................................................. 43

    A.  The City Adequately Pleads a Public Nuisance Claim
       against Defendants ............................................................................................. 43

        1.  The City Has Demonstrated Significant Interference
          with the Public Health of Its Citizens ................................................. 44

        2.  Defendants' Conduct Is a Nuisance *Per Se* ...................................... 46

        3.  Defendants Know or Have Reason to Know that
          their Conduct is of a Continuing Nature and
          Has a Significant Effect upon the Public Right ................................. 46

        4.  The City Has Demonstrated Causation ............................................... 48

    B.  The City's Public Nuisance Claim Is Not Duplicative .................................... 50

Conclusion ............................................................................................................................... 53

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Matter of Alvarez v. Annucci*,
   38 N.Y.3d 974 (2022) ..........................................................................................31

*Bochner v. City of N.Y.*,
   No. 23-683, 2024 U.S. App. LEXIS 25276 (2d Cir. Oct. 7, 2024) .........................................30

*Branch v. W. Petro., Inc.*,
   657 P.2d 267 (1982)..........................................................................................46, 51

*Burgess v. United States*,
   553 U.S. 124 (2008)..........................................................................................19

*California v. Azuma Corp.*, No. 2:23-cv-00743,
   2023 U.S. Dist. LEXIS 159790 (E.D. Cal. Sept. 7, 2023)..........................................15, 16, 17

*Catskill Mts. Chptr. of Trout Unlimited, Inc. v. United States EPA*,
   846 F.3d 492 (2d Cir. 2017)..........................................................................................41

*Cayuga Nation v. Tanner*,
   6 F.4th 361 (2d Cir. 2021) ..........................................................................................24

*City of N.Y. v. A-1 Jewelry & Pawn, Inc.*,
   247 F.R.D. 296 (E.D.N.Y. 2007) ..........................................................................................46, 49, 52

*City of N.Y. v. Artisan Vapor Franchise LLC*, No. 19-cv-5693, 2020 U.S. Dist.
   LEXIS 205315 (E.D.N.Y. Nov. 2, 2020), *report and recommendation
   adopted*, 2020 U.S. Dist. LEXIS 220043 (E.D.N.Y. Nov. 23, 2020)..........................................6, 45

*City of N.Y. v. Beretta U.S.A. Corp.*,
   315 F. Supp. 2d 256 (E.D.N.Y. 2004) ..........................................................................................48

*City of N.Y. v. Chavez*,
   No. 11-cv-2691, 2012 U.S. Dist. LEXIS 42792
   (S.D.N.Y. Mar. 26, 2012) ..........................................................................................19, 29

*City of N.Y. v. Hatu*,
   No. 18-cv-848, 2019 U.S. Dist. LEXIS 91576 (S.D.N.Y. May 21, 2019) ..........................................16, 17, 19

*City of N.Y. v. Jennings*,
   899 N.Y.S.2d 58 (App. Div. 1st Dep't 2009) ..........................................................................................29

**Authorities**                                                                              **Pages**

*City of N.Y. v. Magellan Tech.*, No. 23-cv-5880,
2024 U.S. Dist. LEXIS 93339 (S.D.N.Y. May 24, 2024)................................. *passim*

*City of N.Y. v. N.Y.C. Bd. of Elec.*, No. 41450/91,
1991 N.Y. Misc. LEXIS 895 (Sup. Ct. N.Y Cnty. Apr. 3, 1991) ...................... 29-30

*Clark v. Rameker*,
573 U.S. 122 (2014)................................................................................................31

*Cohen v. JP Morgan Chase & Co.*,
498 F.3d 111 (2d Cir. 2007)....................................................................................24

*Copart Indus. v. Consol. Edison Co. of N.Y.*,
41 N.Y.2d 564 (1977) ..............................................................................................43

*D.C. v. John R. Thompson Co.*,
346 U.S. 100 (1953)...................................................................................................2

*Drake v. Vill. of Lima*,
221 A.D.3d 1481 (App. Div. 4th Dep't 2023) ........................................................52

*Gabelli v. SEC*,
568 U.S. 442 (2013)..................................................................................................51

*Gordon v. Holder*,
721 F.3d 638 (D.C. Cir. 2013) ................................................................................19

*J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*,
37 N.Y.3d 552 (2021) ..............................................................................................51

*Matter of Jones v. Berman*,
37 N.Y.2d 42 (1975), *aff'd*, 189 Misc. 2d 243 (App. Div. 1st Dept. 2001)..................3, 27, 41

*Juarez by Juarez v. Wavecrest Mgmt. Team*,
88 N.Y.2d 628 (1996) ..............................................................................................27

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*,
497 F. Supp. 3d 552 (N.D. Cal. 2020) ..............................................................44, 45

*Kimmel v. State of N.Y.*,
29 N.Y.3d 386 (2017) ..............................................................................................24

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024)..............................................................................................41

**Authorities**                                                                          **Pages**

*In re Methyl Tertiary Butyl Ether (MTBE) Prod.*,
    457 F. Supp. 2d 455 (S.D.N.Y. 2006)............................................................52

*In re MTBE Products Liab. Litig.*,
    725 F.3d 65 (2d Cir. 2013)..............................................................44, 49

*N.Y. Trap Rock Corp. v. Town of Clarkstown*,
    299 N.Y. 77, 83-84 (1949) ...............................................................44

*NetJets Aviation, Inc. v. LHC Communs., LLC*,
    537 F.3d 168 (2d Cir. 2008)...............................................................50

*New York v. Grand River Enters. Six Nations*, No. 14-cv-910A(F),
    2020 U.S. Dist. LEXIS 236928 (W.D.N.Y. Dec. 15, 2020)....................................16

*New York v. Juul Labs*,
    2022 N.Y. Misc. LEXIS 4983 (Sup. Ct. New York Cnty. July 14, 2022) .............................49

*New York v. Mountain Tobacco Co.*,
    942 F.3d 536 (2d Cir. 2019)................................................................3

*New York v. Shore Realty Corp.*,
    759 F.2d 1032 (2d Cir. 1985)..............................................................43

*New York v. UPS*,
    942 F.3d 554 (2d Cir. 2019)..............................................................19

*In re Opioid Litig.*,
    2018 N.Y. Misc. LEXIS 2428 (Sup. Ct. Suffolk Cnty. 2018)..........................................44, 45

*Penn Cent. Transp. Co. v. Singer Warehouse & Trucking Corp.*,
    86 A.D.2d 826 (App. Div. 1st Dep't 1982) ..........................................................49

*People v. Balmuth*,
    178 Misc. 2d 958
    (Crim. Ct. New York Cnty. 1998) .................................................................27, 41

*Perrin v. United States*,
    444 U.S. 37 (1979).........................................................................15

*Reid v. Kawasaki Motors Corp.*,
    189 A.D.2d 954 (3d Dep't 1993) .........................................................43

*S.F. Unified Sch. Dist. v. Juul Labs, Inc. (In re Juul Labs, Inc.)*,
    No. 19-md-02913, 2023 U.S. Dist. LEXIS 62624 (N.D. Cal. Apr. 10, 2023).........................51

| Authorities | Pages |
|---|---|

*Saks v. Franklin Covey Co.*,
 316 F.3d 337 (2d Cir. 2003)........................................................................3, 34

*Skidmore v. Swift & Co.*,
 323 U.S. 134 (1944)....................................................................................41

*Su v. Berkshire Nursery & Supply Corp.*, No. 23-cv-275,
 2024 U.S. Dist. LEXIS 91126 (S.D.N.Y. May 20, 2024)........................................51

*Suez Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, No. 20-cv-10731 (LJL),
 2023 U.S. Dist. LEXIS 48925 (S.D.N.Y. Mar. 22, 2023) ......................................50

*United States v. Gonzales*,
 520 U.S. 1 (1997)........................................................................................24

*United States v. Morrison*,
 686 F.3d 94 (2d Cir. 2012)..............................................................................2

*United States v. Osuna-Alvarez*,
 788 F.3d 1183 (9th Cir. 2015) ........................................................................15

*Wages & White Lion Invs., LLC v. FDA*,
 90 F.4th 357 (5th Cir.), *cert. granted*, 144 S. Ct. 2714 (2024) ...............................23

**Statutes**

15 U.S.C. § 375...................................................................................2, 15, 22

15 U.S.C. §§ 375, 376 (2009) ...........................................................................17

15 U.S.C § 376a................................................................................13, 14, 15, 17, 21

15 U.S.C. § 378(c)(1)(A) ..................................................................................13

18 U.S.C. § 924(c) ...........................................................................................24

21 U.S.C. § 387j(a) ...........................................................................................4

21 U.S.C. § 387p(a)(2)(A) ................................................................................28

Ch. 262 of the Laws of 2000..............................................................................36

N.Y.C. Admin. Code § 11-1302 .........................................................................34

N.Y.C. Admin. Code § 11-1302.1 ......................................................................14

N.Y.C. Admin. Code § 11-2001 .........................................................................14

**Authorities**                                                     **Pages**

N.Y.C. Admin. Code § 17-703 ................................................................................31

N.Y.C. Admin. Code § 17-704 ................................................................................31

N.Y.C. Admin. Code § 17-705 ................................................................................31

N.Y.C. Admin. Code § 17-706 ...............................................................31, 45, 52

N.Y.C. Admin. Code § 17-707 ................................................................................31

N.Y.C. Admin. Code § 17-708 ................................................................................31

N.Y.C. Admin. Code § 17-710 ................................................................................31

N.Y.C. Admin. Code § 17-713 ................................................................................30

N.Y.C. Admin. Code § 17-714 ................................................................................30

N.Y.C. Admin. Code § 17-715 ............................................................................*passim*

N.Y.C. Admin. Code § 17-716 ................................................................................30

N.Y.C. Admin. Code § 17-717 ...................................................................29, 30, 31

N.Y.C. Admin. Code § 17-718 ................................................................................30

N.Y.C. Admin. Code § 17-719 ................................................................................30

N.Y.C. Admin. Code § 20-473 ................................................................................27

N.Y.C. Charter § 394 ...............................................................................29, 30, 31

N.Y.C. Charter § 555 ...............................................................................................31

N.Y.C. Charter § 1048 .............................................................................................31

N.Y.C. Charter § 1503 .............................................................................................31

N.Y.C. Charter § 2203 .............................................................................................31

N.Y. Elec. L. § 16-102 ............................................................................................30

N.Y. Gen. City L. § 20(22) ............................................................................30, 31

N.Y. Pub. Health. L. § 1399-ii ...............................................................................36

N.Y. Pub. Health. L. § 1399-bb .............................................................................36

**Authorities**                                                                                        **Pages**

N.Y. Pub. Health. L. § 1399-dd ..................................................................................36

N.Y. Pub. Health. L. § 1399-hh ..................................................................................36

N.Y. Pub. Health. L. § 1399-jj ...................................................................................36

N.Y. Pub. Health. L. § 1399-kk ..................................................................................36

N.Y. Pub. Health. L. § 1399-*ll* ............................................................................ *passim*

N.Y. Tax L. art. 20 ......................................................................................................35

N.Y. Tax L. art. 28 .......................................................................................14, 35, 41

N.Y. Tax L. art. 28-C ............................................................................................37, 38, 40

N.Y. Tax L. § 471 .........................................................................................................2

N.Y. Tax L. § 1105 ......................................................................................................14

N.Y. Tax L. § 1180(b) ................................................................................................38

N.Y. Tax L. § 1183 ...............................................................................................38, 40

**Other Authorities**

21 C.F.R. § 1143.1 .....................................................................................................38

81 Fed. Reg. 28974 ......................................................................................................4

81 Fed. Reg. 29028 ......................................................................................................1

24 R.C.N.Y. § 28-02 ...................................................................................25, 26, 27, 28

56 R.C.N.Y. § 1-05(b) ...............................................................................................27

Fed. R. Civ. P. 12(b)(6) .............................................................................................26

*Federal PACT Act Expands Jenkins Reporting Act Requirements*, Conn. State
    Dept. of Revenue Serv., https://portal.ct.gov/drs/publications/special-
    notices/2010/sn-2010-8 ........................................................................................18

N.Y.C. DOHMH, *Amendment of Rules Relating to Sale of Flavored Tobacco
    Products, Electronic Cigarettes and Flavored E-liquids* (Apr. 5, 2024),
    https://rules.cityofnewyork.us/rule/amendment-of-rules-relating-to-sale-of-
    flavored-tobacco-products-electronic-cigarettes-and-flavored-e-liquids/ ...............21, 26, 27

| **Authorities** | **Pages** |
|---|---|

N.Y. Dept. of Health, *Guidance for Vapor Product Manufacturers, Wholesalers, Distributors, and Retailers Regarding New Shipping Restrictions*, https://health.ny.gov/prevention/tobacco_control/docs/vape_product_shipping _ban_guidance.pdf ......................................................................................................39

Restatement (Second) of Torts § 821B.....................................................44, 46, 51

Restatement (Second) of Torts § 825 cmt. D............................................................47

Restatement (Second) of Torts § 826.....................................................................46

Restatement (Second) of Torts § 826 cmt. A...........................................................46

U.S. Food & Drug Admin., *E-Cigarettes Authorized by the FDA*, https://digitalmedia.hhs.gov/tobacco/hosted/E-Cigarettes-Authorized-FDA-JULY2024.pdf (July 2024) ..................................................................................4, 47

Plaintiff the City of New York (the "City") respectfully submits this Omnibus Memorandum of Law in opposition to the several motions to dismiss and supporting memoranda of law filed by (1) Defendants EnviroMD Group LLC ("EnviroMD"), KLCC Wholesale Inc. ("KLCC"), RZ Smoke Inc. ("RZ Smoke"), Urban Smoke Distributors ("Urban Smoke"), and GT Import & Wholesale, Inc. ("GT Imports") (collectively, the "EnviroMD Defendants") (*ECF No.* 83) (hereinafter, the "*EnviroMD Mem.*"); (2) Defendants Vape More Inc. ("Vape More") and Vape Plus Distribution Corp. ("Vape Plus" and, together with Vape More, the "Vape More/Plus Defendants") (*ECF No.* 78) (hereinafter the "*Vape More/Plus Mem.*"); and (3) Defendant Kayla Wholesale, Inc., d/b/a The Vapery ("Kayla") (*ECF No.* 76-1) (hereinafter, the "*Kayla Mem.*").[1]

## PRELIMINARY STATEMENT

This action seeks, *inter alia,* to enjoin Defendants from selling so-called "flavored" e-cigarettes[2] in or into New York City.[3] Recent rulings issued in a parallel City action against e-cigarette distributors, as well as long-settled principles, require Defendants' motions to be denied in their entirety. In *City of N.Y. v. Magellan Tech.*, No. 23-cv-5880, 2024 U.S. Dist. LEXIS 93339 (S.D.N.Y. May 24, 2024) ("*Magellan*"), several e-cigarette distributors (some represented by the same counsel as has appeared here) moved to dismiss the City's complaint, offering virtually the same arguments advanced here. In a thorough and well-reasoned decision that Defendants barely mention (*see EnviroMD Mem.* at 8 n.5), Judge Stanton denied those motions to dismiss and upheld

---

[1] Defendants Pioneer Distribution, Inc. a/k/a Wevapeusa.com a/k/a Seller Supreme LLC ("Pioneer"), David Alfih a/k/a David Alfieh a/k/a DJ Alfani, and Marcus Bernard (together, the "Pioneer Defendants") have been served but have not appeared. For efficiency, the facts applicable to the Pioneer Defendants are nonetheless addressed in the event they subsequently move for dismissal.

