UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
THE CITY OF NEW YORK,                              :
                                                   :    Case No. 1:24-cv-5161-GHW-JW
                       Plaintiff,        :
                                                   :
v.          - against –                        :
                                                   :
ENVIROMD GROUP LLC *et al.*,                       :
                                                   :
                      Defendants.       :
--------------------------------------------------------------- X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS VAPE MORE INC.'S AND VAPE PLUS DISTRIBUTION CORP.'S MOTION TO DISMISS

                                                 Ryan D. Callinan
                                                 Krupa A. Patel
                                                 Eric N. Heyer (*pro hac vice*)
                                                 Joseph A. Smith (*pro hac vice*)
                                                 THOMPSON HINE LLP
                                                 1919 M Street, N.W., Suite 700
                                                 Washington, DC 20036
                                                 Phone: 202.331.8800
                                                 Ryan.Callinan@ThompsonHine.com
                                                 Krupa.Patel@ThompsonHine.com
                                                 Eric.Heyer@ThompsonHine.com
                                                 Joe.Smith@ThompsonHine.com

                                                 *Counsel for Defendants Vape More Inc. and*
                                                 *Vape Plus Distribution Corp.*

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................... 1

    I.    The City Fails to Plead a Plausible Claim for Violations of the PACT Act. ............ 1

        A.    The City does not have standing to assert a PACT Act claim relating to electronic cigarettes because the City has not adopted an excise tax on electronic cigarettes. ................................................................................... 1

        B.    The City has not alleged facts that would support a finding that Vape More and Vape Plus violated the PACT Act's delivery sales requirements ......... 2

    II.    The City Fails to Plead a Plausible Claim for Violations of N.Y Public Health §1399-*ll* ..................................................................................................................... 7

        A.    The City lacks standing to enforce N.Y. PHL § 1399-*ll* against Defendants ............................................................................................................................ 7

        B.    The City fails to allege facts supporting a violation of N.Y. PHL § 1399-*ll*(1-a) ............................................................................................................. 8

    III.    The City Fails to Plead a Plausible Claim for Violations of N.Y.C. Ad. Code § 17-715(b)(1) .................................................................................................................. 9

    IV.    The City Has Not Pled a Claim for Public Nuisance ............................................. 11

CONCLUSION ............................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*City of New York v. Magellan Technology, Inc.*,
   No. 23-cv-5880, 2024 U.S. Dist. LEXIS 93339 (S.D.N.Y. May 24, 2024) ....................... 1, 3, 4

*French Transit, Ltd. v. Modern Coupon Sys.*,
   858 F. Supp. 22 (S.D.N.Y. 1994) ................................................................................................ 7

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
   725 F.3d 65 (2d Cir. 2013) ....................................................................................................... 12

*Nat'l Endowment for the Arts v. Finley*,
   524 U.S. 569 ............................................................................................................................... 8

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) ................................................................................................................... 2

*United States v. Mead Corp.*,
   533 U.S. 218 (2001) ................................................................................................................... 2

*United Transp. Union v. AMTRAK*,
   588 F.3d 805 (2d Cir. 2009) ....................................................................................................... 8

**Statutes**

15 U.S.C. § 375 ............................................................................................................................ 3, 4

15 U.S.C. § 376a .................................................................................................................. 2, 3, 5, 6

15 U.S.C. § 378(c)(1)(A) ................................................................................................................. 1

N.J. Rev. Stat. § 54:40B-6 ............................................................................................................... 5

N.M. Stat. Ann. § 7-12A-7 .............................................................................................................. 5

N.Y. Pub. Health L. § 1399-mm-1(2) ......................................................................................... 6, 11

N.Y. Tax Law §§ 480 ....................................................................................................................... 5

**Regulations**

24 R.C.N.Y. 28-02(b) ........................................................................................................... 6, 10, 11

N.Y.C. Admin. Code § 17-717 ....................................................................................................... 10

**ARGUMENT**

I. **The City Fails to Plead a Plausible Claim for Violations of the PACT Act.**

    A. **The City does not have standing to assert a PACT Act claim relating to electronic cigarettes because the City has not adopted an excise tax on electronic cigarettes.**

