UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/14/2025

CITY OF NEW YORK,

                                  Plaintiff,

               -against-

   ENVIROMD GROUP LLC, *et al.*,

                               Defendants.

-------------------------------------------------------------------X

1:24-cv-5161-GHW

MEMORANDUM OPINION &
ORDER

GREGORY H. WOODS, United States District Judge:

       E-cigarettes, commonly known as vapes, have become a popular alternative to smoking traditional cigarettes, particularly among young people. They are electronic devices filled with nicotine-laced liquid that, when heated, turns to vapor. The liquid is often flavored, with options ranging from mint to mango to cherry-cola.

       The federal government, New York State, and New York City each regulate the sale of e-cigarettes. Federally, the Prevent All Cigarette Trafficking Act, 15 U.S.C. 375 *et seq.* (the "PACT Act") regulates remote sales of e-cigarettes, including orders submitted over the internet or phone. The PACT Act requires that remote sellers of e-cigarettes comply with state and local laws governing such sales. At the state level, New York Public Health Law ("PHL") § 1399-ll(1-a) makes it unlawful for businesses to ship e-cigarettes other than to state-licensed resellers. In New York City, the local administrative code categorically bars the sale of flavored electronic cigarettes.

       This action was initiated by the City of New York (the "City"). In it, the City alleges that Defendants, all suppliers of flavored e-cigarettes, violate the PACT Act, the state Public Health Law, and New York City's ban on the sale of flavored e-cigarettes. The City also alleges that Defendants have created a public nuisance by distributing addictive e-cigarettes throughout the city.

Of the twelve Defendants, eight of them have moved to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(6).  The moving Defendants contend that the City lacks statutory standing to enforce violations of the PACT Act and the Public Health Law.  Otherwise, they argue that the City fails to plausibly plead that they unlawfully sold flavored e-cigarettes in violation of any state or local laws.  Because the City plausibly pleads that each of the moving Defendants shipped e-cigarettes to unlicensed purchasers in New York State, and sold flavored e-cigarettes in New York City in violation of the local ban on such sales, the moving Defendants' motions to dismiss are denied.

I.    **BACKGROUND**

   A.    **Overview[1]**

Since 2018, there has been an "explosive increase" in the use of e-cigarettes among young people across the country and in New York City.  SAC ¶¶ 33–43.  E-cigarettes, also referred to as "vapes," have become a popular alternative to smoking traditional cigarettes.  *Id.* ¶¶ 2, 36.  They are battery-powered devices that heat nicotine-laced liquid until the liquid turns into a vapor, which the user inhales.  *Id.* ¶ 2.  The liquid is often flavored to taste like candy, mint, mocha, and more.  *Id.* ¶ 2.  Vapes also often contain a high concentration of nicotine, which can exceed the nicotine levels found in traditional cigarettes.  *Id.* ¶¶ 4–5.  The addictiveness of vaping is, consequently, "amplified over that of traditional cigarettes."  *Id.*  The high nicotine content and "youth-friendly" flavors contained in e-cigarettes have likely contributed to the increased popularity of vaping.  *Id.* ¶¶ 43-44.

The sale of e-cigarettes is highly regulated.  Federally, the PACT Act regulates remote sales of cigarettes—including e-cigarettes—and smokeless tobacco.  *Id.* ¶¶ 145–153.  The law requires that

---

[1] The facts are taken from the Second Amended Complaint.  Dkt. No. 61 (the "SAC"), and are accepted as true for the purposes of this motion.  *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

remote sellers of those products comply with the state and local laws governing the sale of e-cigarettes. *Id.* The PACT Act also imposes several requirements, including shipping, packaging, and age verification requirements. *Id.* New York State also regulates certain shipments of e-cigarettes. *Id.* ¶ 161. New York's Public Health Law makes it unlawful to ship—or cause to ship—e-cigarettes other than to certain state-licensed businesses or government officers. *Id.* Locally, New York City has banned the sale of flavored electronic cigarettes altogether. *Id.* ¶ 168.

### B.    The City's Allegations Against the Moving Defendants[2]

According to the City, the Moving Defendants are New York businesses that sell and distribute flavored e-cigarettes in violation of "nearly every federal, New York State and New York City law enacted to regulate the marketing, distribution, and sale of flavored e-cigarettes." *Id.* ¶ 1. First, the City claims that the Moving Defendants violated the local ban on the sale of flavored e-cigarettes in New York City, set forth in Section 17-715 of the New York City Administrative Code. Second, the City claims that the Moving Defendants, other than KLCC Wholesale (the "PACT Act Defendants") violated PHL § 1399-ll(1-a) and the PACT Act. Third, the City claims that the PACT Act Defendants violated New York Public Health Law by shipping e-cigarettes in New York State to entities that were not state-licensed resellers. Finally, the City claims that the PACT Act Defendants violated the PACT Act by making remote sales of e-cigarettes that violated New York State and City laws regulating such sales. Finally, the City alleges that the Moving Defendants created a common law public nuisance by supplying addictive e-cigarettes to businesses

---

[2] The moving Defendants are EnviroMD Group LLC ("EnviroMD"), RZ Smoke Inc. ("RZ Smoke"), KLCC Wholesale Inc. ("KLCC Wholesale"), Urban Smoke Distributors ("Urban Smoke"), GT Imports, Vape More Inc. and More LLC ("Vape More"), Vape Plus Distribution Corp. ("Vape Plus"), and Kayla Wholesale, Inc. ("Kayla Wholesale") (collectively, the "Moving Defendants"). In addition to the Moving Defendants, the City also asserts claims against Star Zone, Inc. ("Star Zone"), and against Pioneer Distribution, Inc., David Alfih, and Marcus Bernard (together, the "Pioneer Defendants"). Star Zone has appeared in this action but did not join in any motion to dismiss. *See* Dkt. No. 74. The Pioneer Defendants have not yet appeared in this action. *See* Dkt. No. 87 at 1 n.1. Accordingly, the allegations against Star Zone and the Pioneer Defendants are not included here.

and individuals in New York City, which the City contends has contributed to a public health crisis. The following sections summarize the City's allegations against each of the moving Defendants.

### 1. *The EnviroMD Defendants*[3]

EnviroMD is a Brooklyn-based limited liability company. *Id.* ¶ 52. It sells flavored e-cigarettes to businesses around New York City. *Id.* ¶ 53. Between September 2022 and August 2023, EnviroMD sold "thousands of flavored e-cigarettes" to a convenience store in Brooklyn called Star Vape Corp. ("Star Vape"). *Id.* ¶¶ 54–57. The City obtained five invoices that memorialized EnviroMD's sales to Star Vape. *Id.* ¶ 54 & Exhibit A.[4] Star Vape is not a state-licensed business. *Id.* ¶ 59. Additionally, Star Vape placed the orders remotely. *Id.* ¶ 55.

RZ Smoke is a company based in Nassau County, New York. *Id.* ¶ 103. RZ Smoke advertised the sale of flavored e-cigarettes on its website, including in flavors like "watermelon ice" and "blueberry airhead."[5] *Id.* ¶ 103 & Exhibit J. RZ Smoke also sold flavored e-cigarettes to Star Vape by remote means, and billed several thousand dollars per invoice. *Id.* ¶¶ 104–107 & Exhibit K.[6]

GT Imports, also located in Nassau County, New York, operates a website that offers flavored e-cigarettes for sale. *Id.* ¶ 60 & Exhibit B. GT Imports buys flavored e-cigarettes, stores them at its "facility," and then resells the product. *Id.* ¶ 61. Between September 2022 and August 2023, GT Imports delivered flavored e-cigarettes "to various buyers located in the City of New York," including to the following buyers: Topoo Industries, which sells e-cigarettes out of a large warehouse in Brooklyn; R and B Wholesale in Brooklyn; Sahara Wholesale in Queens; EZ

---

[3] EnviroMD, KLCC, RZ Smoke, Urban Smoke, and GT Import (collectively, the "EnviroMD Defendants") filed a joint motion to dismiss. Dkt. No 83.
[4] The invoices are dated February 13, 2023, April 4, 2023, June 15, 2023, June 22, 2023 and June 27, 2023. SAC ¶ 54. They document orders ranging from $10,000 to $40,000 per order. *Id.* ¶ 57 & Exhibit A.
[5] RZ Smoke's website is https://www.rzsmoke.com. *Id.* ¶ 103.
[6] Exhibit K shows "sales of flavored e-cigarettes by RZ Smoke to Star Vape on December 14, 2020, March 16, 2023, May 8, 2023, and August 5, 2023." *Id.* ¶ 105 & Exhibit K.

