UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————————x

THE CITY OF NEW YORK,

                        Plaintiff,

             v.

ENVIROMD GROUP LLC; GT IMPORTS;
KAYLA WHOLESALE, INC., d/b/a The Vapery;
KLCC WHOLESALE INC.; MV TRADING LLC a/k/a
MYVAPORSTORE; PIONEER DISTRIBUTION, INC. a/k/a
WEVAPEUSA.COM a/k/a SELLER SUPREME LLC;
RZ SMOKE INC.; STAR ZONE INC.; URBAN SMOKE
DISTRIBUTORS; VAPE MORE INC. a/k/a MORE LLC;
VAPE PLUS DISTRIBUTION CORP. a/k/a G&A
DISTRIBUTION; and MARCUS BERNARD,

                      Defendants.

1:24-cv-5161-GHW-JW

——————————————————————————————x

**MEMORANDUM OF LAW OF PLAINTIFF THE CITY OF NEW YORK
IN SUPPORT OF DEFAULT JUDGMENT**

                    **MURIEL GOODE-TRUFANT**
                    Corporation Counsel of the
                     City of New York
                    *Attorney for Plaintiff The City of New York*
                    100 Church Street, Room 20-99
                    New York, New York 10007
                    (212) 356-2032

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ............................................................................................................... 1

I.    Factual Background ................................................................................................. 1

      A.    The Youth Vaping Epidemic ........................................................................... 1

      B.    The Pioneer Defendants' Conduct .................................................................. 2

II.   Procedural Background ........................................................................................... 5

ARGUMENT .................................................................................................................... 6

    I.    Legal Standard ........................................................................................ 6

    II.   The City Is Entitled to Default Judgments Against the Pioneer Defendants ................................................................................. 8

      A.    The Pioneer Defendants Have Violated the New York City Administrative Code ................................................................ 9

      B.    The Pioneer Defendants Violated New York Public Health Law § 1399-*ll* .......................................................................... 10

      C.    The Pioneer Defendants Violated the PACT Act .......................................... 11

      D.    The Pioneer Defendants Contributed to a Public Nuisance .......................... 13

    III.  The City Is Entitled to the Relief Sought Against the Pioneer Defendants ............................................................................... 14

      A.    The City Is Entitled to Injunctive Relief ...................................................... 15

      B.    The City Is Entitled to Penalties ................................................................... 16

        1.    The City Is Entitled to Penalties Under the PACT Act ........................... 16

        2.    The City Is Entitled to Penalties Under New York Public Health Law ................................................................................. 18

CONCLUSION ................................................................................................................ 19

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                   **Pages**

*Au Bon Pain Corp. v. Arctect, Inc.*,
   653 F.2d 61 (2d Cir. 1981)................................................................................................7

*Cablevision Sys. New York City Corp. v. Lokshin*,
   980 F. Supp. 107 (E.D.N.Y. 1997) .............................................................................8

*Chen v. Jenna Lane, Inc.*,
   30 F. Supp. 2d 622 (S.D.N.Y. 1998)........................................................................14

*City of N.Y. v. Adventure Outdoors, Inc.*,
   644 F. Supp. 2d 201 (E.D.N.Y. 2009) .....................................................................15

*City of N.Y. v. Enviromd Grp. LLC*,
   No. 1:24-cv-5161-GHW, 2025 U.S. Dist. LEXIS 133942
   (S.D.N.Y. July 14, 2025) ................................................... 8-9, 10, 11, 13, 14, 15, 16

*City of New York v. Magellan Tech., Inc.*,
   735 F. Supp. 3d 312. (S.D.N.Y. 2024).......................................................11, 13, 14

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011).............................................................................6, 7, 8

*Exact Invs. LLC v. Vesnaverboth*,
   2022 U.S. Dist. LEXIS 127169 (E.D.N.Y. July 18, 2022) ......................................8

*Flaks v. Koegel*,
   504 F.2d 702 (2d Cir. 1974)......................................................................................7

*Fong v. United States*,
   300 F.2d 400 (9th Cir. 1962) .....................................................................................8

*Gesualdi v. Double a Contracting, Inc.*,
   2022 U.S. Dist. LEXIS 4781 (E.D.N.Y. Jan. 10, 2022) ...........................................8

*Get Weird, LLC v. A6GSQ Store*,
   2025 U.S. Dist. LEXIS 167683 (S.D.N.Y. Aug. 28, 2025).......................................7

*Joe Hand Promotions, Inc. v. Blais*,
   2013 U.S. Dist. LEXIS 142427 (E.D.N.Y. Sept. 10, 2013)......................................8

*In re MTBE Products Liab. Litig.*,
   725 F.3d 65 (2d Cir. 2013)......................................................................................13

**Cases**                                                                       **Pages**

*New York v. United Parcel Serv., Inc.*,
    942 F.3d 554 (2d Cir. 2019)....................................................................10, 16, 18, 19

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*,
    109 F.3d 105 (2d Cir. 1997)..................................................................................7

*Trs. of the United Plant & Prod. Workers Local 175 Bens. Fund v. Mana Constr.
Grp.*,
    2022 U.S. Dist. LEXIS 51423 (E.D.N.Y. Jan. 24, 2022) ........................................8

**Statutes**

15 U.S.C. § 375(2) ...........................................................................................................11

15 U.S.C. § 375(4) ...........................................................................................................12

