UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————x

THE CITY OF NEW YORK,

                             Plaintiff,

          v.

ENVIROMD GROUP LLC; GT IMPORTS;
KAYLA WHOLESALE, INC., d/b/a The Vapery;
KLCC WHOLESALE INC.; MV TRADING LLC a/k/a
MYVAPORSTORE; PIONEER DISTRIBUTION, INC. a/k/a
WEVAPEUSA.COM a/k/a SELLER SUPREME LLC;
RZ SMOKE INC.; STAR ZONE INC.; URBAN SMOKE
DISTRIBUTORS; VAPE MORE INC. a/k/a MORE LLC;
VAPE PLUS DISTRIBUTION CORP. a/k/a G&A
DISTRIBUTION; and MARCUS BERNARD,

                             Defendants.

                                       1:24-cv-5161-GHW-JW

——————————————————————————x

## MEMORANDUM IN SUPPORT OF
## THE CITY OF NEW YORK'S  MOTION FOR SUMMARY JUDGMENT

**STEVEN BANKS**
Corporation Counsel of the
   City of New York
*Attorneys for Plaintiff The City of New York*
100 Church Street, Rm. 3-211
New York, New York 10007
(212) 356-2032

June 4, 2026

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .......................................................................................................................... 3

      A.    The Public Health Harm from Flavored Vapes ................................................. 3

      B.    Legislative Efforts to Curb Sales ....................................................................... 6

      C.    RZ Smoke's Sales ................................................................................................ 7

LEGAL STANDARD ................................................................................................................... 7

ARGUMENT

      I.    RZ Smoke Violates PHL § 1399-*ll*(1-a) ........................................................ 8

      II.    RZ Smoke Has Sold Flavored E-Cigarettes in Violation
          of The New York City Administrative Code .................................................. 10

      III.    RZ Smoke's Sales Violate the PACT Act......................................................... 10

          A.    RZ Smoke's Deliveries of Flavored E-Cigarettes
              into the City Are PACT Act Delivery Sales ........................................ 11

              1.    RZ Smoke Was Not in the Physical Presence of
                    Its Purchasers ........................................................................12

              2.    All of RZ Smoke's Customers Were "Consumers".......................13

          B.    RZ Smoke Violates Federal, State, and City Laws
               Applicable to E-Cigarettes ...................................................... 15

      IV.    The City Is Entitled to Penalties to Be Awarded After a
          Hearing.............................................................................................................. 16

          A.    The PACT Act and the PHL Authorize the City
               to Collect Penalties ................................................................. 16

          B.    The City Is Entitled to Substantial Penalties......................................... 18

CONCLUSION............................................................................................................................ 21

**TABLE OF AUTHORITIES**

**Cases**                                                                                          **Pages**

*Advance Pharmaceuticals, Inc. v. United States*,
    391 F.3d 377 (2d Cir. 2004)..................................................................................19

*Allen v. Couhlin*,
    64 F.3d 77 (2d Cir. 1995)......................................................................................8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).............................................................................................7

*Capitol Recs., LLC v. Vimeo, Inc.*,
    125 F.4th 409 (2d Cir. 2025) ............................................................................ 7-8

*City of Chicago v. Equte LLC*,
    2023 U.S. Dist. LEXIS 169995
    (N.D. Ill. Sep. 19, 2023).......................................................................................3

*City of N.Y. v. Milhelm Attea & Bros.*,
    2012 U.S. Dist. LEXIS 116533
    (E.D.N.Y. Aug. 17, 2012) ......................................................................... 16, 18-19

*City of New York v. Enviromd Grp. LLC*,
    2025 U.S. Dist. LEXIS 133942
    (S.D.N.Y. July 14, 2025) .............................................................8, 10, 11, 13, 17, 18

*Clinton Grp., Inc. v. Navesink Int'l, LLC*,
    2026 U.S. Dist. LEXIS 34413
    (S.D.N.Y. Feb. 19, 2026) ......................................................................................8

*Johnson v. S.E.C.*,
    87 F.3d 484 (D.C. Cir. 1996) ...............................................................................17

*Klaper v. Cypress Hills Cemetery*,
    2014 U.S. Dist. LEXIS 46470
    (E.D.N.Y. Mar. 31, 2014) ....................................................................................13

*Magellan Tech., Inc. v. United States FDA*,
    70 F.4th 622 (2d Cir. 2023) .........................................................3, 13, 16, 17, 18, 20

*New York v. United Parcel Serv.*,
    253 F. Supp. 3d 583 (S.D.N.Y. 2017)...............................................................18, 19

*S.E.C. v. Pentagon Capital Management PLC*,
    2012 U.S. Dist. LEXIS 43046
    (S.D.N.Y. 2012).................................................................................................19

**Statutes**                                                                                                            **Pages**

*SEC v. Aerokinetic Energy Corp.*,
   444 F. App'x 382 (11th Cir. 2011) ......................................................................................21

*SEC v. Frohling*,
   851 F.3d 132 (2d Cir. 2016)................................................................................................20

*SEC v. Milligan*,
   436 F. App'x 1 (2d Cir. 2011) ............................................................................................21

*Tull v. United States*,
   481 U.S. 412 (1987)............................................................................................................17

*U.S. Smokeless Tobacco Mfg. Co. LLC v. City of New York*,
   708 F.3d 428 (2d Cir. 2013)...............................................................................................10

*United States v. Int'l. Minerals & Chem. Corp.*,
   402 U.S. 558 (1971)............................................................................................................20

*United States v. Laughlin*,
   10 F.3d 961 (2d Cir. 1993)..................................................................................................20

*United States v. Ursery*,
   518 U.S. 267 (1996)............................................................................................................16

*United States v. Yetim,*
   251 F. Supp. 3d 461 (E.D.N.Y. 2017) ...............................................................................21

**Statutes**

15 U.S.C. § 375(4) ......................................................................................................................13

