**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE CITY OF NEW YORK,<br><br>               Plaintiff,<br><br>   v.<br><br>ENVIROMD GROUP LLC, et al.<br><br>               Defendants. | Case No. 1:24-cv-05161-GHW-JW |

<u>**DEFENDANT RZ SMOKE INC.'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

BOCHNER PLLC
1040 AVENUE OF THE AMERICAS, 15TH FL.
NEW YORK, NEW YORK 10018
Attorneys for Defendant RZ Smoke Inc.

# **TABLE OF CONTENTS**

I. *INTRODUCTION* .................................................................................................................... 3

II. *ARGUMENT* ...................................................................................................................... 8

   A.   The Seventh Amendment Requires a Jury Trial Regarding Pact Act Damages and Liability .................................................................................................................. 8

   B.   Even If Plaintiff Did Not Have Seventh Amendment Rights in This Matter NYC Could Not Be Granted Summary Judgement ................................................................. 10

      i.   *NYC Has not established liability under PHL§ 1399-ll(1-a).* ................................ 11

      ii.   *Factual disputes exist regarding § 17-715 violations.* ........................................ 14

      iii.   *New York Regulations Do Not Prohibit NYC Sales.* ............................................ 14

   C.   The PACT Act Was Not Intended to Address Issues In this Case ................................ 15

   D.   NYC Cannot Establish Undisputed Facts Showing A "Delivery Sale" .......................... 17

   E.   NYC Cannot Prove Defendant Was Not Lawfully Operating ........................................ 18

   F.   NYC Ban on Flavored ENDS Is Not a Local Law Generally Applicable to Sales of Cigarettes ................................................................................................................ 21

   G.   New York Public Health Law § 1399-ll(1-a) cannot be used in this instance as a PACT ACT Predicate .......................................................................................................... 22

   H.   FDA Laws Are not other laws within Scope of 15 U.S.C § 376(a)(A)(3) ........................ 23

   I.   NYC Has Not Established Failure to Comply with a Licensing Law as Registration is a Licensing Requirement as Set Forth In 15 USC § 376a(A)(3)(B) .................................. 24

   J.   The PACT Act does not regulate Sales Taxes ............................................................ 26

   K.   NYC Has Not Established Lawfully Operating Violations Under Appellate Law .......... 27

   M.   FDA Guidance forecloses NYC case ........................................................................ 29

   N.   NYC Cannot Be Granted Summary Judgment Because It Has Not Established Knowing PACT Act Violations ................................................................................................. 31

   O.   It Is Premature to Rule on Damages ......................................................................... 32

   P.   NYC'S Injunctive Claims Are Moot .......................................................................... 33

   Q.   New York City May Not Seek Penalties for Violations of NYC Code §17-716 Beyond any Request for Injunction ........................................................................................ 34

III. *CONCLUSION* .................................................................................................................. 34

## <u>TABLE OF AUTHORITIES</u>

Cases                                                                                                    Page(s)

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .............................................................................. 11, 13, 14, 15
*Arizona v. California*,
  460 U.S. 605 (1983) ....................................................................................... 21
*Big Sandy Rancheria Enterprises v. Bonta*,
  1 F.4th 710 (9th Cir. 2021) ............................................................................. 28
*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ....................................................................................... 29
*California v. Azuma Corp.*,
  2024 U.S. App. LEXIS 22952 (9th Cir, 2024) .......................................... 16, 26
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................. 11, 13
City *of New York v. Enviromd Grp. LLC*,
   2025 U.S. Dist. LEXIS 133942 (S.D.N.Y) .................................................. 21
*City of New York v. Magellan Tech Inc.*,
  735 F. Supp (S.D. N.Y 2025) ......................................................................... 20
*City of New York v. Milhelm Attea & Bros.*,
  2009 U.S. Dist. LEXIS 19351 (E.D.N.Y 2009) ............................................. 17
*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ....................................................................................... 29
*Deal v. United States*,
  508 U.S. 129 (1993) ....................................................................................... 19
*DiLaura v. Power Auth. of N.Y.*,
  982 F.2d 73 (2d Cir. 1992) ............................................................................. 21
*Flint v. Stone Tracy Co.*,
  220 U.S. 107 (1911) ....................................................................................... 27
*Gordon v. Holder*,
  85 F. Supp. 3d 78 (D.D.C. 2015) .................................................................... 34
*Healy v. Beer Institute*,
  491 U.S. 324 (1989) ....................................................................................... 22
*Hemi Group, LLC v. City of New York*,
  559 U.S. 1 (2010) ........................................................................................... 17
*Heyman v. Commerce & Indus. Ins. Co.*,
  524 F.2d 1317 (2d Cir. 1975) ......................................................................... 32
*Holtz v. Rockefeller & Co.*,
  258 F.3d 62 (2d Cir. 2001) ............................................................................. 11
*In re Dana Corp.*,
  574 F.3d 129 (2d Cir. 2009) ........................................................................... 32
*Iowans for Alternatives to Smoking & Tobacco v. Iowa Dep't of Revenue*,
  781 F. Supp. 3d 724 (S.D. Iowa 2025) ........................................................... 29
*Jaroslawicz v. Seedman*,
  528 F.2d 727 (2d Cir. 1975) ........................................................................... 32

*Jeffreys v. City of New York*,
  426 F.3d 549 (2d Cir. 2005)...................................................................................... 11, 13
*Liparota v. United States*,
  471 U.S. 419 (1985) ...................................................................................................... 32
*Massachusetts v. Moresh*,
  490 U.S. 107 (1989) ...................................................................................................... 19
*Morgenthau v. Khalil*,
  73 A.D.3d 509 (1st Dept. 2010)................................................................................... 23
*Mutual Pharm. Co. v. Bartlett*,
  570 U.S. 472 (2013) ...................................................................................................... 29
*New York v. Mtn. Tobacco*,
  942 F.3d 536 (2d. Cir. 2019)........................................................................................ 17
*New York v. UPS*,
  942 F.3d 554 (2d Cir. 2019)......................................................................................... 16
*Nova Distro Inc. v. Miyares*,
  2025 U.S. Dist. LEXIS 26228 (E.D. Va. 2025)............................................................ 29
*Papachristou v. Jacksonville*,
  405 U.S. 156 (1972) ...................................................................................................... 20
*People v. Coe*,
  71 N.Y.2d 852 (1988) .................................................................................................... 23
*People v. Haddock*,
  48 A.D.3d 969 (3d Dept., 2008) ................................................................................... 23
*People v. Ryan*,
  82 N.Y.2d 497 (1993) .................................................................................................... 23
*PLIVA, Inc. v. Mensing*,
  564 U.S. 604 (2011)....................................................................................................... 29
*Quill Corp. v. North Dakota*,
  504 U.S. 298 (1992) ...................................................................................................... 27
*Quinn v. Syracuse Model Neighborhood Corp.*,
  613 F.2d 438 (2d Cir.1980)........................................................................................... 11
*Rehaif v. United States*,
  588 U.S. 225 (2019) ...................................................................................................... 33
*Rezzonico v. H&R Block, Inc.*,
  182 F.3d 144 (2d Cir. 1999).......................................................................................... 21
*Sagendorf-Teal v. County of Rensselaer*,
  100 F. 3d 270 (2d Cir. 1996)......................................................................................... 21
*SEC v. Jarkesy*,
  603 U.S. 109 (2024) .................................................................................................... 9, 10
*Shell Oil Co, v. Iowa Dept. of Revenue*,
  488 U.S. 19 (1988) ........................................................................................................ 19
*Smith v. United States*,
  508 U.S. 223 (1993) ...................................................................................................... 19
*Staples v. United States*,
  511 U.S. 600 (1994)....................................................................................................... 32
*State ex rel. Yost v. Central Tobacco & Stuff Inc.*,
  2025-Ohio-4613 (2025)................................................................................................. 29