[2] As used herein, "e-cigarettes" refers to all electronic nicotine delivery systems, including vaping products as well as components and parts such as e-liquids. *See* 81 Fed. Reg. at 29,028.

[3] Electronic cigarettes or "e-cigarettes" are battery-powered nicotine-delivery devices that heat solutions of nicotine ("e-liquids") to generate a nicotine-laced vapor inhaled by the user. E-liquids can taste like tobacco, but the vast majority sold are flavored to taste like fruit, candy, ice cream, or other desserts—all known to attract young users.

the City's claims under the Prevent All Cigarette Trafficking ("PACT") Act, 15 U.S.C. § 375 *et seq.*, N.Y. Public Health Law ("N.Y. P.H.L.") § 1399-*ll* (1-a), and for public nuisance. *Magellan*, 2024 U.S. Dist. LEXIS 93339, at *31. Although no rule bars the repetition of failed arguments to a different judge, ideally—unlike here—the renewed offer should be supported by new reasoning. The present Defendants' arguments can be rejected, again, both for the reasons provided in *Magellan* and for those added below.

Tellingly, the Vape More/Plus Defendants open not with legal argument but with speculation over such unproven matters as the possible public health benefits of flavored e-cigarettes or possible future regulatory decisions by the FDA. *Vape More/Plus Mem.* at 1–5. However interesting these might be to future legislators, at present, Congress, New York City, and New York State have already each enacted statutes that foreclose the policy or scientific debate offered to the Court by Defendants. Defendants' obligation is to conform their conduct to the law as enacted, not to ask this Court to second-guess legislative wisdom. Motions to dismiss must turn on statutory language and precedent, not the opinions about policy by financially-interested parties.[4]

It is therefore unsurprising that Defendants' arguments consistently neglect the core principle of statutory construction: that "[e]very exercise in statutory construction" must "begin with the words of the text. If the statutory terms are unambiguous, we construe the statute according to the plain meaning of its words." *Magellan*, 2024 U.S. Dist. LEXIS 93339, at *15–16 (quoting *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 546 (2d Cir. 2019) and *Saks v. Franklin Covey Co.*,

---

[4] Especially irrelevant is Defendants' commentary on FDA's enforcement practices regarding flavored vapes. *Vape More/Plus Mem.* at 3–5. Whether a law is enforced or not has no bearing on either the meaning of that law or its future enforceability. "The failure of the executive branch to enforce a law does not result in its modification or repeal." *D.C. v. John R. Thompson Co.*, 346 U.S. 100, 113–14 (1953); *United States v. Morrison*, 686 F.3d 94, 106 (2d Cir. 2012) ("New York's decision, for political and practical reasons, to refrain from enforcing Section 471 did not grant… leave to sell massive quantities of untaxed cigarettes.... New York had the power to impose that tax and state law mandated that the tax be paid. New York's forbearance policy did not free him to engage in conduct that the law forbade.").

316 F.3d 337, 345 (2d Cir. 2003)). Time and time again, Defendants offer arguments that rely

principally on their wishful insertion of language that *the legislature* did not include in the statute.

Defendants further compound their statutory misconstructions by offering extra-statutory material

(such as administrative agency guidance) purporting to support their arguments. *Vape More/Plus*

*Mem.* at 6–7, 24–25. But administrative agencies do not possess the power to alter plain statutory

language, through "guidance" or otherwise. *See, e.g.*, *Matter of Jones v. Berman*, 37 N.Y.2d 42,

53 (1975), *aff'd,* 189 Misc. 2d 243, 244 (App. Div. 1st Dept. 2001)*.*

## ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

### I. Legislative Efforts by Every Level of Government to Mitigate the Harm Caused by the Proliferation of Flavored E-Cigarettes

The proliferation of flavored e-cigarettes has had a devastating impact on public health

nationwide and in New York City, in the form of soaring youth nicotine use, reversing an otherwise

steady, decades-long decline in tobacco use.[5] Flavored e-cigarettes are especially concerning be-

cause they deliver higher nicotine concentrations than traditional cigarettes, but without the normal

harshness of nicotine and in youth-friendly flavors like fruit, candy, and mint. *Second Amended*

*Complaint* (*ECF No.* 61) (the "Complaint" or "*SAC*") ¶ 43. By marketing devices delivering fla-

vorful, milder, high-nicotine vapors, the e-cigarette industry has created a "pediatric epidemic of

youth e-cigarette use," potentially condemning the 90% of teen smokers who will continue to

smoke into adulthood "to a lifetime of nicotine addiction and associated health risks." *Id.* ¶ 6. By

late 2019, more than 5 million students reported active use of electronic nicotine delivery devices.

---

[5] *See* Maria Cooper et al., *Notes from the Field: E-cigarette Use Among Middle and High School Students-United States,* 71 Morbidity & Mortality Wkly. Rep. 1283 (2022), https://www.cdc.gov/mmwr/volumes/71/wr/pdfs/mm7140a3-H.pdf.

*Id.* ¶¶ 34–35. In 2021, 11% of NYC public high school students reported using an e-cigarette in the past month; only 3% reported smoking cigarettes. *Id.* ¶ 36.

Every level of government has responded to this health emergency with legislation intended to prohibit youth from obtaining flavored e-cigarettes, including, as relevant here:

(1) Since May 18, 2020, N.Y. P.H.L. § 1399-*ll* (1-a) has (a) prohibited the shipment of any e-cigarettes for sale in the state to anyone other than registered vapor product dealers, export warehouse proprietors, and government agents, and (b) required packages containing e-cigarettes to be labeled as such;

(2) Since July 1, 2020, New York City Administrative Code ("Ad. Code") § 17-715(b)(1) has made it "unlawful for *any* person," whether a distributor or wholesaler or anything else, "to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid" (emphasis added); and

(3) Since March 27, 2021, the PACT Act has prohibited internet-mediated sales of any e-cigarette, flavored or not, unless the seller meets several requirements including labeling each package, using a delivery method requiring an adult signature, and complying with all state and local tobacco laws in the buyer's jurisdiction.

Crucial to this motion, no flavored nicotine product has yet received FDA pre-market approval—which means that *no flavored nicotine product may be legally marketed anywhere in the United States*. 21 U.S.C. § 387j(a); 81 Fed. Reg. 28,974 (May 10, 2016).[6] Defendants do not even contest the fact that *all* flavored e-cigarettes—their principal stock-in-trade—are thus illegal for distribution or sale in the United States under federal law.

---

[6] The FDA has authorized only tobacco-flavored, menthol, and unflavored e-cigarettes. *See* U.S. Food & Drug Admin., E-Cigarettes Authorized by the FDA, https://digitalmedia.hhs.gov/tobacco/hosted/E-Cigarettes-Authorized-FDA-JULY2024.pdf (July 2024) (FDA list of approved e-cigarettes).

Defendants also violate every or nearly every one of these newly-enacted protective measures by distributing flavored e-cigarettes throughout the City, including through websites that advertise and/or sell flavored e-cigarettes directly to City consumers. Specifically:

(1) Each Defendant violates N.Y.C. Ad. Code § 17-715(b)(1) by either (a) maintaining websites that offer flavored e-cigarettes or flavored e-liquids for sale to City residents, and (b) selling flavored e-cigarettes or flavored e-liquids to City residents, either through their websites or otherwise. *SAC* ¶¶ 168–69.

(2) Defendants EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Urban Smoke, Vape More, and Vape Plus violate N.Y. P.H.L. § 1399-*ll* (1-a) by shipping (or causing to be shipped) vapor products intended or reasonably expected to be used with or for the consumption of nicotine to persons in the City that are neither licensed or registered "vapor product dealers" nor otherwise permitted to receive deliveries of vapor products under N.Y. P.H.L. § 1399-*ll* (1-a). *Id.* ¶¶ 161–67.

(3) Defendants EnviroMD, GT Imports, Kayla, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Urban Smoke, Vape More, and Vape Plus violate the PACT Act by (a) selling flavored e-cigarettes to tobacco businesses in the City that are not "lawfully operating" (because a business necessarily violates N.Y.C. Ad. Code § 17-715(b)(1) by purchasing and possessing the flavored e-cigarettes purchased from Defendants); and (b) making delivery sales of e-cigarettes to buyers in the City without complying with such applicable PACT Act requirements as labeling each package, using a delivery method requiring an adult signature, and complying with all applicable state and local tobacco laws. *Id.* ¶¶ 145–60.

(4) Each Defendant, through the promotion, distribution, marketing and sale of products that cause persistent youth and rising young adult addiction to nicotine and that cannot be safely

disposed of in the normal waste stream, has contributed to a public health crisis wherein flavored e-cigarettes are found ubiquitously throughout stores in the City and sold in enormous quantities to the public (including minors), resulting in persistent and rising youth nicotine addiction endangering the health and safety of a large number of persons in New York City. *Id.* ¶¶ 170–81.

The City's PACT Act, Public Health Law, and public nuisance claims have already been upheld, *Magellan*, 2024 U.S. Dist. LEXIS 93339, at *23, and e-cigarette internet sales to City youth previously enjoined. *City of N.Y. v. Artisan Vapor Franchise LLC*, No. 19-cv-5693, 2020 U.S. Dist. LEXIS 205315 (E.D.N.Y. Nov. 2, 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 220043 (Nov. 23, 2020).

## II. Facts Establishing Defendants' Violations of the PACT Act, N.Y. P.H.L. § 1399-*ll* (1-a), and N.Y.C. Ad. Code § 17-715 and Creation of a Public Nuisance

### A. Summary Chart

For ease of reference, below is a chart outlining each Defendant, the statutory claims raised against them, and the corresponding allegations in the SAC:

| Defendant | Statutory Claims | Relevant Allegations | Relevant Exhibits[7] |
|---|---|---|---|
| EnviroMD | N.Y.C. Ad. Code | ¶¶ 53–54 | A (sales to Star Vape) |
| | PACT Act | ¶¶ 55–57 | |
| | N.Y. P.H.L. | ¶¶ 58–59 | |
| GT Imports | N.Y.C. Ad. Code | ¶¶ 61–63 | B (website) |
| | PACT Act | ¶¶ 64–69 | C (NYC sales) |
| | N.Y. P.H.L. | ¶¶ 70 | D (sales to Star Vape) |

---

[7] In addition, Exhibits R (cross-border store survey) and S (PAVe store survey) are relevant to all Defendants.

| Defendant | Statutory Claims | Relevant Allegations | Relevant Exhibits |
|---|---|---|---|
| Kayla | N.Y.C. Ad. Code | ¶¶ 72–73 | E (sales to Star Vape) F (sales to City agent) |
| | PACT Act | ¶¶ 74–84 | |
| | N.Y. P.H.L. | ¶¶ 74–84 | |
| KLCC | N.Y.C. Ad. Code | ¶¶ 86–89 | G (website) |
| Pioneer Defendants | N.Y.C. Ad. Code | ¶¶ 92–93 | H (website) I (sales to City agent) |
| | PACT Act | ¶¶ 94–102 | |
| | N.Y. P.H.L. | ¶¶ 94–102 | |
| RZ Smoke | N.Y.C. Ad. Code | ¶¶ 104–06 | J (website) K (sales invoices to Star Vape) |
| | PACT Act | ¶¶ 107–09 | |
| | N.Y. P.H.L. | ¶ 110 | |
| Urban Smoke | N.Y.C. Ad. Code | ¶¶ 119–24 | M (Facebook page) N (Vape More sales to Urban Smoke) |
| | PACT Act | ¶¶ 125–26 | |
| | N.Y. P.H.L. | ¶ 127–28 | |
| Vape More | N.Y.C. Ad. Code | ¶¶ 130–32 | N (Vape More sales to Urban Smoke) O (website) |
| | PACT Act | ¶¶ 133–34 | |
| | N.Y. P.H.L. | ¶ 135 | |
| Vape Plus | N.Y.C. Ad. Code | ¶¶ 136–40 | P (website) |
| | PACT Act | ¶¶ 141–43 | |
| | N.Y. P.H.L. | ¶ 144 | |

### B.    EnviroMD

The City possesses invoices showing sales of thousands of flavored e-cigarettes by Brooklyn-based EnviroMD to Star Vape, a Brooklyn-based e-cigarette distributor. Between September 2022 and August 2023, EnviroMD sold to Star Vape "Fume" brand e-cigarettes in "Pina Colada," "Mango," "Banana Ice" and "Gummy Bear" flavors, and "Myle" brand e-cigarettes in "Georgia Peach," "Iced Mint," and "Lush Ice" flavors. *SAC* ¶¶ 54–55. The SAC further alleges that, at the time of the above sales, Star Vape was not a "lawfully operating" tobacco business and hence was a "consumer" receiving "delivery sales" that did not comply with the PACT Act. *Id.* ¶¶ 59, 81.

### C.    GT Imports

GT Imports, located in Plainview, New York, between September 2022 and August 2023, sold approximately $1 million of e-cigarettes to distributors located in Brooklyn, Queens, and the Bronx, including Topoo Industries (Brooklyn), Sahara Wholesale (Queens), EZ Wholesale (Bronx), R and B Wholesale (Brooklyn), and "Jimmy's" (Brooklyn) in transactions involving the internet, telephone, or mail. *Id.* ¶ 63. The e-cigarettes GT Imports sold into the City included "Jungle Juice," "Watermelon Ice" and "Kiwi Shake" flavors—all illegal, flavored e-cigarettes. *Id*. Additional invoices obtained by the City demonstrate sales by GT Imports between March 2023 and August 2023 of thousands of illegal flavored "Air Bar" and "Orion Bar" e-cigarettes in "Strawberry Waffle Biscuit," "Cherry Cola," "Blueberry Pie" and "Pink Lemonade" flavors to Brooklyn-based Star Vape. *Id.* The SAC further alleges that, at the time of the above sales, none of the above-named buyers was a "lawfully operating" tobacco business and hence was a "consumer" receiving "delivery sales" that did not comply with various PACT Act requirements. *Id.* ¶ 70.

### D.    Kayla

The SAC alleges that Kayla (1) between August 2020 and November 2020, sold large quantities of flavored e-cigarettes to Star Vape in transactions involving the internet, telephone, or mail; (2) from June 2019 until approximately April 2024 (when this lawsuit was filed), maintained the www.newyorkvapeking.com website, by which Kayla (under the name "The Vapery") offered flavored e-cigarettes for sale in the City and through which it sold and delivered flavored e-cigarettes to consumers in New York City and elsewhere; and (3) in March 2024, sold flavored e-cigarettes to a City agent (who had ordered the flavored e-cigarettes on Kayla's www.newyorkvapeking.com website), delivering them to a residential address in Brooklyn in a package that failed to state that it contained vapor products, and for which no adult signature was required. *Id.* ¶¶ 71–80 & Ex. F. The SAC further alleges that, at the time of the above deliveries,

(1) Star Vape sold, offered for sale, and/or possessed flavored e-cigarettes in New York City in violation of Ad. Code § 17-715 and so was not a "lawfully operating" tobacco business and hence a "consumer" receiving "delivery sales" under the PACT Act; (2) the City agent was likewise a consumer receiving delivery sales under the PACT Act; and (3) the City agent was not a licensed vape dealer under N.Y. P.H.L. § 1399-*ll*(1-a). *Id.* ¶¶ 81–84.[8]

### E.    KLCC

Brooklyn-based KLCC operates a website that offers to sell flavored e-cigarettes to the public. *Id.* ¶ 87 & Ex. G. KLCC has purchased hundreds of flavored disposable e-cigarettes from out-of-state distributors in quantities too large for personal use, presumptively for sale in New York City. *Id.* ¶ 85.