In their opening memorandum, Defendants argued that the City does not have standing to bring its PACT Act claim because the City does not levy an excise tax on electronic cigarettes. *See* ECF No. 78 at 12 (noting that 15 U.S.C. § 378(c)(1)(A) authorizes local governments that levy an excise tax on cigarettes to bring district court actions for alleged PACT Act violations relating to those cigarettes). In its opposition, the City concedes that it does not levy an excise tax on electronic cigarettes, but says that it has standing to bring its PACT Act claim because it levies an excise tax on traditional (combustible) cigarettes. ECF No. 87 at 13-15. The City also cites to *City of New York v. Magellan Technology, Inc.*, No. 23-cv-5880, 2024 U.S. Dist. LEXIS 93339 (S.D.N.Y. May 24, 2024), where Judge Stanton reasoned that the distinction between the two types of products "does not limit who can bring an enforcement action under the PACT Act."[1]

However, 15 U.S.C. § 378(c)(1)(A) grants statutory standing only to a local government that "levies a tax subject to section 376a(a)(3) of this title" and the City of New York indisputably does not levy an excise tax—which is the only kind of "tax" (as opposed to a generalized "payment obligation") explicitly referenced in 15 U.S.C. § 376a(a)(3)—on electronic cigarettes. When Congress passed the PACT Act in 2010, it clearly intended to leave many municipalities without standing to enforce the PACT Act—*i.e.*, municipalities that did not levy excise taxes on traditional cigarettes. In other words, Congress decided that municipalities that did not levy an excise tax on

---

[1] The defendants in *Magellan* have fully briefed their motion for reconsideration of Judge Stanton's decision denying in part their motion to dismiss. That motion for reconsideration is currently pending.

the relevant product (there, combustible cigarettes) would not have standing to bring a claim for sales of that product that violated the PACT Act. So it is makes sense that in 2020 Congress decided that municipalities that do not levy an excise tax on electronic cigarettes would not have standing to bring a claim for sales of electronic cigarettes that allegedly violated the PACT Act.

The City also argues that PACT Act standing extends to municipalities that apply any tax, including a standard sales tax, to electronic cigarettes. ECF No. 87 at 14-15 (arguing that the City's *sales* tax qualifies as a tax subject to 15 U.S.C. § 376a). But, as noted above, the only "tax" referenced in 15 U.S.C. § 376a(a)(3) is "excise tax." If Congress had meant to give standing to municipalities that levy only sales taxes on electronic cigarettes, it would have used broader alternative language, such as the term "payment obligations" found in Section 376a(a)(3)(D)--instead of "tax." The fact that Congress did not do so indicates that it intended "tax" in Section 378(c)(1)(A) to reference only excise tax. Further, a contrary interpretation, like Judge Stanton's ruling in *Magellan*, would have drastic and far-reaching implications for all sellers of ENDS products as there are fewer than 35 states that currently impose excise taxes on ENDS. Adopting the City's interpretation would subject sellers of ENDS products to an almost impossible task of tracking not only ENDS excise tax regulation by state but also state, local, and all municipality excise tax requirements for traditional cigarettes. This was clearly not Congress' intent when extending the PACT Act to ENDS products.

**B. The City has not alleged facts that would support a finding that Vape More and Vape Plus violated the PACT Act's delivery sales requirements**

    **1. The City has failed to show that Defendants sold ENDS to "consumers."**

The PACT Act's definition of "consumer" excludes "any person *lawfully operating* as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco," 15 U.S.C. § 375(4)(B) (emphasis added). The City requests that the Court interpret the PACT Act term

"lawfully operating" as excluding a properly registered/licensed distributor or retailer if that business fails to comply with any federal, state, or local law, rather than interpret the term as meaning operating with any necessary state or local registration or license. But if the requirement were compliance with all applicable laws, one would expect Congress to have defined "consumer" as excluding "any person not in compliance with all applicable laws" in 15 U.S.C. § 375(4)(B) instead of as excluding any person not "lawfully operating as a manufacturer, distributor, wholesaler, or retailer." And, at minimum, this disparity readily disproves the City's claim that the term "lawfully operating" is unambiguous.

The Court should follow the ATF's lead in rejecting the City's interpretation. In a 2015 publication, the ATF itself interpreted "lawfully operating" consistently with Defendants' interpretation; ATF indicated that "lawfully operating" means operating with any required license. *See* ATF Tobacco Enforcement Fact Sheet (Feb. 2015), available at https://www.atf.gov/file/11061/download (stating "Title 15, United States Code, Section 375 – the Prevent All Cigarette Trafficking (PACT Act) (the amended Jenkins Act) makes it illegal to ship cigarettes to a non-licensee in a state without notifying the state taxation authority").