Wholesale in the Bronx; "Jimmy" in Brooklyn; and to Star Vape.  *Id.* ¶¶ 62–65 & Exhibit C (spreadsheet showing GT Imports' sales to various buyers in New York City), Exhibit D (invoices of sales made to Star Vape).  Each of those buyers resells the flavored e-cigarettes to the public.  *Id.* ¶¶ 56, 66.  GT Imports received those orders remotely, and none of the purchasers are licensed resellers.  *Id.* ¶¶ 67, 70.

Urban Smoke, located in Queens, New York, operates a website that advertises "'disposable vapes' in a multitude of flavors" for sale.  *Id.* ¶ 119.[7]  Urban Smoke also advertises "free delivery" of "vapes, glass, hookas, and all smoke shop needs!"  *Id.* & Exhibit M.  Urban Smoke purchased flavored e-cigarettes in bulk from Vape More in 2023.[8]  *Id.* ¶¶ 120–129 & Exhibit N.  It also received remote orders through its website, and sold "some or all of the flavored e-cigarettes in its possession" to people "throughout the City."  *Id.* ¶¶ 119–26.

Brooklyn-based KLCC Wholesale sells e-cigarettes online, through its website.[9]  *Id.* ¶¶ 85–89.  KLCC's website at one point boasted that it had "OVER 1 MILLION PRODUCTS."  *Id.* ¶ 87 & Exhibit G.  KLCC Wholesale billed itself as "specializ[ing] in all types of smoking products," including "vapes."  *Id.*  KLCC purchased its inventory from "hundreds of flavored disposable e-cigarettes from out-of-state distributors . . . ."  *Id.* ¶ 85.

## 2.  *The VapeMore Defendants[10]*

Vape More is a "wholesale tobacco outlet that operates a warehouse and office space" in upstate New York.  *Id.* ¶ 129.  Vape More operates a website that "advertises and offers flavored

---

[7] Urban Smoke's website is https://www.urbansmokedistributors.com.  *Id.* ¶ 119.
[8] Urban Smoke also purchased flavored e-cigarettes in bulk from an Arizona-based seller throughout 2023.  *Id.* ¶ 122. The SAC alleges that "Urban Smoke has purchased flavored e-cigarettes from Defendant Vape More . . . including flavored Elf Bar, Lost Mary, and E&B Brands."  *Id.* ¶ 120.  The City also included "an invoice obtained by the City dated July 30, 2023, showing purchases of flavored e-cigarettes by Urban Smoke from Defendant Vape More."  *Id.* & Exhibit M.
[9] KLCC's website is https://klcc-wholesale.com.  *Id.* ¶ 89.
[10] Vape More and Vape Plus (collectively, the "Vape More Defendants") filed a joint motion to dismiss.  Dkt. No. 78.

e-cigarettes for sale."[11]  *Id.* ¶ 130 & Exhibit O.  In July 2023, Vape More sold flavored e-cigarettes to Urban Smoke, which is in Queens.  *Id.* ¶ 131 & Exhibit N.  Urban Smoke is not a licensed reseller. *Id.* ¶ 134.  Vape More received the order from Urban Smoke remotely.  *Id.* ¶ 133.

Vape Plus is a corporation located in Brooklyn, New York.  *Id.* ¶ 25.  Vape Plus also operates a website that offers flavored e-cigarettes for sale.  *Id.* ¶ 136.  Vape Plus's "website promises 'same day delivery.'"  *Id.* ¶ 137.  Vape Plus purchased flavored e-cigarettes in bulk from various sellers between September 2022 and October 2023.  *Id.* ¶ 138.  Vape Plus also received multiple thousands of dollars in payments from several stores located within New York City, including from "Smoke World & Vape LLC, Vape N Cloud Corp., and Vape and Smoke Corp." *Id.* ¶ 142.  Those buyers were not licensed resellers, but resold the flavored vapes within New York City, including to a City investigator.  *Id.* ¶¶ 142–44.  Vape Plus received those orders remotely. *Id.* ¶ 141.

### 3.  *Kayla Wholesale*

Kayla Wholesale, located in Brooklyn, New York, sells flavored e-cigarettes on its website, which it operates under the name "The Vapery, New York."  *Id.* ¶ 71.[12]  The website advertises that the business has been selling "vaping products for 12 years, with the goal of creating 'a thriving vaping community where enthusiasts of all levels can find the latest products,' from the company's 'diverse range of vaping solutions.'"  *Id.*  Between August 2020 and November 2020, Kayla Wholesale sold Star Vape "large quantities of flavored e-cigarettes."  *Id.* ¶¶ 72–73 & Exhibit E. Kayla Wholesale also sold and delivered flavored e-cigarettes to a City investigator on more than one occasion after the agent placed orders through Kayla's website.  *Id.* ¶¶ 75–78.

---

[11] The website is https://www.vapemoreinc.com.  *Id.* ¶ 130.
[12] The website is www.newyorkvapeking.com.  *Id.* ¶ 71.

### C.    Procedural History

On April 4, 2024, the City commenced this action against Defendants in the Supreme Court of New York, New York County, asserting claims for violations of PHL § 1399-11(1-a) and Section 17-715 of the New York City Administrative Code, and a claim for public nuisance under New York common law. Dkt. No. 1 ¶¶ 1–2. On June 14, 2024, the City filed an amended complaint that added a claim under the PACT Act. *Id.* ¶ 7. On July 8, 2024, Defendants removed the action to this Court. *Id.* On July 29, 2024, one of the defendants, Star Zone Inc., filed an answer. Dkt. No. 36.

On August 15, 2024, five of the defendants filed a motion to dismiss. Dkt. No. 57. The Court granted the City leave to file a second amended complaint. Dkt. No. 58. On August 21, 2024, the City filed the SAC. On September 23, 2024, Star Zone filed an answer. Dkt. No. 74.

The Moving Defendants then filed a motion to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 76, 77, 82; *see also* No. 78 ("Vape More Mem."); Dkt. No. 76 ("Kayla Mem."); Dkt. No 83 ("EnviroMD Mem."). The City opposed the motion. Dkt. No. 87 ("Opp."). The Moving Defendants replied. Dkt. No. 98 ("EnviroMD Reply"); Dkt. No. 99 ("Vape More Reply"); Dkt. No. 97 ("Kayla Reply").

## II.    LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In a motion to dismiss under Rule 12(b)(6), the Court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010). However, "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive dismissal under Rule 12(b)(6), a complaint must allege sufficient facts to state a plausible claim. *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). The plaintiff's claim must be more than "speculative." *Twombly*, 550 U.S. at 545. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111. A court may also consider documents that are "integral to" the complaint, meaning that the complaint relies heavily upon its terms and effects. *Id.* "[E]ven if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* (internal quotation marks omitted) (quoting *Faulkner v. Beer*, 463 F.3d 130,

8

134 (2d Cir. 2006)).  "It must also be clear that there exist no material disputed issues of fact

regarding the relevance of the document."  *Id.* (quoting *Faulkner*, 463 F.3d at 134).

## III.    DISCUSSION

### A.    The City Plausibly States a Claim Under the PACT Act Against Each of the PACT Act Defendants

The City plausibly pleads that each of the PACT Act Defendants violated the PACT Act by

illegally selling flavored e-cigarettes to consumers in New York City.  Congress enacted the PACT

Act to "require Internet and other remote sellers of cigarettes and smokeless tobacco to comply with

the same laws that apply to law-abiding tobacco retailers[.]"  *New York v. United Parcel Serv., Inc.*, 942

F.3d 554, 565 (2d Cir. 2019).  The statute provides in relevant part as follows:

> (a) In general
> With respect to delivery sales into a specific State and place, each delivery seller shall comply
> with–
>> (1) . . . shipping requirements . . . ;
>> (2) . . . recordkeeping requirements. . . ;
>> (3) all State, local, tribal, and other laws generally applicable to sales of cigarettes or
> smokeless tobacco as if the delivery sales occurred entirely within the specific State and
> place, including laws imposing--
>>> (A) excise taxes;
>>> (B) licensing and tax-stamping requirements;
>>> (C) restrictions on sales to minors; and
>>> (D) other payment obligations or legal requirements relating to the sale,
>>> distribution, or delivery of cigarettes or smokeless tobacco; and
>> (4) . . . tax collection requirements . . . .

15 U.S.C. § 376a.  Under the PACT Act, therefore, if a seller makes a "delivery sale," then that seller

is required to comply with shipping, recordkeeping, tax collection requirements, and "all State, local,

tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco . . . ."  *Id.*[13]  The

term "cigarette" includes "an electronic nicotine delivery system."  § 375(2).  An e-cigarette "is an

---

[13] For example, a seller making a "delivery sale" must include a specific label designating the contents of the package as one that contains cigarettes, nicotine, or smokeless tobacco; an individual sale cannot weigh more than ten pounds; and a person signing for the shipment must provide proof of age.  *See* 15 U.S.C § 376a(b); *see generally United Parcel Serv., Inc.*, 942 F.3d at 565–66 (explaining the PACT Act's requirements with respect to cigarette sellers); *City of New York v. Hatu*, 2019 WL 2325902, at *15 (S.D.N.Y. May 31, 2019) (same).

electronic nicotine delivery system." § 375(7); *see also City of New York v. Magellan Tech., Inc.*, 735 F. Supp. 3d 312, 321 n.2. (S.D.N.Y. 2024).