15 U.S.C. § 375(5) ...........................................................................................................11

15 U.S.C. § 375(7) ...........................................................................................................11

15 U.S.C. § 376a ..............................................................................................................12

15 U.S.C. § 376a(b) .........................................................................................................15

15 U.S.C. § 376a(c) .........................................................................................................15

15 U.S.C. § 376a(d) .........................................................................................................15

15 U.S.C. § 377(b) ...........................................................................................................17

15 U.S.C. § 378 ................................................................................................................15

15 U.S.C. § 378(c) ...........................................................................................................15

15 USCS §§ 375 et seq. ....................................................................................................15

15 USCS § 376a(a)(3) ......................................................................................................15

Fed. R. Civ. P. 54(c) ..........................................................................................................7

Fed. R. Civ. P. 55 ..............................................................................................................6

Fed. R. Civ. P. 55(a) ..........................................................................................................6

**Statutes**                                                                      **Pages**

Fed. R. Civ. P. 55(b) ....................................................................................................7

Fed. R. Civ. P. 55(b)(2) ...........................................................................................1, 7, 9

Fed. R. Civ. P. 55(b)(2)(B)-(C) ................................................................................7

N.Y.C. Admin. Code § 17-715 ..................................................................8, 9, 13, 16

N.Y. Pub. Hlth. L. § 1399-*ll* ....................................................................8, 10, 13, 19

N.Y. Pub. Hlth. L. § 1399-*ll*(1-a) .............................................................10, 11, 16

N.Y. Pub. Hlth. L. § 1399-*ll*(5) ...............................................................................18, 19

N.Y. Pub. Hlth. L. § 1399-*ll*(6) ...............................................................................15

N.Y. Pub. Hlth. L. § 1399-*mm* ...............................................................................13

NY Tax L. § 1183 ......................................................................................................10

**Other Authorities**

10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure*: Civil 3d §
    2688, at 63 (3d ed. 1998) .....................................................................................14

Plaintiff the City of New York (the "City"), respectfully submits this memorandum of law in support of its motion for a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against Pioneer Distribution, Inc. a/k/a *Wevapeusa.com* a/k/a Seller Supreme LLC ("Pioneer") and David Alfih ("Alfih") (collectively, the "Pioneer Defendants").

## **BACKGROUND**

The City sued the Pioneer Defendants in this action to curtail e-cigarette sales made in violation of federal, state and city law. Despite proper service of process, the Pioneer Defendants defaulted, failing to appear or otherwise respond to the City's complaint. The facts supporting a grant of default against the Pioneer Defendants are set forth in the accompanying declaration of Eric Proshansky, dated September 16, 2025 ("Proshansky Decl."), and accompanying exhibits. The factual allegations — all of which are deemed admitted by the Pioneer Defendants' default — establish each of the four legal claims set forth in the City's Second Amended Complaint ("SAC"). *Proshansky Decl.* Ex. A. Accordingly, a default judgment should be granted. Independent evidence establishes the City's entitlement to $275,000 in penalties.

## I.    **Factual Background**

### A.  **The Youth Vaping Epidemic**

In or around 2018, surveys of young people began to show rising nicotine consumption, reversing the decades-long decline in youth nicotine use. *SAC* ¶ 33. As alleged in the Second Amended Complaint, the increase was driven by "youth access to flavored tobacco products"— principally disposable, flavored e-cigarettes—not conventional combustible tobacco use. *Id.* Flavored e-cigarettes—manufactured principally in China and offered in a myriad of exotic fruit, candy and dessert flavors—are enormously attractive to youth; in one study, 81% of first time nicotine users between the ages of 12 and 17 reported using flavored products. *Id.* ¶ 44. Flavored

e-cigarettes have been characterized as leading to "epidemic levels of youth use of e-cigarettes." *Id.* ¶ 46 (internal quotations omitted).

The ill-effect of e-cigarette use on young people is profound: as explained by the Center for Disease Control, nicotine in e-cigarettes affects the developing brain, addicting youth users more readily than adults. *Id.* ¶ 40. Exposing the developing brain to nicotine leads to impaired impulse control, to deficits in attention and cognition, and to mood disorders. *Id.* Nicotine also fosters susceptibility to other addictive substances. *Id.* E-cigarette use among youth has "lasting consequences for cognitive ability, mental health, and even personality." *Id.* (internal quotations omitted).

New York City has experienced an increase in youth e-cigarette use comparable to that of the nation as a whole, with use of e-cigarettes by New York City students consistently exceeding that of combustible tobacco. *Id.* ¶ 36. In 2021, for example, 11% of New York City public high school students reported using an e-cigarette in the past month; 3% reported smoking cigarettes. *Id.* In a 2018 survey, 6.7% of public *middle school* students reported current use of electronic vapor products; only 0.9% reported currently smoking traditional cigarettes. *Id.* (emphasis added). To address this epidemic, New York State and City enacted comprehensive legislation imposing measures more stringent than the already restrictive federal legislation, including prohibitions on sales of flavored e-cigarettes, delivery limitations, and bans on youth sales. *Id.* ¶¶ 171, 172.