15 U.S.C. § 375, *et seq.*.................................................................................................................1

15 U.S.C. § 376............................................................................................................................16

15 U.S.C. § 376a..............................................................................................2, 6, 11, 15, 16, 21

15 U.S.C. § 377...................................................................................................................17, 21

15 U.S.C. § 378(c)(1)(A) ............................................................................................................17

21 U.S.C. § 387, *et seq.*.................................................................................................................6

21 U.S.C. § 387e(j) ......................................................................................................................14

21 U.S.C. § 387j(a)(2).............................................................................................................6, 14

**Statutes**                                                                                    **Pages**

15. U.S.C. § 375(5) ..............................................................................................................12

Fed. R. Civ. P. 56 ........................................................................................................1, 7, 8

NY Tax L. § 1183 ................................................................................................................9

NYC Admin. Code § 17-715 ................................................1, 2, 7, 8, 10, 14, 15, 16, 21

NYC Admin. Code § 20-560 .........................................................................................14, 15

PHL § 1399-*ll*(1-a)..................................................................1, 2, 6, 8, 9, 16, 18, 21

PHL § 1399-*ll*(5)..........................................................................................................18, 22

PHL § 1399-*ll*(6)................................................................................................................18

Pub. L. No. 111-154, 124 Stat. 1087 (2010).......................................................................2

Pub. L. No. 116-260, 143 Stat. 3136 (2020).......................................................................2

Plaintiff the City of New York (the "City") respectfully submits this memorandum of law in support of its motion for summary judgment under Fed. R. Civ. P. 56 against defendant RZ Smoke, Inc. ("RZ Smoke") for violations of New York Public Health Law ("PHL") § 1399-*ll*(1-a), New York City Administrative Code ("Ad. Code") § 17-715, and the Prevent All Cigarette Trafficking Act, 15 U.S.C. § 375 *et seq*. (the "PACT Act"). The City presently moves for summary judgment on liability alone. If summary judgment is awarded in the City's favor, the City respectfully requests the Court hold a hearing to determine the amount of penalties to be imposed.

## PRELIMINARY STATEMENT

RZ Smoke has violated state, local and federal laws by offering to sell and, indeed, selling electronic cigarettes ("e-cigarettes" or "vapes") to New York City retailers.

First, RZ Smoke has violated the City's Administrative Code, which bans the "the sale, offer for sale, or possession with intent to sell or offer for sale" of flavored e-cigarettes. Ad. Code § 17-715. RZ Smoke has *admitted* that it sold flavored e-cigarettes to New York City customers. Therefore, it cannot be disputed that RZ Smoke violated the Ad. Code.

Second, RZ Smoke has violated PHL § 1399-*ll*(1-a). That statute makes it "unlawful for any person engaged in the business of selling vapor products to ship or cause to be shipped any vapor products intended or reasonably expected to be used with or for the consumption of nicotine to any person in this state who is not: (a) a person that receives a certificate of registration as a vapor products dealer under article twenty-eight-C of the tax law; (b) an export warehouse proprietor . . . ; or (c) a person who is an officer, employee or agent of the United States government." PHL § 1399-*ll*(1-a). Evidence that RZ Smoke cannot dispute shows that it sold to numerous New York City customers who were not registered vapor product dealers. Moreover, RZ Smoke has produced no evidence that those customers were "export warehouse proprietors"

or "officers, employees or agents of the United States government." Accordingly, RZ Smoke violated PHL § 1399-ll(1-a).

Third, the foregoing violations constitute violations of the PACT Act. In 2010, Congress enacted the PACT Act to: "require Internet and other remote sellers of cigarettes and smokeless tobacco to comply with the same laws that apply to law-abiding tobacco retailers; create strong disincentives to illegal smuggling of tobacco products; provide government enforcement officials with more effective enforcement tools to combat tobacco smuggling; make it more difficult for cigarette and smokeless tobacco traffickers to engage in and profit from their illegal activities; increase collections of Federal, State, and local excise taxes on cigarettes and smokeless tobacco; and prevent and reduce youth access to inexpensive cigarettes and smokeless tobacco through illegal Internet or contraband sales." PACT Act, Pub. L. No. 111-154, §§ (1)(c), 124 Stat. 1087, 1088 (2010). The surging popularity of e-cigarettes compelled Congress in 2020 to amend the PACT Act to include e-cigarettes, stating that the amendment "may be cited as the 'Preventing Online Sales of E-Cigarettes to Children Act.'" Pub. L. No. 116-260 § 601, 143 Stat. 3136 (2020).

The PACT Act achieves its goals by requiring cigarette sellers who ship cigarettes to consumers to comply with all applicable state and local tax requirements, 15 U.S.C. § 376a(a)(3); comply with strict registration, reporting, and record-keeping duties, *id.* at §§ 376a(a)(1)-(2), (c); and mark the outside of any packages containing cigarettes with a conspicuous label indicating that the package contains cigarettes and that federal law requires the payment of all applicable excise taxes, *id.* at § 376a(b). In this case, evidence, which RZ Smoke cannot dispute, shows that RZ Smoke made delivery sales to retailers in New York City. In making such sales, RZ Smoke was required to comply with federal, state, and local laws, which, by virtue of violating Ad. Code §17-715 and PHL § 1399-ll(1-a), it did not do. In addition, all the flavored e-cigarettes sold by RZ

2

Smoke—other than those in tobacco or menthol flavors—were sold in violation of the federal Family Smoking Prevention and Tobacco Control Act, 21 U.S.C. § 387 *et seq.* (the "Tobacco Control Act"), which requires all flavored e-cigarettes to have pre-market approval from the FDA. RZ Smoke's violation of the Tobacco Control Act is another basis for liability under the PACT Act.

Given RZ Smoke's liability for violating the Ad. Code, PHL, and PACT Act, this Court should hold an evidentiary hearing to determine the appropriate amount of penalties to which the City is entitled.