*Teamsters & Helpers, Local No. 391 v. Terry,*
   494 U.S. 558 (1990) .................................................................................................................. 10
*Tex Tobacco Barn L.L.C. v United States,*
   2026 U.S. App. LEXIS 19136 (5th Cir. June 30, 2026) ........................................................... 10
*Tull v. United States,*
   481 U.S. 412 (1987) ............................................................................................................. 9, 10
*Twenty-Nine Palms v. Blanche,*
   174 F.4th 1190 (9th Cir. 2026)....................................................................................... Passim
*United States v. Bajakajian,*
   524 U.S. 321 (1998) .................................................................................................................. 33
*United States v. Diebold,*
   369 U.S. 654 (1962) .................................................................................................................. 11
*United States* v. *Harriss,*
   347 U.S. 612 (1954) .................................................................................................................. 20
*United States v. Nguyen,*
   758 F.3d 1024 (8th Cir. 2014).................................................................................................. 33
*United States v. One Tintoretto Painting,*
   691 F.2d 603 (2d Cir. 1982)..................................................................................................... 32
*United States v. Uccio,*
   940 F.2d 753 (2d Cir. 1991)..................................................................................................... 21
*Wisconsinites for Alternatives to Smoking & Tobacco v. Casey,*
   172 F.4th 976 (7th Cir. 2026)................................................................................................... 30

Statutes

15 U.S.C. 376a(b)(1)................................................................................................................... 19
15 U.S.C. §376a(e)(5)(B).............................................................................................................. 25
15 U.S.C. § 375 ............................................................................................................................ 16
15 U.S.C. § 375 (8) ...................................................................................................................... 25
15 U.S.C. § 375 (9) ...................................................................................................................... 25
15 U.S.C. § 375(4)(B)................................................................................................................... 19
15 U.S.C. § 375(5)(A)................................................................................................................... 17
15 U.S.C. § 376(a) ....................................................................................................................... 26
15 U.S.C. § 376a(a)(3).......................................................................................................... Passim
15 U.S.C. § 376a(a)(3) and (4) .................................................................................................... 28
15 U.S.C. § 376a(d) ..................................................................................................................... 19
15 U.S.C. § 377............................................................................................................................... 9
15 U.S.C. § 377 (b) (1) (ii)........................................................................................................... 34
15 U.S.C. § 378 ........................................................................................................................ 9, 10
15 U.S.C. §§ 376a(d)(1)(A)–(C), (d)(2) ...................................................................................... 27
15 U.S.C.§ 376a(e)(9)(C).............................................................................................................. 25
18 U.S.C. §§ 923, 843................................................................................................................... 26
21 U.S.C. § 337(a) .................................................................................................................. 29, 30
26 U.S.C. § 164(5) ....................................................................................................................... 27
47 U.S.C. § 151 ............................................................................................................................ 27
N.Y. Penal Law §§ 15.10 and 15.15............................................................................................ 23

N.Y. Pub Health § 1399 ....................................................................................................... 23

N.Y. Tax Law § 1134 ........................................................................................................... 26

N.Y. Tax Law § 1183 ........................................................................................................... 26

New York Public Health Law § 1399-ll................................................................................Passim

Pub. L. No. 111–154, §1(c).................................................................................................. 16

U.S. Const. art. VI, cl. 2....................................................................................................... 29

Rules

Fed. R. Civ. P. 56(a) ........................................................................................................... 11

Regulations

24 R.C.N.Y. § 28-02(b) ....................................................................................................... 15

24 RCNY 28-03 .................................................................................................................... 32

Administrative Code § 20-560............................................................................................. 22

NYC Administrative Code §17-713...................................................................................... 22

Other Authorities

S. 4527-B ............................................................................................................................. 12

## I.      **INTRODUCTION**

Flavored Electronic Nicotine Delivery Devices (ENDS) are lawful devices that the FDA has approved and acknowledged help the cessation of cigarette smoking. New York City's ("NYC" or the "City") complaint cannot be granted upon summary judgment because it rests on the inflammatory, false characterization of flavored ENDS as dangerous contraband per se or hazardous materials. NYC's claims cannot be decided via summary judgment as RZ Smoke Inc. ("Defendant") has a Seventh Amendment right to a jury trial regarding liability.

Moreover, summary judgment is inappropriate because the record contains substantial factual disputes regarding the precise nature of specific transactions, the delivery method for each transaction, the participants' physical locations when items were delivered, and the absence of evidence establishing the knowledge element required for PACT Act violations, which are not strict liability violations.

To establish an entity is not lawfully operating under 15 U.S.C. § 376a(a)(3), NYC must establish that an entity is knowingly not complying with a state, local or tribal law involving excise taxes, stamping, restrictions on sales to minors, licensing, age verification laws generally applicable to the sale of cigarettes or smokeless tobacco. NYC has failed to do this as this case does not involve any of these PACT Act concerns.

NYC's theory that Defendants were "not lawfully operating" because certain products lack FDA marketing authorization is foreclosed by federal preemption principles and by recent district court decisions holding that Defendant's municipalities cannot enforce, rely upon, or use alleged Tobacco Control Act ("TCA") violations as evidence of unlawful conduct. The PACT Act should not be used to enforce FDA tobacco products marketing approval provisions which address entirely different issues than the PACT Act.

NYC's theory is that because some of Defendant's customers were not registered with New York State taxation, a PACT Act violation occurred, fails as this is a ministerial registration provision involving sales taxes and is not a licensing provision within the scope of the PACT Act. The Pact Act explicitly differentiates between licensing requirements and registration/filing requirements and does not regulate sales taxes.

NYC's ban on vapor devices is not a local law generally applicable to the sales of all cigarettes or smokeless tobacco as it is a law directed only to sales of vapor devices which are not cigarettes under NYC law and plainly does not generally apply to all sales of cigarettes and smokeless tobacco. It therefore cannot be used to support a violation of 15 U.S.C. § 376a(a)(3).

Accordingly, NYC's unprecedented attempt to elevate alleged municipal violations that do not involve lost cigarette taxes, sales to minors, or licensing violations into federal PACT violations is meritless, and summary judgment should be denied.

## II.    ARGUMENT

### A.    The Seventh Amendment Requires a Jury Trial Regarding Pact Act Damages and Liability

The Seventh Amendment applies to statutory claims that are "legal in nature," and the statutory origin of the claim does not remove the jury-trial right. *SEC v. Jarkesy*, 603 U.S. 109, 110-111 (2024). Under *Tull v. United States*, 481 U.S. 412, 418 (1987) Courts determine whether a statutory action is legal by examining the nature of the action and the remedy sought, with the remedy being the more important consideration. *Jarkesy* reaffirmed that actions by the Government to recover civil penalties under statutory provisions historically have been treated as actions requiring trial by jury.

That rule controls this PACT Act case seeking civil monetary relief. The PACT Act provides that a violator "shall be subject to a civil penalty" up to specified amounts, including

penalties for delivery sellers and common carriers or other delivery services". 15 U.S.C. § 377. The Act also authorizes federal enforcement actions to obtain relief for violations, including civil penalties and money damages. 15 U.S.C. § 378. Because the relief sought by NYC is monetary, punitive and imposed for statutory violations, it is a legal remedy that triggers the Seventh Amendment jury right under *Jarkesy* and *Tull*. NYC has acknowledged this. *See* NYC Motion for Summary Judgment at p. 16, noting NYC is seeking to punish the Defendant citing *Tull.* Liability in this case must therefore be tried by a jury and cannot be granted via summary judgment. The Defendant requests a jury trial regarding liability.