### F.    The Pioneer Defendants

Brooklyn-based Pioneer Distribution Inc. a/k/a Wevapeusa.com., a/k/a Seller Supreme LLC ("Pioneer") is operated by David Alfih and Marcus Bernard (together, Alfih, Bernard, and Pioneer are the "Pioneer Defendants"). The Pioneer Defendants maintain a website at https://wevapeusa.com where they offer flavored e-cigarettes for sale in the City and through which they sold (and, on information and belief, continue to sell) flavored e-cigarettes to consumers in New York City and elsewhere. *Id.* ¶¶ 20, 90–93 & Ex. H. In March 2024, Pioneer sold flavored e-cigarettes to a City agent (who had ordered the flavored e-cigarettes on Pioneer's https://wevapeusa.com website), delivering them to a residential address in Brooklyn in a package

---

[8] Accordingly, Kayla is incorrect in stating that "Kayla is accused of a very limited number of actual sales, the majority of which predated the effective dates of statutes in issue." (*Kayla Mem.* at 6.) The SAC expressly alleges that "[t]hrough its website, Kayla also sells quantities of flavored e-cigarettes to consumers in New York City and elsewhere." *SAC* ¶ 74. Kayla's sales of large quantities of flavored e-cigarettes in 2020, and the ease with which a City agent was able to buy flavored e-cigarettes from Kayla's website in 2024, further underscore the plausibility of the inference that Kayla, through its website, was selling flavored e-cigarettes to customers in the City from June 2019 until April 2024.

that failed to state that it contained vapor products, and for which no adult signature was required. *Id.* ¶¶ 94–98 & Ex. I. The Complaint further alleges that, at the time of the above deliveries, (1) the purchasers of e-cigarettes from Pioneer themselves sold, offered for sale, and/or possessed flavored e-cigarettes in New York City in violation of Ad. Code § 17-715 (and so were not "lawfully operating" tobacco businesses and hence were "consumers" receiving "delivery sales" under the PACT Act); and (2) the City agent was not a licensed vape dealer under N.Y. P.H.L. § 1399-*ll*(1-a) and was likewise a consumer receiving delivery sales under the PACT Act. *Id.* ¶¶ 99–102.

### G.    RZ Smoke

RZ Smoke (in New Hyde Park, New York) operates the website www.rzsmoke.com, where it advertises itself as an "Authorized Vape Wholesale Distributor." *Id.* ¶ 103. Invoices from Brooklyn-based Star Vape show that from December 2020 until August 2023, RZ Smoke sold Star Vape large quantities of flavored e-cigarettes, for example the "Air Bar" brand in "Peach," "Mango," and "Strawberry" flavors. *Id.* ¶ 105. RZ Smoke's invoices to Star Vape ranged from $15,000 to $60,000. *Id.* ¶ 105. The SAC further alleges that, at the time of the above deliveries, Star Vape sold, offered for sale, and/or possessed flavored e-cigarettes in New York City in violation of Ad. Code § 17-715 and so was not a "lawfully operating" tobacco business and hence a "consumer" receiving "delivery sales" under the PACT Act.

### H.    Urban Smoke

Urban Smoke is a wholesaler of e-cigarettes in Woodside, New York with a Facebook page and website at https://www.urbansmokedistributors.com, where it advertises "disposable vapes" "for sale" in multiple flavors with "free delivery." *Id.* ¶ 119. Urban Smoke purchased flavored e-cigarettes from Arizona-based YLSN, including 9,100 packages of brands "EB Design" and "Lost Mary" in June 2023 and 16,000 packages of brands "EBDesign," "Funky Republic," Lost Mary" and "Geek Bar" between May and July 2023. *Id.* ¶ 122. Urban Smoke has also purchased illegal

flavored e-cigarettes from Defendant Vape More, including the brands "E&B," "Elf Bar," and "Lost Mary." *Id.* ¶¶ 120–21. The quantity of e-cigarettes purchased by Urban Smoke is inconsistent with personal use and establishes intent to engage in subsequent sales and offers to sell to retailers, other distributors, and/or individuals. Urban Smoke also offers to sell and possesses with intent to sell or offer for sale flavored e-cigarettes from its website, in violation of Ad. Code § 17-715. *Id.* ¶¶ 119–24.

## I.    Vape More

Vape More is a wholesale and retail tobacco outlet in Latham, New York that maintains a website at https://www.vapemoreinc.co*m* selling dozens of brands of disposable flavored e-cigarettes. *Id.* ¶¶ 129-30. On or about July 30, 2023, Vape More sold to Queens-based Urban Smoke brands of disposable flavored e-cigarettes including "Apple Peach," "Strawberry Ice," and "Watermelon Ice." *Id.* ¶ 131. The SAC further alleges that, at the time of the above sales, Urban Smoke sold, offered for sale, and/or possessed flavored e-cigarettes in New York City in violation of N.Y.C. Ad. Code § 17-715 and so was not a "lawfully operating" tobacco business and hence a PACT Act "consumer" receiving "delivery sales" from Vape More. *Id.* ¶¶ 133–35.

## J.    Vape Plus

Vape Plus, in Brooklyn, operates the website https://nyvapeplus.com, where it offers for sale numerous brands of disposable flavored e-cigarettes, including "Elf Bar," "E. B. 5000," "Lost Mary," and "Fume." The website promises "same day delivery," indicating that deliveries are made locally within New York City. *Id.* ¶¶ 136–37.

Vape Plus made numerous purchases of e-cigarettes from New Jersey-based Smokin Sales, including a purchase of hundreds of units of "Salt Bae" e-juice (a flavored nicotine e-liquid) as well as "Smok" and "Uwell" brand e-cigarettes around April 2023, and a purchase of 460 units of "Lava," "Mega Vape," and "Dragbar" brands of flavored e-cigarettes around June 2023. *Id.* ¶ 138.

In September 2022, Vape Plus purchased approximately 8,000 packages of flavored e-cigarettes, including the brands "Elf Bar" and "Lykcan Belo." *Id.* Ex. H. In October 2022, Vape Plus purchased 15,000 packages of flavored e-cigarettes from YLSN, including brands "Elf Bar," "Lost Mary," "Biffbar" and "Geek Bar." *Id.*

The quantity of e-cigarettes purchased by Vape Plus is inconsistent with personal use and establishes its intent to engage in subsequent sales and offers to sell to retailers, other distributors, and/or individuals through its website. Consistent with this inference, Vape Plus has received thousands of dollars in payments from multiple-cigarette stores in New York City, such as Smoke World & Vape LLC, Vape N Cloud Corp., and Vape and Smoke Corp. *Id.* ¶¶ 141–43. In addition, from its website, Vape Plus sells, offers to sell, and possesses with intent to sell or offer for sale flavored e-cigarettes within the City in violation of N.Y.C. Ad. Code § 17-715. *Id.* ¶¶ 136–40.

## ARGUMENT

The City has adequately pleaded that: (i) most Defendants violated the PACT Act by making remote sales and deliveries of e-cigarettes to consumers without complying with the PACT Act's requirements for delivery sales; (ii) all Defendants violated N.Y.C. Ad. Code § 17-715 by selling, offering for sale, and/or possessing with intent to sell or offer for sale flavored e-cigarettes in New York City; (iii) most Defendants violated N.Y. P.H.L. § 1399-*ll*(1-a) by shipping improperly labeled e-cigarettes to unauthorized persons in New York City; and (iv) all Defendants caused or contributed to a public nuisance by distributing flavored e-cigarettes.

### I. The City Has Adequately Pleaded that EnviroMD, GT Imports, Kayla, Pioneer, RZ Smoke, Star Zone, Vape Plus, and Vape More Violated the PACT Act

#### A. The City has Standing to Enforce the PACT Act

Defendants' contention that the City lacks standing to assert a PACT Act claim in the absence of an excise tax on electronic cigarettes should again be rejected, as in *Magellan*. Under the PACT Act's plain language:

> … ***a local government… that levies a tax subject to section 376a(a)(3) of this title***, through its chief law enforcement officer, ***may bring an action*** in a United States district court ***to prevent and restrain violations of this chapter by any person*** or to obtain any other appropriate relief from any person for violations of this chapter, including civil penalties, money damages, and injunctive or other equitable relief.

15 U.S.C. § 378(c)(1)(A) (emphasis added). A "tax subject to section 376a(a)(3)" is defined in that section, which provides that delivery-sellers must comply with:

> (3) All State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco…. including laws imposing—
>
> > (A) Excise taxes;
> >
> > (B) Licensing and tax-stamping requirements;
> >
> > (C) Restrictions on sales to minors; and
> >
> > (D) Other payment obligations or legal requirements relating to the sale, distribution, or delivery of cigarettes or smokeless tobacco.

15 U.S.C. § 376a(a)(3). This section thus serves as a list of both (1) laws with which delivery sellers must comply, and (2) laws that provide the City with PACT Act standing—e.g., "laws imposing… excise taxes" and "laws imposing… other payment obligations or legal requirements relating to the sale, distribution, or delivery of cigarettes or smokeless tobacco."

Accordingly, the City has standing to "bring an action… to obtain… appropriate relief from any person for violations of this chapter" because the City imposes two distinct "tax[es] subject to

section 376a(a)(3)": "an excise tax on cigarettes and a sales tax on both cigarettes and e-cigarettes," both of which "provide standing to sue." *Magellan*, 2024 U.S. Dist. LEXIS 93339, at **14–16.

First, the City imposes an excise tax on cigarettes: N.Y.C. Ad. Code § 11-1302.1 (imposing "a tax on: 1. All cigarettes possessed in the city for sale…" and "2. The use of all cigarettes in the city…"). Because this is an "excise tax[]" that is "generally applicable to sales of cigarettes," it is a "tax subject to section 376a(a)(3)" sufficient to confer standing. The City therefore has standing to "bring an action… to prevent and restrain violations of this chapter." The fact that the tax is an excise tax on traditional cigarettes, not e-cigarettes, nonetheless provides PACT Act standing. As the *Magellan* court reasoned, "[t]hough New York City's excise tax is only levied on traditional cigarettes and not e-cigarettes, that distinction does not limit who can bring an enforcement action under the PACT Act. The criterion of levying a tax subject to section 376a(a)(3) clarifies which governments have standing to bring an enforcement action. It does not limit the type of enforcement action brought." *Magellan*, 2024 U.S. Dist. LEXIS 93339, at *14.[9]

Second, the City levies a sales tax on e-cigarettes: N.Y.C. Ad. Code § 11-2001(a) (imposing "all of the sales… taxes described in" N.Y. Tax L. art. 28); N.Y. Tax L. § 1105 (imposing a sales tax on "receipts from every retail sale of tangible personal property"). This is a "tax subject to section 376a(a)(3)" because it imposes "*other payment obligations or legal requirements relating to the sale, distribution, or delivery of cigarettes*." 15 U.S.C. § 367a(a)(3)(D). A sales tax is a "payment obligation[] or legal requirement[] relating to the sale… of cigarettes" and is thus a law

---

[9] The EnviroMD Defendants suggest that "the authority designated to New York City is limited to PACT Act violations that impact New York City." *EnviroMD Mem*. at 5. But that formulation does not deprive the City of standing in the absence of an e-cigarette tax because "PACT Act violations that impact New York City" include far more than tax-related violations—for example, the PACT Act's delivery sales requirements facilitate the City's efforts to enforce the N.Y.C. Ad. Code. Violations of PACT Act delivery sales requirements thus "impact New York City" such that the City still has standing under this standard.

"subject to section 376a(a)(3)" sufficient to confer standing. Indeed, the *Magellan* court held that a "sales tax on e-cigarettes is a payment and legal obligation relating to the sale of cigarettes that satisfies subsection (D) under a plain reading of that statute." *Magellan*, 2024 U.S. Dist. LEXIS 93339, at *14–15.

In sum, the City has standing under the PACT Act because it "imposes an excise tax on cigarettes and a sales tax on both cigarettes and e-cigarettes," *id.* at *15, either of which suffice.

### B.    Defendants' Sales Constitute "Delivery Sales" under the PACT Act

The PACT Act regulates "delivery sales" of e-cigarettes to "consumers." A "delivery sale" is any purchase and/or delivery of e-cigarettes where the buyer and seller are not in one another's physical presence. 15 U.S.C § 376a. A PACT Act "consumer" is *any* purchaser of e-cigarettes other than an entity "*lawfully operating* as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco." 15 U.S.C. § 375(4) (emphasis added).

The PACT Act does not define the term "lawfully operating." Defendants urge the Court to construe it as meaning merely "operating with any necessary state or local license." *Vape More/Plus Mem.* at 13–14.[10] That view is foreclosed under the "fundamental canon of statutory construction… that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). "Black's Law Dictionary defines 'lawful' as '[n]ot contrary to law.'" *California v. Azuma Corp.*, No. 2:23-cv-00743, 2023 U.S. Dist. LEXIS 159790, at *33 (E.D. Cal. Sept. 7, 2023) (quoting *United States v. Osuna-Alvarez*, 788 F.3d 1183, 1185 (9th Cir. 2015)). A "lawfully operating" tobacco business is one operating "not contrary to law." This requires operating in compliance with "law" generally,

---

[10] Ironically, even if this were the standard, Defendants would not meet it because as shown below, they do not make sales to licensed vapor products dealers. *SAC* ¶¶ 161–67; *infra* at 40.

not merely in compliance with any one law, and certainly not merely in compliance with licensing laws alone.

For that reason, Defendants' view has been expressly rejected by several courts. The *Magellan* court found that "the term 'lawfully operating' means compliance with laws under the plain meaning of the statute." *Magellan*, 2024 U.S. Dist. LEXIS 93339, at *23. "The plain meaning of 'lawful' is not limited to 'licensed.'" *Id*. *Magellan* accords with the holdings of several other courts that have found PACT Act liability for distributors that sell to other than "lawfully operating" buyers. In *Hatu*, the court held that otherwise licensed retailers operating in violation of numerous statutes (including the Contraband Cigarette Trafficking Act and N.Y. P.H.L. § 1399-*ll*) were not "lawfully operating" under the PACT Act. *City of N.Y. v. Hatu*, No. 18-cv-848, 2019 U.S. Dist. LEXIS 91576, **46–47 (S.D.N.Y. May 21, 2019). In *Grand River Enterprises*, the court held that tribal cigarette wholesalers and resellers were not "lawfully operating" when in possession of un-taxed cigarettes in violation of New York State's excise tax laws, despite being licensed by their tribe. *N.Y. v. Grand River Enters. Six Nations*, No. 14-cv-910A(F), 2020 U.S. Dist. LEXIS 236928, at **36–37 (W.D.N.Y. Dec. 15, 2020). And in *Azuma Corp.*, cigarette buyers were not "lawfully operating" not merely because they were unlicensed, but also because they did "not remit applica-ble taxes to California." *Azuma Corp.*, 2023 U.S. Dist. LEXIS 159790, at *31. Courts thus construe the phrase "lawfully operating" to mean far more than having a "necessary state or local registra-tion or license."