Only one of the PACT Act cases cited by the City, *Magellan*, addresses the issue presented here – whether a properly registered/licensed cigarette business becomes a "consumer" solely because it fails to comply with any federal, state, or local law. Neither *City of New York v. Hatu* nor *California v. Azuma Corp.* involved properly registered/licensed cigarette businesses. And in *New York v. Grand River Enterprises Six Nations* (a magistrate judge report and recommendation), the primary issue was whether tribal sovereignty shielded defendants from certain New York State tax collection laws. Therefore, the *Magellan* court's conclusion regarding the meaning of "lawfully operating" is not supported by *Hatu, Azuma*, or *Grand Rivers*.

Neither the City nor the *Magellan* court provide the complete context concerning the 2010 amendment of the Jenkins Act. The concepts of a "delivery sale" and the definition of a "consumer" were only added through the 2010 Pact Act Amendments to the Jenkins Act. *See* 15 U.S.C. § 375(4). It thus simply was not the case that the 2010 amendments to the Jenkins Act changed who qualified as a "consumer." ECF 78 at 17. Instead, as Defendants previously argued, the 2010 amendments gave no indication that the term "lawfully operating" was meant to be more expansive than the term "licensed" as previously used in the Jenkins Act, which excluded sales to "licensed" distributors from the existing state registration and reporting requirements. *See* 15 U.S.C. § 375 (2009). Indeed, the terms "manufacturer," "distributor," "wholesaler," and "retailer" found immediately after the term "lawfully operating" in the definition of "consumer" in 15 U.S.C. § 375(4)(B) are references to a variety of tobacco supply chain roles that are specifically defined and for which licenses are issued under many states' tobacco tax and licensing statutes.[2] As discussed in Defendants' moving brief, at least four states did not require a "license" to engage in sales of smokeless tobacco products when the PACT Act was amended to cover smokeless products in 2010. *See* ECF 78 at 16-17.[3] It thus stands to reason that Congress removed the term "distributor licensed by or located in such State" and replaced it with the concept of "lawfully operating" to ensure that persons selling smokeless tobacco products business-to-business to distributors in those states that were properly registered but did not have a "license" because their state did not require one would not be subjected to the highly restrictive delivery sale requirements found in newly enacted 15 U.S.C. § 376a.

---

[2] *See, e.g.*, N.Y. Tax Law §§ 480 (imposing licensing requirements on "wholesale dealers" of cigarettes); 470(8), (9), (12) (defining "wholesale dealer," "retail dealer," and "distributor" with respect to cigarettes and tobacco products).

[3] *See, e.g.*, N.M. Stat. Ann. § 7-12A-7.; N.J. Rev. Stat. § 54:40B-6.

The City also fails to follow its own argument to its only logical conclusion and misapplies its own regulation. As discussed in Defendants' moving brief, the City's argument would transform any sale of an ENDS product into a delivery sale because of any downstream violation of some law, even if the upstream entity had no knowledge of the violation. ECF 78 at 17-20, 20 n.22. For example, the City alleges that "the moment a distributor receives an order for flavored e-cigarettes from a customer in the City, the distributor knows actually and unequivocally that the customer is not 'lawfully operating' by reason of the very order." ECF 87 at 18. There, the City fails to confront how that violation would impact upstream distributors and manufacturers. Combining the City's example and the one raised in Defendants' moving brief (ECF 78 at 19), the sale from the manufacturer located outside of New York to the master distributor also located outside of New York of flavored ENDS products would be transformed into a "delivery sale" and be in violation of the PACT Act's delivery sale requirement because the downstream retailer, three times removed from the initial sale, sold a flavored ENDS product to a customer in New York City. This cannot be what Congress intended.