The PACT Act Defendants argue that the statute does not authorize the City to bring this enforcement action against them with respect to their alleged illegal sales of e-cigarettes.[14] They also contend that the City failed to plausibly plead that they made "delivery sales" as required by the statute. Finally, the PACT Act Defendants argue that the City failed to plausibly plead that they did not to comply with the PACT Act's requirements for sales of e-cigarettes. These arguments lack merit. The Court addresses each in turn.

### 1.  *The PACT Act Authorizes the City to Bring Suit Against Alleged Violators of the Act*

At the outset, the PACT Act authorizes the City to enforce the statute because New York City imposes an excise tax and a sales tax on cigarettes, each of which is sufficient to permit the City to bring this enforcement action. "The PACT Act empowers states, through their attorneys general, and local governments, through their chief law enforcement officers, to bring suits against violators." *United Parcel Serv., Inc.*, 942 F.3d at 566. The statute includes a provision titled "standing," which reads in relevant part as follows: "A state, through its attorney general, or a local government . . . that levies a tax subject to Section 376a(a)(3) of this title, through its chief law enforcement officer, may bring an action in a United States district court to prevent and restrain violations" of the PACT Act. 15 U.S.C. § 378(C)(1)(A). Section 376a(a)(3) reads as follows:

---

[14] The PACT Act Defendants argue that the City lacks "standing" to assert a claim under the PACT Act. *See* Vape More Mem. at 11. "[T]he 'statutory standing' appellation is 'misleading' and 'a misnomer[.]'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016). "The Supreme Court has recently clarified . . . that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff has a cause of action under the statute." *Id.* (internal quotation marks and citation omitted). "[T]his inquiry 'does not belong' to the family of standing inquiries, because 'the absence of a valid' . . . cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional *power* to adjudicate the case." *Id.* (internal citations omitted) (emphasis in original). Statutory standing is therefore a question of whether the plaintiff failed to state a claim, and thus is an issue properly considered under Rule 12(b)(6), as opposed to a Rule 12(b)(1). Accordingly, the Court analyzes whether the City has a cause of action under the PACT Act under 12(b)(6).

> [A]ll State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco . . . including laws imposing—
>   (A) Excise taxes;
>   (B) Licensing and tax-stamping requirements;
>   (C) Restrictions on sales to minors; and
>   (D) Other payment obligations or legal requirements relating to the sale, distribution, or delivery of cigarettes or smokeless tobacco

15 U.S.C. § 376a(a)(3).

A "tax subject to Section 376a(a)(3)," must be both a "tax," and one that is "subject to" Section 376a(a)(3). "'[S]ubject to' means 'governed or affected by.'" *Texaco Inc. v. Duhe*, 274 F.3d 911, 919 (5th Cir. 2001) (citing *Black's Law Dictionary* 1425 (6th ed. 1990)); *Clean Air Council v. United States Steel Corp.*, 4 F.4th 204, 210 (3d Cir. 2021) (concluding that the phrase "any emission into the air *subject to* a permit or control regulation under" the Clean Air Act meant "governed or affected by" the Clean Air Act) (emphasis added)); *Subject to*, Merriam-Webster, https://www.merriam-webster.com/dictionary/subject%20to (last visited July 10, 2025) (defining "subject to" as "affected by or possibly affected by (something)"). A "tax subject to Section 376a(a)(3)," then, is a tax governed by, affected by or possibly affected by Section 376a(a)(3).

Section 376a(a)(3) begins with an umbrella clause, which states: "All State, local, tribal, and *other laws generally applicable to sales of cigarettes* or smokeless tobacco . . . including laws imposing: . . ." *See* 15 U.S.C. § 376a(a)(3) (emphasis added). The text then lists four categories of laws in subsections (A) through (D). *Id.* "[T]he Supreme Court has made clear that the word 'includes,' when used in a statute, 'is usually a term of enlargement, and not of limitation.'" *Pfizer, Inc v. United States Dep't of Health & Hum. Servs.*, 42 F.4th 67, 76 (2d Cir. 2022). The list of laws enumerated in subsections (A) through (D) is not, therefore, an exclusive list of "laws generally applicable to sales of cigarettes or smokeless tobacco" comprised within Section 376a(a)(3). A "tax subject to Section

376a(a)(3)" is one that is governed or affected by the broad category of laws "generally applicable to sales of cigarettes or smokeless tobacco."[15]

The PACT Act Defendants accept that an excise tax is a tax "subject to Section 376a(a)(3)" because "excise taxes" are enumerated in subsection (A) of Section 376a(a)(3).  New York City imposes an excise tax on cigarettes.  *See* N.Y.C. Admin. Code § 11-1302 (imposing "a tax on:  (1) all cigarettes possessed in the city for sale . . . ."); *see also United Parcel Serv., Inc.*, 942 F.3d at 561–62 ("New York City . . . impose[s] excise taxes on cigarettes in order to discourage cigarette smoking and defray some of the health care costs it causes.").  Therefore, the City imposes "a tax subject to" Section 376a(a)(3)(A) and may "bring an action in a United States district court to prevent and restrain violations of this chapter."  15 U.S.C. § 378(C)(1)(A).

The PACT Act Defendants contend that New York City's excise tax on traditional cigarettes does not authorize the City to bring an enforcement action with respect to e-cigarettes, but a plain reading of the text belies this argument.  *See* Vape More Opp. at 12; Vape More Reply at 1–2; EnviroMD Opp. at 4; Kayla Opp. at 8.  According to the PACT Act Defendants, the statute requires the enforcing government to impose an excise tax on the specific product that is the subject of the enforcement action, here e-cigarettes.  They argue that because New York City only taxes traditional cigarettes, the City may not sue them for alleged violations resulting from the sale of e-cigarettes.  This interpretation requires the Court to depart from the plain meaning of the text, which imposes no such limitation.  "When interpreting a statute . . . [w]e must give effect to the text's plain meaning."  *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 57 (2d Cir. 2021).  Here, the plain meaning of the relevant provision is that a local government "that levies *a tax subject*

---

[15] The PACT Act Defendants argue that an excise tax is the only "tax subject to Section 376a(a)(3)" because only subsection "(A) Excise taxes" explicitly references a "tax."  Vape More Reply at 1; EnviroMD Mem. at 3.  But as described above, the statute refers to a "tax subject to Section 376a(a)(3)," not merely a "tax enumerated in Section 376a(a)(3)."  The PACT Act Defendants' argument fails to engage with the meaning of the term "subject to," which has a broader meaning, as described above.  The PACT Act Defendant's also fail to engage with the broader introductory language in Section 376a(a)(3) that precedes clauses (A) through (D).  As a result, their argument is unpersuasive.

*to Section 376a(a)(3)* . . . may bring *an action* . . . to prevent and restrain violations of this chapter . . . ." 15 U.S.C. § 378(C)(1)(A) (emphasis added). The text does not say that the "action" must correlate to the specific tax. *See Magellan Tech., Inc.*, 735 F. Supp. 3d at 321 ("There is no limiting language requiring the violation of the chapter to be against the same type of cigarette as the type of tax levied.").

In addition to the excise tax, the City levies another tax "subject to Section 376a(a)(3)" that authorizes it to bring suit: its sales tax. New York City's sales tax is a "tax subject to Section 376a(a)(3)". It is undisputed that the sales tax is a "tax." *See* N.Y.C. Admin. Code § 11-2001(a) (imposing "all of the sales… taxes described in" N.Y. Tax L. art. 28); N.Y. Tax L. § 1105 (imposing a sales tax on "receipts from every retail sale of tangible personal property"). The tax is also "subject to Section 376a(a)(3)" because the sales tax is governed by or affected by a law "generally applicable to sales of cigarettes or smokeless tobacco," as described in Section 376a(a)(3)'s umbrella clause. The sales tax applies to the sale of all "tangible personal property," including cigarettes and e-cigarettes; it is, therefore, a "law[] generally applicable to sales of cigarettes." *See* Section 376a(a)(3). Because the sales tax is a tax that is "generally applicable to the sales of cigarettes," it is a tax "subject to Section 376a(a)(3)."

The court in *Magellan Tech., Inc.* reached the same conclusion—that New York City's sales tax is a "tax subject to Section 376a(a)(3)"—but reached that conclusion because it found that the sales tax specifically fell under subsection (D). *See* 735 F. Supp. 3d at 321 ("A sales tax on e-cigarettes is a payment and legal obligation relating to the sale of cigarettes that satisfies subsection (D) under a plain reading of that statute.").