### B.  The Pioneer Defendants' Conduct

Pioneer is a New York corporation with a principal place of business at or formerly at 1110 Coney Island Avenue, Suite 402, and/or 1090 Coney Island Avenue, Brooklyn, NY 11230. *Id.* ¶ 90. Pioneer operates a website at *www.Wevapeusa.com,* advertising dozens of brands of disposable, flavored e-cigarettes, each offered in dozens of flavors. *Id.* ¶ 90. On information and

belief, Pioneer is owned and operated in whole or in part by David Alfih and Marcus Bernard.  *Id.* ¶ 91.

The Second Amended Complaint pleads that by means of the *Wevapeusa.com* website, Pioneer sells flavored e-cigarettes to consumers in New York City and elsewhere. *Id.* ¶ 93.  From June 2023, until the present, thousands of prospective e-cigarette purchasers accessed *Wevapeusa.com*, *id*.  The Second Amended Complaint further alleges that in June 2023, Pioneer purchased 2,400 "units" of EB Design 5000 (formerly known as "Elf Bar") flavored e-cigarettes from an Arizona-based distributor YLSN, *id.* ¶ 91; that the e-cigarettes purchased from YLSN by the Pioneer Defendants were—by reason of appearing on the *Webapeuse.com*—website necessarily offered for sale and possessed with intent to sell and offer for sale in the City, *id.* ¶¶ 92-93; and, on information and belief, that the e-cigarettes purchased from YLSN were in fact sold to consumers in the City.  *Id.*[1]

The Second Amended Complaint also describes several sales made by the Pioneer Defendants. On or about March 11, 2024, an investigator accessed the website *Wevapeusa.com* and purchased a "Pacific Cooler flavor Air Bar Mini, 2000 puff e-cigarette" for delivery to a Brooklyn, New York address.  *Id.* ¶ 94.  On March 19, 2024, a package containing the Air Bar flavored e-cigarette was delivered by United Parcel Service to the Brooklyn address specified in the website order.  *Id.* ¶ 95.  The package was not labeled to indicate that it contained vapor products, not labeled as required by the Prevent All Cigarette Trafficking Act (the "PACT Act"), and did not require an adult signature to be received.  *Id*.  The delivery label showed a return address of "Marcus Bernard, 3472011345, Seller Supreme LLC, 1090 Coney Island Ave.,

---

[1] As shown below, a "unit" is a single e-cigarette, such that the purchase from YLSN was of 2,400 e-cigarettes. *Proshansky Decl*. ¶ 13 & Ex. F.

Brooklyn, New York, 11230." *Id.* A number on the delivery label, 3472011345, was a telephone number traced back to David Alfih. *Id.*

On or about March 24, 2024, an investigator again accessed the website address *Wevapeusa.com* and purchased one "Kiwi Lemon Shake 'Suorin' Cube Disposable 1500 puffs" e-cigarette for delivery to the same Brooklyn, New York address provided for the March 11, 2024, order. *Id.* ¶ 96. On March 27, 2024, a package was received at the Brooklyn address specified in the order. *Id.* ¶ 97. Instead of the product ordered, the package contained five "Strawberry Kiwi Guava flavored Hyde Rebel Pro" e-cigarettes, and an Airbar e-cigarette labeled "wevapeusa free sample." *Id.* The package was not labeled to indicate that it contained vapor products, not labeled as required by the PACT Act, and did not require an adult signature to be received. *Id.* The package was delivered by United Parcel Service, with a return address of Marcus Bernard, 3472011345, Seller Supreme LLC, 1090 Coney Island Ave., Brooklyn, NY, 11230. *Id.* The number on the delivery label, 3472011345 was a telephone number traced back to David Alfih. *Id.*

Since the filing of the Second Amended Complaint, the City has made additional undercover purchases of flavored e-cigarettes from the Pioneer Defendants. On or about April 29, 2025, an investigator again accessed the website *Wevapeusa.com* and purchased a "Puff Bar Zero Ultra Disposable Vape" in Melon Kiwi flavor and a Puff Bar Pod, "Mango" flavor for delivery to a New York City address. *Proshansky Decl.* at ¶ 8. On or about May 13, 2025, a package was received at the Brooklyn address specified in the order. *Id.* ¶ 9. The package was not labeled to indicate that it contained vapor products, not labeled as required by the PACT Act, and did not require an adult signature to be received. *Id.* The package showed a return address of Alfani

Shipping, 7550 Creedmoor Road, Suite 104, #1034, Raleigh, NC 27613, which is a mail drop, and was delivered by FedEx to the Brooklyn address specified in the order. *Id.* ¶ 9.

On or about August 25, 2025, an investigator again accessed the website *Wevapeusa.com* and purchased a Lost Mary Turbo 35K Pink Lemonade e-cigarette. *Id.* at ¶ 11. On August 27, 2025, a package was received at the Brooklyn address specified in the order. *Id.* ¶ 12. The package was not labeled to indicate that it contained vapor products, not labeled as required by the PACT Act, and did not require an adult signature to be received. *Id.* The package showed a return address of Alfani Shipping, Alfani Shipping (929) 743-9994, 7550 Creedmoor Road, Raleigh, NC, 27613. *Id.*

## II.    <u>Procedural Background</u>

This action was commenced in the Supreme Court of the State of New York, New York County on April 4, 2024, with the filing of a summons and complaint under Index Number 451009/2024. *Dkt. No.* 1, Exs. A, C. The summons and complaint were served on Pioneer by service upon the Secretary of State of New York on April 19, 2024. *Dkt. No.* 103, Ex. A.