## BACKGROUND

The undisputed facts applicable here are set forth in the accompanying City's Rule 56.1 Statement of Material Undisputed Facts ("*R.56.1 St.*").

### A.    The Public Health Harm from Flavored Vapes

E-cigarettes are popular nicotine delivery devices. *R.56.1 St.* ¶ 1. E-cigarettes use batteries to heat nicotine-laced solutions to produce aerosols or mists inhaled by the user. *Id.* ¶ 2. Flavored, high-nicotine e-cigarettes are used by youth and young adults, generating intense concern among public health authorities, the medical community, and parents. *Id.* ¶ 3. "[Y]oung people … have overwhelmingly adopted flavored [e-cigarettes] as their tobacco products of choice," *Magellan Tech., Inc. v. United States FDA*, 70 F.4th 622, 625 (2d Cir. 2023), despite "[s]cientific evidence clearly establish[ing] that nicotine is highly addictive, causes a heightened risk of cardiovascular defects, and hinders brain development in humans under the age of twenty-five," *City of Chicago v. Equte LLC*, 2023 U.S. Dist. LEXIS 169995, at *6-7 (N.D. Ill. Sep. 19, 2023).

Many e-cigarettes use solutions with nicotine concentrations well above levels in cigarettes. *56.1 St.* ¶ 4. In addition, many e-cigarettes are sold in fruit, candy, or dessert flavors that appeal to youth and young adults and are associated with lower harm perception. *Id.* ¶ 5. *See*

3

*Equte*, 2023 U.S. Dist. LEXIS 169995, at *6-7 ("E-cigarettes pose a particular danger because they are more efficient at delivering nicotine into the body than traditional cigarettes, and because vendors of liquid nicotine used in e-cigarettes could make their products taste like soda, candy, popcorn, or other products that might appeal to younger individuals."). The combination of high nicotine concentration and evocative flavors may condemn many youth and young adults to "a lifetime of nicotine addiction." *56. 1 St.* ¶ 6.

The New York City Department of Health and Mental Hygiene ("DOHMH") is charged with "implement[ing] measures that prevent or reduce threats to public health, especially in the area of tobacco control." *Id.* ¶ 7. DOHMH "regularly monitors commercial tobacco and nicotine product use," and has been tracking tobacco use among NYC youth and adults since 2001. *Id.* Along with the nation as a whole, New York City has experienced significant declines in cigarette smoking by youth and young adults. *Id.* ¶ 8. However, in or around 2014 and 2015, when DOHMH first began collecting data on e-cigarette use, the Department discovered an increasing proportion of youth and young adults using e-cigarettes, reversing the progress made toward decreased nicotine use. *Id.* ¶ 9. In 2023, 14% of public high school students and 13% of young adults ages 18-24 used e-cigarettes. *Id.* ¶ 10. DOHMH has observed that 92% of young adult e-cigarette users "never previously smoked cigarettes," further indicating that the overall increase in young adult nicotine use is driven not by increased cigarette smoking but by e-cigarette use. *Id.* ¶ 11.

Nicotine addiction is particularly harmful to youth and young adults. DOHMH has reported that in New York City, "[i]n 2023, among youth ages 13 to 17 years, depression was more than twice as common among those who vaped (48%) than among those who did not vape (22%)," and that "[s]imilar patterns have also been observed among young adults; in 2021-2022, depression was almost twice as common among young adults who vaped (30%) compared with young adults

who did not vape (16%)." *Id.* ¶ 12. Nicotine can change the chemistry of the adolescent brain, impairing learning, memory, and concentration. *Id.* ¶ 13. Parents have reported their children who use vapes "becom[ing] more volatile, argumentative, and ornery," as well as suffering from "reduced appetite" and "difficulty sleeping at night." *Id* ¶ 14. They have also noticed the extent to which vape retailers "target" school children and the proliferation of unlicensed vape retailers throughout New York City. *Id.*

E-cigarette use has also caused direct lung injury. *Id.* ¶ 15. In 2019, there was an outbreak of E-cigarette or Vaping Product Use-Associated Lung Injury ("EVALI"). *Id.* ¶ 16. In New York City, there were 50 EVALI cases reported and, "[a]lthough most of these cases were associated with cannabis vaping product use, several were associated only with nicotine vaping products." *Id.* ¶ 17. One parent has explained that after contracting EVALI, their child "received 6 lung incisions with tubes inserted for drainage, followed by a pneumothorax surgery through the back of their right lung." *Id.* ¶ 18.

DOHMH engages in extensive efforts to combat youth use of flavored e-cigarettes, including:

> a. Developing and disseminating educational materials and resources for e-cigarette retailers, to help them follow local and state laws, as well as materials to assist other city agencies and the public in directing enforcement efforts.
>
> b. Developing media campaigns to educate NYC teenagers on the risks of vaping, including nicotine dependence, and shar[ing] treatment resources.
>
> c. Partnership and collaboration with NYC Public Schools (NYCPS) and the Department of Youth and Family Development (DYCD) to review and implement health education curricula and lessons on vaping, train staff on this topic and available curricula/resources, train school-based clinicians on up-to-date prevention and treatment recommendations, review and update school policies, and share guidance and materials with school administrators, staff, students, and families.

5

d.  Training healthcare providers and distributing prevention and treatment education materials at local colleges and universities on how to address and treat vaping and tobacco use on their campuses.

e.  Completing Public Health Detailing campaigns promoting evidence-based pediatric and adult prevention and treatment recommendations to primary care providers in selected neighborhoods throughout New York City, reaching hundreds of providers and staff citywide.

f.  Collecting, analyzing and using data from a range of sources to understand e-cigarette use. This includes behavioral surveillance, retail and consumer environment surveillance, health systems surveillance and formative research to support media campaign development and other projects.

*Id.* ¶ 19. DOHMH has spent at least 6 million dollars since July 2019 on these efforts. *Id.* ¶ 20.