In *Tull*, in an action involving civil penalties for alleged environmental violations, the Supreme Court held that the Seventh Amendment requires a jury trial on the merits since this is a statutory action analogous to suits at common law, and it applied that rule to a government action seeking civil penalties. *Tull v. United States*, 481 U.S. at 420-423. Moreover, *Tull* held that actions by the Government to recover civil penalties under statutory provisions, "historically ha[d] been viewed as [a] type of action in debt requiring trial by jury." *Id*. at 418-419. The *Tull* Court acknowledges that once liability by jury has been found, penalties could be levied by a court.

*Jarkesy* confirms that when the Government seeks civil penalties, which are designed to punish a person as the PACT Act does, the Defendant has a Seventh Amendment right to a jury trial. *Jarkesy*, 603 U.S at 123-125. The civil penalties in *Jarkesy*, like those in *Tull* and like those requested by NYC in this action, are designed to punish. Thus, the factual predicates for PACT Act liability, whether the Defendant violated the act must be found by a jury. *See Tex Tobacco Barn L.L.C. v United States,* 2026 U.S. App. LEXIS 19136 at *10-12 (5th Cir. June 30, 2026) (FDA ENDS fine violations for selling unauthorized ENDS, which are same violations NYC is alleging, implicates Seventh Amendment right to jury trail).

The PACT Act expressly authorizes "civil penalties" and "money damages," not merely injunctions or other equitable relief. 15 U.S.C. § 378. Monetary damages are traditionally legal relief, and actions seeking compensatory money relief trigger the Seventh Amendment unless the relief is restitution, incidental to injunction, or otherwise equitable in nature. *See Chauffer's, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570-71 (1990). NYC has lost no taxes since the City does not tax ENDS. Accordingly, the Defendant is entitled to a jury trial under the Seventh Amendment.

**B.      Even If Plaintiff Did Not Have Seventh Amendment Rights in This Matter NYC Could Not Be Granted Summary Judgement**

Even if Plaintiff lacked a Seventh Amendment right to a jury trial on liability, NYC could not be granted summary judgment. Summary judgment is appropriate only where the movant demonstrates no genuine dispute as to any material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Supreme Court has repeatedly emphasized that courts may not weigh evidence, resolve factual disputes, or make credibility determinations at the summary judgment stage. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249–50 (1986).

The moving party bears the initial burden of demonstrating the absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Courts should resolve all ambiguities and inferences from the underlying facts in the light most favorable to the party opposing the motion. *United States v. Diebold*, 369 U.S. 654, 655 (1962); *Quinn v. Syracuse Model Neighborhood Corp*., 613 F.2d 438, 445 (2d Cir.1980). Courts must view the evidence in the light most favorable to the nonmovant and deny summary judgment where the record contains conflicting evidence or credibility questions. *Holtz v. Rockefeller & Co*., 258 F.3d 62, 69 (2d Cir. 2001). Where the parties' Rule 56.1 statements reveal factual disputes, as here,

summary judgment is inappropriate. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

### i. *NYC Has not established liability under PHL§ 1399-ll(1-a).*

NYC's theory under PHL § 1399-ll(1-a) depends entirely on the fact that 66 of RZ Smoke's 87 customers do not appear on DTF's list of registered vapor product dealers. R.56.1 St. ¶¶ 49–53. But absence from that list shows a violation only if the customer was required to be on it, and NYC has made no such showing. New York's registration scheme confirms that this cannot be assumed. Unlike cigarettes, which are regulated through a three-tier licensing structure under Tax Law §§ 480 and 480-a, vapor products have never had any wholesale or distributor licensing regime. Article 28-C creates only a retail dealer certificate of registration. NY Tax L. § 1183; N.Y. Dep't of Taxation & Fin., Technical Memorandum TSB-M-19(3)S (Oct. 18, 2019). The application offers no option to register as a wholesaler or distributor. The guidance unequivocally states "any person who intends to sell vapor products *at retail*…must obtain a Vapor Products Dealer Certificate of Registration… *for each retail location*, online location and vending machine in which vapor products are sold[.]" "Any business currently selling vapor products *at retail must be registered…*"[1]

In addition, the New York State Department of Health issued clear guidance stating that shipments of vapor products "*between manufacturers, wholesalers, and distributors within New York*" are permitted and that "*Such entities are not required to register as vapor products dealers to send or receive shipments of vapor products…*" [2]

---

[1] *See* Exhibit A and B.
[2] *See* Exhibit C.

The Legislature's 2025 proposal to create, for the first time, a "vapor products distributor" license confirms that no such license existed during the period at issue. 2025 N.Y. S. 4527-B / A. 4619-A (2025–2026 Reg. Sess.).

A customer operating as a wholesaler or distributor, reselling to other businesses rather than to consumers, *See* Tax Law § 1101(b)(4)(i), had no certificate available to obtain and no way to appear on DTF's retail-only list, regardless of how lawfully it operated.[3] Its absence from that list therefore says nothing about legality unless the City also shows the customer was making retail sales and thus subject to registration. The City's Rule 56.1 Statement makes no such showing for any of the 66 customers.

The record supports treating this as disputed. Several of the nine customers the City identified by name as unregistered have business names indicating wholesale or distribution operations, including Finest Distributors LLC, Vape Direct Distribution, and Ross Distro. R.56.1 St. ¶ 53, *see also* Rasool Decl. at 7. If these entities operated as wholesalers or distributors, their absence from a retail-only list is exactly what the statutory scheme predicts, not evidence of unlawful conduct. At minimum, this creates a genuine factual dispute that must be resolved in RZ Smoke's favor. *Anderson*, 477 U.S at 249–50.

As movant, the City bears the burden of establishing the absence of a genuine dispute on every element of its claim, including the threshold question of whether each customer was a retailer subject to the registration requirement at all. *Celotex Corp.*, 477 U.S. at 323. A cross-reference to a retail-only registration list, without any customer-specific showing that a given business made retail sales, does not carry that burden, particularly where, as here, the very registration regime the City invokes had no mechanism by which a wholesale-only recipient could ever comply. Whether

---

[3] *See* Exhibit D (Registrations requires certification as to how products will be sold. A wholesaler would have to falsely certify, presumably subject to criminal charges, in order to submit an application.).

RZ Smoke's customers operated as retailers or wholesalers is a fact question turning on their course of dealing and customer base that cannot be resolved without weighing evidence and drawing inferences against the non-movant. *Jeffreys*, 426 F.3d at 553.

PHL § 1399-ll(1-a) provides two independent ways for a person to qualify as a "licensed or registered agent or dealer", by appearing on the list of licensed or registered agents or vapor product dealers published by DTF, or being licensed or registered under Article 28-C. Either prong is sufficient. The City's subpoena to DTF recognized this structure by asking both whether each entity ever received an Article 28-C certificate and whether each ever appeared on the DTF list referenced in the statute. *See* ECF 206-1. DTF answered only the first question, stating no Article 28-C certificates were found for any of the nine entities from 2019–2025. ECF 202-2. On the second, list-based question, DTF stated it "cannot determine whether records maintained by the Department would be responsive to any reference in the Public Health Law." *Id*.

The City's brief and Rule 56.1 Statement rely solely on the Article 28-C response. *R. 56.1 St.* ¶ 53. They cite no evidence addressing the statute's alternative list-based safe harbor. Having asked the designated agency and received "cannot determine," the City cannot treat that non-answer as proof that none of the entities appeared on the list. A movant cannot satisfy its burden by posing the dispositive question, receiving no evidence, and proceeding as though the answer were negative. *Anderson*, 477 U.S. at 249–50. Because the record contains no evidence resolving the statute's alternative prong, the City has not established, without genuine dispute, that any of the nine customers falls outside both of § 1399-ll(1-a)'s independent safe harbors.