No City purchaser of a flavored e-cigarette from a Defendant can possibly be a "lawfully operating" tobacco business because, *inter alia*, those buyers all necessarily violate N.Y.C. Ad. Code § 17-715 merely by possessing flavored e-cigarettes in the City. Because a City purchaser of a flavored e-cigarette cannot be a "lawfully operating" tobacco business, those purchasers are all

"consumers" under the PACT Act. *See Magellan,* 2024 U.S. Dist. LEXIS 93339, at *23; *Hatu*, 2019 U.S. Dist. LEXIS 91576, at **47–48 ("the PACT Act exempts only those who are operating lawfully," and "cogs in an illegal cigarette distribution scheme" were not); *Azuma Corp.*, 2023 U.S. Dist. LEXIS 159790, at *31 ("Because [distributor's] customers do not have licenses and do not remit applicable taxes to California, they are not lawfully operating and are therefore, consumers as defined by the PACT Act.").

The City's position also better conforms to the PACT Act's language requiring delivery sellers to comply with the *broadest* possible range of cigarette-related laws. *See*, *e.g.*, 15 U.S.C. § 376a(a)(3) (delivery sellers must comply with "*all* State, local, tribal, *and other* laws generally applicable to sales of cigarettes…"). Congress would not have rationally mandated such broad compliance by delivery sellers and at the same time allowing them to make delivery sales to customers that violate the very same laws the delivery sellers must comply with.

The Vape More/Plus Defendants advance several other arguments, none of which hold water and most of which were expressly rejected by the *Magellan* court. First, they argue that "lawfully operating" must mean "licensed" because the Jenkins Act (the pre-amendment popular name of the PACT Act) had an exemption for "licensed" distributors similar to the PACT Act's "lawfully operating" exemption. *Vape More/Plus Mem.* at 15–17. But statutes are amended to change (or clarify) their meaning, not to maintain the same meaning using different words. "Licensed" and "lawfully operating" have two very different meanings, as being "licensed" is far less demanding than being "lawfully operating." In the original Jenkins Act, Congress did indeed use "licensed" when it wished licensure to serve as an exemption from reporting requirements. 15 U.S.C. §§ 375(3), 376(a) (2009). But if Congress wished to maintain that "licensed" exemption, it would have left the word untouched—not changed it to "lawfully operating." The *Magellan* court

agreed, reasoning that "[h]ad Congress intended to keep the same meaning, there would have been no reason to make the change." 2024 U.S. Dist. LEXIS 93339, at *22.[11]

Second, the Vape More/Plus Defendants assert that requiring their customers to be "lawfully operating" under the City's interpretation would lead to "absurd results," because distributors like themselves *cannot possibly know* whether their customers comply with all laws. *Vape More/Plus Mem.* at 19. To the contrary, Defendants' argument itself leads to absurd results: a distributor may not know of customer compliance with *every* law, but the moment a distributor receives an order for flavored e-cigarettes from a customer in the City, the distributor knows actually and unequivocally that the customer is not "lawfully operating" by reason of that very order. *See Magellan,* 2024 U.S. Dist. LEXIS 93339, at *22 ("it would be clear when a purchase requests [flavored e-cigarettes] that they were not lawfully operating because of the [flavor] ban").

Third, the Vape More/Plus Defendants argue that common sense supports their reading because the PACT Act requirements regarding delivery sales (*e.g.* regarding weight of packages and purchaser identity verification) are "clearly aimed at *retail* sales to individuals." *Vape More/Plus Mem.* at 20 (emphasis in original). Common sense in fact torpedoes that assertion given the broad purposes of the PACT Act, which was "aimed primarily at combating three evils: tobacco

---

[11] Moreover, the PACT Act was enacted to remedy defects in the original Jenkins Act:

> [W]ith the rise of Internet sales of cigarettes, compliance with the Jenkins Act was very low, and it was estimated that billions of dollars of state and local taxes went unpaid. In 2010, Congress passed the Prevent All Cigarette Trafficking Act (PACT Act), which amends the Jenkins Act, to address this problem.

*CRS Report -- Litigation Concerning the Constitutionality of the Prevent All Cigarette Trafficking Act (PACT Act),* https://www.everycrsreport.com/files/20121207_R42851_94f9be369cf28e1947c914df7a5a2ea847a4c8ff.pdf (visited Oct. 13, 2024). Congress would not "address this problem" by keeping the original Jenkins Act language under which the problem arose.

Moreover, state tax officials recognize the "new and *expanded reporting…* required under the Jenkins Act, as amended by the PACT Act*." Federal PACT Act Expands Jenkins Reporting Act Requirements,* Conn. State Dept. of Revenue Servs., https://portal.ct.gov/drs/publications/special-notices/2010/sn-2010-8 (visited Oct. 17, 2024) (emphasis added).

sales to minors, [illicit] cigarette trafficking, and circumvention of state taxation requirements." *Gordon v. Holder*, 721 F.3d 638, 642 (D.C. Cir. 2013). Cigarette trafficking and tax evasion are not "retail" problems, but are problems associated with distribution, created by illicit distribution. *See*, *e.g. New York v. UPS*, 942 F.3d 554 (2d Cir. 2019); *Hatu*, 2019 U.S. Dist. LEXIS 91576; *City of N.Y. v. Chavez*, No. 11-cv-2691, 2012 U.S. Dist. LEXIS 42792 (S.D.N.Y. Mar. 26, 2012). The Vape More/Plus Defendants' interpretation of "lawfully operating" would completely undermine the PACT Act's attempts to address cigarette trafficking or tax evasion. For example, under the "retail-sales-only" approach, a distributor's sales to cigarette traffickers who happened to be licensed retailers would be perfectly legal,[12] as would Defendants' sales to licensed retailers that violate state flavor bans. It would *defy* common sense to permit distributors to provide retailers with a robust supply of illegal products and then restrict enforcement measures to dozens of retailers so-supplied, without recourse to the distributor supplying those illegal products.

Fourth, the Vape More/Plus Defendants argue that the "rule of lenity" mandates a narrower reading of the statute. *Vape More/Plus Mem.* at 21. But the Supreme Court has squarely held that "the touchstone of the rule of lenity is statutory ambiguity." *Burgess v. United States*, 553 U.S. 124, 135 (2008) (citation omitted). As described above, there is no statutory ambiguity in the term "lawfully operating." *See Magellan*, 2024 U.S. Dist. LEXIS 93339, at *23 ("[T]he rule of lenity applies when a statute is ambiguous, and . . . it is not here."). Accordingly, the rule of lenity does not apply.

---

[12] *See Hatu,* 2019 U.S. Dist. LEXIS 91576, at **47–48 (distributor violated PACT Act because "even if Ammar and Alsaidi qualified as retailers, the PACT Act exempts only those who are operating lawfully, and… Ammar and Alsaidi were not doing so, but instead were cogs in an illegal cigarette distribution scheme"). If the PACT Act applied only to retail sales, the *Hatu* distributor would not have been in violation of the Act.

Therefore, all of Defendants' sales of flavored vapes to anyone in the City constitute "delivery sales" to "consumers."

### C.     The City Has Adequately Pleaded PACT Act Violations

#### 1.   Vape More/Plus Defendants

The City has pleaded facts—indeed, even provided hard evidence of particular sales—that establish PACT Act violations by Vape More. *SAC* ¶¶ 129–35 & Exs. O, N. Specifically, Vape More made delivery sales of e-cigarettes to a consumer in violation of N.Y. P.H.L. § 1399-*ll* and N.Y.C. Ad. Code § 17-715, and thus violated the PACT Act by failing to comply with all laws governing the sale of e-cigarettes in New York City. *Id.* ¶¶ 157, 160. On or about July 30, 2023, Vape More sold hundreds of units of flavored e-cigarettes to Urban Smoke (in Woodside, New York) through its website. *Id.* ¶¶ 131–32. Simply by virtue of this purchase of flavored e-cigarettes, Urban Smoke was not "lawfully operating," and hence a "consumer." The Court can infer that this Albany to New York City transaction was a remote purchase or delivery, hence a delivery sale that did not comply with all laws of the jurisdiction into which the product was delivered.

As to Vape Plus, the City alleges that it received thousands of dollars in payments from multiple stores in New York City, including Smoke World & Vape LLC, Vape N Cloud Corp., and Vape and Smoke Corp. *Id.* ¶¶ 141–43. The City alleges that Vape Plus operates a website that offer flavored e-cigarettes for sale and alleges on information and belief that Vape Plus sold flavored e-cigarettes to the above City buyers, which were not "lawfully operating." *Id.* ¶¶ 130–34, 136, 141–43. Therefore, the City has adequately alleged PACT Act violations as to Vape Plus.

Accordingly, the Vape More/Plus Defendants' argument that "the City has not identified a single sale by Vape More or Vape Plus that violated one of the PACT Act's requirements for 'delivery sales'" and "has failed to allege Vape More's or Vape Plus's non-compliance with any

of the specific requirements of 15 U.S.C. 376a in a particular transaction" simply suggests that these defendants have not read the Second Amended Complaint. *Vape More/Plus Mem.* at 21–22.

### 2. EnviroMD Defendants

The EnviroMD Defendants contend that the City has not alleged facts to state a claim for violations of the PACT Act but instead "relies on threadbare… legal conclusions" and "purely hypothetical actions." *EnviroMD Mem*. at 12, 15. This indicates they too have not read the Second Amended Complaint.

The City has identified—and provided evidentiary support for—specific sales by EnviroMD, GT Imports, and RZ Smoke that violate the PACT Act. *See, e.g.*, *SAC* ¶¶ 57–58 & Ex. A (EnviroMD sales of flavored e-cigarettes to Star Vape); *id.* ¶¶ 64–69 & Exs. C, D (GT Imports sales of flavored e-cigarettes to Topo Industries, an individual named Jimmy, R and B Wholesale, and EZ Wholesale); *id.* ¶¶ 107–109 & Ex. K (RZ Smoke sales of flavored e-cigarettes to Star Vape). The EnviroMD Defendants violated the PACT Act in that they sold e-cigarettes to consumers in violation of N.Y. P.H.L. § 1399-*ll* and N.Y.C. Ad. Code § 17-715 (*id.* ¶ 157), thereby violating the PACT Act by those failures to comply with all laws governing the sale of e-cigarettes in New York City. *Id.* ¶¶ 156–60.[13]

### 3. Kayla

Kayla joins the arguments raised by other Defendants without elaborating further. *Kayla Mem.* at 8. Kayla's arguments therefore fail for the same reasons as the other Defendants. The City has identified multiple sales of flavored e-cigarettes by Kayla to a City agent, violating the PACT

---

[13] These sales also violated federal law because the flavored e-cigarettes are non-FDA-approved. *See* N.Y.C. DOHMH, *Amendment of Rules Relating to Sale of Flavored Tobacco Products, Electronic Cigarettes and Flavored E-liquids* (Apr. 5, 2024), https://rules.cityofnewyork.us/rule/amendment-of-rules-relating-to-sale-of-flavored-tobacco-products-electronic-cigarettes-and-flavored-e-liquids/ ("None of the flavored products covered by section 17-715 of the Code are authorized by the FDA, making the marketing of such products a violation of federal law.").

Act. *SAC* ¶¶ 74–84. The City further alleges that Kayla (like the Defendants above) violated the PACT Act in that it (1) did not label its e-cigarette packages as required by both the PACT Act and N.Y. P.H.L. § 1399-*ll*; (2) sold flavored e-cigarettes in violation of N.Y. P.H.L. § 1399-*ll* (because the sales were not to licensed vapor products dealers) and N.Y.C. Ad. Code § 17-715 (because the e-cigarettes were flavored); and (3) did not utilize a method of delivery requiring an adult signature upon delivery. *Id.* ¶¶ 156–60. Accordingly, Kayla did not conduct its delivery sales in compliance with all laws applicable to the sale of cigarettes in New York City, as required under the PACT Act.[14] Therefore, the City has adequately alleged PACT Act claims as to Kayla.

### D.    Kayla's Additional PACT Act Arguments are Meritless

#### 1.    Kayla's Arguments Regarding the FDA are Irrelevant as to Whether Kalya Violated the PACT Act

Kayla advances the strange argument that the FDA failed to follow its administrative enforcement scheme by sending Kayla a warning letter. *Kayla Mem.* at 10–11. But the City, not the FDA, is the plaintiff here. Nothing in the PACT Act conditions the City's ability to state a PACT Act claim on some predicate actions of the FDA or any other federal agency. Kayla argues even less tenably that the FDA's regulatory enforcement scheme for flavored e-cigarettes has been "called into question" and will be reviewed by the Supreme Court, "*possibly* rending the [PACT Act] allegations . . . moot." *Kayla Mem.* at 11 (emphasis added). That argument is redolent of the maxim, "if wishes were horses, beggars would ride." Whether or not the FDA's enforcement scheme survives Supreme Court scrutiny or is even "called into question" has not the slightest bearing on Kayla's liability under the PACT Act. The PACT Act makes no distinction between flavored and unflavored e-cigarettes—the Act is applicable to *any* e-cigarettes. 15 U.S.C.

---

[14] These allegations apply with equal force to the Pioneer Defendants. SAC ¶¶ 94–102.

§ 375(2)(A) (defining "cigarette" without reference to flavors), even those to which the FDA has granted permission to sell. Given Kayla's abundant violations of PACT Act provisions having nothing to do with the FDA's regulation of flavored e-cigarettes, but everything to do with the sale and delivery of e-cigarettes generally, and bearing in mind that Kayla violates City and State laws, there can be no expectation that the Supreme Court's review of *Wages & White Lion Invs., LLC v. FDA*, 90 F.4th 357 (5th Cir.), *cert. granted*, 144 S.Ct. 2714 (2024) will have any significant effect on this action.

### 2. Kayla's Alleged Violations Do Not Pre-Date the Effective Date of Relevant Laws

Kayla contends that its alleged violations pre-date the effective date of several laws, namely the PACT Act amendments that (1) defined "cigarette" to include electronic vapes, effective March 27, 2021; (2) required e-cigarette sellers to register with ATF and report with tobacco tax administrators in states into which vape products were shipped, effective March 27, 2021; and (3) prohibited mailing e-cigarettes, effective October 21, 2021; as well as (4) FDA regulations under the Consolidated Appropriations Act of 2022, effective March 20, 2023.

To the contrary, the SAC alleges—indeed, documents—Kayla's internet-mediated sales to a City investigator in 2024, long after the effective dates of every statute or regulation at issue in the SAC. *SAC* ¶¶ 74–84 & Ex. F.[15] Kayla focuses only on the PACT Act allegations relating to its 2020 sales to Star Vape but utterly ignores its PACT Act violations associated with selling and mailing flavored e-cigarettes to a consumer in March 2024. Those sales are facially illegal under

---

[15] Kayla also maintained the www.newyorkvapeking.com website from June 2019 until the filing of this lawsuit in April 2024, where it offered flavored e-cigarettes for sale in the City and through which it sold flavored e-cigarettes to consumers in New York City and elsewhere. *SAC* ¶ 74. As noted *supra* at n.8, Kayla's sales to Star Vape in 2020, and the ease with which a City agent was able to buy flavored e-cigarettes from Kayla's website in 2024, strongly suggest that Kayla was selling flavored e-cigarettes in the City through its website from June 2019 until April 2024. *SAC* ¶¶ 71–84.

the PACT Act's prohibitions against mailing e-cigarettes and requiring compliance with all local, state and federal law. Kayla's failure to address its internet sales dooms its date-dependent argument. *Kayla Mem*. at 9.