Common sense further supports this reading of "lawfully operating." The PACT Act's requirements applicable to "delivery sales" under 15 U.S.C. § 376a are clearly aimed at retail sales to individuals. For example, persons engaged in delivery sales must obtain the full name, birth date, and residential address of the purchaser and verify the age and identity of the purchaser through a third-party commercially available database to ensure the purchaser is legally able to purchase ENDS products. 15 U.S.C. § 376a(b)(4)(A)(iii)(I). It is nonsensical to suggest that a business engaged in the sale of cigarettes, smokeless tobacco, or ENDS products would provide its "full name," "birth date," or "residential address," much less be put through a third-party age and identity verification process. The plain text of the PACT Act thus further supports a reading

that "lawfully operating" means holding all required licenses or permits, not requiring complete compliance at all times with all applicable federal, state, and local laws. Finally, given ATF's guidance and conflicting and plausible arguments concerning the term "lawfully operating," the Court should, at minimum apply the "rule of lenity" in interpreting the term "lawfully operating."

### 2. The City Fails to Establish that Defendants Violated the PACT Act.

The City has not pled facts, let alone presented evidence, that Vape More sold ENDS products in violation of the PACT Act. First, the "hard evidence" that the City points to includes a picture of a crumpled up packing slip, with the name of the seller cut off, a list of products with no prices, and the quantity of each product cut off. *See* ECF 61-14, Exh. N. There is no evidence that Vape More sold "hundreds of unites of flavored e-cigarettes" when only 23 products are listed on the packing slip. Moreover, a packing slip alone does not provide sufficient evidence to establish that a sale took place. *French Transit, Ltd. v. Modern Coupon Sys.*, 858 F. Supp. 22, 26 (S.D.N.Y. 1994) (finding that Plaintiff's submission of fifteen packing slips "do[es] not constitute substantial evidence that Defendant specifically targeted this District for sale of his product" or that the defendant "advertised his product nor made active efforts to sell the product … in New York"). Further, the City asks the Court to "infer" that certain sales were "remote purchase[s] or deliver[ies]" based on the location of the parties to the transactions, which is further proof that the City does not have any evidence to support its conclusory statements. Noticeably absent from the allegations made against Vape Plus in the Second Amended Complaint is a citation to an exhibit that would provide "hard evidence" of sales. The City attempts to allege that a City investigator made a purchase of a flavored e-cigarette at a store in New York City; however, this store was not owned or operated by Vape Plus and there is no evidence that the flavored e-cigarette even came from Vape Plus. Again, conclusory allegations made "[o]n information and belief" (ECF 61 at ¶¶

141-43) are merely "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." *Iqbal*, 556 U.S. at 678.

Finally, should the Court accept Defendants' interpretation of "lawfully operating," the City fails to allege that either Vape More or Vape Plus made even a single sale of electronic cigarettes to a retailer that lacked a vapor product dealer registration certificate. Accordingly, the City's First Claim for Relief should be dismissed.

## II. The City Fails to Plead a Plausible Claim for Violations of N.Y Public Health §1399-*ll*

### A. The City lacks standing to enforce N.Y. PHL § 1399-*ll* against Defendants

In their opening memorandum, Defendants establish that the City lacks standing to bring a claim under N.Y. PHL § 1399-*ll* due to its lack of an excise tax applicable to vapor products, and that even if the City does have standing, it has not alleged facts to support a claim under § 1399-*ll*(1).

The City's interpretation would render meaningless and superfluous the New York Legislature's use of distinct and separate terms and provisions to address these different products in contravention of fundamental principles of statutory interpretation. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 609 ("Statutory interpretations that render superfluous other provisions in the same enactment are strongly disfavored."). The City argues that because § 1399-*ll*((6) uses the word "or" between "cigarettes" and "vapor products," a political subdivision that has a tax on only one type of these products can enforce a violation of both § 1399-*ll*(1), which restricts sales and shipments of cigarettes, and § 1399-*ll*(1-a), which restricts sales and shipments of vapor products. *Id.* But a reading of the section as a whole suggests that the use of "or" results in the more natural reading of § 1399-*ll*, which would allow a political subdivision that taxes cigarettes to enforce a violation of § 1399-*ll*(1), a political subdivision that taxes vapor products to enforce a violation of § 1399-*ll*(1-a), and a political subdivision that taxes both types of products

- 7 -

to enforce both subsections. *See United Transp. Union v. AMTRAK*, 588 F.3d 805, 812 (2d Cir. 2009) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.") (citing *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)). If the Legislature had intended "cigarettes" and "vapor products" to be the same, or to be treated the same, then the Legislature would have had no need to establish requirements and restrictions for vapor products separately from cigarettes. Indeed, the Legislature could have simply defined "vapor product" as falling within the meaning of "cigarette" for purposes of Section 1399-*ll* or replaced both terms in Section 1399-*ll* with the term "tobacco product." Because the City does not impose an excise tax on vapor products, it lacks standing to enforce §1399-*ll* against Defendants.