While the Court agrees with the conclusion reached by *Magellan Tech., Inc.* that New York's sales tax is "a tax subject to Section 376a(a)(3)," the Court respectfully disagrees that the sales tax properly falls under subsection (D). That is because, in the Court's view, New York's general sales

tax does not "relate[] to" the sale, distribution, or delivery of cigarettes, as required by subsection

(D).  *See* 15 U.S.C. § 376a(a)(3)(D) (emphasis added).  Subsection (D) encompasses "[o]ther payment

obligations or legal requirements relating to the sale, distribution, or delivery of cigarettes or

smokeless tobacco." *Id.*  The statute does not define the term "relating to." *Id.*  The Supreme Court

has "observed that Black's Law Dictionary defines the words [relating to] expansively:  'to stand in

some relation; to have bearing or concern; to pertain; refer; to bring into association with or

connection with.'"  *Richards v. Ashcroft*, 400 F.3d 125, 129 (2d Cir. 2005) (discussing *Morales v. Trans*

*World Airlines, Inc.,* 504 U.S. 374, 383 (1992)).  The Second Circuit has "similarly recognized that the

phrase 'relating to' is deemed synonymous to 'in connection with,' 'associated with,' 'with respect

to,' and 'with reference to.'"  *Kamagate v. Ashcroft*, 385 F.3d 144, 154 (2d Cir. 2004) (citing *Coregis Ins.*

*Co. v. Am. Health Found., Inc.,* 241 F.3d 123, 128–29 (2d Cir. 2001)).  The Second Circuit has

summarized:

> Webster's Dictionary defines "related" simply as "connected by reason of an established or
> discoverable relation."  The word "relation," in turn, as "used esp[ecially] in the phrase 'in
> relation to,'" is defined as a "connection" to or a "reference" to.  Courts have similarly
> described the term "relating to" as equivalent to the phrases "in connection with" and
> "associated with," and synonymous with the phrases "with respect to," and "with reference
> to[.]"

*Coregis Ins. Co.*, 241 F.3d at 128–29 (internal citations omitted).

Here, even considering the term's expansive definition, New York City's sales tax of general

applicability does not "refer" or "make reference" to "sale, distribution, or delivery of cigarettes or

smokeless tobacco," nor is it a tax "with respect to" those categories.  Rather, the sales tax is a

"generally applicable statute that makes no reference to, or indeed functions irrespective of," the

sale, distribution, or delivery of cigarettes or smokeless tobacco.  *See e.g., Ingersoll-Rand Co. v.*

*McClendon*, 498 U.S. 133, 139 (1990) (applying the "broad common-sense meaning" to the phrase

"relate to" as used in ERISA in part because "[w]e are not dealing here with a generally applicable

statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA

plan."); *see also Kamagata*, 385 F.3d at 154 (citing *Ingersoll-Rand Co.*, 498 U.S. at 139).  The Court does not, therefore, conclude that New York City's sales tax of general applicability is a payment obligation "relating to the sale, distribution, or delivery of cigarettes or smokeless tobacco" under 376a(a)(3)(D).

In any event, even though New York City's sales tax does not fall under subsection (D) of Section 376a(a)(3), it is still "a tax subject to Section 376a(a)(3)" because it is a tax that is "generally applicable to sales of cigarettes or smokeless tobacco" as provided by the opening clause of Section 376a(a)(3).  Therefore, because New York City imposes both an excise tax on traditional cigarettes and a sales tax that is generally applicable to sales of cigarettes and e-cigarettes, the City may bring this action to prevent and restrain violations of the PACT Act.

### 2. The PACT Act's "Delivery Sales" Requirement Applies to Sales Made to Cigarette Businesses That Are Operating Illegally

Next, the City plausibly pleads that each of the PACT Act Defendants made so-called "delivery sales" under the PACT Act because they each sold to cigarette businesses that are operating illegally.  The PACT Act's requirements governing cigarette sales—including e-cigarettes—only apply to "delivery sales," which the statute defines as follows:

Any sale of cigarettes or smokeless tobacco to a consumer if—

(A) the consumer submits the order for the sale by means of a telephone or other method of voice transmission, the mails, or the Internet or other online service, or the seller is otherwise not in the physical presence of the buyer when the request for purchase or order is made; or

(B) the cigarettes or smokeless tobacco are delivered to the buyer by common carrier, private delivery service, or other method of remote delivery, or the seller is not in the physical presence of the buyer when the buyer obtains possession of the cigarettes or smokeless tobacco.

15 U.S.C. § 375(5).

Whether a particular sale is a "delivery sale" under the PACT Act therefore depends on whether the purchaser is a "consumer." The PACT Act defines "consumer" as follows:

The term "consumer"—

> (A) means any person that purchases cigarettes or smokeless tobacco; and
> (B) does not include any person *lawfully operating* as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco.

§ 375(4) (emphasis added). The PACT Act's regulations do not, therefore, apply to sales made to a "person lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco." *See id.*

Before the Court can analyze the sufficiency of the City's PACT Act claims, the Court must first explain the problems with the PACT Act Defendants' artificially constrained interpretation of the term "lawfully operating." The PACT Act Defendants contend that "the Court should interpret the term 'lawfully operating' as meaning operating with any necessary state or local registration or license." *See* Vape More Mem. at 13–14; EnviroMD Mem. at 6 ("[L]awfully operating means holding any required licenses or permits"). Under their interpretation, any purchaser that holds any license is "lawfully operating," even if its operations violate the law.

The PACT Act Defendants' interpretation runs contrary to the text. "Lawful" means "not contrary to law; permitted or recognized by law; rightful." *See Magellan Tech., Inc.,* 735 F. Supp. 3d at 324 (citing Black's Law Dictionary (11th ed. 2019)); *see also United States v. Osuna-Alvarez,* 788 F.3d 1183, 1185 (9th Cir. 2015) (same); *Alfar v. Gray,* 2024 WL 4653000, at *4 (S.D.N.Y. Oct. 31, 2024) (same). Merriam-Webster similarly defines "lawful" as "being in harmony with the law." *Lawful* 1a, Merriam-Webster, https://www.merriam-webster.com/dictionary/lawful (last visited July 10, 2025).

Here, "lawfully" modifies the verb "operating." "Operate" means "to perform an operation or a series of operations." *Operate* 3a, Merriam-Webster, https://www.merriam-webster.com/dictionary/operate (last visited July 10, 2025). The statute uses the progressive tense

of the verb "operating," which is the "verb tense that is used to refer to an action or a state that is *continuing to happen.*" *See Progressive tense*, Merriam-Webster, https://www.merriam-webster.com/dictionary/progressive%20tense (last visited July 10, 2025) (emphasis added); *United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000) ("[U]se of the present progressive tense, formed by pairing a form of the verb 'to be' and the present participle, or '-ing' form of an action verb, generally indicates *continuing action.*") (emphasis added).[16]  In this statute, the word "lawfully" therefore applies to the purchaser's continuing operations—not merely the fact that a purchaser received a license.  After all, "[c]ongress' use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992).

The textual reading of "lawfully operating," unlike the PACT Act Defendants' reading, leads to a commonsense result:  if a purchaser has a license to operate, but its ongoing operations violate the law, then that purchaser would not be "lawfully operating."  Conversely, the PACT Act Defendants' interpretation yields results that defy common sense.  For example, if "lawfully operating" means merely, as the PACT Act Defendants would have it, "holding any required licenses," then a restaurant that is licensed to serve food would be "lawfully operating" even if that restaurant operated as an illegal gambling house; a corner store that received a license to open shop would be lawfully operating even if it went on to function as a drug front.  Examples abound demonstrating why this interpretation is unconvincing.[17]

---

[16] Although the statute does not expressly include a form of the verb "to be," the most natural reading of the text is "any person [that is] lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco."

[17] The Vape More Defendants also argue that changes to the PACT Act in 2010 support the interpretation that the phrase "lawfully operating" means licensed.  According to VapeMore, "Congress removed the term 'distributor licensed by or located in such State' and replaced it with the concept of 'lawfully operating' . . . ."  *See* Vape More Mem. at 16. The Court need not engage in an analysis of the legislative history because the text is clear, and "absent ambiguity," interpretation of the statute "will generally end" with the text.  *Bustamante v. Napolitano*, 582 F.3d 403, 406 (2d Cir. 2009). In any case, as the court in *Magellan Tech.* aptly observed, when Congress "altered the wording from 'licensed' to 'lawfully operating,'" the change was "a clear indication that Congress intended to change who qualified as a 'consumer' under the PACT Act . . . . [H]ad Congress intended to keep the same meaning, there would have been no reason to make the change."  *Magellan Tech., Inc.*, 735 F. Supp. 3d at 324.