The City filed an amended complaint on June 14, 2024, adding defendant David Alfih as a defendant. *Dkt. No.* 1, Ex. OO. Defendants removed the case to the Southern District of New York on July 8, 2024. The City further amended the complaint on August 21, 2024. *Dkt. No.* 61. A copy of the summons, the Second Amended Complaint with exhibits, and various court orders were served upon David Alfih at his Brooklyn, NY address, with additional service by mail, on September 24, 2024. *Dkt. No.* 103, Ex. B. Neither Pioneer nor David Alfih have appeared, answered or otherwise moved in this action.

On April 7, 2025, the Clerk of Court entered a Certificate of Default against Pioneer and David Alfih. *Dkt. No.* 104.

## ARGUMENT

For the reasons set forth below, the City respectfully requests that the Court (1) enter a default judgment against Pioneer Distribution, Inc., a/k/a Wevapeusa.com, a/k/a Seller Supreme LLC and David Alfih, a/k/a David Alfieh, a/k/a DJ Alfani; (2) enjoin Pioneer Distribution, Inc., a/k/a Wevapeusa.com, a/k/a Seller Supreme LLC, and David Alfih, a/k/a David Alfieh, a/k/a DJ Alfani from violating the PACT Act, the New York Public Health Law and the New York City Administrative Code by making sales of e-cigarettes and flavored e-cigarettes over the Internet and causing them to be delivered to consumers and unlicensed persons nationwide; (3) declare that the Pioneer Defendants cause or contribute to a public nuisance and require them to abate that nuisance; and (4) require Pioneer Distribution, Inc. a/k/a Wevapeusa.com a/k/a Seller Supreme LLC and David Alfih a/k/a David Alfieh, a/k/a DJ Alfani to pay the City $275,000 in penalties jointly and severally pursuant to the PACT Act and New York Public Health Law.

## I.    Legal Standard

In *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128-29 (2d Cir. 2011), the Court of Appeals for the Second Circuit set forth the rules applicable to the entry of default:

> Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation. Rule 55 provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment.

> The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff. The entry of default is governed by Rule 55(a), which provides:

> > When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

The entry of a default, while establishing liability, is not an admission of damages. *Id.*

Once a party has obtained an entry of default, it must seek a default judgment from the court pursuant to Federal Rule of Civil Procedure 55(b). Entry of a default judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop,* 645 F.3d at 128. Under Rule 55(b)(2), a district court may "in the exercise of its discretion . . . 'conduct hearings or make referrals' as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations." *Id.* at 129 (quoting Fed. R. Civ. P. 55(b)(2)(B)-(C)).

In entering a default judgment, a court accepts as true the factual allegations in the complaint, except those relating to damages or other monetary relief. *Id.* at 137 ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint."); *Au Bon Pain Corp. v. Arctect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). The "quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). A hearing is not a necessity for the determination of damages; a court may rely on detailed affidavits or documentary evidence to calculate the appropriate amount of monetary relief. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *Get Weird, LLC v. A6GSQ Store*, 2025 U.S. Dist. LEXIS 167683, at *6 (S.D.N.Y. Aug. 28, 2025).

A defaulting defendant's constructive admission of the well-pleaded facts of a complaint is not by itself sufficient for entry of a default judgment because a district court "need not agree that the alleged facts constitute a valid cause of action." *Au Bon Pain*, 653 F.2d at 65. The Second Circuit has thus suggested that prior to entering a default judgment, a district court is "*required* to

determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Mickalis Pawn Shop*, 645 F.3d at 137 (emphasis added). Allegations made on information and belief are sufficient to hold a defendant liable on a default judgment where the allegations state facts primarily within the defendant's knowledge. *Fong v. United States*, 300 F.2d 400, 409 (9th Cir. 1962) (finding allegations on information and belief sufficient to hold defendant individually liable on default judgment because they stated facts primarily within defendant's knowledge); *Joe Hand Promotions, Inc. v. Blais*, 2013 U.S. Dist. LEXIS 142427 (E.D.N.Y. Sept. 10, 2013) (deeming admitted allegations pled on information and belief in default judgment context); *Exact Invs. LLC v. Vesnaverboth*, 2022 U.S. Dist. LEXIS 127169, at *7-8 (E.D.N.Y. July 18, 2022) (same); *Trs. of the United Plant & Prod. Workers Local 175 Bens. Fund v. Mana Constr. Grp.*, 2022 U.S. Dist. LEXIS 51423 (E.D.N.Y. Jan. 24, 2022) (same); *Gesualdi v. Double a Contracting, Inc.*, 2022 U.S. Dist. LEXIS 4781 (E.D.N.Y. Jan. 10, 2022) (same). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997).

## II.    The City Is Entitled to Default Judgments Against the Pioneer Defendants

A default judgment is appropriate against the Pioneer Defendants because the Clerk of the Court has already issued a Certificate of Default as to each of them noting their failure to respond to the Second Amended Complaint. *Dkt. No*. 104. The allegations of the Second Amended Complaint also establish as a matter of law the Pioneer Defendants' liability for violating New York City Administrative Code ("Ad. Code") § 17-715; New York Public Health Law ("Pub. Hlth. L.") § 1399-*ll* (1-a); the PACT Act; and for causing and contributing to a public nuisance. *See generally City of N.Y. v. Enviromd Grp. LLC,* No. 1:24-cv-5161-GHW, 2025 U.S. Dist. LEXIS

133942 (S.D.N.Y. July 14, 2025). Therefore, pursuant to FRCP 55(b)(2), the Court should enter the requested judgment against them.