## B.    Legislative Efforts to Curb Sales

The sale of e-cigarettes is highly regulated at the federal, state and local level with the goal of preventing access to the devices by youth.

At the federal level, the Tobacco Control Act regulates e-cigarettes by requiring pre-market approval by the FDA *before* any e-cigarette may be placed on the market in the United States. *See* 21 U.S.C. § 387j(a)(2). The FDA maintains a list of all "e-cigarettes authorized by the FDA." *R.56.1 St.* ¶ 41. At the time the City filed this lawsuit, no flavored nicotine product, except tobacco or menthol flavored, had received pre-market approval from the FDA. *R.56.1 St.* ¶¶ 41–44.

The PACT Act also regulates e-cigarettes. It places limitations on remote sales by rolling all state, local and "other" laws governing the sale of e-cigarettes into a single compliance package and imposing stringent requirements on shipping, package warnings, and age verification. 15 U.S.C. § 376a(a)-(b).

At the state level, New York State regulates shipments of e-cigarettes under the Public Health Law, making it unlawful to ship—or cause to be shipped—e-cigarettes except to state-licensed tobacco businesses or government officers. *See* PHL § 1399-*ll* (1-a). Other States have

6

similarly banned flavored e-cigarettes, including California, Massachusetts, New Jersey, Rhode Island, and Utah. *R.56.1 St.* ¶ 21. Locally, New York City has banned entirely sales or offers to sell flavored electronic cigarettes. Ad. Code § 17-715. Similar measures were enacted in Boston, Berkeley, Los Angeles, Washington D.C., Chicago, Oakland, Bloomington, Indiana, and dozens of other localities. *Id.* ¶ 22.

### C.    RZ Smoke's Sales

RZ Smoke is a wholesale distributor of flavored e-cigarettes. *Id.* ¶ 23. Between 2020 and 2024, RZ Smoke sold tens of thousands of flavored e-cigarettes to customers in New York City. *Id.* ¶¶ 28–35. When purchasing flavored e-cigarettes from RZ Smoke, customers primarily placed orders through RZ Smoke's website, RZSmoke.com. *Id.* ¶ 24. Customers were assigned a unique login and password. *Id.* Upon login, customers selected e-cigarettes and placed them in an "online cart." *Id.* After completing the order, arrangement was made for payment, which was made by wire transfer, check, or cash on delivery. *Id.* Orders for shipments placed by New York City customers were picked and packed at the Company's warehouse at 80 Bennett Rd, Suffield CT 06078 and delivered to its New York warehouse at 412 Hillside Ave, New Hyde Park, NY 11040. *Id.* ¶ 25. Some orders were picked up by customers from the New York warehouse. *Id.* ¶ 26. The remaining orders were placed in a Company-owned vehicle. *Id.* Several times each week, an RZ Smoke employee or contractor would deliver the products directly to customers located in New York City. *Id.* ¶ 27.

The list of registered vapor product dealers under Article twenty-eight-C of the tax law, which is maintained by the New York State Department of Taxation and Finance ("DTF"), shows that 76% of RZ Smoke's New York City customers were unlicensed. *Id.* ¶¶ 49–52.

**LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir. 2025). "Material facts are those that may affect the outcome of the case." *Clinton Grp., Inc. v. Navesink Int'l, LLC*, 2026 U.S. Dist. LEXIS 34413, *8 (S.D.N.Y. Feb. 19, 2026). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." *Fed. R. Civ. P.* 56(c)(1)(A). "Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact." *Clinton Grp., Inc.*, 2026 U.S. Dist. LEXIS 34413 at *8. In considering a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in its favor." *Allen v. Couhlin*, 64 F.3d 77, 79 (2d Cir. 1995).

**ARGUMENT**

RZ Smoke's sales fail to comply with three statutes applicable to the sale of e-cigarettes in the City: PHL § 1399-*ll*(1-a), Ad. Code § 17-715, and the Tobacco Control Act. Non-compliance with these three statutes constitutes a violation of a fourth statute: the PACT Act.

**I.    RZ Smoke Violates PHL § 1399-*ll*(1-a)**

New York State has addressed the harms of remote e-cigarette sales by restricting to whom tobacco businesses may ship e-cigarettes—flavored or otherwise. "PHL § 1399-*ll*(1-a) makes it unlawful for 'any person' to 'ship or cause to be shipped' e-cigarettes to any person, except to three statutorily defined categories of authorized recipients: registered 'vapor products dealers;' warehouse proprietors; and government agents." *City of New York v. Enviromd Grp. LLC*, 2025

U.S. Dist. LEXIS 133942, *33 (S.D.N.Y. July 14, 2025) (quoting PHL § 1399-*ll*). The relevant

portion of the statute reads as follows:

> It shall be unlawful for any person engaged in the business of selling vapor products to ship or cause to be shipped any vapor products intended or reasonably expected to be used with or for the consumption of nicotine to any person in this state who is not: (a) a person that receives a certificate of registration as a vapor products dealer under article twenty-eight-C of the tax law; (b) an export warehouse proprietor . . . ; or (c) a person who is an officer, employee or agent of the United States government . . . .

> For purposes of this subdivision, a person is a licensed or registered agent or dealer described in paragraph (a) of this subdivision if his or her name appears on a list of licensed or registered agents or vapor product dealers published by the department of taxation and finance, or if such person is licensed or registered as an agent or dealer under article twenty eight-C of the tax law.

PHL § 1399-ll(1-a). Article twenty-eight-C of the tax law requires that "[e]very person who

intends to sell vapor products in this state must receive from the commissioner a certificate of

registration prior to engaging in business." NY Tax L. § 1183.