These standards foreclose summary judgment here as there are substantial factual disputes in the record regarding whether the delivery sales as defined in the PACT Act occurred in specific

transactions and whether the Defendant knowingly violated the PACT Act. *See* Rasool Decl. ¶ 5-7.

### ii.    *Factual disputes exist regarding § 17-715 violations.*

A genuine factual dispute exists as to whether any transactions at issue were completed within New York City. Section 17-715 applies only to sales occurring in the City, and the City must show that the challenged transactions were consummated there. The City's own Rule 56.1 Statement shows this was not uniformly true: orders were picked and packed in Connecticut, then moved to RZ Smoke's warehouse in New Hyde Park, Nassau County. R.56.1 St. ¶ 25. Some orders were picked up by customers at that Nassau County warehouse, while only the remaining orders were delivered directly to customers located in New York City. *Id.* ¶¶ 26-27. A sale completed by pickup in New Hyde Park is consummated outside New York City, regardless of the customer's business address.

The City does not identify which transactions were pickups versus deliveries, nor provide invoice-level evidence showing which sales were completed within City limits. A general assertion that RZ Smoke sold to "customers in New York City" cannot substitute for transaction-specific proof, particularly where the City's own evidence shows some business occurred outside the City. As movant, the City must establish this element with admissible evidence, and it has not done so. *Anderson*, 477 U.S. at 249–50 (1986).

### iii.    *New York Regulations Do Not Prohibit NYC Sales.*

NYC's own regulations show that a customer's City address does not automatically establish a prohibited "sale in New York City." Until July 30, 2024, New York City Department of Health and Mental Hygiene ("DOHMH's") implementing rule for § 17-715 allowed flavored electronic cigarettes to be sold by wholesalers so long as the sale was made to an entity located

14

outside the City, expressly permitting wholesale transactions connected to City-based sellers but directed outside City limits. 24 R.C.N.Y. § 28-02(b) (eff. Dec. 18, 2021 to July 30, 2024); N.Y.C. Dep't of Health & Mental Hygiene, Notice of Adoption (eff. July 31, 2024).

The rule drew the same distinction RZ Smoke draws here: a sale is not a prohibited "sale in New York City" merely because the wholesaler or customer has some connection to the City; what matters is where the sale was completed and to whom. *See* ECF 207 at 6. Having relied on that distinction for more than two years, NYC cannot now treat the issue as self-evident. It remains the City's burden to show which specific transactions were completed within NYC and were not exempt wholesale sales under the rule then in force, and it has not done so. Summary judgment on Count II should be denied.

## C.    The PACT Act Was Not Intended to Address Issues In this Case

The PACT Act is not an omnibus federal/local tobacco regulation statute. Rather, the PACT Act aims to specifically combat specific concerns involving remote trafficking of untaxed cigarettes. *See* Pub. L. No. 111–154, §1(c); *Twenty-Nine Palms v. Blanche*, 174 F.4th 1190, 1194 (9th Cir. 2026).  Congress found that illicit cigarette and smokeless-tobacco trafficking through direct internet and mail order sales to traditional consumers caused billions of dollars in lost federal, state, and local tax revenue each year, with internet sellers responsible for a substantial share of the losses; that terrorist organizations such as Hezbollah, Hamas, and al-Qaeda had profited from cigarette smuggling and counterfeit tax-stamp; that remote sellers operating online or by mail, phone, or fax made it significantly easier and cheaper for minors to obtain tobacco products and routinely ignored age-verification safeguards, excise tax obligations, and federal registration and reporting requirements; that these illegal operations diverted billions in sales from legitimate retailers. *See* PACT Act, Pub. L. No. 111-154, § 1(c), 124 Stat. 1087, 1087–88 (2010)

15

(codified at 15 U.S.C. § 375 note). The PACT Act was amended in 2021 to extend its reach to Electronic Nicotine Delivery Systems (ENDS).

NYC's case *implicates none of the purposes of the PACT Act or any of the specific concerns that resulted in the passage of the PACT Act.* NYC has not lost any excise taxes, has not documented any age verification failures or receipt of Defendant's products by minors or marketing specifically directed at minors or any links to terrorism or organized crime.

The appellate case law and decisions on the merits addressing PACT Act violations involves schemes to defraud states of massive amounts of excise taxes through the illegal distribution of untaxed tobacco. *See e.g. Twenty-Nine Palms*, 174 F.4th at 1193 (9th Cir. 2026) (distribution scheme involving untaxed, unstamped tobacco by non licensees violates PACT Act); *California v. Azuma Corp.*, 2024 U.S. App. LEXIS 22952 (9th Cir, 2024) (same); *New York v. UPS,* 942 F.3d 554 (2d Cir. 2019) (multi-million-dollar tax evasion scheme violates PACT Act); *New York v. Mtn. Tobacco*, 942 F.3d 536 (2d. Cir. 2019) (PACT Act case involving scheme to transport untaxed unstamped tobacco from Indian Reservations in Washington into New York State).

This case involves NYC's attempt to stretch the PACT Act far beyond Congressional intent by leveraging alleged minor municipal ENDS flavor violations into substantial federal violations. This is an abuse of the PACT Act.

This is not the first time NYC has attempted to use Federal statutes to amplify minor alleged violations. In *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010), the Supreme Court rejected NYC's attempt to turn a minor Jenkins Act reporting violations into a major federal RICO claim for lost cigarette-tax revenue. The Court held that failure to file Jenkins Act reports did not directly cause NYC tax losses because the chain of causation depended on multiple independent steps,

16

including whether individual smokers chose to pay their taxes. *Id.* at 11. The decision fits a familiar pattern where NYC has repeatedly tried to leverage relatively small or technical statutory tobacco violations into sweeping federal liability. *See also City of New York v. Milhelm Attea & Bros.*, 2009 U.S. Dist. LEXIS 19351 (E.D.N.Y 2009) (rejecting attempt by NYC to use criminal aiding and abetting in civil cigarette action).

**D.     NYC Cannot Establish Undisputed Facts Showing A "Delivery Sale"**

The PACT Act defines a "delivery sale" as a sale to a consumer where the order is placed outside of the presence of the seller or by telephone, mail, or internet*, and the goods are delivered by common carrier, remote delivery service or the seller is not in the presence of the buyer when the buyer obtains possession of the goods*. 15 U.S.C. § 375(5)(A). (Emphasis added).  To be granted Summary Judgment, NYC bears the burden of proving this essential statutory element for every alleged delivery sale. NYC cannot meet this burden.

First, NYC has not shown which specific shipments within the scope of the PACT Act were made to a consumer. NYC acknowledges that many orders were picked up in person. Critically, NYC has not provided any evidence of orders that were actually delivered by RZ Smoke into New York City. The record, which does not include bills of lading, or any shipping documents, does not document in each instance transportation by common carriers or remote deliver service and does not document remote receipt by other businesses and therefore cannot support summary judgment. *Compare with Twenty-Nine Palms*, 174 F.4th at 1194 and 1201. (9th Circuit affirms District Court granting of summary judgment in matter involving unlawfully operating retailers when administrative record conclusively established remote delivery sales through introduction of shipping records, PACT Act reports filed by Twenty-Nine Palms for every shipment included the name and address of the remote party that 29 Palms admittedly shipped to, the name and address

17

and phone number of the person delivering the cigarettes which established undisputed facts for each specific transaction).