## II. The City Has Adequately Pleaded that All Defendants Have Violated N.Y.C. Ad. Code § 17-715(b)(1)

### A. N.Y.C. Ad. Code § 17-715(b)(1) Applies to "All Persons," Including Distributors

Defendants argue that the New York City Administrative Code applies only to retail sales. *See, e.g.*, *EnviroMD Mem*. at 8–9. However, the N.Y.C. Ad. Code makes it "unlawful for *any person* to sell or offer for sale, or to possess with intent to sell or offer for sale, *any flavored electronic cigarette* or flavored e-liquid." N.Y.C. Ad. Code § 17-715(b) (emphases added). The use of the phrase "any person" bespeaks an intent for the broadest application, including wholesalers, distributors, brokers, or any other term by which any Defendant chooses to identify itself. "As the Supreme Court has frequently observed, use of the word 'any' in statutory text generally indicates Congress's intent to sweep broadly to reach *all varieties* of the item referenced." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 117 (2d Cir. 2007) (emphasis added).[16] Likewise, the New York Court of Appeals has "repeatedly held that the word '*any*' means 'all' or 'every' and *imports no limitation*." *Kimmel v. State of N.Y.*, 29 N.Y.3d 386, 393 (2017) (emphases in original) (citations omitted). Accordingly, N.Y.C. Ad. Code §17-715(b)(1) means that "all" persons, not merely retailers, are prohibited from selling (or offering for sale, or possessing with intent to sell or offer for sale) *any* flavored e-cigarettes in the City.

---

[16] *United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning…. Congress did not add any language limiting the breadth of that word, and so we must read § 924(c) as referring to all 'terms of imprisonment,' including those imposed by state courts"); *Cayuga Nation v. Tanner*, 6 F.4th 361, 378 (2d Cir. 2021) ("Taken alone or in combination, the terms 'any' and 'all' convey nearly limitless breadth").

The EnviroMD Defendants' argument that section 17-715 only applies to "retail sales" thus flies in the face of the plain statutory text. *EnviroMD Mem*. at 8–9. Section 17-715 makes no distinction between retail and wholesale sales; it simply makes it "unlawful for *any person* to sell… any flavored electronic cigarette." N.Y.C. Ad. Code § 17-715(b)(1) (emphasis added). The EnviroMD Defendants elide that language and fixate irrelevantly on subsection 17-715(b)(2), which does no more than create a presumption that a retail dealer in possession of six or more flavored electronic cigarettes possesses them with intent to sell or offer for sale. N.Y.C. Ad. Code § 17-715(b)(2). The EnviroMD Defendants never explain how or why such a presumption could render N.Y.C. Ad. Code § 17-715(b)(1) applicable to retailers alone. If the argument is simply premised on the absence of a corresponding presumption applicable to distributors, that is merely because no such presumption would be necessary where distributors and wholesalers maintain inventories of thousands of different brands of e-cigarettes at a time (*see, e.g., SAC* ¶ 54) and distributors by definition exist to distribute. In contrast, a retailer might plausibly possess a *de minimis* number of e-cigarettes.

### B.    Former 24 R.C.N.Y. § 28-02 Does Not Undermine the Scope of N.Y.C. Ad. Code § 17-715(b)(1)

A now-repealed Rule of the City of New York, 24 R.C.N.Y. § 28-02, provided that "[f]la-vored electronic cigarettes and flavored e-liquids may only be sold or offered for sale by whole-salers where the sale or offer of sale is made to an entity located outside the City of New York."[17]

---

[17] N.Y.C. DOHMH, *Notice of Adoption of Amendments to Chapter 28 of Title 24 of the Rules of the City of New York (2021)*, https://www.nyc.gov/assets/doh/downloads/pdf/notice/2021/noa-article24-prohibition-flavored-tobacco.pdf. (emphasis added). The Rule has since been amended (effective July 31, 2024) to flatly state that the "sale of flavored electronic cigarettes and flavored e-liquids is prohibited." 24 R.C.N.Y. § 28-02(b).

EnviroMD misleadingly contends that "by proposing this amendment [repealing the Rule], the City explicitly acknowledged the existence of the current statutory exemption that *allows* the conduct alleged to be violative of the Administrative Code in the Complaint (*i.e*., sales of vapor products to wholesalers)." *EnviroMD Mem*. at 10. This is entirely false, most significantly because no "*statutory exemption*" (emphasis added) ever existed; as the

Defendants, attempting to evade the clear language of section 17-715(b)(1), claim that the now-repealed Rule "suggests that sales of flavored vapor products to distributors in the City… do not violate Section 17-715(b)(1) because such distributors are entitled to possess flavored vapor products for sales to entities located *outside the City*." *Vape More/Plus Mem.* at 26–27; *EnviroMD Mem.* at 9–10. This argument fails for several reasons.

In the first place, the City has shown that each Defendant made sales, or unrestricted internet offers to sell, to in-City buyers after July 1, 2020, when N.Y.C. Ad. Code § 17-715(b)(1) became effective.[18] *SAC* ¶¶ 54, 62, 73, 75, 77, 86, 94, 96, 104, 131, 142 & Exs. C, D, E, F, I, K.[19] Those in-City sales by Defendants do not qualify for a purported exemption under 24 R.C.N.Y. § 28-02, and thus the former Rule has no bearing on whether the City has stated a claim under N.Y.C. Ad. Code § 17-715(b)(1). Even if Defendants have evidence showing their sales or their customers' sales were entirely to entities outside the City—they have offered none—they cannot use such evidence in a Rule 12(b)(6) motion to contradict the SAC's allegations of sales to City residents.

---

announcement of the amendment made clear, Section 17-715 (the only statute in question) "does not identify any exception to the prohibition of sales other than the sale of flavored tobacco products in tobacco bars." N.Y.C. DOHMH, *Amendment of Rules Relating to Sale of Flavored Tobacco Products, Electronic Cigarettes and Flavored E-liquids* (Apr. 5, 2024), https://rules.cityofnewyork.us/rule/amendment-of-rules-relating-to-sale-of-flavored-tobacco-products-electronic-cigarettes-and-flavored-e-liquids/.

[18] The SAC also alleges that the following Defendants maintained websites from which they *offer to sell* flavored e-cigarettes: (1) GT Imports (SAC ¶ 60 & Ex.B); (2) Kayla (*id.* ¶¶ 71, 74); (3) KLCC (*id.* ¶ 87 & Ex. G); (4) Pioneer, David Alfih, and Marcus Bernard (*id.* ¶¶ 90–98 & Ex. H); (5) RZ Smoke (*id.* ¶ 103 & Ex. J); (6) Star Zone (*id.* ¶ 114); (7) Urban Smoke (*id.* ¶¶ 119, 124 & Ex. M); (8) Vape More (*id.* ¶¶ 130, 132 & Ex. O); (9) Vape Plus (*id.* ¶¶ 136–40 & Ex. P). None of these websites indicate the sales are restricted to wholesalers outside the City. The websites thus offer to sell flavored e-cigarettes to City residents, violating both N.Y.C. Ad. Code § 17-715(b)(2) and 24 R.C.N.Y. § 28-02.

[19] Thus, even if Defendants' contorted reading of the Rule ultimately produced a hypothetical circumstance in which Ad. Code § 17-715(b)(1) was not violated (e.g. a distributor's purchase of flavored e-cigarettes that are eventually all sold outside the City), this would not somehow render that statute unenforceable under the facts alleged here.

Second, 24 R.C.N.Y. § 28-02 was never actually in effect because it was preempted under City and federal law. City rules, promulgated by City agencies, are subordinate to statutes such as N.Y.C. Ad. Code § 17-715. "Administrative Code provisions imposing a specific duty have the force of statute." *Juarez by Juarez v. Wavecrest Mgmt. Team*, 88 N.Y.2d 628, 645 (1996). But "[a]dministrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute." *People v. Balmuth*, 178 Misc. 2d 958, 966 (Crim. Ct., N.Y. Cty. 1998) (declaring 56 RCNY § 1-05(b) "invalid under Administrative Code § 20-473") (citing *Matter of Jones v. Berman*, 37 N.Y.2d 42, 53 (1975)), *aff'd*, 189 Misc. 2d 243, 244 (App. Div. 1st Dept. 2001) (56 RCNY § 1-05(b) "directly contravenes the provisions of" Ad. Code § 20-473 and so cannot be enforced, as "administrative agencies have discretion to carry out their legislative mandates" but "have no discretion to ignore those mandates or to alter the substantive standards set by the Legislature")).

Here, Rule 28.02(b)(1) was at all relevant times preempted because it was flatly inconsistent with N.Y.C. Ad. Code §17-715(b)(1), the *statute* prohibiting "*any*" sales of flavored e-cigarettes in the City. There is no exception in the statute for "sales outside the City." Sales by in-City distributors—even if to persons outside the City—are still "sales by any person" in violation of a statute that makes it "unlawful for *any person* to sell or offer for sale, or to possess with intent to sell or offer for sale, *any flavored electronic cigarette…* " N.Y.C. Ad. Code § 17-715(b) (emphases added).

Rule 28.02(b)(1) was also preempted by federal law, which classifies sales of flavored e-cigarettes as "unlawful" and the product as "adulterated," "misbranded," and a public health threat wherever sold. *See* N.Y.C. DOHMH, *Amendment of Rules Relating to Sale of Flavored Tobacco Products, Electronic Cigarettes and Flavored E-liquids* (Apr. 5, 2024),

https://rules.cityofnewyork.us/rule/amendment-of-rules-relating-to-sale-of-flavored-tobacco-products-electronic-cigarettes-and-flavored-e-liquids/ ("None of the flavored products covered by section 17-715 of the Code are authorized by the FDA, making the marketing of such products a violation of federal law."). Any construction of 24 RCNY § 28.02(b) that would permit unlawful sales of "adulterated" or "misbranded" e-cigarettes to out-of-City entities thus conflicts with the FDA's regulatory role over tobacco products under 21 U.S.C. § 387p(a)(2)(A) and is preempted.

Defendants next argue that, because former 24 R.C.N.Y. § 28-02 allowed "wholesalers" to "possess products within New York City if they are possessed for purposes other than for sale within New York City," it is therefore "only logical" that sales *to* those wholesalers were similarly permitted within New York City." *EnviroMD Mem*. at 9 (emphasis added); *Vape More/Plus Mem*. at 26–27 ("sales of flavored vapor products *to* distributors in the City… do not violate Section 17-715(b)(1) because such distributors are entitled to possess flavored vapor products for sales to entities located outside the City") (emphasis added). This interpretation breathtakingly disregards the Rule's command that "[f]lavored electronic cigarettes and flavored e-liquids *may only be sold* or offered for sale… *to an entity located outside the City of New York.*" 24 RCNY § 28.02(b) (emphases added). Defendants' sales of flavored e-cigarettes *to a distributor in the City*—even if that distributor intends to resell solely to entities outside the City and/or possess flavored e-cigarettes in the City in anticipation of such a sale —is not a "sale… *to an entity located outside* the City of New York," 24 RCNY § 28.02(b), the only type of sale purportedly permissible under the Rule. Moreover, even e-cigarettes possessed by in-City distributors for purposes of sale outside the City are "possessed with intent to sell or offer for sale," and barred by the N.Y.C. Ad. Code.

### C.    The City's Corporation Counsel Can Enforce N.Y.C. Ad. Code § 17-715(b)(1) in Court

Defendants next argue that N.Y.C. Ad. Code § 17-715 cannot be enforced in this Court because section 17-717 sets forth administrative enforcement procedures for section 17-715 that Defendants argue, (without citation) are "exclusive." *Vape More/Plus Mem*. at 26; *Kayla Mem*. at 15–16. This argument fails for several reasons.

First, the New York City Charter designates the corporation counsel as "attorney and counsel for the city and *every agency thereof*" who, "[e]xcept as otherwise provided in this chapter[20] or other law… shall have the right *to institute actions in law* or equity and any proceedings provided by law *in any court*, local, state or national… *to collect any* money, debts, *fines or penalties or to enforce the laws*." NYC Charter § 394 (emphases added). *See Chavez*, 2012 U.S. Dist. LEXIS 42792, at **6–7 (recognizing the corporation counsel as the City's "chief law enforcement officer" as noted in Charter § 394). Here, the Corporation Counsel is utilizing that statutory power.[21]

The corporation counsel's "right to institute actions in law… to collect any… money, debts, fines or penalties or to enforce the laws" is plenary and does not require additional statutory authorization to be specified in each law that the corporation counsel might seek to enforce through an action (or for each sum of "money, debts, fines or penalties" the corporation counsel might sue to collect). *See City of N.Y. v. Jennings*, 899 N.Y.S.2d 58, 58 (App. Div. 1st Dept. 2009) (Charter § 394 authorized corporation counsel to bring "plenary action" to enforce City Council resolution imposing civil penalties); *City of N.Y. v. N.Y.C. Bd. of Elec.,* No. 41450/91, 1991 N.Y. Misc. LEXIS 895, at *5-6 (Sup. Ct. Apr. 3, 1991) (rejecting argument that administrative procedure set

---

[20] Nothing "in this chapter" provides otherwise. N.Y.C. Ad. Code § 17-717 is not even in the Charter, much less in the same chapter.

[21] The carve-out "[e]xcept as otherwise provided in this chapter or other law" is inapplicable because N.Y.C. Ad. Code § 17-717 does not provide that the Corporation Counsel may not bring actions under that provision.

forth in Election Law § 16-102 is "the exclusive vehicle through which the Board's acceptance of the Democratic Party's certification can be challenged" because "Charter § 394 empowers the Corporation Counsel of the City of New York to institute actions to enforce the law" and the "City is thereby vested with the capacity to bring this action").

Moreover, N.Y. Gen. City L. § 20 (22) provides that "every city is empowered to regulate by ordinance or local law any matter within the powers of the city, and … to maintain an action or special proceeding in a court of competent jurisdiction to compel compliance with or restrain by injunction the violation of any such ordinance or local law." The City is doing just that in this proceeding. As the Second Circuit has recognized, "the City regularly invokes the authority conferred by N.Y. Gen. City L. § 20(22) and N.Y.C. Charter § 394(c) in enforcing a variety of local laws." *Bochner v. City of N.Y.*, No. 23-683, 2024 U.S. App. LEXIS 25276, at \*\*25–27 & 46 (2d Cir. Oct. 7, 2024) (citing a list of "more than 2,500 cases"). "[T]hese authorizing laws mean what they say: the Corporation Counsel may bring suit in the City's name to enjoin violations of a local law or regulation proscribing or requiring specific conduct." *Id.* (citation omitted).