Even if the Court were to conclude that the City has standing, the State's Department of Public Health, the agency charged with enforcing the Public Health Law, has stated that Section 1399-*ll* does not prohibit the type of distributor-to-distributor shipments of electronic cigarettes upon which the City bases its claim against Vape More. Rather, pursuant to the Department's own Guidance, "[a]ll shipments between . . . wholesalers[] and distributors within New York" will "continue to be permitted" because "[s]uch entities are not required to register as vapor product dealers to send or receive shipments of vapor products." See ECF 78 at 24. The New York Department of Public Health's guidance, issued contemporaneously with the enactment of Section 1399-*ll*(1-a) in 2020, and never modified or rescinded since, satisfies these criteria. The Court should defer to the Department of Public Health's interpretation of Section 1399-*ll*(1-a) and dismiss the City's claim.

### B. The City fails to allege facts supporting a violation of N.Y. PHL § 1399-*ll*(1-a)

The City fails to make a single allegation that either Vape More or Vape Plus shipped any vapor products into New York City. The City conflates two terms, *sell* and *ship*. Under N.Y. P.H.L.

§ 1399-*ll*(1-a) a violation occurs if "any person engaged in the business of selling vapor products to ship or cause to be shipped any vapor products . . . ." It is clear from the text of § 1399-*ll*(1-a) that the violative behavior is thus shipping or causing to be shipped any vapor product. The City conclusorily alleges that Defendants' alleged sales necessarily violated Section 1399-*ll*(1-a), but the City has failed to allege a specific *shipment* to an unregistered business. Moreover, the City fails to allege even one sale made by Vape Plus to an entity that is not a registered "vapor product dealer." *See* ECF 61 ¶¶ 136-141. The City's only allegation against Vape Plus is that it operates a website that is accessible in New York City. *See* ECF 87 at 42. Operation of a website within New York City is not a violation of N.Y. P.H.L.§ 1399-*ll*. Therefore, the City's second claim as alleged against Vape More and Vape Plus should be dismissed.

### III. The City Fails to Plead a Plausible Claim for Violations of N.Y.C. Ad. Code § 17-715(b)(1)

The City attempts to argue that because N.Y.C. Ad. Code § 17-715 does not specifically prohibit Corporation Counsel from bringing a civil action, the City is permitted to ignore the enforcement provision of N.Y.C. Admin. Code § 17-717 and bring a civil action to enforce N.Y.C. Admin. Code § 17-715. *See* ECF 87 at 29 n. 21. However, as noted in Defendants' moving brief, enforcement for violations of Section 17-715 is addressed by N.Y.C. Admin. Code § 17-717, which provides for enforcement of Subchapter 2 of Chapter 7 of the City's Administrative Code by City departments through "administrative trials and hearings." Should the City wish to enforce alleged violations of § 17-715, the proper venue would be the administrative hearing process, instead of the civil action that it filed in New York Supreme Court.

Moreover, the City cannot avoid the application of 24 R.C.N.Y. 28-02(b), which was in effect when the actions of the Defendants at issue in this case took place. While New York City Administrative Code §17-715(b)(1) provides that "[i]t shall be unlawful for any person to sell or

offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid," the City's own regulations also provide that "[f]lavored electronic cigarettes and flavored e-liquids may . . . be sold or offered for sale by wholesalers where the sale or offer of sales is made to an entity located *outside* the City of New York." *See* 24 R.C.N.Y. 28-02(b). The City's own regulations thus imply that the City's "flavor ban" does not, in fact, prohibit the possession of flavored electronic cigarettes by subdistributors and wholesalers located in the City of New York, so long as they possess those flavored products for sale to customers *outside* the City. (Likewise, New York State's e-cigarette flavor ban has also only ever applied to retail transactions, not business-to-business transactions like those in which Defendants are alleged to have engaged. *See* N.Y. Pub. Health Law § 1399-mm-1(2) (providing that "[n]o vapor products dealer, or any agent or employee of a vapor products dealer, shall sell or offer for sale *at retail* in the State any flavored vapor product . . . ." (emphasis added)).)