The PACT Act Defendants also cite no cases that support their interpretation and ignore that several courts have rejected their argument. *See, e.g.*, *Magellan Tech., Inc.*, 735 F. Supp. 3d at 324 (rejecting the interpretation that "lawfully operating" meant "licensed," and finding that the City adequately alleged sales to "consumers" because the purchasers were "not complying with local, state, and federal laws . . ."); *New York v. Grand River Enterprises Six Nations, Ltd.*, 2020 WL 12969527, at *12 (W.D.N.Y. Dec. 15, 2020) (concluding that a complaint "sufficiently allege[d that] Defendants, by failing to comply with New York's cigarette excise tax scheme, engaged in 'delivery sales' to consumers" that were not lawfully operating).

Having established that the PACT Act Defendants' interpretation of "lawfully operating" is untethered from the text, the Court can evaluate whether the City plausibly pleads that each of the PACT Act Defendants made "delivery sales"—remote sales of e-cigarettes to consumers—as required by the statute. The Court concludes that it does. First, the City plausibly pleads that Kayla Wholesale and Urban Smoke each made remote sales of flavored e-cigarettes for personal use to individuals in New York City, who are necessarily "consumers" under the statute. *See* 15 U.S.C. § 375(5) (defining a consumer as "any person that purchases cigarettes or smokeless tobacco" other than lawfully operating cigarette businesses). Kayla Wholesale received an online order for flavored e-cigarettes from an investigator working for the City and subsequently delivered the product. SAC ¶¶ 71, 75–78. Similarly, Urban Smoke purchased large quantities of e-cigarettes for resale, received remote orders through its website, and sold "some or all of the flavored e-cigarettes in its possession" to people "throughout the City." *Id.* ¶¶ 119–26.

Second, with respect to the remaining PACT Act Defendants—Vape More, Vape Plus, GT Imports, Enviro MD and RZ Smoke—the City plausibly pleads that each made remote sales to "consumers," namely, cigarette businesses that were operating illegally by reselling flavored e-cigarettes in New York Cite in violation of the local ban on such sales. *See* N.Y.C. Admin. Code

§ 17-715 ("It shall be unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid."). Vape More made online sales and delivered flavored e-cigarettes to "businesses throughout the City," including to Urban Smoke. SAC ¶¶ 131–34 & Exhibit N. Urban Smoke is a "consumer" because Urban Smoke operated unlawfully: it offered to sell flavored e-cigarettes on its website, urbansmokedistributors.com, in violation of New York City's ban. *See* N.Y.C. Admin. Code § 17-715; SAC ¶¶ 119–24 & Exhibit M. Urban Smoke placed the orders remotely. SAC ¶ 133. Consequently, the City plausibly pleads that Vape More made delivery sales to a consumer.

Similarly, the City plausibly pleads that Vape Plus made remote sales to "consumers" like Smoke World & Vape LLC, Vape N Cloud Corp., and Vape and Smoke Corp., which, as alleged, were not lawfully operating. *Id.* ¶¶ 141–43. Vape Plus advertises flavored e-cigarettes for sale on its website, and received "thousands of dollars in payments" from Vape and Smoke Corp. and other stores around the city. *Id.* Vape and Smoke Corp. sold flavored e-cigarettes to a City investigator, and the other purchasers sold flavored e-cigarettes at their stores in New York City in violation of the local ban. *Id.* These buyers placed their orders with Vape Plus remotely. *Id.* Consequently, the City plausibly pleads that Vape More made "delivery sales." With respect to GT Imports, the City plausibly pleads that it made remote sales to a consumer, Topoo Industries, which sells flavored e-cigarettes from a warehouse in Brooklyn and on its website, https://topoodistro.com. *Id.* ¶¶ 64–69.

Finally, the City plausibly pleads that Enviro MD and RZ Smoke each sold to the same "consumer"—Star Vape—a Brooklyn-based convenience store. As alleged, Star Vape was not lawfully operating because it possessed "thousands of flavored e-cigarettes" and sold them at its convenience store. *Id.* ¶¶ 54–56 & Exhibit A. Consequently, Star Vape was a "consumer." EnviroMD received orders from Star Vape remotely, and sold flavored e-cigarettes to Star Vape in bulk between approximately September 2022 and August 2023. *Id.* ¶¶ 52–57. RZ Smoke also sold

"hundreds" of flavored e-cigarettes on multiple occasions to Star Vape, and those orders were placed remotely. *Id.* ¶ 105 & Exhibit K. The City therefore plausibly pleads that EnviroMD and RZ Smoke, as with each of the PACT Act Defendants, made delivery sales under the statute.

### 3. The City Plausibly Pleads that Each of the PACT Act Defendants Violated the PACT Act's Requirements for E-Cigarette Sales

The City adequately pleads that each of the PACT Act Defendants' delivery sales violated the PACT Act because any sale of flavored e-cigarettes in New York City violates the local ban on such sales. As already explained, the PACT Act requires that, "[w]ith respect to delivery sales into a specific State and place, each delivery seller shall comply with . . . all State, local, tribal, and other laws generally applicable to sales of cigarettes . . . as if the delivery sales occurred entirely within the specific State and place." 15 U.S.C. § 376a(a).

The City plausibly pleads that each of the PACT Act Defendants' delivery sales of flavored e-cigarettes violated the PACT Act because each sale violated the local "laws generally applicable to sales of cigarettes" in New York City, namely, the ban on selling flavored e-cigarettes. *See* 15 U.S.C. § 376a; N.Y.C. Admin. Code § 17-715. As stated above, the City alleges that EnviroMD and RZ Smoke sold flavored e-cigarettes to Star Vape, a Brooklyn-based convenience store, in violation of New York City's ban. SAC ¶ 54 (EnviroMD), ¶ 104 (RZ Smoke). Vape More sold flavored e-cigarettes to Urban Smoke, located in Queens, New York, *id.* ¶ 131, and Vape Plus sold flavored e-cigarettes to Vape and Smoke Corp, among others, *id.* ¶¶ 141–43. GT Imports also sold flavored e-cigarettes to Topoo Industries, and on its website. *Id.* ¶¶ 60–69. Finally, Kayla Wholesale sold flavored vapes to a City investigator, *id.* ¶¶ 71, 75–78,[18] and Urban Smoke sold flavored e-cigarettes

---

[18] Kayla Wholesale argues that the PACT Act claims against it with respect to its sales to Star Vape must be dismissed because those alleged violations occurred in 2020, before Congress amended the PACT to apply to e-cigarettes. *See* Kayla Mem. at 8–11. In 2020, Congress amended the PACT Act to apply to e-cigarettes and all vaping products by altering the definition of "cigarette" to include "electronic nicotine delivery system[s]." *See* 15 U.S.C. § 375, Pub. L. No. 116-260, Div. FF, Title VI, § 602(a)(1), 134 Stat. 3136 (Dec. 27, 2020). The City does not contest that the alleged sales to Star Vape occurred before the relevant amendment. Nonetheless, the City has still asserted a PACT Act claim against Kayla Wholesale because the SAC includes other allegations that occurred after the amendment, including the online sale

to individuals in New York City, *id.* ¶¶ 119–26 & Exhibit M.[19]  Consequently, the City plausibly

pleads that each of the PACT Act Defendants made qualifying delivery sales and did not comply

with local laws governing such sales as required by the PACT Act.

> **B.      The City States a Claim Under New York Public Health Law**

The City plausibly pleads that each of the PACT Act Defendants violated New York's

Public Health Law.  PHL § 1399-ll regulates the "unlawful shipment or transport of cigarettes and

vapor products."  PHL § 1399-ll(1).  "Both the [New York Attorney General] and corporation

counsel for political subdivisions of the state are authorized to bring an action against a violator to

recover civil penalties." *United Parcel Serv., Inc.*, 942 F.3d at 563 (citing PHL § 1399-ll(6)).

As with the federal claims, the PACT Act Defendants first argue that the City's claims under

PHL § 1399-ll fail because the City does not have statutory "standing."  They contend that the City

may not enforce the Public Health Law with respect to e-cigarettes, as the City does not levy an

excise tax on e-cigarettes.  They also contend that PHL § 1399-ll(1-a) only regulates shipments of

e-cigarettes made to retailers—not between wholesalers, as they contend they are accused of.

Because the City only alleges that they shipped to wholesalers, the PACT Act Defendants argue, the

City's PHL § 1399-ll(1-a) claims should be dismissed.  Neither argument is correct.

> **1.   The New York Public Health Law Authorizes the City to Sue**

The City is authorized to enforce the Public Health Law because the City taxes cigarettes.

PHL § 1399-ll(6) states in relevant part, the following:

> [T]he corporation counsel of any political subdivision *that imposes a tax on cigarettes or vapor
> products . . . may bring an action* to recover the civil penalties provided by subdivision five of

---

[19] to a City investigator in 2024, long after the effective dates of every statute or regulation at issue in the SAC.  *See* SAC ¶¶ 74–84 & Exhibit F.