**A.        The Pioneer Defendants Have Violated the New York City Administrative Code**

NYC Administrative Code §17-715 states that "[i]t shall be unlawful for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid." The March 11, 2024, March 24, 2024, April 29, 2025, and August 27, 2025, purchases of flavored e-cigarettes by City investigators establish that the Pioneer Defendants made sales of flavored e-cigarettes in the City in violation of Ad. Code § 17-715. *SAC* ¶¶ 94-97; *Proshansky Decl*. ¶¶ 8-12.

In June 2023, the Pioneer Defendants purchased 2,400 "units" of EB Design BC 5000 brand of flavored e-cigarettes from Arizona-based distributor YLSN. *SAC* ¶ 92; *Proshansky Decl*. Ex. F. The *Wevapeusa.com* website has offered for sale numerous varieties of flavored e-cigarettes, and continues to the present to offer e-cigarettes for sale. *Proshansky Decl.* ¶ 8-11. These facts further establish the Pioneer Defendants' violation of Ad. Code § 17-715 because the YLSN EB Design BC 5000 flavored e-cigarettes were received by the Pioneer Defendants in the City, and the offer of flavored e-cigarettes on *Wevapeusa.com* website establishes that Pioneer both possessed flavored e-cigarettes in the City and possessed them with the intent to offer or sell them in the City. *SAC* ¶¶ 91-93.

**B.      The Pioneer Defendants Violated New York Public Health Law § 1399-*ll***

New York Public Health Law § 1399-*ll* regulates the "unlawful shipment or transport of cigarettes and vapor products." *Pub. Hlth. L.* § 1399-*ll*(1).  "Both the [New York Attorney General] and corporation counsel for political subdivisions of the state are authorized to bring an action against a violator to recover civil penalties."  *New York v. United Parcel Serv., Inc.*, 942 F.3d 554, 563 (2d Cir. 2019) (citing *Pub. Hlth. L.* § 1399-*ll*(6)); *see also Enviromd Grp.,* 2025 U.S. Dist. LEXIS 133942 at *32.

Pub. Hlth. L. § 1399-*ll*(1-a) makes it unlawful for "any person" to "ship or cause to be shipped" e-cigarettes to any person other than three categories of authorized recipients: registered "vapor products dealers," warehouse proprietors, and government agents:

> It shall be unlawful for any person engaged in the business of selling vapor products to ship or cause to be shipped any vapor products intended or reasonably expected to be used with or for the consumption of nicotine to any person in this state who is not: (a) a person that receives a certificate of registration as a vapor products dealer under article twenty-eight-C of the tax law; (b) an export warehouse proprietor . . . ; or (c) a person who is an officer, employee or agent of the United States government . . . .  For purposes of this subdivision, a person is a licensed or registered agent or dealer described in paragraph (a) of this subdivision if his or her name appears on a list of licensed or registered agents or vapor product dealers published by the department of taxation and finance, or if such person is licensed or registered as an agent or dealer under article twenty eight-C of the tax law.

Pub. Hlth. L.. § 1399-*ll*(1-a).[2]  The Second Amended Complaint establishes that the Pioneer Defendants violated Pub. Hlth. L. § 1399-*ll*(1-a) by shipping "vapor products intended . . . to be used with or for the consumption of nicotine" to persons not within the statutory categories of persons permitted to receive shipments of nicotine products.  The March 11, 2024, March 24,

---

[2] Article twenty-eight-C of the tax law requires that "[e]very person who intends to sell vapor products in this state must receive from the commissioner a certificate of registration prior to engaging in business." NY Tax L. § 1183.

2024, April 29, 2025, and August 27, 2025, sales to an investigator are three examples of Pub. Hlth. L. § 1399-*ll*(1-a) violations because the investigator was not a licensed vapor products distributor, and the Pioneer Defendants caused e-cigarettes from *Wevapeusa.com* to be delivered by UPS and FedEx.  *SAC* ¶¶ 101-102; *Proshansky Decl.* ¶¶ 8-12.

**C.    The Pioneer Defendants Violated the PACT Act**

The Second Amended Complaint establishes that the Pioneer Defendants have violated the PACT Act by making delivery sales of e-cigarettes, both flavored and *unflavored*, to consumers in New York City and elsewhere.[3]  The PACT Act's requirements governing cigarette sales — including e-cigarettes — apply only to "delivery sales," defined as:

> Any sale of cigarettes or smokeless tobacco to a consumer if —
>
>> (A) the consumer submits the order for the sale by means of a telephone or other method of voice transmission, the mails, or the Internet or other online service, or the seller is otherwise not in the physical presence of the buyer when the request for purchase or order is made; or
>>
>> (B) the cigarettes or smokeless tobacco are delivered to the buyer by common carrier, private delivery service, or other method of remote delivery, or the seller is not in the physical presence of the buyer when the buyer obtains possession of the cigarettes or smokeless tobacco.