RZ Smoke violates § 1399-*ll*(1-a) by "ship[ping] or caus[ing] to be shipped" e-cigarettes

to businesses whose names do not appear on the "list of licensed or registered agents or vapor

products dealers published by the department of taxation and finance." Of the 87 customers listed

by RZ Smoke in its business records, 66 do not appear on the list published by DTF and are thus

unlicensed by New York State. *R.56.1 St.* ¶¶ 49–53. In addition, DTF expressly confirmed that the

customers Bbn masud Wholesale, Big time Dist, Cloud Jay Corp., Finest Distributors LLC, Igrind

Inc., Vape Direct Distribution, podguys.com, Ross Distro, and Mikes Smoke Shop did not have a

certificate of registration as a vapor products dealer under the New York Tax Law at any time

between 2019–2025, when the sales were made to them by RZ Smoke. *Id.* ¶ 53. RZ Smoke's

location in Connecticut and these customer locations in New York City means that RZ Smoke

9

either "shipped" or "caused to be shipped" e-cigarettes to unlicensed customers, in violation of PHL § 1399-*ll*(1-a).

## II.     RZ Smoke Has Sold Flavored E-Cigarettes in Violation of the New York City Administrative Code

New York City has addressed public health concerns about flavored e-cigarettes and their appeal to youth and young adults by flatly prohibiting sales or offers to sell. Section 17-715(a)(1) of the Ad. Code "prohibits the sale in New York City of any flavored tobacco product except in a tobacco bar." *Enviromd Grp. LLC*, 2025 U.S. Dist. LEXIS 133942 at *39 (quoting *U.S. Smokeless Tobacco Mfg. Co. LLC v. City of New York*, 708 F.3d 428, 431 (2d Cir. 2013)). Section 17-715(b)(1) of the Ad. Code also makes it unlawful "for any person to sell or offer for sale, or to possess with intent to sell or offer for sale, any flavored electronic cigarette or flavored e-liquid."

Invoices and business records produced by RZ Smoke show its sales of tens of thousands of flavored e-cigarettes to retail stores in New York City. *R.56.1 St.* ¶ 28–40 (citing *Rasool Decl.* ¶ 7 & Ex. A; *Proshansky Decl.*, Ex. C). RZ Smoke has also admitted that it offered to sell—and indeed did sell—flavored e-cigarettes on its website, RZSmoke.com. *Id.* ¶ 24. RZ Smoke's principal business owner has stated that: "Customers primarily placed orders for flavored e-cigarettes through the Company's website RZSmoke.com." *Id.* (quoting *Rasool Decl.* ¶ 4). Accordingly, this Court can hold as a matter of law that RZ Smoke violated Ad. Code § 17-715 by selling, offering for sale, and possessing with intent to sell flavored e-cigarettes to New York City customers.

## III.    RZ Smoke's Sales Violate the PACT Act

The PACT Act provides in relevant part:

> In general
>
> With respect to delivery sales into a specific State and place, each delivery seller shall comply with–

10

(1) . . . shipping requirements . . . ;

(2) . . . recordkeeping requirements. . . ;

(3) *all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place*, including laws imposing—

(A) excise taxes;

(B) licensing and tax-stamping requirements;

(C) restrictions on sales to minors; and

(D) *other payment obligations or legal requirements relating to the sale, distribution, or delivery of cigarettes or smokeless tobacco;* and

(4) . . . tax collection requirements . . . .

15 U.S.C. § 376a(a) (emphasis added). PACT Act section 376a(a)(3) provides that the laws applicable to delivery sales "into a specific … place" are the same as those that would apply "*if the delivery sales occurred entirely within the specific State and place*" (emphasis added). Thus, under the PACT Act, if a seller makes a "delivery sale," that seller must comply with federal shipping, recordkeeping, tax collection requirements, "all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco" and "all legal requirements" pertaining to "the sale, distribution, or delivery of cigarettes" in force in the jurisdiction into which the cigarettes are delivered. *Id.*; *see also Enviromd Grp. LLC*, 2025 U.S. Dist. LEXIS 133942 at *13. It is undisputed, as shown below, that RZ Smoke made delivery sales to New York City customers. It is also undisputed that RZ Smoke, in making those sales, violated federal, state and local law. Accordingly, this Court can hold as a matter of law that RZ Smoke committed PACT Act violations.

11

**A.      RZ Smoke's Deliveries of Flavored E-Cigarettes into the City Are PACT Act Delivery Sales**

The PACT Act defines "delivery sales" as follows:

> Any sale of cigarettes or smokeless tobacco to a consumer if—
>
> (A) the consumer submits the order for the sale by means of a telephone or other method of voice transmission, the mails, or the Internet or other online service, or the seller is otherwise not in the physical presence of the buyer when the request for purchase or order is made; or
>
> (B) the cigarettes or smokeless tobacco are delivered to the buyer by common carrier, private delivery service, or other method of remote delivery, or the seller is not in the physical presence of the buyer when the buyer obtains possession of the cigarettes or smokeless tobacco.

15. U.S.C. § 375(5). A particular sale is a PACT Act "delivery sale" when (1) the purchaser and seller are not in one another's "physical presence" when ordering *or* receiving the product; and (2) the purchaser is a "consumer" (that is, any cigarette purchaser other than a lawfully operating tobacco business).

**1.      RZ Smoke Was Not in the Physical Presence of Its Purchasers**

It is undisputed that RZ Smoke sold thousands of flavored vapor products to dozens of New York City customers. *R.56.1 St.* ¶ 28–40 (citing *Rasool Decl.* ¶ 7 & Ex. A; *Proshansky Decl.*, Ex. C). RZ Smoke has admitted that those sales were placed *primarily* over the internet. *Id.* ¶ 24.[1] Accordingly, for all of the sales made over the internet, RZ Smoke and the customers were not in each other's physical presence at the time of purchase. Moreover, it is undisputed that RZ Smoke made local deliveries of its products. *Id.* ¶ 27. Thus, for those sales, RZ Smoke and its customers

---

[1] To the extent specific orders have not been identified as made online, the issue relates to quantifying penalties, with evidence presented at a hearing. The admission that customers "primarily" ordered over the internet (*R.56.1 St.* ¶ 24) is sufficient to establish the existence of remote orders.

were also not in each other's physical presence at the time of delivery, separately satisfying a condition of a delivery sale.