NYC admits that many customers picked up goods at Defendant's premises. These transactions are, by definition, not delivery sales. Other sales involved the non-specific term "local delivery" which can certainly mean a pickup by a customer. ECF 207. This declaration is insufficient to establish undisputed facts involving remote deliveries in each instance via a common carrier or remote deliver service which is necessary to establish a PACT Act violation. Invoices do not conclusively establish actual remote delivery. Items are often billed and not delivered. Since the material undisputed facts of whether each shipment falls within the PACT Act definition of a delivery sale, are not established, summary judgment cannot be granted.

Moreover, the City has not identified which sales were to retailers and which were to wholesalers. The PACT Act specifically indicates sales between lawfully operating wholesalers and retailers are non-consumer sales.15 U.S.C. § 375(4)(B).

### E.    NYC Cannot Prove Defendant Was Not Lawfully Operating

The PACT Act delivery sales provision requires that a sale to a consumer as defined under the act must be lawfully operating under all generally applicable New York State or NYC excise tax, stamping and licensing laws or other laws generally applicable to the sales of cigarettes or smokeless tobacco and sales to minors laws. 15 U.S.C. § 376a(a)(3), *see also* 15 U.S.C. § 376a(d) (delivery sales must comply with excise tax laws); 15 U.S.C. 376a(b)(1) cigarette packaging requires statement includes "payment of all applicable excise taxes and licensing provisions". To show that a business is a consumer rather than a distributer, NYC must identify a specific licensing or excise tax law or sales to minor law or local law generally applicable to all sales of cigarettes or smokeless tobacco that a retailer is violating. NYC has failed to do this.

18

The Supreme Court teaches that "language, of course, cannot be interpreted apart from context." *Smith v. United States*, 508 U.S. 223, 229 (1993). It also teaches "that the meaning of a word cannot be determined in isolation but, rather must be drawn from the context in which it used." *Deal v. United States*, 508 U.S. 129, 132 (1993). *See also Massachusetts v. Moresh*, 490 U.S. 107, 114-115 (1989) (words grouped together in statute should be given related meaning); *Shell Oil Co, v. Iowa Dept. of Revenue*, 488 U.S. 19, 26 (1988) (words must be read in the context of the entire statutory provision that they appear).

Thus, in reading the PACT Act, only laws addressing excise taxes, generally applicable licensing requirements, or sales to minors fall within the scope of other laws under 15 U.S.C. § 376a(a)(3), and "lawfully operating" cannot be stretched to include any federal, state, or local law an entity may be violating. As noted, the PACT Act's purposes and delivery sales provisions specifically reference cigarette excise taxes on multiple occasions. *The statute never mentions sales taxes*. The PACT Act's reference to "other laws generally applicable to the sale of cigarettes" cannot be read to incorporate any law at all; it is limited by its own subject-matter language. Reading it more broadly would raise serious constitutional vagueness concerns, so the phrase must be construed narrowly. The Supreme Court has emphasized that statutes must give ordinary people fair notice of what conduct is prohibited and catch-all phrasing can violate that requirement when it leaves the scope of liability undefined. *Papachristou v. Jacksonville*, 405 U.S. 156, 162-63 (1972).

A phrase such as "any other law" becomes constitutionally vulnerable when it fails to give "a person of ordinary intelligence fair notice that [its] contemplated conduct is forbidden by the statute." *United States* v. *Harriss*, 347 U.S. 612, 617 (1954).  In the PACT Act context, the phrase "any other law" avoids vagueness only because the statute provides fair notice to persons that it

19

limits incorporated laws to those involving cigarette excise taxation, licensing, cigarette stamping or sales-to-minors requirements, providing the definitional hook necessary to satisfy the void-for-vagueness doctrine.

Incorporating a violation of any federal, state or local law into this analysis would certainly render the statute unconstitutional. To the extent that another ruling on a Rule 12(b)(6) motion has held differently, *City of New York v. Magellan Tech Inc*. 735 F. Supp 312 (S.D. N.Y 2025) we respectfully submit that case wrongly decided this issue. There is no way a person of ordinary intelligence would know that the PACT Act mandates compliance with FDA laws or New York State sales tax registration laws or laws that regulate cigarettes as opposed to vapor devices or potentially any other law.

To the extent that a revised ruling on this matter or other matters may differ with prior rulings, the law of the case doctrine does not limit a court to reconsider its own decisions. *See Sagendorf-Teal v. County of Rensselaer,* 100 F. 3d 270, 277 (2d Cir. 1996). Courts routinely recognize that a ruling at the Rule 12(b)(6) stage does not bind the court at summary judgment or on the merits, because a motion to dismiss addresses only the sufficiency of the pleadings, not the evidentiary record. The law-of-the-case doctrine is discretionary and permits reconsideration of earlier interlocutory rulings when the record develops or when the prior ruling was clearly erroneous. *Id.. see also Arizona v. California*, 460 U.S. 605, 618 (1983); *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991).

The Second Circuit has repeatedly held that a court may depart from a prior pleading-stage ruling once the case reaches summary judgment. *See DiLaura v. Power Auth. of N.Y.*, 982 F.2d 73, 76-77 (2d Cir. 1992); *Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 149–50 (2d Cir. 1999). Against that backdrop, we respectfully submit that City *of New York v. Enviromd Grp. LLC*, 2025

20

U.S. Dist. LEXIS 133942 (S.D.N.Y) erroneously expanded the PACT Act by incorrectly incorporating sales taxes, federal Tobacco Control laws, and other regulatory provisions which are not PACT Act predicates, an interpretive error this Court is not bound to perpetuate under the law-of-the-case doctrine.

### F.    NYC Ban on Flavored ENDS Is Not a Local Law Generally Applicable to Sales of Cigarettes

The NYC ban on ENDS is not a local law generally applicable to sales of all cigarettes or smokeless tobacco. It applies only to flavored ENDS. A law is generally applicable under the PACT ACT if it applies uniformly to all cigarettes and smokeless tobacco sales, such as a tax law, licensing law, or sales to minors law. *See Twenty-Nine Palms* , 174 F. 4th at 1195 (indicating all cigarette retailers must follow specific tax and licensing and purchasing requirements.)

The NYC ENDS ban is not a law generally applicable to cigarette or smokeless tobacco sales because *under New York City law, ENDS are not classified as cigarettes.* NYC defines a cigarette as any roll for smoking made wholly or partly of tobacco or any other substance, regardless of size, shape, or added ingredients, so long as the wrapper is made of paper or another non-tobacco material. NYC Administrative Code §17-713. Electronic cigarettes, NYC's term for certain ENDS, are regulated under the definition incorporated by reference in Administrative Code § 20-560, which covers devices that deliver vaporized nicotine or other substances and treats them as a distinct product category separate from traditional cigarettes. Because ENDS are not cigarettes under NYC's own definitions, the ban on flavored electronic cigarettes is not a law generally applicable to the sale of cigarettes. NYC cannot collapse the two categories. Therefore, the City flavor ban plainly doesn't fall within section 376a(a)(3). The fact that the PACT Act includes cigarettes in its definition does not change the result because NYC alleges a section 376a(a)(3) violation based on local law.

Additionally, the sales of the goods took place at Defendant's premises outside New York City. NYC cannot enforce its flavored-tobacco ban against a wholesaler located outside its borders because municipalities lack authority to regulate conduct occurring extraterritorially. Any attempt to reach an out-of-city seller would constitute impermissible extraterritorial regulation under the Dormant Commerce Clause. *See Healy v. Beer Institute*, 491 U.S. 324, 336–37 (1989).