Further, section 17-717 never indicates that the procedures set forth therein are exclusive. It provides that the Department of Health and Mental Hygiene ("DOHMH"), Department of Consumer and Worker Protection ("DCWP"), and Department of Finance ("DOF") "shall enforce" sections 17-713 through 17-719. It then specifies a process whereby a "proceeding to recover any civil penalty… shall be commenced by the service of a notice of violation returnable to" the Office of Administrative Trials and Hearings ("OATH") or to certain administrative bodies.[22] However, nowhere does that section provide that the procedures set forth therein are exclusive. In fact, the

---

[22] Kayla incorrectly describes this language as stating that a proceeding to recover a civil penalty "***must*** be commenced by… a notice of violation returnable to [OATH]." *Kayla Mem.* at 15 (emphasis added). However, the word "must" appears nowhere in section 17-717.

section explicitly acknowledges that the procedures provided are "in addition to any other remedies or penalties provided for the enforcement of such provisions under any other law ***including… civil*** or criminal ***actions or proceedings***." N.Y.C. Ad. Code § 17-717 (emphasis added). This explicit recognition that "civil…actions or proceedings" are included in the "other remedies or penalties provided… under any other law" for violations of section 17-715 is not superfluous[23] but is consistent with the broader enforcement scheme under N.Y.C. Charter § 394(c) and N.Y. Gen. City L. § 20(22).[24] Because nothing in the Charter or elsewhere authorizes DOHMH, DCWP, or DOF to bring any action in any court—*see N.Y.C. Charter* §§ 1048, 555, 1503, 2203 (detailing the powers of OATH and the commissioners of DOHMH, DCWP, and DOF, none of which include the power to prosecute judicial proceedings)—the corporation counsel is the only person that could enforce "any other law" through a civil proceeding. Accordingly, the only way DOHMH, DCWP, or DOF can seek "other remedies… provided… under any other law" is through litigation by the Corporation Counsel, consistent with the City Charter—as is happening in this case.

### D. The Complaint Articulates How the Defendants Are in Violation of N.Y.C. Ad. Code § 17-715

The SAC and exhibits thereto establish that Defendants EnviroMD, GT Imports, Kayla, Pioneer, RZ Smoke, Star Zone, Vape More and Vape Plus sell flavored e-cigarettes in New York

---

[23] "A statute should be construed to avoid rendering any of its provisions superfluous." *Matter of Alvarez v. Annucci*, 38 N.Y.3d 974, 984-85 (2022) (cleaned up); *Clark v. Rameker*, 573 U.S. 122, 133 (2014) ("between one interpretation that would render statutory text superfluous and another that would render it meaningful yet limited, we think the latter more faithful to the statute Congress wrote").

[24] Defendants also argue that a civil action is not available for violations of section 17-715 because section 17-710 (which governs penalties for violations of sections 17-703 through -708) contains a provision explicitly authorizing the city to "make application to a court of competent jurisdiction for any order enjoining such acts or practices," N.Y.C. Ad. Code § 17-710(d), whereas section 17-717 lacks a similar provision. *Vape More/Plus Mem*. at 26. However, section 17-717 contains an explicit recognition that "remedies… provided for the enforcement of such provisions under any other law" include "*civil… actions or proceedings*" (emphasis added), whereas section 17-710 contains no such reference to "civil…actions" or to the word "remedies." *Compare* N.Y.C. Ad. Code § 17-710(b) *and* § 17-710(c) *with* § 17-717.

City. *SAC* Exs. A, C, D, E, O, Q, R, S. Kayla and Pioneer each sold flavored e-cigarettes over the Internet to a City agent. *Id.* ¶¶ 71–80, 90–98 & Exs. F, I. The other Defendants—KLCC, Urban Smoke, Vape More, and Vape Plus—have maintained websites offering flavored e-cigarettes for sale and have possessed e-cigarettes with the intent to sell or offer to sell them. *Id. Exs.* G, W, U, X. The SAC sets forth these allegations in detail, providing a vast abundance of facts describing specific sales and offers to sell flavored e-cigarettes by each defendant individually. *Id.* ¶¶ 52–166. Based on these facts, the SAC then alleges that each Defendant "sells, offers for sale, possesses with intent to sell or possesses with intent to offer for sale flavored e-cigarettes in the City." *Id.* ¶ 169. The SAC thus more than adequately "articulate[s] how the Moving Defendants are in violation of N.Y.C. Admin. Code § 17-715." *EnviroMD Mem.* at 8.

For example, with the understanding that it is a violation of N.Y.C. Ad. Code § 17-715 to sell or offer for sale flavored e-cigarettes, the SAC:

     i.     alleges specific sales by brand and flavor by EnviroMD to Star Vape, accompanied by an illustrative invoice showing the sales price (¶ 53);

    ii.     alleges that GT Imports delivered flavored e-cigarettes valued at $1,063,657 to various buyers located in the City of New York, and names the buyers (¶¶ 61, 64–67 & Exs. C, D);

   iii.     alleges that Kayla supplied specifically identified brands and flavors of e-cigarettes to Star Vape, accompanied by an illustrative invoice showing the sales price (¶ 73 & Ex. E);

   iv.     alleges that KLCC operates a website from within the City from which it offers for sale flavored e-cigarettes, which is unlawful under Ad. Code § 17-715 (¶ 89);

    v.     alleges, with particularity, sales of flavored e-cigarettes by Kayla and by Pioneer to a City agent (¶¶ 71–80, 90–98 & Exs. F, I);

   vi.     alleges sales of particular brands and flavors of e-cigarettes by RZ Smoke to Star Vape on particular dates, illustrated with an invoice (¶¶ 104–110 & Ex. K);

vii.    alleges that StarZone provided documents to the City showing it delivered approximately 14,000 flavored e-cigarettes to City for which it was paid $650,000 (¶ 112);

viii.    alleges that Urban Smoke operates a website from within the City through which it offers flavored e-cigarettes for sale (https://www.urbansmokedistributors.com), which is unlawful under Ad. Code § 17-715 (¶ 119 & Ex. M);

ix.    alleges that on July 30, 2023, Vape More sold specified brands of flavored e-cigarettes to Urban Smoke, which is located in Woodside, New York (¶ 131 & Ex. N); and

x.    alleges that Vape Plus operates a website from within the City through which it offers flavored e-cigarettes for sale, https://nyvapeplus.com, which is unlawful under N.Y.C. Ad. Code § 17-715 (¶¶ 136–37 & Ex. P).

These paragraphs, and others, more than adequately "articulate how the Moving Defendants are in violation of N.Y.C. Admin. Code § 17-715." *See EnviroMD Mem*. at 8.

### III.    The City Has Adequately Pleaded that Defendants Have Violated N.Y. P.H.L. § 1399-*ll* (1-a)

Defendants offer two principal objections to their liability under N.Y. P.H.L. § 1399-*ll*(1-a): (1) the City lacks standing because it does not tax vapor products (*Vape More/Plus Mem.* at 22–24); and (2) the statute applies only to retailers, not wholesalers. (*Vape More/Plus Mem.* at 24–25; *EnviroMD Mem*.at 7–8). Both contentions fail.

#### A.    The City Has Standing to Enforce N.Y. P.H.L. § 1399-*ll*(1-a)

N.Y. Pub. Health L. ("N.Y. P.H.L.") § 1399-*ll*(6) states in relevant part:

> [T]he corporation counsel of any political subdivision that imposes *a tax on cigarettes or vapor products* intended or reasonably expected to used with or for the consumption of nicotine *may bring an action* to recover the civil penalties provided by subdivision five of this section and for such other relief as may be deemed necessary *with respect to any cigarettes or vapor products* intended or reasonably expected to be used with or for the consumption of nicotine shipped, caused to be shipped or transported in violation of this section...

N.Y. P.H.L. § 1399-*ll*(6) (emphasis added).[25] In *Magellan*, Judge Stanton succinctly and persuasively explained the City's standing under this provision:

> Under a plain reading of the statute, the City has standing to enforce the Public Health Law if the City taxes cigarettes or vapor products. Therefore, the City, which taxes cigarettes, has standing. The word 'or' means that either a tax on cigarettes or vapor products will suffice to provide standing, and there is no indication that the legislature intended for the type of tax imposed to limit the underlying conduct that can be enforced under the statute.

*Magellan,* 2024 U.S. Dist. LEXIS 93339, at *30–31. As Defendants recognize, the City "taxes cigarettes." *Vape More/Plus Mem.* at 23 (citing N.Y.C. Ad. Code § 11-1302). *QED*. The plain language of section 1399-*ll*(6) could not be any more clear: if a jurisdiction has a cigarette tax **_or_** an e-cigarette tax, then the corporation counsel of that jurisdiction is entitled to bring an action with respect to "any" cigarette or vapor products. *Saks,* 316 F.3d at 345.

In the face of both this clear language and the precedent of *Magellan*, Defendants offer little beyond the arguments already considered and rejected in *Magellan*. *Compare Magellan*, 2024 U.S. Dist. LEXIS 93339, at *30 (defendants argued that "the City does not have standing to enforce the vapor-product-specific provisions of the Public Health Law… because it taxes only cigarettes and does not impose an excise tax on vapor products") *with Vape More/Plus Mem.* at 24 ("Because 'electronic cigarettes' and 'vapor products' are distinct from 'cigarettes,' and the City only imposes an excise tax on 'cigarettes' and not 'vapor products,' the City lacks standing to enforce the vapor product-specific provisions of Public Health Law § 1399-*ll*.")

Defendants' argument, then and now, is premised on the idea that Public Health Law § 1399-*ll* supposedly contains separate "cigarette-specific provisions" and "vapor product-specific

---

[25] Though Kayla argues otherwise (*Kayla Mem*. at 13–14), N.Y. P.H.L. § 1399-*ll*(6) expressly authorizes the corporation counsel to "bring an action to recover… civil penalties" for violations of section 1399-*ll*(1-a).

provisions," which Defendants theorize support the notion that standing can be specific to either e-cigarettes or conventional cigarettes. However, the theory has no discernible basis anywhere in the statute. There is no hint of any such distinction in section 1399-*ll*(6) itself, which straightforwardly gives the "corporation counsel of any political subdivision that imposes *a* tax on cigarettes *or* vapor products" standing to "bring an action… with respect to ***any*** cigarettes or vapor products."

Defendants thus try to find this distinction somewhere in section 1399-*ll*, arguing that "Public Health Law § 1399-*ll* distinguishes between cigarettes and vapor products, defining them separately and including statutory provisions specific to each type of product." *Vape More/Plus Mem.* at 23. It is of course unremarkable that the Public Health Law "distinguishes between cigarettes and vapor products," since they are not the same thing. But where are these "statutory provisions specific to each type of product"? Defendants' vague citation ("*see generally* N.Y. P.H.L. §§ 1399-*ll*") certainly does not point to any such provisions, and none can be gleaned by looking at the Public Health Law itself.[26]

---

[26] Section 1399-*ll* does contain separate subsections prohibiting dealer shipments of cigarettes (§ 1399-*ll*(1)) and dealer shipments of vapor products (§ 1399-*ll*(1-a))—but these differ only in that cigarette dealers are licensed under Article 20 of the Tax Law whereas vapor products dealers are licensed under Article 28. Otherwise, there are virtually no "vapor-product specific" provisions of N.Y. P.H.L. § 1399-*ll*. The remaining provisions of § 1399-*ll* treat cigarettes and vapor products together. The prohibition applicable to common carriers (as opposed to dealers) makes no distinction, prohibiting *in the same subsection* shipments of "cigarettes or vapor products." § 1399-*ll* (2). Likewise, § 1399-*ll* (3) specifies the language required on the packaging for both cigarettes and vapor products. Subsection 1399-*ll* (4) instructs police officers who "discover any cigarettes *or* vapor products" being illegally transported to seize "such cigarettes *or* vapor products," and specifies that "such cigarettes *or* vapor products" to shall be subject to a forfeiture action under certain procedures "provided for forfeiture of cigarettes *or* vapor products." Subsection 1399-*ll* (5) specifies the same criminal and civil penalties regardless of the product at issue ($100 a pack for cigarettes, $100 for each vapor product).

Any assertion that there are "statutory provisions specific to each type of product" is also wrong as to other sections within Article 13-F. Those sections, like § 1399-*ll* itself, have no provisions "specific to" cigarettes and e-cigarettes but address the two products as one. *See* N.Y. P.H.L. § 1399-bb ("Distribution of *tobacco products*, *vapor products*, or herbal cigarettes without charge"); N.Y. P.H.L. § 1399-dd ("Sale of *tobacco products*, herbal cigarettes or *electronic cigarettes* in vending machines"); N.Y. P.H.L. § 1399-hh ("*Tobacco and vapor product* enforcement"); N.Y. P.H.L. § 1399-ii ("*Tobacco and vapor product* use prevention and control program"); N.Y. P.H.L. § 1399-jj ("Evaluation requirements…. The commissioner shall evaluate the effectiveness of the efforts by state and local governments

In view of the legislative purpose underlying N.Y. P.H.L. § 1399-*ll*, the City's interpretation makes sense, and Defendants' does not. The legislative history establishes with clarity that public health was the principal basis for enacting N.Y. P.H.L. § 1399-*ll*, whereas tax concerns were decidedly secondary:

> The legislature finds and declares that the shipment of cigarettes sold via the internet or by telephone or by mail order to residents of this state poses a serious threat to public health, safety, and welfare, to the funding of health care pursuant to the health care reform act of 2000, and to the economy of the state. The legislature also finds that when cigarettes are shipped directly to a consumer, adequate proof that the purchaser is of legal age cannot be obtained by the vendor, which enables minors to avoid the provisions of article 13-F of the public health law. It is also the legislature's finding that by preventing shipment of cigarettes directly to consumers, the State will be better able to measure and monitor cigarette consumption and to better determine the public health and fiscal consequences of smoking. The legislature further finds that existing penalties for cigarette bootlegging are inadequate. Therefore, the bill enhances existing penalties for possession of unstamped or unlawfully stamped cigarettes.

2000 N.Y. Laws 262. The thrust of these "[l]egislative findings" concerns public health, referring to taxation largely in connection with "the funding of health care" and only indirectly through a "further" finding about inadequate penalties for bootlegging. Given the principal legislative goal of protecting public health broadly from the "serious threat" caused by smoking (as opposed to improving the collection of this or that specific tax), there would be little sense to the legislature conditioning standing based on product taxability *vel non.* in the manner Defendants suggest, whereby local governments with cigarette taxes (and thus a demonstrable interest in reducing nicotine use) could take enforcement actions against illegal conventional cigarette transactions but

---

to reduce the use of *tobacco products and vapor products*"); N.Y. P.H.L. § 1399-kk ("Annual *tobacco and vapor product* enforcement reporting") (all emphases added).

not against illegal e-cigarette transactions. Rather, as long as a jurisdiction had some taxable inter-est in reducing nicotine consumption, whether through burning tobacco or vaporizing nicotine, the jurisdiction has an interest in enforcement and merits standing.

### B.    N.Y. P.H.L. § 1399-*ll* (1-a) Makes No Distinction Between Wholesalers or Retailers

N.Y. P.H.L. § 1399-*ll* (1-a) provides that

> It shall be unlawful for any person engaged in the business of selling vapor products to ship or cause to be shipped any vapor products in-tended or reasonably expected to be used with or for the consumption of nicotine to any person in this state who is not: (a) *a person that re-ceives a certificate of registration as a vapor products dealer* under [N.Y. Tax L. art. 28-C]; (b) an export warehouse proprietor…; or (c) …an officer, employee or agent of the United States government [or] this state… acting in accordance with his or her official duties.