The City cannot allege that the sales by Vape More occurred in New York City because Vape More does not operate in the City. Vape More is located north of Albany, in Latham, New York and the one sale that the City alleges that Vape More made would have occurred where Vape More is located, which is in Albany, not New York City. As to Vape Plus, first, the City has failed to allege any specific circumstances surrounding a potential sale of flavored e- cigarettes and flavored e-liquids *in* New York City, such as specific invoices, identities of purchasers, terms of sale, locations of sale, or dates of sale. The City only alleges that Vape Plus made purchases of several brands of e-cigarettes from various companies at various points over a two-year span. Moreover, as noted in Defendants' moving brief, Vape Plus has ceased all operations in New York City. The City's third cause of action fails to plead any facts that would require the Court to find

that the Defendants sold any products *in* New York City in violation of 17-715; and therefore, the City's third cause of action should be dismissed.

### IV. <u>The City Has Not Pled a Claim for Public Nuisance</u>

As stated in Defendants' moving brief, "to succeed on its public nuisance claim, the City needs to show that Vape More and Vape Plus's conduct "'amounts to a substantial interference with the exercise of a common right of the public,' thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013) (quoting *532 Madison Ave. Gourment Foods v. Finlandia Ctr.*, 750 N.E.2d 1097, 1104 (N.Y. 2001))." ECF 78 at 27. The City's "Fourth Claim for Relief" for "Public Nuisance" alleges in conclusory fashion that Defendants are creating a public nuisance by selling flavored vapor products in and into New York City. *See* SAC ¶¶ 198-199. The City alleges:

> 198. In the aggregate, the thousands of sales of flavored vapor products in and into New York City by and among each of Defendants EnviroMD, GT Imports, Kayla, KLCC Wholesale, Pioneer, David Alfih, Marcus Bernard, RZ Smoke, Star Zone Inc., Urban Smoke, Vape More, and Vape Plus and others unknown that supply Defendants or are supplied by Defendants gives rise to the ubiquitous presence of flavored e-cigarettes easily available to the public, injuring the health, safety, and welfare of large numbers of City residents and constituting a public nuisance for which the City has no adequate remedy at law.
>
> 199. Defendants' conduct is ongoing, likely to produce permanent and long- lasting injury, and likely to continue indefinitely. The conduct is substantial, unreasonable, widespread, and outweighs any potential benefit of Defendants' wrongful conduct.

That is the entirety of the specific allegations of the City's Fourth Claim for Relief. Plainly, the City alleges that the Defendants' conduct contributes to a public nuisance. The conduct complained about are unsupported claims that Defendants' sales of flavored vapor products "unquestionably injured the health of a considerable number of persons, in particular the City's youth." ECF 87 at 44. However, the City fails to put forth a single sale to one person or one member

of "the City's youth." There is no reference to any alleged violation of any statute, nor is there even any reference to Defendants creating or contributing to a public nuisance by engaging in distribution or any specific sales. The City's contention that the Defendants are a substantial factor in causing the nuisance is also undercut by its own evidence, which shows no specific allegation linking Vape More or Vape Plus to a single retail sale within New York City. The parties responsible for the public nuisance are the retailers, purchasing product from parties other than Defendants, who sell flavored disposables to youth in violation of City statute. Therefore, the City's Fourth Claim for relief should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the City's Second Amended Complaint as against Defendants Vape More and Vape Plus.

Dated: November 1, 2024         Respectfully Submitted,

                                THOMPSON HINE LLP

                                By: /s/ Eric N. Heyer
                                    Ryan D. Callinan
                                    Krupa A. Patel
                                    Eric N. Heyer (*pro hac vice* pending)
                                    Joseph A. Smith (*pro hac vice* pending)
                                    THOMPSON HINE LLP
                                    1919 M Street, N.W., Suite 700
                                    Washington, DC 20036
                                    Phone: 202.331.8800
                                    Ryan.Callinan@ThompsonHine.com
                                    Krupa.Patel@ThompsonHine.com
                                    Eric.Heyer@ThompsonHine.com
                                    Joe.Smith@ThompsonHine.com

## CERTIFICATE OF SERVICE

    I hereby certify that on November 1, 2024, I caused to be served on counsel of record, electronically via the ECF, a true and correct copy of the foregoing Memorandum in conjunction with its Notice of Motion.

                                              s/ Eric N. Heyer