[19] The City plausibly pleads other violations of the PACT Act's shipping requirements, too.  For example, the City pleads that the sales made by EnviroMD, RZ Smoke, and GT Imports weighed in excess of ten pounds in violation of the PACT Act's shipping restrictions. *Id.* ¶¶ 57, 86, 107–09; 15 U.S.C. § 376a.  Similarly, the City pleads that Kayla Wholesale shipped flavored e-cigarettes to the City investigator without requiring age verification, as required. *Id.* ¶ 78; 15 U.S.C. § 376a.

> this section and for such other relief as may be deemed necessary *with respect to any cigarettes or vapor products* intended or reasonably expected to be used with or for the consumption of nicotine shipped, caused to be shipped or transported in violation of this section to any person located within such political subdivision.

PHL § 1399-ll(6) (emphasis added).  Under a plain reading of the text, if the City imposes "a tax on cigarettes *or* vapor products," the City may bring an action "with respect to any cigarettes *or* vapor products."  *See* PHL § 1399-ll(6) (emphasis added).[20]  "The word 'or' is 'almost always disjunctive,' and is generally used 'to indicate . . . an alternative[.]'"  *Campos-Chaves v. Garland*, 602 U.S. 447, 457 (2024) (internal quotations omitted).  Additionally, the Supreme Court has observed that, "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008).  So, here, either a tax on cigarettes or a tax on vapor products authorizes the City to bring suit, irrespective of whether the action pertains to cigarettes or vapor products.  *See also Magellan Tech., Inc.*, 2024 WL 2701956, at *11 ("The word 'or' means that either a tax on cigarettes or vapor products will suffice to provide standing, and there is no indication that the legislature intended for the type of tax imposed to limit the underlying conduct that can be enforced under the statute.").  Here, the City taxes traditional cigarettes.  *See* N.Y.C. Admin. Code § 11-1302.  Therefore, the City may sue to enforce PHL § 1399-ll with respect to vapor products.

## 2.  The City Plausibly States a Claim Under the New York Public Health Law Against Each PACT Act Defendant

The City plausibly pleads that each of the PACT Act Defendants violated PHL § 1399-ll by causing shipments of e-cigarettes to be made to entities that are not authorized to purchase e-cigarettes in New York.  PHL § 1399-ll(1-a) makes it unlawful for "any person" to "ship or cause

---

[20] The statute does not define the term "cigarette."  *See generally* PHL § 1399-aa.  The term "'tobacco products' means one or more cigarettes or cigars, bidis, chewing tobacco, powdered tobacco, nicotine water or any other tobacco products."  PHL § 1399-aa(5).  The term "vapor products" is defined as "any noncombustible liquid or gel, regardless of the presence of nicotine therein, that is manufactured into a finished product for use in an electronic cigarette including any device that contains such noncombustible liquid or gel."  PHL § 1399-(aa)(17).

to be shipped" e-cigarettes to any person, except to three statutorily defined categories of authorized

recipients: registered "vapor products dealers;" warehouse proprietors; and government agents.

The relevant text reads in full as follows:

> It shall be unlawful for *any person engaged in the business of selling vapor products* to *ship or cause to be shipped* any vapor products intended or reasonably expected to be used with or for the consumption of nicotine *to any person in this state who is not*: (a) *a person that receives a certificate of registration as a vapor products dealer under article twenty-eight-C of the tax law*; (b) an export warehouse proprietor . . . ; or (c) a person who is an officer, employee or agent of the United States government . . . .

> For purposes of this subdivision, a person is a licensed or registered agent or dealer described in paragraph (a) of this subdivision if his or her name appears on a list of licensed or registered agents or vapor product dealers published by the department of taxation and finance, or if such person is licensed or registered as an agent or dealer under article twenty eight-C of the tax law.

PHL § 1399-ll(1-a) (emphasis added). Article twenty-eight-C of the tax law requires that "[e]very

person who intends to sell vapor products in this state must receive from the commissioner a

certificate of registration prior to engaging in business." NY Tax L. § 1183.[21]

Here, the City plausibly pleads that each of the PACT Act Defendants—EnviroMD, Kayla

Wholesale, RZ Smoke, GT Imports, Vape More, Vape Plus, and Urban Smoke—violated

PHL § 1399-ll(1-a) by causing vapor products to be shipped to entities that are not statutorily

allowed to purchase e-cigarettes, namely, to unlicensed dealers.[22] First, the City alleges that

EnviroMD and RZ Smoke each remotely sold e-cigarettes to Star Vape, which the City alleges is not

a registered dealer. SAC ¶¶ 54–59, 104–107. Kayla Wholesale also sold to and delivered e-cigarettes

to a City investigator who purchased the product through Kayla's website. *Id.* ¶¶ 75–79.

---

[21] A vapor product dealer is defined as "a person licensed by the commissioner to sell vapor products in this state." N.Y. Tax L. § 1180(b) (definitions).

[22] Because "[t]he statute, by its terms, applies not only to shippers who ship directly to unauthorized individuals in New York but also to those who cause such shipments," the statute applies to suppliers of e-cigarettes, not only those who physically ship the product. *See Hatu*, 2019 WL 2325902, at *16 (rejecting the argument that the defendant should avoid liability because it did not "directly ship cigarettes" because the complaint plausibly pleaded that the defendant "caused such shipments," by supplying cigarette to individuals "knowing that [they] would furnish the cigarettes for sale to consumers in New York State and City . . . .")

Next, the City alleges that GT Imports sold and delivered e-cigarettes to multiple unlicensed purchasers including Topoo Industries, R and B Wholesale, Sahara Wholesale, and EZ Wholesale. *Id.* ¶ 64–70. Vape More also sold to the allegedly unlicensed Urban Smoke, one of the defendants in this case. *Id.* ¶ 135. Additionally, Vape Plus sold and delivered e-cigarettes to businesses "located within New York City, including stores like Smoke World & Vape LLC, Vape N Cloud Corp., and Vape and Smoke Corp," which the City alleges were not licensed. *Id.* ¶ 142–44.[23] Finally, the City alleges Urban Smoke sells e-cigarettes on its website and advertises "free delivery," and that it shipped e-cigarettes to members of the public who are not licensed. *Id.* ¶¶ 119–28. The City therefore plausibly states a claim under PHL § 1399-ll(1-a) against each of the PACT Act Defendants.

The PACT Act Defendants contend the City's claim must be dismissed because the SAC only alleges that they sold e-cigarettes to vapor product wholesalers, which they argue are exempt from the Public Health Law because such wholesalers are not required to register under the tax law. *See* Vape More Mem 24; EnviroMD Mem at 7; Kayla Mem. at 13. Their argument relies on guidance from the State Department of Public Health. *Id.* They argue that, "pursuant to the Department's own Guidance, '[a]ll shipments between . . . wholesalers[] and distributors within New York' will 'continue to be permitted' because '[s]uch entities are not required to register as vapor product dealers to send or receive shipments of vapor products.'" Vape More Mem. at 24. The PACT Act Defendants therefore ask the Court to "defer to the Department of Public Health's interpretation of Section 1399-ll(1-a) and dismiss the City's claim." *Id.* at 25.

---

[23] The City also alleges that Vape Plus maintains a store in Brooklyn, and operates a website that sells flavored e-cigarettes. SAC ¶ 136. According to the SAC, "[t]he website promises 'same day delivery.'" *Id.* ¶ 137.

However, the PACT Act Defendants misconstrue the guidance.  The relevant part of the guidance reads as follows:

> Beginning July 1, 2020, the following shipments of vapor products intended or reasonably expected to be used with or for the consumption of nicotine will continue to be permitted: All shipments between manufacturers, wholesalers, and distributors within New York.  Such entities are not required to register as vapor products dealers to send or receive shipments of vapor products, *unless otherwise required to register pursuant to Tax Law Article 28-C.*

*Guidance for Vapor Product Manufacturers, Wholesalers, Distributors, and Retailers*, N.Y. Dep't Pub. Health, https://www.health.ny.gov/prevention/tobacco_control/docs/vape_product_shipping_ban_guidance.pdf; *see also* Vape More Mem. Exhibit A.