15 U.S.C. § 375(5).  Whether a particular sale is a PACT Act "delivery sale" depends on whether the purchaser is a "consumer."  *See Enviromd Grp.,* 2025 U.S. Dist. LEXIS 133942 at *22-24. The PACT Act defines "consumer" as follows:

> The term "consumer" —
>
>> (A) means any person that purchases cigarettes or smokeless tobacco; and

---

[3] As defined by the PACT Act, the term "cigarette" includes "an electronic nicotine delivery system." 15 U.S.C. § 375(2). An e-cigarette "is an electronic nicotine delivery system." *Id.* § 375(7); *see also City of New York v. Magellan Tech., Inc*., 735 F. Supp. 3d 312, 321 n.2. (S.D.N.Y. 2024); *Enviromd Grp.,* 2025 U.S. Dist. LEXIS 133942 at *14.

(B) does not include any person lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco.

*Id.* § 375(4). The Pioneer Defendants' sales to City's investigators were sales to PACT Act "consumers" because the investigators were not "lawfully operating" tobacco businesses. The sales were delivery sales because they were to consumers, and remotely ordered and delivered.

As to delivery sales, the PACT Act requires that:

(a) In general

With respect to delivery sales into a specific State and place, each delivery seller shall comply with–

(1) . . . shipping requirements . . . ;
(2) . . . recordkeeping requirements. . . ;
(3) all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place, including laws imposing —

(A) excise taxes;
(B) licensing and tax-stamping requirements;
(C) restrictions on sales to minors; and
(D) other payment obligations or legal requirements relating to the sale, distribution, or delivery of cigarettes or smokeless tobacco; and

(4) . . . tax collection requirements . . . .

15 U.S.C. § 376a. Thus, under the PACT Act a delivery seller must comply with each of the above requirements, as well as with "all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco." *Id.*

The Second Amended Complaint establishes that the Pioneer Defendants violated numerous of the above specific provisions of the PACT Act (for example, restrictions on sales to minors) by shipping e-cigarettes to "consumers" and further violated the Act by failing to comply with "all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place." *Id.*

Specifically, the Pioneer Defendants' March 11, 2024, March 24, 2024, April 29, 2025, and August 27, 2025, delivery sales (established above) violated "laws generally applicable to sales of cigarettes" in New York City, namely, i) the City's prohibition on sales of flavored e-cigarettes, N.Y.C. Admin. Code § 17-715, ii) the State's ban on delivering e-cigarettes, Pub. Hlth. L. § 1399-*ll* and iii) the State law prohibiting retail sales of flavored e-cigarettes, Pub. Hlth. L. § 1399-*mm.* The sales also did not comply with the PACT Act itself by failing to provide for an adult signature upon delivery, or for external package warnings. *See Enviromd Grp.,* 2025 U.S. Dist. LEXIS 133942 at *20-21. The sales thus did not comply with an "other" law generally applicable to cigarette sales in the City, *i.e.*, the PACT Act itself. Accordingly, the Second Amended Complaint establishes that the Pioneer Defendants violated the PACT Act.

## D. The Pioneer Defendants Contributed to a Public Nuisance

The Second Amended Complaint establishes that the Pioneer Defendants contributed to a public nuisance because the City has alleged sufficient facts showing the Pioneer Defendants to have supplied flavored e-cigarettes in New York City, which caused or contributed to a public health crisis. "To prevail on a public nuisance claim under New York law, a plaintiff must show that the defendant's conduct amounts to a substantial interference with the exercise of a common right of the public, thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons." *In re MTBE Products Liab. Litig*., 725 F.3d 65, 121 (2d Cir. 2013) (citation omitted). "Under New York law, '[e]very one who creates a nuisance or participates in the creation or maintenance thereof is liable for it.'" *City of N.Y. v. Magellan Tech., Inc*., 735 F. Supp. 3d 312, 329 (S.D.N.Y. 2024); *see also Enviromd Grp.,* 2025 U.S. Dist. LEXIS 133942 at *31.

Here, the Second Amended Complaint establishes that the Pioneer Defendants caused, created or contributed to a substantial interference with the exercise of a common right of the

public by supplying addictive, flavored e-cigarettes in New York City, creating a public health crisis.  "Public health crises are routinely upheld as a 'substantial interference with a public right' and 'injurious to the health of a considerable number of people.'"  *Magellan Tech., Inc.*, 735 F. Supp. 3d at 329; *Enviromd Grp.,* 2025 U.S. Dist. LEXIS 133942 at *46.  The admitted allegations of the Second Amended Complaint establish that the ubiquity of addictive, flavored e-cigarettes endangers the public's health because individuals—particularly youth—have access to and are increasingly using an injurious product.  *See Magellan Tech., Inc.*, 735 F. Supp. 3d at 329 (concluding that the plaintiff plausibly pleaded that suppliers of e-cigarettes created a public nuisance in New York City); *Enviromd Grp.,* 2025 U.S. Dist. LEXIS 133942 at *46-47 (same). The Second Amended Complaint further establishes that "[b]ut for Defendants' actions, e-cigarette use by youth in the City would not be as widespread as today."  *See SAC* ¶ 181.  The Second Amended Complaint establishes that the Pioneer Defendants supplied flavored e-cigarettes to individuals in New York City through its website *Wevapeusa.com, SAC* ¶ 93, resulting in  flavored e-cigarettes being "found ubiquitously throughout stores in the City and sold in enormous quantities to the public." *SAC* ¶ 181.  These plausibly pleaded allegations for purposes of a motion to dismiss are admitted facts for purposes of default.  The Second Amended Complaint accordingly alleges a public nuisance.