### 2.    All of RZ Smoke's Customers Were "Consumers"

The PACT Act defines a "consumer" as "any person that purchases cigarettes or smokeless tobacco," except "any person lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco." 15 U.S.C. § 375(4). Two courts in this district, including this Court, have held that a "lawfully operating" tobacco business for purposes of defining a "consumer" under the PACT Act is a business that operates in compliance with the law. *See Enviromd Grp. LLC,* 2025 LX 292331 at *25 ("The textual reading of "'lawfully operating,' … leads to a commonsense result: if a purchaser has a license to operate, but its ongoing operations violate the law, then that purchaser would not be 'lawfully operating.'");[2] *Magellan Tech., Inc.,* 735 F. Supp. 3d at 312 (S.D.N.Y. 2024), *reconsid. den.,* 2024 U.S. Dist. LEXIS 231932 (S.D.N.Y. Dec. 20, 2024) ("The Court finds that the term 'lawfully operating' means compliance with laws under the plain meaning of the statute.").

No RZ Smoke customer in New York City that is selling or offering for sale a flavored e-cigarette is lawfully operating by reason of the Tobacco Control Act's prohibition against sales of e-cigarettes that are not approved by the FDA and New York City's prohibition against possession of flavored e-cigarettes with intent to sell or offer for sale. And of course, none of the identified unlicensed retailers are lawfully operating. *R.56.1 St.* ¶¶ 49–53.

The Tobacco Control Act prohibits sales of e-cigarettes that are not approved by the FDA:

(2) Premarket Review Required

---

[2] The Court's ruling here is law of the case. *See Klaper v. Cypress Hills Cemetery*, 2014 U.S. Dist. LEXIS 46470 (E.D.N.Y. Mar. 31, 2014) (noting that courts "may apply the law of the case doctrine to a legal determination made at the motion to dismiss stage") (collecting cases).

13

An order under subsection (c)(1)(A)(i) for a new tobacco product is required unless—

> (i)     the manufacturer has submitted a report under section 387e(j) of this title; and the Secretary has issued an order that the tobacco product—
>
>> (I)     is substantially equivalent to a tobacco product commercially marketed (other than for test marketing) in the United States as of February 15, 2007; and
>>
>> (II)     is in compliance with the requirements of this chapter; or
>
> (ii)     the tobacco product is exempt from the requirements of section 387e(j) of this title pursuant to a regulation issued under section 387e(j)(3) of this title.

21 U.S.C. § 387j(a)(2). It is undisputed that, at the time the City filed this lawsuit, *no* flavored nicotine product, except tobacco or menthol flavored, had received FDA pre-market approval. *See supra* at 6; *R.56.1 St.* ¶¶ 41–48.[3] Thus, all sellers of flavored e-cigarettes, including RZ Smoke's customers, are operating in violation of the Tobacco Control Act and not lawfully operating.

RZ Smoke's New York City customers are also "consumers" for purposes of the PACT Act because they are operating in violation of the Ad. Code. As explained above, *supra* at 10, Ad. Code § 17-715 prohibits possession of flavored e-cigarettes with intent to sell or offer for sale. Ad. Code § 17-715(b)(2) further provides:

> There shall be a presumption that an electronic cigarette retail dealer, as defined in section 20-560, in possession of six or more flavored electronic cigarettes, or more than 12 fluid ounces (354.882 mL) of flavored e-liquid, possesses such flavored electronic cigarettes or flavored e-liquid with intent to sell or offer for sale.

---

[3] Moreover, out of the 73,209 flavored vapor product line items listed in *Proshansky Decl. Exhibit C*, at least 97% were not approved by the FDA. *R.56.1 St.* ¶¶ 41–48. Every customer listed in *Proshansky Decl. Exhibit C* purchased from RZ Smoke at least one e-cigarette or vapor product that was not approved by the FDA. *Id*.

14

"Electronic cigarette retail dealer" is defined as:

> any person engaged in the retail sale of electronic cigarettes. For the purposes of this subchapter and title 17 of this code, the possession or transportation at any one time of more than 20 electronic cigarettes or more than 12 fluid ounces (354.882 mL) of e-liquid by any person other than a manufacturer or a person delivering electronic cigarettes or e-liquids in the regular course of business for a manufacturer or electronic cigarette retail dealer, shall be presumptive evidence that such person is an electronic cigarette retail dealer.

Ad. Code § 20-560.

Every RZ Smoke customer in New York City that purchased flavored e-cigarettes during the time period relevant to this litigation purchased vastly more than the requisite number of e-cigarettes (20) needed to trigger (1) the presumption that they are electronic cigarette retail dealers; and (2) the presumption that they possess the flavored electronic cigarettes or flavored e-liquid with intent to sell or offer for sale. *R. 56.1 St.* ¶ 54. Accordingly, this Court can hold as a matter of law that they were "consumers" under the PACT Act because they were operating in violation of Ad. Code § 17-715.

## B.    RZ Smoke Violates Federal, State, and City Laws Applicable to E-Cigarettes

As stated above, because RZ Smoke made delivery sales to numerous customers it was required, under the PACT Act, to comply with "all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place." 15 U.S.C. § 376a. There is no dispute that RZ Smoke did not do this.