**G.    New York Public Health Law § 1399-ll(1-a) cannot be used in this instance as a PACT ACT Predicate.**

New York State Health Law section 1399-ll (1-a) addresses criteria involving sales of vapor products. It is not a law generally applicable to the sale of cigarettes in the state as it only applies to the sale of vapor violations products. Section 1399-ll (1-a) establishes and regulates the statewide tobacco and vapor product use prevention and control program, rather than restricting the shipping or transport of cigarettes, which is governed under a separate section. *See* N.Y. Pub Health § 1399 ll. Moreover, it is not a law imposing a licensing requirement since it incorporates a registration requirement rather than a true licensing requirement as described *infra*.

Critically, there is no evidence in the record that Defendant was aware of the registration status of its customers, many of which were wholesalers who may not be covered by this law and many of which were in fact registered.  *See* Rasool Decl. at 8. There is no indication that New York Public Health Law § 1399-ll(1-a) is a disfavored strict-liability provision. Wholesalers do not have access to retailers' tax filings. This statute requires proof that the respondent knowingly engaged in prohibited conduct.

New York law presumes mens rea unless the Legislature clearly indicates otherwise, and § 1399-ll contains no such indication. Under N.Y. Penal Law §§ 15.10 and 15.15, statutory silence does not create strict liability, and courts routinely read a culpable mental state into public-health offenses absent explicit language to the contrary. New York courts have repeatedly emphasized

22

that strict-liability crimes are disfavored and may be imposed only where the legislature clearly intended them. *See People v. Haddock*, 48 A.D.3d 969, 970 (3d Dept., 2008). In *Haddock*, the court held that omission of mens rea is "not the end of the analysis," and in *Morgenthau v. Khalil*, 73 A.D.3d 509, 510 (1st Dept. 2010), the court recognized that scienter may be supplied to avoid unwarranted strict liability. The structure of § 1399-ll reinforces this presumption because subdivision 2 expressly requires carriers to "knowingly transport cigarettes," demonstrating that the Legislature knew how to impose strict liability and chose not to do so for vapor-product sellers. Under *People v. Ryan*, 82 N.Y.2d 497, 503 (1993), a mens rea term appearing in one part of a statute presumptively applies to all material elements unless a contrary intent is clear. *People v. Coe,* 71 N.Y.2d 852, 854 (1988), confirms that even in the Public Health Law context, courts require meaningful culpability.

Because § 1399-ll(1-a) contains no clear legislative intent to impose strict liability for ENDS-related penalties, and because its structure and New York's default culpability rules point the other way, the statute must be construed to require a culpable mental state rather than automatic liability for any shipment. Absent proof of knowledge, the City has failed to establish an essential element of § 1399-ll(1-a), and the charge cannot be used as a PACT Act lawfully operating predicate.

## H.    FDA Laws Are not other laws within Scope of 15 U.S.C § 376(a)(A)(3)

The laws that section 376a(a)(3) refer to including "the other laws" section are State and local laws and are not laws administered by the FDA. Congress clearly could have included FDA laws in this section and did not do since the specific aim of the PACT Act was to prevent State excise tax evasion. Congress passed the TCA in 2009 and the PACT Act shortly afterward However, the two statutes were aimed at entirely different problems. The TCA created a new

23

FDA-centered public-health regime focused on product regulation, premarket review, and youth-access restrictions.

The PACT Act, by contrast, was a specific tax-collection and anti-smuggling statute designed to stop illicit interstate cigarette trafficking, recover lost excise-tax revenue, and regulate remote sellers. Their findings, purposes, and enforcement structures sit in different titles of the U.S. Code and address different regulatory failures: FDA lacked authority over tobacco products, while states lacked tools to stop tax evasion and internet cigarette sales. Because Congress enacted these laws in close succession, the absence of any cross-reference is telling.

Nothing in the PACT Act's text, structure, or legislative history suggests Congress intended it to enforce or incorporate FDA's premarket-authorization requirements. The PACT Act does not mention, "new tobacco products," "substantial equivalence", or any other TCA concepts. Likewise, the TCA does not invoke the PACT Act as an enforcement mechanism. If Congress had intended PACT violations to include selling a product lacking FDA premarket tobacco authorization, it would have said so given how contemporaneously the two statutes were drafted and debated.

When the PACT Act intended to incorporate other federal provisions, it explicitly did so. *See e.g.* 15 U.S.C. § 375 (8) incorporating federal 1151 definition into PACT Act definition of Indian Country; 15 U.S.C. § 375 (9) incorporating 25 USC provisions into definition of an Indian Tribe; 15 U.S.C. §376a(e)(5)(B) incorporating Title 49 U.S.C provisions into common carrier compliance); 15 U.S.C.§ 376a(e)(9)(C) incorporating Title 49 U.S.C provisions into common carrier PACT Act penalties.

I.    **NYC Has Not Established Failure to Comply with a Licensing Law as Registration is a Licensing Requirement as Set Forth In 15 USC § 376a(A)(3)(B)**

The DTF vapor "certificate of registration" is not a regulatory license within the meaning of the PACT Act. New York Public Health Law § 1399-ll(1-a) expressly refers to a certificate of registration, in contrast to § 1399-ll, which governs shipments of cigarettes to state licensees. New York is now proposing to add vapor-product licensing to § 1399-ll, underscoring that no such license previously existed. Unlike licenses for alcohol, cigarettes, cannabis, or firearms, which require background checks, suitability determinations, and discretionary review, the current DTF vapor registration is purely ministerial: any applicant who submits the form and fee receives a certificate automatically, with no investigation, compliance review, or discretionary authority to deny. NY CLS Tax § 1183. New York's move to create an actual vapor-products license confirms that the prior registration was not a regulatory license; if it were, the Legislature would not need to create a new licensing category.

This distinction mirrors the PACT Act's own structure. The Act differentiates between filing or registration requirements and true licensing obligations. 15 U.S.C. § 376(a) requires shippers of cigarettes and smokeless tobacco to file with ATF and state tax administrators, but this filing is not a license, just as filing with DTF is not a license. By contrast, federal law requires actual licenses for firearms and explosives. 18 U.S.C. §§ 923, 843. Congress understood this difference and required a violation of a state licensing requirement to trigger the PACT Act's "lawfully operating" provision. 15 U.S.C. § 376a(a)(3). Courts applying the PACT Act have held that a seller must violate an existing, generally applicable state excise tax or licensing law to fall outside the statute's protection. *Twenty-Nine Palms*, 174 F.4th at 1197–98; *Azuma Corp.*, 2024 U.S. App. LEXIS 22952, at *10. No court has treated failure to comply with a ministerial registration requirement as sufficient to establish that a seller is not "lawfully operating" under the PACT Act.

**J.      The PACT Act does not regulate Sales Taxes**

New York's vapor-product Retail Dealer Certificate of Registration under N.Y. Tax Law § 1183 is a sales-tax tracking requirement, not an excise-tax licensing law, and therefore cannot serve as a PACT Act predicate. New York requires many businesses to file a certificate of registration before commencing operations, N.Y. Tax Law § 1134, solely to identify retailers for sales-tax compliance. This registration does not impose or collect excise taxes and does not regulate whether a vapor-product business is lawfully operating. Under the PACT Act, federal liability is triggered only by conduct involving lost or unpaid cigarette excise taxes. Excise taxes are levied at point of origin on the manufacture, sale, or consumption of specific commodities, *Flint v. Stone Tracy Co.*, 220 U.S. 107, 151 (1911), whereas a general sales tax applies broadly to retail transactions, 26 U.S.C. § 164(5). A sales-tax registration requirement therefore does not fall within the category of "laws relating to the payment of cigarette taxes" incorporated by the PACT Act.