N.Y. P.H.L. § 1399-*ll*(1-a) (emphasis added).[27] The statute thus prohibits all e-cigarette deliveries other than to three denominated categories of persons: vapor products dealers, warehouse propri-etors, and government agents.

The statute carefully defines a "vapor products dealer," stating that "a person is a licensed or registered agent or dealer… if his or her name appears on a list of licensed or registered agents or vapor product dealers published by the department of taxation and finance, *or if such person is*

---

[27] Defendant EnviroMD argues that the phrase "vapor products intended or reasonably expected to be used with or for the consumption of nicotine" in N.Y. P.H.L. § 1399-*ll*(1-a) "ma[kes] clear" that the New York legislature intended to regulate only retail sales, because "it is not a reasonable expectation that a wholesale-level entity who purchases bulk product from another distributor or wholesale level entity would use the products purchased for the consumption of nicotine." *EnviroMD Mem*. at 8.

This argument misunderstands the statutory phrase "intended or reasonably expected to be used with or for…," which comes from the FDA "Deeming Rule" that brought electronic cigarettes within the jurisdiction of the Tobacco Control Act. Under the Deeming Rule, the FDA's regulatory authority extends not only to products directly made or derived from tobacco (such as e-liquids) but also to certain products (like vaping devices) "intended or reasonably expected… to be used with or for the human consumption of a tobacco product." *See* 21 C.F.R. § 1143.1 (using the phrase in the definitions of "accessory" and "component or part"). The language serves to define the class of FDA-regulated prod-ucts; it has nothing to do with how any particular person uses or does not use a product.

*licensed or registered as an agent or dealer under article twenty eight-C of the tax law.*" *Id.* Under article 28-C of the Tax Law, a "vapor products dealer" is defined as simply "a person licensed by the commissioner to sell vapor products in this state." N.Y. Tax L. § 1180(b). This raises the following question: which entities must be "licensed by the commissioner to sell vapor products in this state"? Section 1183 provides the unambiguous answer:

> *(a) Every person who intends to sell vapor products in this state* must receive from the commissioner a certificate of registration prior to engaging in business.

NY Tax L. § 1183 (emphasis added). This language cannot be read to exclude wholesalers or distributors; "*[e]very person who intends to sell vapor products in this state*" must receive a certificate of registration "prior to engaging in business."

In sum, under N.Y. P.H.L. § 1399-*ll*(1-a)(a), the entities permitted to receive deliveries of vapor products from Defendants are (1) export warehouse proprietors, (2) government agents, (3) persons whose names are "on a list of licensed or registered agents or vapor product dealers", and (4) "vapor product dealers" who have "receive[d] from the commissioner a certificate of registration" (NY Tax L. §§ 1180(b), 1183).

None of this provides any basis for an exemption (or even a distinction) for "wholesalers," or "distributors," or anything else Defendants might describe their customers as. The distributors and wholesalers to whom Defendants EnviroMD, GT Imports, Kayla, RZ Smoke, and Vape More sold e-cigarettes—*e.g.* Star Vape and Urban Smoke—indisputably intended to sell vapor products in the State of New York at the time of sale because their websites offered to sell e-cigarettes with no restrictions. *SAC* ¶¶ 56, 81, 108, 119. Kayla and Pioneer sold e-cigarettes to ordinary consumers, who unquestionably had no certificate of registration. *Id.* ¶¶ 71–80, 90–98 & Exs. F, I. As to the remaining Defendants, the SAC alleges sales to persons that were not licensed dealers or

holders of certificates of registration (*id.* ¶ 144), and those factual allegations must be taken as true for purposes of this motion.

In sum, under N.Y. P.H.L. § 1399-*ll* (1-a), as relevant here, Defendants may only lawfully sell e-cigarettes to "vapor product dealers" who have "receive[d] from the commissioner a certificate of registration." As alleged, Defendants sold to entities that were not vapor products dealers and did not hold certificates of registration. *SAC* ¶¶ 190–93. The SAC thus states a cause of action for Defendants' violations of N.Y. P.H.L. § 1399-*ll* (1-a), and Defendants will be liable under that statute unless they can prove that they sold exclusively to "vapor products dealers."

### C. The New York Department of Health Guidance Offered by Defendants Cannot Alter the Unambiguous Language of N.Y. P.H.L. § 1399-*ll* (1-a)

Defendants argue that a "guidance" document from the New York State Department of Health allows them to sell vapor products to "distributors" or "wholesalers" regardless of whether those purchasers are registered as "vapor products dealers." *See Vape More/Plus Mem.* at 24; *EnviroMD Mem*. at 7–8; N.Y. Dept. of Health, *Guidance for Vapor Product Manufacturers, Wholesalers, Distributors, and Retailers Regarding New Shipping Restrictions* (eff. July 1, 2020), https://health.ny.gov/prevention/tobacco_control/docs/vape_product_shipping_ban_guidance.pdf, ECF No. 79 (the "Guidance").

However, Defendants' argument is unsupported by the statute. As shown above, neither the New York Public Health Law nor the New York Tax Law make any distinction between retailers, wholesalers, or distributors. The Tax Law requires "*[e]very person who intends to sell vapor products in this state*" to "receive from the commissioner a certificate of registration prior to engaging in business." N.Y. Tax L. § 1183 (emphasis added). And the Public Health Law makes it "*unlawful for any person* engaged in the business of selling vapor products to ship or cause to be shipped any vapor products intended or reasonably expected to be used with or for the

consumption of nicotine *to any person in this state*" other than registered vapor products dealers, export warehouse proprietors, and government agents. N.Y. P.H.L. § 1399-*ll*(1-a) (emphases added). Neither statute makes any distinction or provides any exemption based on (1) whether the seller is a wholesaler, a distributor, or a retailer (2) whether a sale is conducted in a wholesale or a retail manner, or (3) whether the buyer is a wholesale distributor, a retail outlet, a consumer, or any other kind of entity.

In light of this, the language in the Guidance on which Defendants rely—that "manufacturers, wholesalers, and distributors… are not required to register as vapor products dealers to send or receive shipments of vapor products, *unless otherwise required to register pursuant [to] Tax Law Article 28-C*," Guidance at 2 (emphasis added)—does not exempt Defendants from liability for the simple reason that Tax Law Article 28-C requires "*[e]very person who intends to sell vapor products in this state*" to "receive from the commissioner a certificate of registration prior to engaging in business…" N.Y. Tax L. § 1183 (emphasis added).[28] The Guidance thus applies, if at all, only to manufacturers, wholesalers, and distributors *that are not otherwise required to register* under the Tax Law. But under the Tax Law, the "wholesalers" and "distributors" to whom Defendants sell *are still required* to register if they "*intend[] to sell vapor products in this state."*

The Guidance thus states that vapor products dealer registration is not required for persons that have no intention of selling in New York State. But Defendants have introduced no evidence (nor could they) that anyone they have sold to meets that requirement.[29]

---

[28] Defendants' ability to postulate a hypothetical under which they would not be liable under N.Y. P.H.L. § 1399-*ll* (1-a) (*e.g.*, if a distributor purchases flavored e-cigarettes from Defendants that the distributor intends entirely for out-of-state sale) does not somehow leave the statute unenforceable under the facts alleged here.

[29] Defendants suggest that "the Court should defer to the Department of Public Health's interpretation of Section 1399-*ll*(1-a)." *Vape More Mem*. at 25. But there is nothing to defer to, because the Guidance does not depart from anything

### D.    Kayla and Pioneer Sell to the Public in Facial Violation of N.Y. P.H.L. § 1399-*ll*(1-a)

The evidence conclusively establishes that Kayla and Pioneer have violated N.Y. P.H.L. §§ 1399-*ll*(1-a) by selling flavored e-cigarettes to a City agent who was not licensed or registered as an e-cigarette agent or dealer. Those purchases by a City agent show that Kayla and Pioneer sell indiscriminately to the public over the internet. *SAC* ¶¶ 71–80, 90–98 & Exs. F, I. Both companies fulfilled internet orders by mailing e-cigarettes to names and residential addresses in the City provided with each order. The person placing the order was not a "licensed or registered as an agent or dealer" under N.Y. Tax L. art. 28-C. *Id.* ¶¶ 83, 100. Kayla and Pioneer thus each shipped, or caused to be shipped, vapor products to persons at ordinary residential addresses who are not among the few permissible recipients under N.Y. P.H.L. § 1399-*ll (1-a)*.

N.Y. P.H.L. § 1399-*ll*(3) further requires that any shipment of vapor products "must be" either "in the cigarette manufacturer's original container or wrapping" or "plainly and visibly marked with the words 'vapor products.'" None of the packages received by the City agent from

---

relevant to Defendants' violations. This leaves no room for the exception that Defendants assert is made available by the Guidance.

Moreover, courts "defer to the agency's interpretation under the *Skidmore* standard only when the statutory language at issue is ambiguous." *Catskill Mts. Chptr. of Trout Unlimited, Inc. v. United States EPA*, 846 F.3d 492, 509 (2d Cir. 2017). "Administrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute." *People v. Balmuth*, 178 Misc. 2d 958, 966 (Crim. Ct. 1998) (citing *Matter of Jones v. Berman*, 37 N.Y.2d 42, 53 (1975)), *aff'd,* 189 Misc. 2d 243, 244 (App. Div. 1st Dept. 2001). As such, the Guidance, if interpreted and applied as Defendants suggest, would be preempted as inconsistent with N.Y. P.H.L. § 1399-*ll*(1-a), under which e-cigarettes may be shipped only to (1) export warehouse proprietors, (2) government agents, (3) persons "on a list of licensed or registered agents or vapor product dealers…", and (4) "vapor product dealers" who have "receive[d] from the commissioner a certificate of registration."

Even if the statute were ambiguous, "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). And here, the Guidance does not provide any reasoning or analysis that a court could meaningfully defer to. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

either Kayla or Pioneer were plainly and visibly marked with the words "vapor products" (*SAC*

¶¶ 76–78, 95, 97) and thus these two defendants violated this statutory provision as well.

### E.    Defendants Sell and Offer to Sell to the Public in Violation of N.Y. P.H.L. § 1399-*ll*

As for the remaining Defendants, the City alleges that they have sold to entities other than

licensed vapor products dealers, in violation of N.Y. P.H.L. § 1399-*ll(1-a)*. The SAC points to

specific sales and/or public websites through which they indiscriminately sell to the public:

i.    EnviroMD and RZ Smoke sold flavored e-cigarettes to Star Vape, who is not licensed or registered as an e-cigarette agent or dealer. *Id.* ¶¶ 54, 58–59, 105, 110 & Exs. A, K. RZ Smoke also operates a public website that indiscriminately sells flavored e-cigarettes to the public. *Id.* ¶ 103 & Ex. J.

ii.    GT Imports sold flavored e-cigarettes to Topoo Industries, "Jimmy," R and B Wholesale, Sahara Wholesale, and EZ Wholesale, who are not licensed or registered as an e-cigarette agent or dealer. *Id.* ¶¶ 62–63, 65, 70 & Exs. C, D. GT Imports also operates a public website selling flavored e-cigarettes that indiscriminately sells flavored e-cigarettes to the public. *Id.* ¶ 60 & Ex. B.

iii.    Urban Smoke and Vape Plus, which operate public websites selling flavored e-cigarettes, indiscriminately sell flavored e-cigarettes to members of the public who are not licensed or registered as an e-cigarette agent or dealer. *Id.* ¶¶ 119, 127–28, 136, 144 & Exs. M, P.

iv.    Vape More sold to Urban Smoke, who is not licensed or registered as an e-cigarette agent or dealer. *Id.* ¶¶ 131, 135, Ex. N. Vape More also operates a public website selling flavored e-cigarettes that indiscriminately sells flavored e-cigarettes to the public. *Id.* ¶ 136 & Ex. P.

In sum, the Complaint alleges that the Defendants sell and ship e-cigarettes to entities that

are neither registered vapor products dealers, export warehouse proprietors, or government agents.

These allegations must be taken as true for purposes of this motion. Defendants' attempted dis-

missal of the New York Public Health Law claim should be denied.

IV.    **The City States a Claim for Public Nuisance**

    A.    **The City Adequately Pleads a Public Nuisance Claim against Defendants**

Defendants contend that the City fails to state a claim for public nuisance by relying on general, broad stroke allegations that do not allege retail sales of flavored e-cigarettes to individuals and are "too attenuated" to attribute liability to Defendants. *See EnviroMD Mem.* at 15–16; *Vape More/Plus Mem.* at 27–29; *Kayla Mem.* at 16–17. However, far from threadbare, the City's allegations comprise a rich tapestry practically proving Defendants' liability for public nuisance, through documents showing that the flavored e-cigarettes distributed by Defendants in the City contribute to an epidemic of youth e-cigarette use and create significant health risks, including health risks caused by hazardous waste.

A public nuisance "is an offense against the State" consisting of "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all, in a manner such as to…endanger or injure the property, health, safety or comfort of a considerable number of persons." *Copart Indus. v. Consol. Edison Co. of N.Y.*, 41 N.Y.2d 564, 568 (1977); *Reid v. Kawasaki Motors Corp.*, 189 A.D.2d 954, 957 (3d Dep't 1993) ("The *sine qua non* of an action for public nuisance…is the interference by a defendant with a public right.").

A public nuisance claim requires neither inherently tortious conduct nor violation of a duty to another. *See N.Y. v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir. 1985) (holding defendant "liable for maintenance of a *public* nuisance irrespective of negligence or fault"). Rather, public nuisance requires only "an unreasonable interference with a right common to the general public." *Restat 2d of Torts* § 821B. "Circumstances that may sustain a holding that an interference with a public right is unreasonable include…(a) [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public

convenience, or (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right." *Id*. All three elements are actually present here.

### 1. The City Has Demonstrated Significant Interference with the Public Health of Its Citizens

"To prevail on a public nuisance claim under New York law, a plaintiff must show that the defendant's conduct amounts to a substantial interference with the exercise of a common right of the public, thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons." *In re MTBE Products Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013) (citation omitted). The City has adequately alleged that Defendants' illegal distribution of flavored e-cigarettes unquestionably injured the health of a considerable number of persons, in particular the City's youth. *SAC* ¶¶ 173–81. The health injuries alleged in the SAC, beyond their actual basis in fact from expert sources (*id.* ¶¶ 33–45), are deemed true for present purposes. The distribution and sale of e-cigarettes and e-liquids is therefore a public nuisance because it "involves a significant interference with the public health," which is "a right common to the general public." *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 647 (N.D. Cal 2020) (quoting *Restat* 2d of Torts § 821B); *In re Opioid Litig.*, 2018 N.Y. Misc. LEXIS 2428, at *81 (Sup. Ct. Suffolk Cnty. 2018) (rejecting defendants' claim that public health is not a right common to the general public). A municipal corporation may "bring an action to restrain a public nuisance which allegedly has injured the health of its citizens." *N.Y. Trap Rock Corp. v. Town of Clarkstown*, 299 N.Y. 77, 83–84 (1949) ("a public nuisance which injures the health of the citizens of a municipality imperils the very existence of that municipality as a governmental unit," and so

"where the public health is involved, the right of [a municipality] to bring…an action to restrain a public nuisance may be tantamount to its right of survival").