As described above, Article 28-C of the tax law requires that "[e]very person who intends to sell vapor products in this state must receive from the commissioner a certificate of registration prior to engaging in business."  NY Tax L. § 1183.  Therefore, even under the guidance, a wholesaler is still "required to register pursuant to Tax Law Article 28-C" if it "intends to sell vapor products in this state."  Here, the City alleges that each of the PACT Act Defendants that allegedly sold to wholesalers—as opposed to individuals—sold to purchasers that were required to register under the tax law because those purchasers resold the vape products within New York.  *See* SAC ¶¶ 66, 73 (alleging that Star Vape, which purchased from EnviroMD and RZ Smoke, sold and possessed e-cigarettes for sale in New York); *id.* ¶ 69 (alleging that Topoo Industries, R and B Wholesale, Sahara Wholesale, and EZ Wholesale, which purchased from GT Imports, each sold flavored e-cigarettes in New York City); *id.* ¶¶ 119–26 (alleging that Urban Smoke, which purchased from Vape More, sells e-cigarettes in New York City); *id.* ¶¶ 142–44 (alleging that Smoke World & Vape LLC, Vape N Cloud Corp., and Vape and Smoke Corp, which purchased from Vape Plus, each sold flavored e-cigarettes in New York City).  The PACT ACT Defendants attempt to misconstrue the State's guidance is unavailing, and they do not evade liability on those grounds.  The City therefore plausibly pleads that each of the PACT Act Defendants violated PHL § 1399-ll(1-a)

because they caused vapor products to be shipped to entities that are not statutorily permitted to purchase those products.

## C. The City May Pursue Injunctive Relief Relating to the NYC Defendants' Violations of the New York City Administrative Code

### 1. The City Plausibly States a Claim for Violations of the Administrative Code

The City plausibly states a claim under the New York City Administrative Code because it adequately pleads that each of the NYC Defendants sold flavored e-cigarettes in New York City. Section 17-715 of the New York City Administrative Code ("Section 17-715") "prohibits the sale in New York City of 'any flavored tobacco product except in a tobacco bar.'" *U.S. Smokeless Tobacco Mfg. Co. LLC v. City of New York*, 708 F.3d 428, 431 (2d Cir. 2013) (concluding that Section 17–715 regulates the sale as opposed to the manufacture of tobacco products). It also makes it unlawful "to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid." Section 17-715.

Here, the City plausibly pleads that each of the NYC Defendants sold or offered to sell flavored e-cigarettes in New York City in violation of Section 17-715. First, the City alleges that several of the NYC Defendants directly sold flavored e-cigarettes to businesses in New York City: EnviroMD, GT Imports, RZ Smoke, and Kayla Wholesale all sold flavored e-cigarettes to Star Vape, a Brooklyn-based convenience store. SAC ¶¶ 54–57 (EnviroMD), ¶ 63 (GT Imports), ¶¶ 72–73 (Kayla Wholesale), ¶¶ 104–07 (RZ Smoke). The City also alleges that Vape More sold flavored e-cigarettes to Urban Smoke, which is located in Queens, New York. *Id.* ¶ 131.

Other NYC Defendants plausibly violated Section 17-715 by offering to sell flavored e-cigarettes in New York City. For example, KLCC Wholesale, located in Brooklyn, allegedly purchased hundreds of flavored e-cigarettes and offered, on its website, to sell "all types of smoking products, from vapes, disposables, Hookah, E-liquid, and many more items." *Id.* ¶¶ 85–89 &

26

Exhibit G.  Similarly, Vape Plus, also located in Brooklyn, advertises for sale dozens of flavored

e-cigarette brands and offers "same day delivery."  *Id.* ¶¶ 136–38.  Finally, Urban Smoke, located in

Queens, allegedly purchased tens of thousands of units of flavored e-cigarettes, offered e-cigarettes

for sale on its website, and generally advertised itself as "your one stop place to get all smoke shop

needs."  *Id.* ¶¶ 119–26 & Exhibit M.  Consequently, the City plausibly pleads that each of the NYC

Defendants—EnviroMD, GT Imports, RZ Smoke, Kayla Wholesale, Vape More, KLCC Wholesale,

Vape Plus, and Urban Smoke—violated Section 17-715 by selling or offering to sell flavored e-

cigarettes products in New York City.[24]

The NYC Defendants do not escape liability under Section 17-715 based on a previous

iteration of a New York City agency rule that permitted wholesalers to sell flavored e-cigarettes

because the rule was never valid, as it conflicted with the Administrative Code.  In 2021, the

Department of Health and Mental Hygiene promulgated a rule that permitted wholesalers to sell

"flavored electronic cigarettes" if "the sale or offer of sale is made to an entity located outside the

---

[24] To the extent that the EnviroMD Defendants are arguing that Section 17-715 only bars retail shops—and not wholesalers—from selling flavored e-cigarettes, this argument is incorrect.  *See* EnviroMD Mem. at 8–9.  The EnviroMD Defendants contend that the City fails to "articulate how the Moving Defendants are in violation of" Section 17–715 because the Moving Defendants only sell to "wholesale-level distributors of vapor products, not retail establishments."  EnviroMD Mem. at 8.  The EnviroMD Defendants then note that Section 17-715 contains a legal presumption that only applies to retailers, suggesting that the section's entire prohibition must only apply to retailers, too.  This argument is belied by the text.  As is relevant here, Section 17-715 states:

> 1. It shall be unlawful for any person to sell or offer for sale, *or to possess with intent to sell or offer for sale*, any flavored electronic cigarette or flavored e-liquid.
>
> 2. There shall be a presumption that an electronic cigarette retail dealer . . . in possession of six or more flavored electronic cigarettes . . . possesses such flavored electronic cigarettes or flavored e-liquid with intent to sell or offer for sale.

Section 17-715(b) (emphasis added).  Subsection (b)(2) creates a presumption that a cigarette retail dealer that possesses six or more flavored vapes is presumed to possesses those vapes with the intent to sell them.  The presumption makes it easier to prove a violation of subsection (b)(1)'s prohibition on possession with intent to sell.  The presumption does not limit the scope of the conduct subsection (b)(1) makes unlawful.  Consequently, the EnviroMD Defendants' argument lacks merit.

City of New York."[25]  This rule was in effect until July 31, 2024, at which point the agency amended

the rule to take its current form.  New York City, N.Y., Rules, Tit. 24, § 28-02 ("Rule 28-02").[26]  The

existing rule, as amended, categorically bars the sale of e-cigarettes; it states, "[t]he sale of flavored

electronic cigarettes and flavored e- liquids is prohibited."  *Id.*  The NYC Defendants contend that

their alleged conduct was legal because, at the time, the earlier Rule 28-02 permitted them as

wholesalers to sell flavored e-cigarettes.  *See* Vape More Mem. at 26; *see also* EnviroMD Mem. at 10.

The earlier iteration of Rule 28-02 was invalid when it was in effect because it directly

conflicted with the Administrative Code's categorical ban on the sale of flavored e-cigarettes.  In

New York, administrative agencies "can only promulgate rules to further the implementation of the

law as it exists."  *Jones v. Berman,* 371 N.Y.S.2d 422, 429 (1975) (explaining that New York's

administrative agencies "have no authority to create a rule out of harmony with the statute"); *accord*

*Lederman v. Giuliani*, 2001 WL 902591, at *3 (S.D.N.Y. Aug. 7, 2001), *aff'd sub nom. Lederman v. Rosado*,

70 F. App'x 39 (2d Cir. 2003) (concluding that a Parks Department regulation did not directly

conflict with the Administrative Code).

"It is well-settled that 'an agency cannot promulgate rules in contravention of the will of the

Legislature.'"  *Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261, 284–85 (E.D.N.Y. 2002), *aff'd*, 60 F.

Appx 861 (2d Cir. 2003) (internal quotation marks omitted) ("[A] rule adopted by the [Taxi and

Limousine Commission] cannot conflict with a statute passed by the City Council.").  "If [a

regulation] contravenes the will of the Legislature, as expressed in the statute, the regulation must

fall."  *State Div. of Hum. Rts. on Complaint of Valdemarsen v. Genesee Hosp.*, 50 N.Y.2d 113, 118 (1980);

s*ee, e.g., Verizon New York, Inc. v. Envtl. Control Bd. Of City of New York,* 892 N.Y.S. 2d 84, 85–86 (1st

---

[25] N.Y.C. Dept. of Health and Mental Hygiene, *Notice of Adoption of Amendments to Chapter 28 of Title 24 of the Rules of the City of New York (2021),* https://www.nyc.gov/assets/doh/downloads/pdf/notice/2021/noa-article24-prohibition-flavored-tobacco.pdf (last visited July 10, 2025).
[26] *See* N.Y.C. Dept of Health and Mental Hyg., *Notice of Adoption of Amendments to Title 24 of the Rules of the City of New York (2024),* https://rules.cityofnewyork.us/wp-content/uploads/2024/07/Ch.-28-NOA_Flavored-tobacco-sales-outside-City_7-1-24.pdf (last visited July 10, 2025).

Dep't. 2009) (vacating alleged violations of a regulation promulgated by an agency because the rule "conflict[ed] with" and "effectively eliminate[d] the Administrative Code's requirement . . . ."); *People v. Balmuth*, 189 Misc. 2d 243, 244 (App. Term 1st Dept. 2001) (declaring an agency rule invalid because it "directly contravene[d] the provisions of the Administrative Code.").