III.    <u>**The City Is Entitled to the Relief Sought Against the Pioneer Defendants**</u>

Once "the court determines that a judgment by default should be entered, it will determine the . . . character of the recovery that should be awarded." *Chen v. Jenna Lane, Inc.*, 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure*: Civil 3d § 2688, at 63 (3d ed. 1998)).

**A.  The City Is Entitled to Injunctive Relief**

The PACT Act, the City Administrative Code, New York Public Health Law and public nuisance common law all provide for injunctive relief to remedy violations.  *See* 15 U.S.C. § 378(c);[4]  N.Y. Pub. Hlth. L. § 1399-*ll*(6);[5] *see also Enviromd Grp.*, 2025 U.S. Dist. LEXIS 13394 at * 44; *City of N.Y. v. Adventure Outdoors, Inc.*, 644 F. Supp. 2d 201 (E.D.N.Y. 2009) (adopting report and recommendation imposing permanent injunction on defaulting defendant as a remedy for common law public nuisance).  Should the proposed default judgment be granted, the City will offer a suitably specific order enjoining the Pioneer Defendants from

    i)    per the PACT Act, making delivery sales of e-cigarettes to consumers that do not comply with the shipping requirements of 15 U.S.C. § 376a(b), the recordkeeping requirements of 15 U.S.C. § 376a(c), the delivery requirements of 15 U.S.C. § 376a(d), and that do not comply with all State, local, tribal, and other laws generally applicable to sales of e-cigarettes sold within the City of New York;

---

[4] **(c) State, local, and tribal enforcement**.

(1) In general.

(A) Standing. A State, through its attorney general, or a local government or Indian tribe that levies a tax subject to section 2A(a)(3) [15 USCS § 376a(a)(3)], through its chief law enforcement officer, may bring an action in a United States district court to prevent and restrain violations of this Act [15 USCS §§ 375 et seq.] by any person or to obtain any other appropriate relief from any person for violations of this Act [15 USCS §§ 375 et seq.], including civil penalties, money damages, and injunctive or other equitable relief.

15 U.S.C. § 378.

[5] … "[T]he corporation counsel of any political subdivision that imposes a tax on cigarettes or vapor products intended or reasonably expected to used with or for the consumption of nicotine may bring an action to recover the civil penalties provided by subdivision five of this section and for such other relief as may be deemed necessary with respect to any cigarettes or vapor products intended or reasonably expected to be used with or for the consumption of nicotine shipped, caused to be shipped or transported in violation of this section to any person located within such political subdivision."

*N.Y. Pub. Health Law* § 1399-*ll*(6).

ii) per NYC Admin. Code § 17-715 selling or offering for sale, or possessing with intent to sell or offering for sale, any flavored electronic cigarette or flavored e-liquid in New York City;

iii) per N.Y. Pub. Hlth. L. §1399-*ll* (1-a) shipping or causing to be shipped e-cigarettes intended or reasonably expected to be used with or for the consumption of nicotine to any person in this state who is not: (a) vapor products dealer licensed under article twenty-eight-C of the tax law; (b) an export warehouse proprietor or (c) an officer, employee or agent of the United States government; and

iv) engaging in conduct that injures the health and safety of a considerable number of people in the City of New York by distributing flavored e-cigarettes.

**B. The City Is Entitled to Penalties**

The City is entitled to penalties under both the PACT Act and New York Public Health Law.[6]  "In determining the amount of civil penalties, district courts are typically guided by a number of factors, including the good or bad faith of the defendants, the injury to the public, and the defendant's ability to pay." *New York v. UPS*, 942 F.3d 554, 599 (2d Cir. 2019).  Because the Pioneer Defendants have acted in bad faith and the injury they have inflicted on the public is profound, the City is entitled to the maximum amount of penalties under both statutes.

**1. The City Is Entitled to Penalties Under the PACT Act**

The PACT Act provides for civil penalties:

> (1) In general. … whoever violates this Act shall be subject to a civil penalty in an amount not to exceed (A) in the case of a delivery seller, the greater of—(i) $5,000 in the case of the first violation, or $10,000 for any other violation; or (ii) for any violation, 2 percent of the gross sales of cigarettes or smokeless tobacco of the delivery seller during the 1-year period ending on the date of the violation.

---

[6] The facts of this case do not permit recovery of penalties under NYC Admin. Code § 17-715 in this action. *See Enviromd Grp.,* 2025 U.S. Dist. LEXIS 133942 at *44.

15 U.S.C. § 377(b). The Pioneer Defendants' default makes their gross sales unavailable for a penalty calculation, and that weighs in favor of imposing the maximum penalty amount of $5,000.00/$10,000 per violation on those defendants. More significant to the imposition of the maximum penalty is that service of the Complaint and Second Amended Complaint on the Pioneer Defendants provides them with actual knowledge that their conduct violates federal, state and City law. Despite that knowledge, they have stubbornly persisted in their sales, continuing to operate the *Wevapeusa.com* to conduct internet sales of untold quantities of flavored e-cigarettes in the many months following service and continuing to make further sales to the same New York City address that was identified to them when they were served with the Complaint and Second Amended Complaint.

The PACT Act does not define a "violation." However, the Act prohibits "delivery sales," rather than sales of individual items (unlike N.Y. Pub. Hlth. L. 1399-*ll*(1-a)). It is most consistent with that language to impose a penalty for each "delivery sale," as that most closely parallels the conduct proscribed by a "violation" of the Act. Here, the investigative purchases on March 11, 2024, March 24, 2024, April 29, 2025, and August 27, 2025, constitute four delivery sales. Imposing the maximum allowable penalty, for the reasons provided above, the total penalty for the investigative sales is $35,000—*i.e.*, $5,000 for the first violation on March 11, 2024, and $10,000 for the three subsequent deliveries received on March 24, 2024, April 29, 2025 and August 27, 2025.

Nothing is known of the Pioneer Defendants' ability to pay, by reason of their default. Their bad faith, however, is well-established by the default itself, but still more clearly by their continued violation of the very laws under which they have been sued. The harm to the public by the Pioneer Defendants' sales of e-cigarettes is profound, as alleged in the Second Amended

Complaint, and as demonstrated by the sheer number of laws passed at every level of government that are intended to bar e-cigarette sales to youth. "We recognize that both New York and Congress take cigarette trafficking seriously, which is why several laws address the conduct for which [the defendant] being held liable." *New York v. UPS*, 942 F.3d 554, 600 (2d Cir. 2019). Thus, the maximum penalty amounts should be imposed.

### 2.    The City Is Entitled to Penalties Under New York Public Health Law

The City is entitled to further penalties under the New York Public Health Law.  N.Y. Pub. Hlth. L. § 1399-*ll*(5) provides

> [A]ny person who violates the provisions of subdivision one, one-a, two or three of this section shall be subject to a civil penalty not to exceed the greater of (a) five thousand dollars for each such violation; (b) one hundred dollars for each pack of cigarettes shipped, caused to be shipped or transported in violation of such subdivision; or (c) one hundred dollars for each vapor product intended or reasonably expected to be used with or for the consumption of nicotine shipped, caused to be shipped or transported in violation of such subdivision.

The Second Amended Complaint pleads that in June 2023, Pioneer purchased 2,400 "units" of EB Design 5000 flavored e-cigarettes from Arizona-based distributor YLSN,  *id.* ¶ 91; that by means of the *Wevapeusa.com* website, the Pioneer Defendants sell flavored e-cigarettes to consumers in New York City and elsewhere, *id.* ¶ 93; that from June 2023, and continuing to the present, thousands of prospective e-cigarette purchasers accessed *Wevapeusa.com, id.*; that the e-cigarettes purchased by Pioneer from YLSN were necessarily offered for sale and possessed with intent to offer for sale in the City; *id.* ¶¶ 92-93; and that on information and belief, the e-cigarettes purchased from YLSN were in fact sold to consumers in the City.  *Id.*[7]

---

[7] As noted above, *supra* at 8, allegations made on information and belief are deemed true if they address facts that would be within the knowledge of the defaulting defendant.  Whether or not the

As shown in Exhibit F of the Proshansky Declaration, an invoice received from YLSN documenting its e-cigarette sales to the Pioneer Defendants reveals the sale on or about June 13, 2023 of twelve cartons of various flavors of EB Design 5000 e-cigarettes.  Each carton contains 200 e-cigarettes, for a total of 2,400 e-cigarettes in the June 13, 2023 order.  *Id*.   As explained above, the Public Health Law imposes a penalty of $100 on "each vapor product shipped."  The total penalty under N.Y. Pub. Hlth. L. § 1399-*ll*(5) calculated for 2,400 e-cigarettes would thus be $240,000.00.  Because, as explained above, the Pioneer Defendants have acted in bad faith and inflicted injury on the public health of City residents, the City is entitled to penalties under the Public Health Law, in addition to those imposed under the PACT Act.[8]

## **CONCLUSION**

For the foregoing reasons, the City respectfully requests that the Court grant its motion for default judgment against the Pioneer Defendants and impose a penalty of $275,000.

---

Pioneer Defendants sold the e-cigarettes purchased from YLSN to New York City consumers is certainly within the knowledge of the of the Pioneer Defendants.  The allegation of the Second Amended Complaint that the sales were to City residents is accordingly deemed true for purposes of determining damages.

[8] The Second Circuit has expressly held in an earlier case brought by the City under both the PACT Act and N.Y. Pub. Hlth. L. § 1399-*ll*(5) that it is improper to "stack" the penalties provided by the two statutes.  "The double counting of PACT Act and PHL § 1399-*ll* penalties here falls within the category of unreasonable penalties." *New York v. UPS*, 942 F.3d at 600. Here, however, the City has not engaged in double counting because a different statutory penalty is to be imposed on different sales.  Multiple penalties are not being imposed on the same sale. The City has merely chosen from among several applicable penalties and applied them to different, identified sales.

Dated:      New York, New York
            September 16, 2025

                                MURIEL GOODE-TRUFANT
                                Corporation Counsel of the
                                 City of New York
                                *Attorney for Plaintiff The City of New York*
                                100 Church Street, Rm. 20-099
                                New York, New York 10007
                                (212) 356-2032

                                By:    */s/ Eric Proshansky*
                                       Eric Proshansky
                                       Aatif Iqbal
                                       Elizabeth Slater

                                       Assistant Corporation Counsels