PACT Act section 376a(a)(3) provides that the laws applicable to delivery sales "into a specific … place," are those that would apply "if the delivery sales occurred entirely within the specific State and place." As a matter of law, RZ Smoke's delivery sales, whether or not they arise out of transactions outside of the City are deemed to have occurred within the City. *Id.* In short,

15

RZ Smoke must comply with all New York City, New York State and U.S. laws, including (i) PHL §1399-*ll*(1-a), a state law applicable to cigarette sales in the City; (ii) Ad. Code § 17-715, a local law generally applicable to sales of cigarettes in the City; and (iii) the Tobacco Control Act, an "other" law applicable to cigarette sales in the City. *Id.*

As explained above, RZ Smoke's sales to *unlicensed* customers of flavored e-cigarettes lacking FDA approval violated the Ad. Code, the Tobacco Control Act, and the PHL. RZ Smokes' sales to licensed customers "only" violated the Ad. Code and Tobacco Control Act. Accordingly, there can be no dispute that RZ Smoke was operating out of compliance with federal, State and local laws, and, therefore, operating in violation of the PACT Act.[4]

## IV.     The City Is Entitled to Penalties to Be Awarded After a Hearing

In light of undisputed evidence that RZ Smoke sold e-cigarettes to unlicensed vapor product dealers in violation of the PHL and made delivery sales in violation of the PACT Act, the City is entitled to penalties.

### A.     The PACT Act and the PHL Authorize the City to Collect Penalties

The PACT Act and the PHL § 1399-*ll* each separately impose civil penalties for violations of the respective statutes. Civil penalties serve "'as a rough form of liquidated damages' for the public harms caused by the defendant's conduct." *City of N.Y. v. Milhelm Attea & Bros.*, 2012 U.S. Dist. LEXIS 116533, at *81-82 (E.D.N.Y. Aug. 17, 2012) (quoting *United States v. Ursery*, 518 U.S. 267, 283-84 (1996)). Civil penalties also "punish culpable individuals," and do not "simply . . . extract compensation or restore the status quo." *Tull v. United States*, 481 U.S. 412, 422

---

[4] The above does not exhaust the scope of RZ Smoke's non-compliance with the law. The PACT Act requires RZ Smoke to comply with "other … legal requirements relating to the sale, distribution, or delivery of cigarettes." 15 U.S.C. § 376a(a)(3)(D). The PACT Act further requires those who sell or offer to sell cigarettes in interstate commerce to file certain "PACT Act" reports with the tax authorities of the jurisdictions into which the sales or offers are made. *See* 15 U.S.C. § 376. RZ Smoke ships in interstate commerce, *see Magellan,* 735 F. Supp. 3d at 322-23, but did not file those mandated reports.

16

(1987); *see Johnson v. S.E.C.*, 87 F.3d 484, 492 (D.C. Cir. 1996) ("[T]he ordinary, contemporary, common meaning of the word 'penalty,' [is] a sanction imposed by the government for unlawful or proscribed conduct *which goes beyond* remedying the damage caused to the harmed party.").

The PACT Act's penalties section provides in relevant part:

> (1) In general. . . . , whoever violates this Act shall be subject to a civil penalty in an amount not to exceed—
>
> (A) in the case of a delivery seller, the greater of—
>
> (i) $5,000 in the case of the first violation, or $10,000 for any other violation;
>
> (ii) for any violation, 2 percent of the gross sales of cigarettes or smokeless tobacco of the delivery seller during the 1-year period ending on the date of the violation.

15 U.S.C. § 377(b). RZ Smoke is a delivery seller who "violates this Act," *supra* at 11–13, and hence is liable for penalties.

There is no question that the PACT Act designates the City as eligible for penalty awards. Under the heading "Enforcement" the PACT Act provides that:

> [A] local government … that levies an excise tax on tobacco products, through its chief law enforcement officer, may in a civil action in a United States district court obtain appropriate relief with respect to a violation of [the PACT Act] by any person or to obtain any other appropriate relief from any person for violations of this Act, including civil penalties…"

15 U.S.C. § 378(c)(1)(A). The City levies an excise tax on tobacco products. *Enviromd*, 2025 LX 292331 at *14 ("[T]he PACT Act authorizes the City to enforce the statute because New York City imposes an excise tax … on cigarettes."); *Magellan,* 735 F. Supp. 3d at 321 ("Though New York City's excise tax is only levied on traditional cigarettes and not e-cigarettes, that distinction does not limit who can bring an enforcement action under the PACT Act."). The Second Circuit

17

affirmed an award of PACT penalties to the City for PACT Act violations without questioning the City's ability to do so. *See United Parcel Serv.*, 942 F.3d at 599.

PHL § 1399(5) provides in relevant part:

> [A]ny person who violates the provisions of subdivision one, one-a, two or three of this section shall be subject to a civil penalty not to exceed the greater of (a) five thousand dollars for each such violation; . . . or (c) one hundred dollars for each vapor product intended or reasonably expected to be used with or for the consumption of nicotine shipped, caused to be shipped or transported in violation of such subdivision.

PHL § 1399-*ll*(5). Under PHL § 1399-*ll*(6), "the corporation counsel of any political subdivision that imposes a tax on cigarettes or vapor products intended or reasonably expected to [be] used with or for the consumption of nicotine may bring an action to recover the civil penalties." This Court has held that the City is authorized to enforce the Public Health Law because "the City taxes cigarettes." *Enviromd Grp. LLC*, 2025 U.S. Dist. LEXIS 133942, *32 (citing PHL § 1399-*ll*(6)); *see also Magellan Tech., Inc.*, 735 F. Supp. 3d at 327 ("Under a plain reading of the statute, the City has standing to enforce the Public Health Law if the City taxes cigarettes or vapor products."). Accordingly, as with the PACT Act, PHL § 1399-*ll* allows the City to collect penalties. Because the City has shown that RZ Smoke is liable for violating PHL § 1399-*ll*(1-a), it is entitled to collect penalties.

## B.    The City Is Entitled to Substantial Penalties

The PACT Act's civil penalty provision provides for an upper limit—an amount "not to exceed" the specified amounts set forth in 15 U.S.C. § 377(b)(1)(A)—but specifies no express guidance for the Court to apply in setting a penalty amount. Likewise, the penalty provision in PHL § 1399-*ll*(5) also operates as a cap on penalties. In such circumstances, "courts have developed doctrines for guiding the discretion of trial judges in imposing civil penalties." *Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533, at *81-82. "The Second Circuit has directed that, where the

18

statute does not mandate consideration of any particular factors, '[a] district court may properly consider a number of factors in determining the size of a civil penalty, including the good or bad faith of the defendants, the injury to the public, and the defendants' ability to pay.'" *Id.* at *85-86 (quoting *Advance Pharmaceuticals, Inc. v. United States*, 391 F.3d 377, 399 (2d Cir. 2004)). In *Milhelm Attea*, the district court noted that in analyzing penalty amounts under the PACT Act— courts have looked to:

> (1) the egregiousness of the defendants conduct; (2) the degree of the defendants scienter; (3) whether the defendants conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendants conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendants demonstrated current and future financial condition.

*Id.* at *86 (quoting *S.E.C. v. Pentagon Capital Management PLC*, 2012 U.S. Dist. LEXIS 43046, at *2 (S.D.N.Y. 2012)).

The public harm from defendants' conduct hardly needs explication. *See supra* at 6–10. The separate regulation of e-cigarettes at the federal, state and local levels bespeaks of the significant public health interests at stake. Dozens of states and local or county governments have prohibited the sale of flavored e-cigarettes. *R.56.1 St.* ¶¶ 21–22. As explained above, RZ Smoke's conduct contributes to the proliferation of flavored e-cigarettes in New York City, forcing the City to expend public resources in combating youth and young adult nicotine addiction. *See Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533 at *92 ("The defendants showed clear culpability; there is a great deal of public harm caused by their sales, in the form of both tax losses and increased smoking."); *see also New York v. United Parcel Serv.*, 253 F. Supp. 3d 583, 690 (S.D.N.Y. 2017) (taking into account that "State and federal legislatures have deemed transport of cigarettes as a public health issue" in evaluating the "public harm" caused by defendant's conduct when imposing penalties).

19

These considerations warrant a substantial penalty in this case. RZ Smoke's conduct should also be treated as highly egregious based on the sheer number of statutes violated by its sales of flavored e-cigarettes, which simultaneously violate federal, state and local tobacco laws. RZ Smoke's statutory violations were performed knowingly because many of RZ Smoke's sales were made *after* the decision in *Magellan*, which publicly announced the unlawfulness of flavored e-cigarette sales. "When knowledge is an element of a statute intended to regulate hazardous or dangerous substances, the Supreme Court has determined that the knowledge element is satisfied upon a showing that a defendant was aware that he was performing the proscribed acts; knowledge of regulatory requirements is not necessary." *United States v. Laughlin*, 10 F.3d 961, 965 (2d Cir. 1993) (citing *United States v. Int'l. Minerals & Chem. Corp.*, 402 U.S. 558, 563-65 (1971) (in prosecution for knowingly violating a hazardous materials regulation, Government was not required to prove that the defendant was aware of regulation, but only that he was aware of shipment of the hazardous materials)). "Where, as here . . . dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation." *International Minerals*, 402 U.S. at 565.

Accordingly, the City respectfully requests that, in the event of finding of liability, the Court conduct a hearing to determine appropriate civil penalties. In contexts comparable to those here, once district courts have found violations of federal law "they have broad equitable power to fashion appropriate remedies. . ." *SEC v. Frohling*, 851 F.3d 132, 138 (2d Cir. 2016) (quotation omitted). Courts regularly hold evidentiary hearings to determine appropriate civil penalties and disgorgement. *See SEC v. Milligan*, 436 F. App'x 1, 3 (2d Cir. 2011) (affirming court's determination of proper civil penalties after an evidentiary hearing); s*ee also SEC v.*

20

*Aerokinetic Energy Corp.*, 444 F. App'x 382, 385 (11th Cir. 2011) ("The decision as to whether to hold an evidentiary hearing was committed to the district court's sound discretion."); *United States v. Yetim,* 251 F. Supp. 3d 461 (E.D.N.Y. 2017) (where on the current record the court was unable to determine an appropriate monetary penalty, parties may submit evidence to be heard in an evidentiary hearing).

Having established liability and outlined the factors applicable to qualitative assessment of penalties, the City respectfully requests the Court set this matter down for an evidentiary hearing to address the precise number of violations from which penalties can be calculated.

## CONCLUSION

For all the reasons set forth above, the City of New York respectfully requests that the Court:

1) Grant the City judgment against RZ Smoke for violating PHL § 1399-*ll*(1-a) by delivering e-cigarettes to unlicensed vapor dealers;

2) Grant the City judgment against RZ Smoke for violating Ad. Code § 17-715(b) for selling or offering for sale flavored e-cigarettes;

3) Grant the City judgment against RZ Smoke for violating the PACT Act by making delivery sales that do not comply with 15 U.S.C. § 376a (a) (3);

4) Enjoin RZ Smoke from further violations of the PHL § 1399-ll(1-a); Ad. Code § 17-715 and the PACT Act;

5) Grant the City a hearing to determine a suitable penalty on RZ Smoke payable to the City pursuant to 15 U.S.C. § 377;

6) Grant the City a hearing to determine a suitable penalty on RZ Smoke payable to the City pursuant to PHL § 1399-*ll*(5); and

7) Grant such other and further relief as to the Court deems just and proper.

Dated: New York, New York
     June 4, 2026

21

**STEVEN BANKS**
Corporation Counsel of the
   City of New York
*Attorneys for Plaintiff The City of New York*
100 Church Street, Rm. 3-211
New York, New York 10007
(212) 356-2032

By: */s/ Eric Proshansky*
      Eric Proshansky
      Aatif Iqbal
      Elizabeth Slater

      Assistant Corporation Counsels

22

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE

As required by Local Civil Rule 7.1(c), I certify that the document contains 6,864 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c) ("These limits do not include the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but do include material contained in footnotes or endnotes.").

*/s/ Eric Proshansky*

Eric Proshansky