Congress enacted the PACT Act in 2010, and the Internet Tax Freedom Act, (ITFA) codified at 47 U.S.C. § 151, which permanently prohibits federal, state, and local governments from taxing internet access or imposing multiple or discriminatory taxes on online commerce. This law prevented Governments from imposing sales-tax collection duties on remote sellers. *Quill* barred states from requiring out-of-state sellers to collect sales or use taxes absent physical presence, *Quill Corp. v. North Dakota,* 504 U.S. 298, 298 (1992) and ITFA prohibited discriminatory taxes on electronic commerce, reinforcing that states could not impose special or burdensome sales-tax obligations on remote internet sellers. Congress therefore drafted the PACT Act narrowly to address excise-tax evasion on cigarettes and smokeless tobacco, not general

internet sales-tax collection. The PACT Act's delivery-sales provisions, 15 U.S.C. §§ 376a(d)(1)(A)–(C), (d)(2), likewise require excise-tax violations as a necessary predicate.

### K.    NYC Has Not Established Lawfully Operating Violations Under Appellate Law

NYC's approach is refuted by the procedure used to establish violations established in the only published appellate case addressing the issue of lawfully operating under the PACT Act. *See generally, Twenty-Nine Palms,* 174 F.4th 1190 (9th Cir. 2026).

In early 2022, California warned the Twenty-Nine Palms that it was violating the PACT Act by failing to register as a distributor and failing to file required monthly reports, noting that the Tribe had received and sold millions of out-of-state cigarettes to non-tribal customers. *Id.* at 1195. After the letters were exchanged, ATF informed the Tribe it was to be added to the federal noncompliant list. *Id*. at 1195-96. ATF in June 2023, concluded that Twenty-Nine Palms was violating the Act by selling untaxed, unstamped cigarettes and smokeless tobacco to unlicensed buyers who were not complying with California's licensing and excise tax requirements. *Id.* ATF relied on shipping records, detailed PACT Act filings, and information from the Tribe's New York supplier, and cited Ninth Circuit precedent establishing that such off-reservation, intertribal wholesale sales remain subject to state law. *Id*. After the Tribe challenged its pending listing, California confirmed that nearly all of the Tribe's customers lacked required licenses. ATF rejected the Tribe's legal arguments in a detailed October 19, 2023, 14-page letter, concluding that the Tribe's non-licensed customers were "consumers" under the Act and that its off-reservation shipments were unlawful delivery sales, while agreeing to temporarily postpone the listing. *Id.* ATF established that from 2022-2023 Twenty-Nine Palms purchased millions of untaxed, unstamped cigarettes" from entities in New York that it shipped into California and sold to unlicensed third-party retailers who sold untaxed, unstamped cigarettes to non-tribal members.

27

The administrative record included those shipping records establishing remote delivery in each instance, detailed PACT Act reports which established the facts of each specific transaction, and letters from California and ATF specifically warning the Tribe that its activities violated specific California tax and regulatory requirements since its customers were not lawfully operating and established Twenty-nine-Palms knowledge of the essential facts prior to initiating judicial proceedings. Both California and ATF specifically offered the Tribe several opportunities to come into compliance with the PACT Act and applicable State tax and licensing laws. The Tribe did not dispute the facts of the case.

NYC has not established any of these necessary factors involving the specific facts and knowledge regarding each transaction, nor identified specific licensing requirements or established alleged violations relating to excise tax collection or warned or offered the Defendant an opportunity to come into compliance. *See* Rasool Decl. As such, NYC has not satisfied the statutory criteria to establish Defendant is not lawfully operating.

## L.    FDA Marketing Authorization Status Cannot Be Used To Establish "Unlawfully Operating"

NYC cannot rely on FDA ENDS-marketing-authorization concepts to show Defendant was not "lawfully operating" under the PACT Act. The PACT Act contains no requirement that ENDS products be FDA-authorized, and any attempt by a state or locality to enforce FDA's premarket-authorization regime is foreclosed by federal preemption. Under the Supremacy Clause, state law must give way where it conflicts with federal law. U.S. Const. art. VI, cl. 2; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). The FDCA expressly reserves enforcement authority to the federal government. 21 U.S.C. § 337(a). Because the City's theory requires proving an FDCA violation as a predicate element of PACT Act liability, it is preempted.

The Supreme Court has repeatedly held that states may not enforce or second-guess FDA approval *requirements. Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 342 (2001)*; PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011)*; Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472, 480 (2013). Recent ENDS-specific decisions confirm the same principle. *In Iowans for Alternatives to Smoking & Tobacco v. Iowa Dep't of Revenue*, 781 F. Supp. 3d 724 (S.D. Iowa 2025), the court enjoined Iowa's vapor-product directory because it created a state-level PMTA enforcement regime, holding that Congress vested exclusive enforcement authority in FDA. *Id.* at 735. *Nova Distro Inc. v. Miyares*, 2025 U.S. Dist. LEXIS 26228, at *53 (E.D. Va. 2025), likewise held that § 337(a) bars state enforcement of FDCA requirements, and *State ex rel. Yost v. Central Tobacco & Stuff Inc.*, 2025-Ohio-4613 (2025), reaffirmed that states cannot bring claims that depend on proving FDCA violations.

By contrast, in *Wisconsinites for Alternatives to Smoking & Tobacco v. Casey*, 172 F.4th 976 (7th Cir. 2026), the Seventh Circuit upheld Illinois's flavored-product ban precisely because the state "does not seek to enforce the FDCA, either indirectly or directly." Id. at 988–89.

The PACT Act is an excise tax-and-delivery reporting statute, not a product-authorization regime. Allowing NYC to treat FDA marketing authorization as part of the PACT Act's "lawfully operating" requirement would convert the PACT Act into a backdoor PMTA-enforcement mechanism, contrary to § 337(a) and Supreme Court precedent.

M.     **FDA Guidance forecloses NYC case**

On May 6, 2026 the FDA authorized the marketing of four flavored ENDS. Each product is an e-liquid pod containing 50mg/ml (or 5%) of tobacco-derived nicotine. The FDA noted that" smoking is the leading preventable source of chronic disease and premature death in the U.S and more than 25 million still smoke combustible cigarettes, and "they deserve better, less harmful

29

alternatives. Under President Trump's leadership, the FDA has authorized a number of less harmful alternatives for smokers, including 11 ENDS products from American companies". *See* FDA Center for Tobacco Products, Press Release, May 5, 2026. Bret Koplow, Ph.D., J.D., acting CTP director, this a "potential game changer" for preventing youth use while expanding options for adults who smoke. It is likely that the FDA will continue to approve flavored ENDS.

This action reflects a meaningful shift in FDA's posture: flavored ENDS products are not contraband per se, are certainly not hazardous materials. Moreover, FDA's updated enforcement guidance makes clear that it will not prioritize enforcement against products for which a timely PMTA has been submitted, even while the application remains under review. The FDA states that ENDS products, including flavored ENDS, *may reduce harm for adult smokers who switch completely* and that, while not totally safe, they are *"not as harmful as combustible cigarettes."* The FDA has recognized that immediately forcing all unauthorized ENDS products off the market could result in ENDS users reverting to more harmful traditional cigarettes.

FDA has acknowledged that e-cigarettes, including flavored ENDS, fall on the lower-risk end of the tobacco "continuum of risk" and may benefit adult smokers who switch. FDA states that "e-cigarettes can generally be a lower-risk alternative for adults who smoke cigarettes" and that "switching completely from cigarettes to e-cigarettes may reduce exposure to many harmful chemicals present in cigarettes." The agency further explains that non-combusted products such as e-cigarettes "generally contain lower levels of harmful chemicals linked to cancer," and that e-cigarette aerosol contains "fewer numbers and lower levels of most toxicants than smoke from cigarettes." *See* FDA Food and Drug Facts about E-Cigarettes. These statements reflect the agency's current scientific position that favored ENDS products are not as harmful as combustible cigarettes and reduce harm for adult smokers who switch completely.

The FDA's recent authorizations of ENDS products and its June 2026 decision allowing ZYN nicotine pouches to carry reduced-risk claims reflect a consistent public-health view that non-combustion nicotine delivery systems pose far fewer toxicological dangers than cigarettes. The agency still warns about addiction and youth access, but its regulatory posture makes clear that the primary health harm comes from combustion, not from nicotine itself. ZYN pouches deliver substantial amounts of nicotine, yet nicotine is a lawful commodity, and the FDA's actions show it is willing to authorize these products when adult smokers may benefit from switching completely.

FDA's own guidance forecloses NYC's theory that flavored ENDS are contraband per se or hazardous materials and retailers who sell unauthorized or "unapproved" vapes are per se operating unlawfully. On its web page discussing the sale of ENDS, FDA discusses ID verification, age restrictions and advertising restrictions, but does not discuss the sale of unauthorized ENDS or states that this activity is banned. *See* https://www.fda.gov/tobaccoproducts.

### N.   NYC Cannot Be Granted Summary Judgment Because It Has Not Established Knowing PACT Act Violations

Under settled Second Circuit law, summary judgment cannot be granted where the movant fails to produce admissible evidence establishing every element of the offense, including any required mental state. Knowledge is a material fact, and the absence of evidence on that element is fatal to a Rule 56 motion. *Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir. 1975); *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975). The Second Circuit has repeatedly reversed summary judgment where the government offered no proof of the Defendant's knowledge. *United States v. One Tintoretto Painting*, 691 F.2d 603, 606–09 (2d Cir. 1982)*; In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009).

Here, NYC has offered no evidence that Defendant knew the products sold met NYC's specific definition of "flavored electronic cigarettes" under Admin. Code § 17-715, nor any evidence that he knew his customers were unregistered under § 1399-ll(1-a). A generic statement about selling "flavored e-cigarettes" does not establish knowledge of the particular items' characterizing flavor as defined by statute or rule. *See* 24 RCNY 28-03. Likewise, there is no evidence that Defendant knew the registration status of his customers, an essential factual element of the City's theory. *See* Rasool Decl. at 8.

The Supreme Court presumes mens rea in regulatory statutes unless Congress clearly indicates otherwise. *Liparota v. United States*, 471 U.S. 419, 425 (1985); *Staples v. United States*, 511 U.S. 600, 619 (1994); *Rehaif v. United States*, 588 U.S. 225, 227 (2019). Congress followed that model in the Contraband Cigarette Trafficking Act, which requires proof that a defendant knowingly possessed unstamped cigarettes. *United States v. Nguyen*, 758 F.3d 1024, 1029 (8th Cir. 2014).

Nothing in the PACT Act suggests Congress intended strict liability, and flavored ENDS are lawful commodities, not hazardous materials. Absent proof that Defendant knew the essential underlying facts, including whether the products were covered by NYC's ENDS definition and whether customers were unregistered, NYC's theory collapses into the kind of strict-liability regime the Supreme Court has consistently rejected.

## O.    It Is Premature to Rule on Damages

Because NYC has failed to establish the necessary elements to obtain Summary Judgment in this matter and since liability in this matter must be decided by a jury this Court should not make a damage ruling.  However, to the extent that NYC is claiming that a $5000 fine for an initial offense and a $10,000 fine for subsequent offenses which would result in potentially millions of

32

dollars of PACT Act fines that type of punishment would be precluded under the Eighth Amendment.

In *United States v. Bajakajian*, 524 U.S. 321, 334 (1998), the Supreme Court held that the Eighth Amendment prohibits fines that are "grossly disproportional" to the gravity of the offense, striking down a forfeiture where the Defendant's sole wrongdoing was failing to report currency he was legally permitted to possess and transport. The Court emphasized that the offense was purely regulatory, caused no loss to the government, and carried a statutory maximum fine of only $5,000, making the government's attempt to seize $357,144 constitutionally excessive. *Id.* at 337.

The same disproportionality concerns are implicated here: violation of New York City's flavored-tobacco ban is an administrative offense punishable only by a $1,000–$2,000 civil penalty per violation under NYC Administrative Code §17-716, and the State's application of the PACT Act's multiple $10,000 civil penalties to the same underlying conduct, where the alleged wrongdoing is likewise regulatory, non-fraudulent, and causes no tax loss, creates the same constitutional mismatch between the gravity of the offense and the magnitude of the sanction that *Bajakajian* condemns

Moreover, the PACT Act recognizes this and allows for penalties, as NYC acknowledges, involving fines at 2 per cent of the gross sales of cigarettes. 15 U.S.C. § 377 (b) (1) (ii).

## P.    NYC'S Injunctive Claims Are Moot

The Defendant has ceased shipping ENDS into NYC. Additionally, the Defendant is no longer engaged in delivery sales as defined under the PACT Act. *See* Rasool Decl. at 13-14. Accordingly, NYC's request for injunctive relief is now moot. *See Gordon v. Holder*, 85 F. Supp. 3d 78, 84 (D.D.C. 2015), *aff'd in part sub nom. Gordon v. Lynch*, 817 F.3d 804 (D.C. Cir. 2016) (holding that when party to PACT Act proceeding is no longer involved in activity regulated by

33

PACT Act proceeding is moot and may not be continued based on potential benefits involving obtaining potentially favorable case law.).

Q.    **New York City May Not Seek Penalties for Violations of NYC Code §17-716 Beyond any Request for Injunction**

This court already ruled that as a remedy to violations of NYC Administrative Code §17-716, the City may only seek injunctive relief. *See* ECF 105. "However, the City may not seek civil penalties for violations of Section 17-715 because the Administrative Code requires that the City 'commence' any proceeding for civil penalties in the statutorily prescribed, local administrative body." *Id*. at p. 30. As a result, any relief associated with violations of NYC Administrative Code §17-716 is solely limited to injunctive relief.  The court further noted "[w]hile these laws authorize the City to sue to enforce local laws, these authorizations do not permit the City to disregard the enforcement mechanisms set forth in the very local laws it seeks to enforce here." *Id.* at 31.

Accordingly, the City should not be allowed to pursue penalties for violations of NYC Administrative Code §17-716 whether through New York City specifically imposed penalties or via federal penalties (i.e., PACT Act) when such penalties are not otherwise allowed by the same law. See *id*.

III.    **CONCLUSION**

Liability in this case must be adjudicated by a jury under the Seventh Amendment. NYC cannot be granted Summary Judgment since it failed to establish essential facts. This case involves none of the specific activities Congress addressed in passing the PACT Act. NYC cannot establish undisputed facts showing that specific transactions were delivery sales, nor can it show that Defendant was not lawfully operating under any general applicable law involving cigarettes.

NYC cannot establish the PACT Act knowledge requirement. The statutes that NYC are using as potential predicates for unlawfully operating are not generally applicable to the sale of

34

cigarettes and are outside the scope of the PACT Act's lawfully operating provisions. NYC cannot incorporate FDA law into the PACT Act and is preempted from enforcing FDA provisions. Because Defendant is entitled to a jury trial and because NYC cannot satisfy essential elements of its PACT Act claims and is advancing incorrect legal arguments, summary judgment must be denied.

Dated: July 16, 2026

/s/ *Ishmael A. Green*
Ishmael A. Green *(Admitted Pro Hoc)*

35

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE</u>

As required by Local Civil Rule 7.1(c), I certify that the document contains 8,747 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c) ("These limits do not include the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but do include material contained in footnotes or endnotes.").

<u>/s/ *Ishmael A. Green*</u>
Ishmael A. Green *(Admitted Pro Hoc)*