The City has shown that the proliferation of e-cigarettes injures the public health because the products incontrovertibly promote youth nicotine addiction and contaminate City parks and public spaces with hazardous waste. *SAC* ¶¶ 173–81 & Exs. R, S (describing the health impacts of e-cigarette use as well as the toxins contained in flavored e-cigarettes). Courts have already held that "youth e-cigarette use and wholesale addiction of kids to nicotine" constitutes "a public health crisis," sustaining public nuisance claims by municipalities, *Juul Labs*, 497 F. Supp. 3d at 648, and the City has previously been awarded an injunction against internet e-cigarette sellers to youth. *City of N.Y. v. Artisan Vapor Franchise LLC*, No. 19-cv-5693, 2020 U.S. Dist. LEXIS 205315, at *6-7 (E.D.N.Y. Nov. 2, 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 220043 (Nov. 23, 2020) (recognizing "underage e-cigarette use" as endangering "the health of New York City youth" and granting injunctive relief against sellers of e-cigarettes). Most recently, *Magellan* upheld the City's public nuisance claim, holding that the complaint "alleges repeatedly that smoking [e-cigarettes] is creating a public health crisis, especially among young people. Public health crises are routinely upheld as a 'substantial interference with a public right' and 'injurious to the health of a considerable number of people.'" *Magellan*, 2024 U.S. Dist. LEXIS 93339, at *35 (quoting *In re Opioid Litig.*, 2018 N.Y. Misc. LEXIS 2428, at *22). The presence of statutes prohibiting flavored e-cigarette sales further demonstrates the existence of a public health injury. *Id.* at *5 ("[T]he fact that the City passed Administrative Code § 17-706 prohibiting the sale of e-cigarettes to people under the age of twenty-one further supports the allegation that a public nuisance exists.").

## 2. Defendants' Conduct Is a Nuisance *Per Se*

Defendants' violation of a statutory prohibition establishes their conduct as a "nuisance *per se*." The City thus need only allege (and ultimately prove) a violation of law. The City need not prove intent or negligence because of the presumptive unreasonableness of the conduct:

> The City's reliance on two New York State statutes…serves as evidence of a nuisance *per se. See… Branch v. W. Petro., Inc.*, 657 P.2d 267 (Utah 1982) ("When the conditions giving rise to a nuisance are also a violation of statutory prohibition, those conditions constitute a nuisance per se, and the issue of the reasonableness of the defendant's conduct and the weighing of the relative interests of the plaintiff and defendant is precluded because the Legislature has, in effect, already struck the balance in favor of the innocent party.").

*City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 355 (E.D.N.Y. 2007). Defendants' sales and deliveries in or into New York City violate multiple statutes, *i.e.*, the PACT Act, N.Y.C. Ad. Code § 17-715, and N.Y. P.H.L. §1399-*ll* (1-a), establishing a nuisance *per se*.

## 3. Defendants Know or Have Reason to Know that their Conduct is of a Continuing Nature and Has a Significant Effect upon the Public Right

Defendants' interference with public health is also unreasonable because "the gravity of the harm outweighs the utility of the actor's conduct," their "conduct is of a continuing nature," "has produced a permanent or long-lasting effect," and is known or should be known to have a significant effect upon a public right. *Restat 2d of Torts* §§ 821B, 826.[30] Defendants have sold flavored e-cigarettes for several years, a long-standing interference with public health. The passage of laws by every level of government forbidding sales of flavored e-cigarettes confirms the gravity of the public harm, as do the public health injuries documented in the SAC. *SAC* ¶¶ 170–81. There

---

[30] While Section 826 applies most directly to private nuisance claims, the "rule stated in this Section" also "may, and commonly does, apply to conduct that results in a public nuisance." *Restat 2d of Torts* § 826 cmt. A.

is no net utility to Defendants' conduct, a money-making venture benefiting them alone.[31] Indeed, to date, the FDA has not identified a single flavored e-cigarette that benefits the public more than it harms it.[32] Defendants' conduct is unreasonable.

For purposes of a public nuisance claim, it is enough that a defendant knew or should have known that its conduct caused or contributed to the nuisance, such as when a previously unaware defendant persists in conduct after learning of an invasion of a public right. *Restat 2d of Torts* § 825 cmt. D. The filing of the Complaint in this action informed Defendants that they have created a public nuisance; no Defendant has offered to cease its conduct, and by virtue of their attempts to dismiss the complaint, seek to continue in conduct they are on notice of as a nuisance. Defendants know or have reason to know that their ongoing conduct injures a public right.

---

[31] The belief that flavored e-cigarettes help adult smokers quit smoking has never been proven. "The evidence about the role of different flavored [e-cigarette] use and smoking cessation outcomes is inconclusive." Alex C. Liber et al., *The role of flavored electronic nicotine delivery systems in smoking cessation: A systematic review*, DRUG AND ALCOHOL DEPENDENCE REP., June 2023, at 1. There is *no* evidence that flavors help youthful smokers quit, and to the contrary, use of flavored e-cigarettes makes more it likely that youths will begin to use traditional cigarettes. Harlow, Alyssa F.A,B; Stokes, Andrew C.C; Brooks, Daniel R.B; Benjamin, Emelia J.B,D; Barrington-Trimis, Jessica L.A; Ross, Craig S.B. e-Cigarette Use and Combustible Cigarette Smoking Initiation Among Youth: Accounting for Time-Varying Exposure and Time-Dependent Confounding. *Epidemiology* 33(4): at 523-532, July 2022. | DOI: 10.1097/EDE.0000000000001491 (youth who initiated e-cigarettes were 2.4 times as likely to subsequently initiate cigarette smoking as youth who did not initiate e-cigarettes).

[32] An applicant for premarket authorization of an e-cigarette must show a net benefit to the public health by establishing that the benefit from the product's ability to reduce adult use of combustible tobacco exceeds the risk of youth initiation. To date no flavored e-cigarette has met that standard except for certain menthol products manufactured by NJOY LLC, which are not at issue in this Action. *See* FDA, *E-Cigarettes Authorized by the FDA*, https://digitalmedia.hhs.gov/tobacco/hosted/E-Cigarettes-Authorized-FDA-JULY2024.pdf (July 2024) (FDA list of approved e-cigarettes).

### 4. The City Has Demonstrated Causation

The City has sufficiently alleged causation. The causation requirement for public nuisance liability requires proof that a defendant, alone or with others, created, contributed to, or maintained the alleged interference with the public right. *City of N.Y. v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 281 (E.D.N.Y. 2004). The evidence of Defendants' sales of flavored e-cigarettes and their possession and offering of flavored e-cigarettes demonstrates their contribution to and maintenance of a public nuisance in New York City.

Defendants argue that they are not a "substantial cause" of the nuisance, and that the connection between the alleged conduct and the harm is "too attenuated," because they purportedly do not sell directly to the public.[33] *EnviroMD Mem.* at 16; *Vape More/Plus Mem.* at 28. The notion that the public nuisance is caused only by "retail sales" mischaracterizes the chain of causation of the nuisance.

Whether or not Defendants are "distributors" that do not sell *directly* to the public is immaterial. Nuisance liability does not require conduct that is the immediate or last cause of injury, only conduct that is "the dominant and relevant fact absent which the public nuisance would not have resulted where and under the circumstances it did." *Beretta U.S.A. Corp.*, 315 F. Supp. 2d at 282. Retail sales of flavored e-cigarettes may be the last step in a chain of injury, but self-evidently no retailer would have any flavored e-cigarettes to sell but for the steady supply provided to them by the Defendants. Defendants set in motion, and are a force in, "the sequence of events resulting in injury to the public." *Id.*

---

[33] There is no present proof of the fact, and to the contrary, documented proof of sales to the public by Kayla and Pioneer. *SAC* ¶¶ 74–84, 94–98 & Exs. F, I.

The *Magellan* court held that the City's allegations that Defendants' supply of flavored e-cigarettes to wholesalers and distributors sufficiently alleged causation of a public health crisis. *Magellan*, 2024 U.S. Dist. LEXIS 93339, at **35–36. Causation "need not be so proximate as in individual negligence case[s] where the welfare and safety of an entire community is at stake." *New York v. Juul Labs*, 2022 N.Y. Misc. LEXIS 4983, at **31–32 (Sup. Ct., N.Y. Cnty. July 14, 2022)). One has only to review the sales volumes reflected in Defendants' transaction records (SAC Exs. A, C, D, E, K, L, N), or Defendants' websites offering for sale dozens of brands of e-cigarettes and e-liquids in dozens of flavors (sometimes with free delivery) to their retail customers (*id.* Exs. B, G, H, J, M, O, P, Q), to understand that Defendants have been a substantial cause of the nuisance.

Moreover, the City does not allege "only" retail sales, but also that Defendants *distribute to* retailers the flavored e-cigarettes that retailers then sell to the public. *Id.* ¶¶ 180–81. "Under New York law, '[e]very one who creates a nuisance or participates in the creation or maintenance thereof is liable for it.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013) (quoting *Penn Cent. Transp. Co. v. Singer Warehouse & Trucking Corp.*, 86 A.D.2d 826, 828 (App. Div. 1st Dep't 1982)). The presence of multiple actors does not bar injunctive relief:

> Where it is difficult or impossible to separate the injury caused by one contributing actor from that caused by another and where each contributing actor's responsibility individually does not constitute a substantial interference with a public right, defendants may still be found liable for conduct creating in the aggregate a public nuisance if the suit is one for injunctive relief.

*A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. at 347. Here, the public nuisance exists precisely because a large number of actors, including Defendants, operate as an integrated supply chain that makes flavored e-cigarettes ubiquitous in the City.

### B.    The City's Public Nuisance Claim Is Not Duplicative

The EnviroMD Defendants argue that the City's "public nuisance claim is duplicative of its claims for violations of state and local law." *EnviroMD Mem*. at 11–12. This argument fails because the City's claims each seek different remedies and are therefore not duplicative.

"Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Communs.*, LLC, 537 F.3d 168, 175 (2d Cir. 2008). "Where a claimant is entitled to a particular category of damages on one claim but not the other, the claims are not duplicative." *Id*. Here, each claim seeks different remedies. The City's statutory claims under the PACT Act, the New York Public Health Law, and the City Administrative Code each seek the penalties available under each respective statute. *See SAC,* Prayer for Relief. In contrast, the City's public nuisance claim demands that the Defendants pay to clean up the public nuisance of their creation, *i.e*., abatement. *See SAC* ¶¶ 173–81 & Exs. R, S; *Suez Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, No. 20-cv-10731 (LJL), 2023 U.S. Dist. LEXIS 48925, at * 38 (S.D.N.Y. Mar. 22, 2023) (noting that abatement is "[o]n a going-forward basis" whereas damages are "on a backward-looking basis").

The EnviroMD Defendants make several attempts to salvage this argument. First, they assert that "[t]he damages sought under each claim are identical, and Plaintiff does not allege damages independent of those allegedly suffered as a result of the public nuisance." *EnviroMD Mem*. at 11–12. This is simply wrong on its face, especially where, as shown above, each of the City's claims seeks different remedies, none of which are "damages."

Next, EnviroMD Defendants argue that, even though the City "does not specifically plead the amount of damages sought under the nuisance claim," the abatement sought in the Prayer for Relief is nonetheless "a task which would be ***theoretically*** equally accomplished by the payment of civil penalties for any violations of N.Y. P.H.L. §1399-*ll* and/or NYC Admin. Code §17-715."

*EnviroMD Mem.* at 12 (emphasis added). This fundamentally misunderstands both abatement and statutory penalties. A "penalty is distinct from a compensatory remedy and… is not measured by the losses caused by the wrongdoing." *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 37 N.Y.3d 552, 563 (2021); *Gabelli v. SEC*, 568 U.S. 442, 451–52 (2013) (penalties are "a different kind of relief… which go beyond compensation, are intended to punish, and label defendants wrongdoers"); *see Su v. Berkshire Nursery & Supply Corp.*, No. 23-cv-275, 2024 U.S. Dist. LEXIS 91126, at **14–15 (S.D.N.Y. May 20, 2024) (administrative action seeking statutory penalty was not duplicative of civil action seeking "injunctive relief, liquidated damages, and back wages").

Moreover, motions to dismiss are not based on "theoretical" possibilities respecting the forms of relief sought. "There are numerous differences between an action for tort damages and an action for an injunction or abatement, and precedents for the two are by no means interchangeable." *Restat. 2d of Torts*, § 821B. "Any potential overlap between damages and abatement can be addressed post-trial." *S.F. Unified Sch. Dist. v. Juul Labs, Inc. (In re Juul Labs, Inc.)*, No. 19-md-02913, 2023 U.S. Dist. LEXIS 62624, at *396 (N.D. Cal. Apr. 10, 2023) (noting that, due to the "different scope and purpose of damages versus abatement…[i]t remains plausible that damages are inadequate").

Finally, the EnviroMD Defendants argue that "without Plaintiff's first two causes of action, *it would have no claim for public nuisance*." *EnviroMD Mem.* at 12 (emphasis in original). This argument is nonsensical, as well-settled law holds that public nuisance claims are commonly premised on (and, in fact, bolstered by) evidence of statutory violations. *See Restat 2d of Torts, § 821B* ("Circumstances that may sustain a holding that an interference with a public right is unreasonable include…. whether the *conduct is proscribed by a statute*…") (emphasis added); *Branch v. W. Petro., Inc.*, 657 P.2d 267 (Utah 1982) ("When the conditions giving rise to a nuisance are also a

violation of statutory prohibition, those conditions constitute a nuisance per se."); *City of N.Y. v. A-1 Jewelry & Pawn, Inc*., 247 F.R.D. 296, 355 (E.D.N.Y. 2007) ("The City's reliance on two New York State statutes… serves as evidence of a nuisance *per se*"); *Magellan*, 2024 U.S. Dist. LEXIS 93339, at *5 ("[T]he fact that the City passed Administrative Code § 17-706 prohibiting the sale of e-cigarettes to people under the age of twenty-one further supports the allegation that a public nuisance exists.").

The City's public nuisance claim is not duplicative of the City's other claims, and should not be dismissed.[34]

---

[34] The cases relied on by the EnviroMD Defendants do not support the proposition that a public nuisance claim should be dismissed where the plaintiff also brings statutory claims. *See In re Methyl Tertiary Butyl Ether (MTBE) Prod.*, 457 F. Supp. 2d 455, 466 (S.D.N.Y. 2006) (dismissing as duplicative a claim seeking declaratory relief "identical to that sought under OCWD's common law claims for products liability, negligence, trespass, and nuisance") (citation omitted); *Drake v. Vill. of Lima*, 221 A.D.3d 1481, 1483 (App. Div. 4th Dept. 2023) (dismissing a *private* nuisance claim that "allege[d] the same wrongs" and "[sought] the same damages" as a *negligence* claim).

**<u>CONCLUSION</u>**

For the reasons outlined above, the City respectfully requests that the Court deny the motions to dismiss filed by the Vape More/Plus Defendants, EnviroMD Defendants, and Kayla.

Dated:       New York, New York
             October 21, 2024

                                        MURIEL GOODE-TRUFANT
                                        Acting Corporation Counsel of the
                                         City of New York
                                        *Attorney for Plaintiff The City of New York*
                                        100 Church Street, Rm. 20-099
                                        New York, New York 10007
                                        (212) 356-2032

                                By:     */s/ Eric Proshansky*
                                        Eric Proshansky
                                        Aatif Iqbal
                                        Alexandra Jung
                                        Elizabeth Slater

                                        Assistant Corporation Counsels