Here, the pre-2024 rule promulgated by the Department of Health and Mental Hygiene conflicted with the Administrative Code and was, therefore, invalid. Section 17-715 makes it "unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid." Section 17-715(b)(1). There are no exceptions. But the pre-amendment Rule 28-02 created an exception: it permitted the sale of flavored electronic cigarettes by wholesalers "where the sale or offer of sale is made to an entity located outside the City." This exemption is, therefore, "out of harmony" with the Administrative Code. *See Jones*, 371 N.Y.S.2d at 429. Because of this conflict, the earlier Rule 28-02 was not valid when it was in effect and the NYC Defendants do not escape liability under the Administrative Code on those grounds.

### 2. As a Remedy, The City May Only Seek an Injunction

Because the City has adequately pleaded that each of the NYC Defendants violated Section 17-715, those claims survive but solely to the extent that the City seeks injunctive relief. "[A] claim for permanent injunctive relief should not ordinarily be dismissed at the pleadings stage, unless the underlying claim upon which relief is sought is dismissed." *Sec. & Exch. Comm'n v. Genesis Glob. Cap., LLC*, 2024 WL 1116877, at *16 (S.D.N.Y. Mar. 13, 2024); *accord In re Lloyd's Am. Tr. Fund Litig.*, 954 F. Supp. 656, 682 (S.D.N.Y. 1997) (citing *Tanglewood East Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568, 1576 (5th Cir. 1988) (claims seeking injunctive relief not proper subject of motion to dismiss, as plaintiffs sought permanent injunction)).

However, the City may not seek civil penalties for violations of Section 17-715 because the Administrative Code requires that the City "commence" any proceeding for civil penalties in the statutorily prescribed, local administrative body.  Section 17-716 of the Administrative Code ("Section 17-716") prescribes the civil penalties that are available for violations of Section 17-715. Its sister provision, Section 17-717 of the Administrative Code ("Section 17-717"), creates an enforcement process, pursuant to which designated administrative agencies "shall enforce the provisions of this subchapter."[27]  In particular, Section 17-717 mandates that "[a] proceeding to recover any civil penalty" authorized by Section 17-716 "*shall* be commenced" in the Office of Administrative Trials and Hearings ("OATH") or another designated administrative body.  *See* Section 17-717 (emphasis added).[28]  "The word 'shall,' in a statute, indicates a command; what follows the word 'shall' is 'mandatory, not precatory.'"  *United States v. Kahn*, 5 F.4th 167, 174 (2d Cir. 2021) (citing *Mach Mining, LLC v. Equal Employment Opportunity Commission*, 575 U.S. 480, 486 (2015)). Consequently, the plain text of Section 17-717 required the City to "commence" any proceeding to recover civil penalties in the appropriate administrative tribunal.  The City did not do so before commencing this action.

The City argues that—notwithstanding the enforcement procedure mandated by the Administrative Code—it has "plenary" authority to bring actions to enforce local laws pursuant to the N.Y.C. Charter § 394(c) and under N.Y. Gen. City L. § 20 (22).  The first of these laws, "N.Y.C. Charter § 394(c), authorizes the City, through its Corporation Counsel, 'to institute actions in law or equity . . . to maintain, defend and establish the rights, interests, revenues, property, privileges,

---

[27] It provides that the Department of Health and Mental Hygiene, Department of Consumer and Worker Protection, and Department of Finance "shall enforce" sections 17-713 through 17-719.  It then specifies a process whereby a "proceeding to recover any civil penalty . . . shall be commenced by the service of a notice of violation returnable to" the Office of Administrative Trials and Hearings ("OATH") or to the relevant administrative tribunal.

[28] Other than OATH, the Enforcement Provision provides for "an adjudication division of the [D]epartment of [F]inance[,] or the administrative tribunal selected by the [Commissioner of [F]inance," depending on where the department of finance issues such notice . . . ."

franchises or demands of the city . . . or of the people thereof, or to collect any money, debts, fines or penalties or to enforce the laws." *Elias Bochner, 287 7th Ave. Realty LLC v. City of New York*, 118 F.4th 505, 515 (2d Cir. 2024). The second law, "N.Y. Gen. City L. § 20(22), empowers all cities within New York State '[t]o maintain an action or special proceeding in a court of competent jurisdiction to compel compliance with or restrain by injunction the violation of any such ordinance or local law.'" *Id.* While these laws authorize the City to sue to enforce local laws, these authorizations do not permit the City to disregard the enforcement mechanisms set forth in the very local laws it seeks to enforce here. Indeed, the City cites no cases indicating otherwise.[29]

### D.    The City Plausibly States a Claim for Public Nuisance

The City plausibly states a claim for public nuisance because the City has alleged sufficient facts that the Moving Defendants supplied flavored e-cigarettes in New York City, which contributed to a public health crisis. "To prevail on a public nuisance claim under New York law, a plaintiff must show that the defendant's conduct amounts to a substantial interference with the exercise of a common right of the public, thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons." *In re MTBE Products Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013) (citation omitted). "Under New York law, '[e]very one who creates a nuisance or participates in the creation or maintenance thereof is liable for it.'" *Magellan Tech., Inc.*, 735 F. Supp. 3d at 329.

---

[29] The City contends that the Corporate Counsel's power pursuant to the Charter is "plenary and does not require additional statutory authorization to be specified in each law that the corporation counsel might seek to enforce through an action," citing *City of N.Y. v. Jennings*, 24 Misc. 3d 145(A), 899 N.Y.S.2d 58 (App. Term 1st Dept. 2009). But *Jennings*, a four sentence summary opinion, uses "plenary" to describe a type of action under New York law as distinct from an Article 78 proceeding. *See* 899 N.Y.S.2d at 58; *see generally Whitfield v. City of New York*, 96 F.4th 504, 519–20 (2d Cir. 2024) (explaining that "[u]nlike an ordinary civil action (often referred to as a 'plenary action'), the substantive scope of an Article 78 proceeding is limited," and describing how "Article 78 proceedings differ further from plenary civil actions in that Article 78 proceedings."). The Corporate Counsel's authority to enforce the law does not permit her to operate outside of its limitations; that the Court rejects her argument that she may should not be surprising.

Here, the City plausibly pleads that the Moving Defendants created a substantial interference with the exercise of a common right of the public by supplying addictive, flavored e-cigarettes to resellers in New York City, which created a public health crisis. "Public health crises are routinely upheld as a 'substantial interference with a public right' and 'injurious to the health of a considerable number of people.'" *Magellan Tech., Inc.*, 735 F. Supp. 3d at 329. Here, the ubiquity of the addictive, flavored e-cigarettes is plausibly alleged to endanger the public's health because individuals—particularly youth—have access to and are increasingly using the product. *See Magellan Tech., Inc.*, 735 F. Supp. 3d at 329 (concluding that the plaintiff plausibly pleaded that suppliers of e-cigarettes created a public nuisance in New York City). Indeed, the Moving Defendants do not dispute that the ubiquity of addictive flavored e-cigarettes in New York City endangers the public's health. Rather, the Moving Defendants argue that the City failed to plausibly plead facts that they sold such products to businesses and individuals in New York, a contention that the Court has already rejected.

The Moving Defendants also contend that their sales did not cause the public health crisis, but this argument also fails because they allegedly supplied the products that did. "New York courts have found that the suppliers of an item that causes a public nuisance may be liable for a public nuisance for 'setting in motion or being a force in the sequence of events resulting in injury to the public.'" *Magellan Tech., Inc.*, 735 F. Supp. 3d at 329; *see also In re MTBE Products Liab. Litig.*, 725 F.3d at 121 (quoting *Penn Cent. Transp. Co. v. Singer Warehouse & Trucking Corp.*, 86 A.D.2d 826, 826 1st Dep't 1982)) (rejecting defendant's argument that its conduct as a supplier of gasoline was too remote to support a public nuisance claim)). "Intervening actions, even multiple or criminal actions taken by third parties, do not break the chain of causation if a defendant could reasonably have expected their nature and effect." *Id.*

Here, the City plausibly pleads that "[b]ut for Defendants' actions, e-cigarette use by youth in the City would not be as widespread as today . . . ." *See* SAC ¶ 181.  As laid out in detail above, the City's complaint is replete with allegations that the Moving Defendants supplied flavored e-cigarettes to businesses and individuals in New York City.  *Id.*  As a result of the Moving Defendants' sales, "flavored e-cigarettes are found ubiquitously throughout stores in the City and sold in enormous quantities to the public."  *Id.*  Taking the allegation as true, the Court finds that the City plausibly alleges a public nuisance.

## IV.    CONCLUSION

The Moving Defendants' motions to dismiss are DENIED.  The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 76, 77, and 82.

SO ORDERED.

Dated:  July 14, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge